IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RECEIVED

2005 NOV 23 A 11: 28

UNITED STATES OF AMERICA,

v.

RICHARD M. SCRUSHY,
Defendant.

Case No. 2:05cr119-F

**FILED UNDER SEAL**

## MOTION FOR RECONSIDERATION
## OF MAGISTRATE'S ORDER AND MEMORANDUM OPINION
## DENYING DEFENDANTS' MOTIONS FOR RECUSAL

COMES NOW Richard M. Scrushy, by and through his undersigned counsel and, pursuant to the direction of the District Judge on November 16, 2005, files this Motion for Reconsideration of the Order and Memorandum Opinion of the United States Magistrate Judge denying Defendants' previously-filed motions for recusal. In support of this request, Defendant respectfully shows this Court the following:

1.   On October 28, 2005 United States Magistrate Judge Charles S. Coody ("Judge Coody") orally informed Defendant and counsel of certain facts which could raise a basis for recusal, and directed Defendant to file a motion within seven days if Defendant contended that recusal was necessary. (Transcript of Proceedings, October 28, 2005 at 7-9.)

2.   On November 4, 2005 Defendant Scrushy filed "Defendant Richard M. Scrushy's Motion to Recuse Pursuant to 28 U.S.C. §§ 455(a) and (b)(5)(iii)." (Doc 34.)

Codefendant Gary Mack Roberts filed a "Motion for Recusal" on November 3, 2005, (Doc 32), as did Codefendant Don Eugene Siegelman (Doc 33).

3. On November 9, 2005, the Government filed its "United States' Response to Defendants' Motions for Recusal." (Doc 38.)

4. On the next day, November 10, 2005, Judge Coody filed a 20-page "Order and Memorandum Opinion on Recusal" ("Order"). (Doc 41.)

5. In that Order, Judge Coody denied Defendants' motions to recuse under both 18 U.S.C. §§ 455(a) and (b)(5)(iii). (Order at 11, 19.) Additionally, in that Order Judge Coody revealed for the first time that: "I have subsequently learned that my oldest daughter and her husband, by virtue of their ownership of stock in Healthsouth Corporation, are members of the putative plaintiff class in *In re Healthsouth Corportation Securities Litigation*, 2:03-cv-01500-KOB (N.D. Ala.) in which Richard Scrushy is a named defendant." (Order at 2) (footnote omitted). Defendant had not previously raised this ground for recusal because until the filing on Judge Coody's Order denying his motion to recuse, Defendant was unaware of this fact.

6. As presented in Defendant Scrushy's initial motion, (Doc 34), which is adopted in full as part of this motion for reconsideration, Defendant respectfully submits that Judge Coody's recusal is required under both §§ 455(a) and/or (b)(5)(iii) and that, absent the granting of Defendant's motion to recuse, this motion should be referred to another United States Magistrate Judge for an evidentiary hearing and determination.

## Argument and Authorities

### A. The Need for an Evidentiary Hearing

As raised in Defendant Scrushy's original motion, (Doc 34 at 5-6), Defendant is being required to raise and litigate this important issue without access to all of the information necessary to understand and assess the potential effect of Judge Coody's relationships under either the standard of § 455(a) (magistrate judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned") or the mandatory disqualification required under § 455(b)(5)(iii) (where a relative is "known by the judge to have an interest that could be substantially affected by the outcome of the proceeding").

At the time Defendant was required by Judge Coody's order to file his motion, the only information that Defendant had available to him was what was provided orally by Judge Coody in the October 28, 2005 conference, and set out in his Order at page 2. Defendant's initial motion listed numerous facts which Defendant did not have access to, but were essential to understand the nature and scope of the relationships giving rise to the potential for recusal. (Doc 34 at 5-6, 7-8.) Included in those questions was "whether, for instance, Mr. Brandt owns stock in HealthSouth,..." (*Id.* at 7.) As set forth above, Judge Coody's initial Order denying Defendants' motions to recuse answered at least that question by revealing that his daughter and son-in-law not only owned HealthSouth stock but that, by virtue of that stock ownership, are both putative class members in a lawsuit against Mr. Scrushy. (Doc 41 at 2.)

This single instance demonstrates the problem inherent in the process that Judge Coody has initiated regarding this critical issue of recusal. In his motion, Defendant

pointed out the additional facts which he believed were necessary to determine the question of recusal under either subsection of § 455, and specifically alleged that an evidentiary hearing was necessary to make a complete record on this motion in light of the potential problems raised by both Judge Coody's relationship to the daughters of a key Government witness and the fact that Judge Coody's son-in-law is currently a Vice President at HealthSouth and had been employed there during Mr. Scrushy's tenure as C.E.O.

The only response that Judge Coody's Order provided to Defendant's unambiguous request for an evidentiary hearing is found in a footnote at page 2 of the Order, which states in its entirety:

> Scrushy suggests that this matter be referred to another judge for an evidentiary hearing. The other disqualification statute, 28 U.S.C. § 144, applicable only to district judges requires this approach but § 455 does not.

(Order at 2, n.3.)

There are two flaws with this holding. First, as the Eleventh Circuit recognized in *United States v. Cerceda*, 139 F.3d 847 (11th Cir. 1998):

> We agree with the Tenth Circuit's assessment that "cases within § 455(a) are extremely fact driven 'and must be judged on [their] unique facts and circumstances more than by comparison to situations considered in prior jurisprudence.'"

139 F.3d at 853 (quoting *Nichols v. Alley*, 71 F.3d 347, 351 (10th Cir. 1995)). Second, if the basis for recusal rises to a threshold standard, then the appropriate procedure is to have a different judge conduct an evidentiary hearing. As the Fifth Circuit held in *Levitt v. University of Texas at El Paso*, 847 F.2d 221, 226 (5th Cir. 1988):

> The judge can himself decide whether the claim asserted is within § 455. If he decides that it is, then a disinterested judge must decide what the

facts are. *See* 13A C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3550 (1984) and the cases cited there.

Relying on the analysis in *Levitt*, the court in *In re Lieb*, 112 B.R. 830 (Bankr. W.D. Tex. 1990) wrote:

> Accordingly, based upon *Levitt*, the proper procedure is as follows:
>
> > (1) This court should decide whether the "claim asserted" by the Defendants "rises to the threshold standard of raising a doubt in the mind of a reasonable observer as to this court's impartiality."
> >
> > (2) If so, another judge should "decide what the facts are, i.e., hold an evidentiary hearing. [FN 12. Presumably then this judge would decide whether disqualification is appropriate.]
> >
> > (3) If not, this court should not recuse itself.

*Lieb*, 112 B.R. at 836.

As set forth in Defendant's initial motion, (Doc 34 at 6), referrals of recusal motions to a different judge are routinely employed in determining recusals under § 455. *See, e.g., Liljeberg v. Health Servs. Acquistion Corp.*, 486 U.S. 847, 851, 108 S.Ct 2194 (1988); *In re BellSouth Corp.*, 334 F.3d 941, 946 (11th Cir. 2003); *United States v. State of Alabama*, 828 F.2d 1532, 1539 (11th Cir. 1987); *Potashnick v. Port City Const. Co.*, 609 F.2d 1101, 1106 (5th Cir. 1980).

As will be set forth in more detail below, the facts that Judge Coody revealed on October 28, 2005 and the additional facts revealed in his Order of November 10, 2005, support a claim for recusal which Defendant Scrushy has asserted which "'rises to the threshold standard of raising a doubt in the mind of a reasonable observer as the [the magistrate's] impartiality,'" *Lieb*, 112 B.R. at 836 (quoting *Levitt* at 226), and the appropriate procedure would be to refer this motion to another United States Magistrate Judge for an evidentiary hearing.

Such a procedure is not only appropriate, but necessary for three additional reasons. First, there are key factual matters not yet revealed by Judge Coody and not available to Defendant.[1] In such circumstances, the important policies implicated in § 455(a), most notably the need to avoid even the appearance of partiality, support the need for an evidentiary hearing in which all facts relating to this issue are available to all parties and a complete record is made. *See Easley v. University of Michigan Board of Regents*, 853 F.2d 1351, 1358 (6th Cir. 1988) (granting emergency motion for remand for evidentiary hearing to enlarge record regarding, *inter alia*, the nature of judge's associations and affiliations with law school).

Second, the relationship of HealthSouth to the instant criminal litigation is far more complex than the Order of Judge Coody presumes ("There is not one word in the indictment or the complaint which suggests that there is any relationship, except some temporal overlap, between the alleged criminal and civil violations of law.") (Order 41 at

---

[1] For instance, in regard to Judge Coody's son-in-law and daughter, what is the extent of their holdings in HealthSouth stock? What is the nature and scope of their participation in the lawsuit against Mr. Scrushy other than their role as putative class members? What information, if any, has Judge Coody obtained from his son-in-law or daughter about HealthSouth that may have come from sources other than "internal corporate information"? *See* Order at 6 n.5 and 13. What discussions occurred between Judge Coody and his son-in-law which led to Judge Coody's conclusion that "I have assured myself that my son-in-law's position with HealthSouth did not bring him into contact with any matter in dispute in this criminal case"? *See* Order at 13. What discussions, if any, has Judge Coody had with his family members concerning the massive fraud at HealthSouth, about Richard Scrushy's alleged involvement in that fraud, or the lengthy trial and acquittal on his previous criminal indictment? What are Judge Coody's son-in-law's duties and responsibilities at HealthSouth? What are his contacts, if any, to individuals at HealthSouth who, notwithstanding his acquittal on all counts in the Birmingham criminal trial, still believe that Richard Scrushy is responsible for the fraud at HealthSouth and are actively pursuing him for criminal and civil liability for the fraud at HealthSouth?

16.) [2] The scope of the relationship between the fraud at HealthSouth (the subject matter of the civil suit in which Judge Coody's relatives and Mr. Scrushy are opposing parties) and the pending criminal proceeding (in which Mr. Scrushy is a Defendant) is a matter which needs to be explored in depth before a decision on recusal reliably can be based on an assumption that there is no relationship. As will be discussed below, and demonstrated with FBI 302s provided in relation to this criminal proceeding, it appears that the Government's evidence will contend that the alleged bribes in the instant case were somehow related to the ongoing fraud at HealthSouth at the time the transactions are alleged to have occurred. The only way to make a complete record on this question is in an appropriate evidentiary hearing.

Third, and perhaps most critically, the importance and complexity of this criminal proceeding, as well as considerations of judicial economy, militate in favor of a thorough and careful resolution of this issue at this initial stage. Were further additional facts relative to this issue revealed at a later date, or the assumption that the civil proceedings involving the fraud at HealthSouth are unrelated to the subject matter of this case turn out to be incorrect, the investment of considerable legal resources—most especially the Court's—could be wasted. *See United States v. Kelly*, 888 F.2d 732, 744 (11th Cir. 1989) ("The duty of recusal applies equally before, during and after a judicial proceeding,

---

[2] For instance, in a letter dated November 10, 2005, counsel for the Government has advised that the Government has obtained evidence from the United States Attorney's Office for the Northern District of Alabama "related to the prosecution of Defendant Scrushy...." Informal discussions with the Government have indicated that the volume of this evidence is massive (over one million images). Defendant anticipates substantial litigation concerning the admissibility of this evidence in the instant trial. As will be set forth in detail *infra*, whether or not that information becomes part of the public domain will have a substantial impact on the perception of the merits of the trial of the upcoming civil suit.

whenever disqualifying circumstances become known to the judge." (citing *Liljeberg*, 108 S.Ct. at 2202-03)). For all these reasons, Defendant respectfully submits that the prudent course is to determine this issue once and for all in an evidentiary hearing before a different Magistrate Judge.

## B. Recusal Under § 455(b)(5)(iii)

As set forth in Defendant Scrushy's previously filed motion, (Doc 34 at 6), § 455(b)(5)(iii) requires recusal whenever a person within the third degree of relationship to the judge  or the spouse of such a person "is known to have an interest that could be substantially affected by the outcome of the proceeding;..." Judge Coody addresses this ground for recusal in pages 5-11 of his Order.

In *United States v. Patti*, 337 F.3d 1317 (11th Cir. 2003),  the Eleventh Circuit held:

> Although both subsections provide reasons for recusal, subsection (b) is stricter than subsection (a) because the need for a judge's recusal under subsection (b) is clear; once it has been established that one of the enumerated conditions exists, there can be no dispute about the propriety of recusal.

*Id.* at 1321-22.

In response to this claim, Judge Coody writes: "In the criminal case presently under consideration, the possible future affect of its outcome on an interest of my adult children is even more difficult to discern. The affect of either acquittal or conviction would have on the civil securities litigation seems purely speculative." (Order at 8-9) (footnote omitted). After discussing the vagaries and uncertainties associated with predicting the outcome of any litigation, Judge Coody concludes:  "After careful

consideration I conclude that any possible affect is too remote and uncertain to be properly considered as having a substantial affect." (*Id.* at 10-11.)

Judge Coody's Order does not address the principal authority relied on in Defendant's argument under § 455(b)(5)(iii), *Potashnick v. Port City Construction Co.*, 609 F.2d 1101 (5th Cir. 1980).[3]  In *Potashnick*, the Court held that § 455(b)(5)(iii) required recusal of a judge based on his father's position as a partner in a law firm which was representing a party.  609 F.2d at 1113.  More importantly, the Court held that:

> The language of section 455(b)(5)(iii) does not require the judge to investigate whether his lawyer-relative's interest will in fact be affected by the outcome of the proceeding.  Instead, the statute requires automatic disqualification when the judge in a proceeding knows of his relative's interest, and the outcome of the proceeding *may potentially affect that interest.*

609 F.2d at 1113-14 (emphasis added).  In *McCuin v. Texas Power and Light*, 714 F.2d 1255 (5th Cir. 1983), the Fifth Circuit remanded a case for reassignment based on the involvement  of the judge's brother-in-law as a lawyer for a party, and provided the following analysis of *Potashnick*:

> The legislative history of the amendment to § 455 indicates that Congress' purpose was to adopt a categorical rule that would be self-enforcing.  In *Potashnick*, we noted that § 455 makes it the judge's duty to disqualify himself as soon as he is aware that the grounds exist.  The mandate is made inexorable by the express prohibition against waiver.

714 F.2d at 1259-60.

Defendant respectfully submits that the newly-revealed fact that Judge Coody's daughter and son-in-law are putative parties to the class-action suit in which Mr. Scrushy

---

[3]  In *Bonner v. City of Pritchard*, 661 F.2d 1206 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the Fifth Circuit rendered prior to the close of business on September 30, 1981.

is named as a Defendant requires that Judge Coody recuse himself pursuant to § 455 (b)(5)(iii) and the binding authority of *Potashnick*.

First, as set forth in Defendant's initial motion to recuse, (Doc 34 at 7), Judge Coody's daughter and son-in-law are within the third degree of relationship as defined by subsection § 455(d)(2). Judge Coody's Order does not dispute this. (Order at 7.) Instead, Judge Coody's Order frames the issue as follows: "Thus, the precise question is whether the outcome of this criminal proceeding can be said to substantially affect the interest which my children have in the civil litigation." (*Id.*)

Defendant respectfully submits that Judge Coody's children clearly have a financial interest in the outcome of the civil litigation and that that civil suit will be "substantially affected" by the outcome in the instant criminal proceedings in which Judge Coody is serving as the Magistrate Judge.

Under subsection (b)(5)(iii), the interest of the relatives can be either a financial interest or a non-financial interest. *Potashnick*, 609 F.2d at 1113. In the instant case, the interest of Judge Coody's children is financial. It consists of the money they will recover (or fail to recover) based on the outcome of the civil proceedings against Mr. Scrushy and HealthSouth. The size of that financial interest is of no moment, as § 455 (d)(4) provides: "'financial interest' means ownership of a legal or equitable interest, however small,...." *See Securities Investor Protection Corp. v. Bell & Beckwith*, 28 B.R. 285, 287 (Bankr. Ohio 1983) (holding that even if interest of debtor in bankruptcy action is de minimus, "the fact that these financial interests may be affected justifies recusal"). Moreover, as plaintiffs in a civil suit, the financial interest of Judge Coody's children is a *direct* interest—they stand to recover money from the defendants in that case, including

10

Mr. Scrushy, if the plaintiffs prevail in the lawsuit. This direct financial interest is far different from the "indirect and speculative" potential effect on the entire banking industry in the case of *In re Placid Oil Co.,* 802 F.2d 783, 786 (5th Cir. 1986), as relied on in Judge Coody's Order at 16.

As a consequence, the only real question affecting recusal under subsection (5)(b)(iii) is whether or not the outcome in the instant criminal proceedings "may *potentially* affect that interest." *Potashnick,* 609 F.2d at 1114 (emphasis added).

In regard to this question, Judge Coody's original Order relies on authorities which caution against the vagaries of predicting the outcome of civil litigation, concluding that "[t]he affect of either acquittal or conviction would have on the civil securities litigation seems purely speculative." (Order at 8-9) (footnote omitted). In a later section of the same Order, analyzing recusal under § 455(a), Judge Coody attempts to speculate on the effect of the outcome of the criminal proceeding on the civil litigation involving his daughter and son-in-law. The Order concludes the only potential effect would be if Mr. Scrushy were convicted and the ensuing imprisonment, fines and forfeiture affected his ability to pay any judgment in the civil case. The Order goes on to dismiss even this effect, however, based on Judge Coody's conclusion that in such an event, HealthSouth would have to pay the judgment due to its joint and several liability pursuant to 15 U.S.C. § 78(h). (Order at 18-19.)

Defendant respectfully submits that this finely-tuned analysis ignores the elephant in the room regarding this issue. If Richard Scrushy were to be convicted on some or all of the serious criminal charges in this indictment, such a verdict would be a substantial and undeniable boon to the civil claim that Richard Scrushy and HealthSouth defrauded

the stockholders of HealthSouth, including Judge Coody's children. To put it bluntly, if a person were a plaintiff or legal counsel for a plaintiff in the civil proceeding, would that person prefer that Richard Scrushy be acquitted or convicted in the instant criminal proceeding?

The charges against Mr. Scrushy in the superseding indictment are grave. Count Three alleges the corrupt solicitation of a bribe in the amount of $500,000 by the then-Governor of Alabama to influence his appointment of Mr. Scrushy to the CON Board. (Doc 9 at 29-30). Count Four alleges that Mr. Scrushy paid a bribe of $500,000 to the Governor of Alabama to influence his appointment to the CON Board. (*Id.* at 30-31.) Count Five alleges Mr. Scrushy participated in a scheme to defraud and deprive the State of Alabama of its right to the honest services of the then-Governor of Alabama. (*Id.* at 31-32.) A conviction on one or more of these charges, especially in a heavily-publicized trial such as will occur in the instant proceeding in light of the personalities and charges involved, will be publicly perceived as lending credence to the claims that Mr. Scrushy would violate the law to achieve certain business ends.

Moreover, contrary to the conclusion found in Judge Coody's Order at page 16, that "the only connection between this criminal case and the *Healthsouth Securities Litigation* is that Richard Scrushy is a named defendant in both," is the simple fact that the Government's evidence will attempt to show that the alleged bribery scheme was part and parcel of the fraud that was ongoing at HealthSouth at the same time. For example, an examination of the FBI 302 dated September 9, 2003 memorializing the interview of then-CFO Michael Martin (attached as EXHIBIT A and hereby incorporated) and the FBI 302 dated June 30, 2004 memorializing the interview of William C. McGahan (attached

12

as EXHIBIT B and hereby incorporated), demonstrates that key Government witnesses will testify that the funds for part of the alleged bribe were obtained from Integrated Health Services ("IHS") through an arrangement in which McGahan would forego a previously earned fee owed to him by IHS. (EXHIBIT B at 2-3.) At the time, McGahan was a managing director at UBS Warburg, HealthSouth's primary investment banking firm. According to the interview of Mike Martin, despite the fact that IHS wrote the $250,000 check in the transaction, "it may have been HealthSouth who forgave a debt owed by IHS to HealthSouth in return for $250,000 lottery donation by IHS." (EXHIBIT A at 2.) As this single example demonstrates, the Government can be expected to contend that the transactions alleged in the indictment were related to the ongoing fraud at HealthSouth, which is the precise subject matter of the civil suit in which Judge Coody's children have a financial interest.

While there is no way to predict each twist and turn of the instant criminal proceeding and its concomitant effect on the ongoing civil litigation, there is no need to do so. All that is required is a conclusion that "the outcome of the proceeding may potentially affect" the civil litigation and, hence, the financial interest of Judge Coody's children. *Potashnick*, 609 F.2d at 1114. Again, it is impossible to conclude anything but that a conviction of Richard Scrushy on charges that he bribed a sitting Governor of Alabama to aid the business of HealthSouth would have a potential effect on the civil litigation.

This potential effect of a criminal conviction in the instant proceedings on the ongoing civil litigation is neither "remote" nor "uncertain," contrary to the conclusion in Judge Coody's Order at page 10. Such an event would have an immediate impact on the

13

perception of the substance of the pending lawsuit. Such an event would undoubtedly be viewed by the plaintiffs in that lawsuit as a substantial and public confirmation that illegal acts were being committed at HealthSouth and that Richard Scrushy was involved in those acts. Conversely, if Richard Scrushy is acquitted on all charges, the acquittal would not provide that public impetus and confirmation of the claims in the civil suit. This is not a matter of speculation; it is a matter of common sense and reality.

Defendant respectfully submits that Judge Coody's children have a direct financial interest in the pending civil litigation in which they are plaintiffs and Richard Scrushy is a defendant. Likewise, the outcome of the instant proceeding in which Judge Coody is the Magistrate Judge "may potentially affect that interest," *Potashnick*, 609 F.2d at 1114, and, § 455(b)(5)(iii) "requires automatic recusal when the judge in a proceeding knows of his relative's interest…." Under the binding authority of *Potashnick*, automatic disqualification is required. Alternatively, Defendant respectfully submits that the interests implicated and the potential effect of the outcome of the current criminal case on those interests surely fall "within § 455 … [and] a disinterested judge must decide what the facts are." *Levitt*, 847 F.2d at 226.

### C. Recusal Under 28 U.S.C § 455(a)

This Court addresses the issue of recusal under § 455(a) at pages 11-20 of its Order. The Order correctly states the applicable standard as "whether an objective, fully informed lay observer would entertain significant doubt about the judge's impartiality." Order at 11 (citing *Christo v. Padgett*, 223 F.3d 1324, 1333 (11th Cir. 2000). The discussion that follows, however, focuses on an exposition of the reasons why Judge Coody is not partial, and includes factual assertions and intimations of conversations or

investigations in which Judge Coody has assured himself that he is not subject to recusal based on the relationships in questions. For instance, at page 13 of the Order, Judge Coody states, "In particular, I have assured myself my son-in-law's position with HealthSouth did not bring him into contact with any matter in dispute in this criminal case."

Such an analysis should not be the focus of the inquiry under § 455(a). First, it again raises the serious question of whether the record in this case contains all of the facts relevant to the question of recusal. The "objective, informed lay observer" standard is difficult to apply unless and until all of the facts are available. Second, implicit in Judge Coody's analysis is that the sole query is as to the existence of partiality. The purpose of § 455(a) is far broader than that: "The purpose of § 455(a) is to promote confidence in the judiciary by avoiding even the possible appearance of impropriety whenever possible." *Liljeberg*, 486 U.S. at 865. As a consequence, "Neither actual partiality, nor knowledge of the disqualifying circumstances on the part of the judge during the affected proceedings, are prerequisites to disqualification under this section." *Kelly*, 888 F.2d at 744 (citing *Liljeberg*, 108 S.Ct. at 2202-03). Finally, Judge Coody's analysis overlooks a key consideration that is central to the goal of "promoting confidence in the judiciary:" "[A]ny doubts must be resolved in favor of recusal." *Patti*, 337 F.3d at 1321 (citing *Kelly*, 888 F.2d at 745).

More importantly, the fact that Judge Coody found it necessary to make additional inquiries with his son-in-law in and of itself is problematic. In *SCA Services, Inc. v. Morgan*, 557 F.2d 110 (7th Cir. 1977) the Seventh Circuit granted a petition for

mandamus and ordered recusal based on the appearance of a law firm of the judge's brother. In reaching this decision, the court noted:

> Further, the judge's "Memorandum of Decision" suggests that he made a confidential inquiry, presumably to his brother, to determine in what capacity Donald A. Morgan was involved in this case (Petitioner's App. D-3). Counsel were not present and were unaware of the inquiry at the time it was made. While it is understandable why the judge may have felt his brother could present the most accurate evidence as to his role in the pending litigation, the judge's inquiry creates an impression of private consultation and appearance of partiality which does not reassure a public already skeptical of lawyers and the legal system.

557 F.2d at 116.

There are two distinct relationships at issue in the instant recusal. The first stems from the fact that Judge Coody's son-in-law, Mr. Brandt, was employed at HealthSouth during Defendant Scrushy's tenure and is currently a Vice President at HealthSouth. In addition, as discussed in detail in Section B, *supra*, both Judge Coody's daughter and son-in-law are owners of an undisclosed quantity of HealthSouth stock. (Order at 2.) As a consequence, Judge Coody's daughter and son-in-law are parties to a lawsuit against Richard Scrushy, the Defendant in whose criminal case Judge Coody will be making critical determinations under the Federal Magistrate's Act. Given the significant profile of all of the recent and on-going litigation concerning Richard Scrushy and HealthSouth in the State of Alabama, Defendant respectfully submits that it is difficult to conclude that an "objective, fully informed lay observer" would not necessarily "entertain significant doubts" about the impartiality of a Judge whose daughter and son-in-law are suing the Defendant who is before him on criminal charges, as well as the fact that the son-in-law is a Vice President at HealthSouth.

Judge Coody's Order addresses these concerns with two principal assertions. The first is to offer the conclusion that "the only connection between the civil case and the Healthsouth litigation is that Richard Scrushy is a named defendant in both." The second is that "[t]there is not one word in the indictment or the complaint which suggests there is any relationship, except some temporal overlap, between the alleged criminal and civil violations of law." (Order at 16.)

Defendant respectfully submits that a more complete understanding of the criminal allegations and their alleged relationship to the fraud at HealthSouth will demonstrate that the realities of this case will increasingly undercut the validity of those assertions. As more of the Government's theory of the case and the facts on which it relies is revealed, the overlap between the criminal case and the civil case will be shown to be far more than temporal.

As a starting point, the Government's initial discovery response (discussed in footnote 2, *supra*), with its inclusion of a massive quantity of materials obtained from the U.S. Attorney's office in Birmingham, which prosecuted Richard Scrushy for the HealthSouth fraud, belies any quick conclusion that the there is no connection between the two cases. Defendant Scrushy fully anticipates that the Government will attempt to offer considerable evidence relating to the allegations of the massive fraud and wrong-doing at HealthSouth, and Judge Coody will be faced with ruling on procedural matters and motions relating to and flowing from this evidence.

Further, Defendant submits that a review of the statements of Michael D. Martin, to the FBI (EXHIBIT A), demonstrates how key Government testimony will attempt to link the transaction in the instant indictment to the overall fraud at HealthSouth.

Additionally, based on the statements of William C. McGahan to the FBI (EXHIBIT B), it is apparent that the Government will attempt to offer evidence in the instant criminal proceedings that investment banker USB Warburg played a knowing role in the alleged bribery scheme. This evidence, even to the extent that it becomes public knowledge, will significantly impact the perception of the plaintiff's claim that USB Warburg should be held liable in the civil action as a defendant underwriter. See "Joint Second Amended Consolidated Class Action Complaint for Violations of the Federal Securities Laws [Factual Basis]" at 152 et seq., filed in Consolidated Case No. CV-03-BE-1501-S on August 2, 2004. In short, as more information becomes available, the interaction between the two proceedings will become more and more apparent.

The second assertion advanced by Judge Coody's Order is the claim that the only potential effect of a conviction in Defendant's case is that the possibility of conviction might subject Defendant to imprisonment, fines, and restitution, which might affect Defendant's ability to pay any judgment in the civil suit that Judge Coody's daughter and son-in-law are parties to. (Order at 18.) Judge Coody goes on to dismiss the effect of such an event by pointing to 15 U.S.C. § 78(h), which provides for joint and several liability in securities cases, concluding that even if Mr. Scrushy's finances were affected by the outcome of the criminal case, HealthSouth would still be required to pay any judgment. (Order at 18-19.) As set forth above, while this analysis is initially attractive, it ignores the simple fact that if Richard Scrushy were to be found guilty of the instant criminal charges, such a verdict would be a substantial and undeniable boon to the civil claim that HealthSouth and Richard Scrushy defrauded the stockholders of HealthSouth, including Judge Coody's daughter and son-in-law who are suing Mr. Scrushy in that

action. The appearance created by Judge Coody determining critical procedural matters in a case which the Government can be expected to argue was part and parcel of the fraud at HealthSouth while the Judge's daughter and son-in-law are parties to a lawsuit against Defendant for the very same fraud will not create confidence in the judiciary. The issues and interests are far too intertwined to avoid creating significant doubt as to Judge Coody's impartiality.

The second factual area of concern relates to Judge Coody's relationship to the daughters of Forrest "Mac" Marcato, whose name appears in the indictment. According to Judge Coody's notice to the Defendants, Judge Coody's wife was the debate coach at Saint James High School. Judge Coody worked with his wife's students, including the two daughters of Mr. Marcato, Jennifer Marcato and Emily Marcato. As a result of these contacts, "[a]nd those two young ladies at various times would, in casual conversation about family life, describe difficulties that her father had with the Alabama Department of Transportation. It was things like griping about I didn't get a contract, they won't pay any attention to my striping." (Order at 2.) In his Order, Judge Coody dismisses the significance of Mr. Marcato's complaints as having any possibility of having an impact on his appearance of impartiality:

> I considered then and now that these comments were simply complaints about decisions by a government agency to which Marcato was attempting to market a product. If a judge were required to disqualify himself in a case involving a public figure because he knew or was associated with persons who complained about decisions, only judges who resided in caves or monasteries could ever sit on a case.

(Order at 14.)

A reading of the indictment alone indicates that Mr. Marcato is alleged to be somewhat more than a citizen "who complained about decisions." As set forth in ¶ 42 of

the superseding indictment, Racketeering Act 5(d) is alleged to involve the solicitation of $250,000 from Mr. Marcato "in exchange for official action and influence to protect Forrest 'Mac' Marcato's business interests involving the Alabama Department of Transportation form economic harm,...." (Doc 3 at 22.)  The FBI 302 dated December 13, 2004 relating to the interview of Mr. Marcato (attached as EXHIBT C and hereby incorporated) paints an even more vivid picture of his version of the events, again hardly a simple complaint of someone who was attempting to market a product. Additionally, page 2 of that FBI 302 indicates that Mr. Marcato's daughter Jennifer (who complained to the Judge about her father's situation) was a close friend of the daughter of another individual who plays a key role in the Government's allegations. [4]

Ultimately, the problem with both of Judge Coody's relationships to people with an interest in this case is that the situations, and their potential impacts, are far from simple.  While Judge Coody provides a theoretical analysis of why these relationships do not necessarily result in a conclusion that his impartiality might reasonably be questioned, that is not the issue.  The issue is the appearance created by these relationships and the concomitant impact on the principal goal of § 455(a):  "to promote confidence in the judiciary by avoiding even the possible appearance of impropriety whenever possible." *Liljeberg*, 486 U.S. at 865.  Defendant respectfully submits that Judge Coody's Order does not justify his refusal to recuse himself.  In the alternative, in

---

[4] A review of the Marcato FBI 302 demonstrates the paucity of facts concerning Judge Coody's conversations with Jennifer and Emily Marcato that have been related in the oral statements of Judge Coody and his November 10, 2005 Order. For instance, how many of these conversations occurred? Were there any allegations of illegal activities directed at their father? Were there any requests for advice or assistance? From the FBI 302, it is apparent that the activities that Mr. Marcato is claiming occurred were hardly the typical "difficulties with business" that children will hear and repeat. *See* Order at 2.

light of all of the foregoing, Defendant respectfully submits that the claim for recusal here asserted is "within § 455 ... [and] a disinterested judge must decide what the facts are." *Levitt*, 847 F.2d at 226.

WHEREFORE, Defendant respectfully prays that this Court reconsider its Order and Memorandum Opinion on Recusal filed November 10, 2001, and enter an Order granting Defendant's motion to recuse. In the alternative, Defendant respectfully prays that this Court enter an Order referring Defendant's motion to a different Magistrate Judge for an evidentiary hearing and disposition, and for such other and further relief as this Court may deem just and proper.

This 23rd day of November, 2005.

Respectfully submitted,

Arthur W. Leach
Leslie V. Moore
2310 Marin Drive
Birmingham, Alabama 35203
Phone: 205-822-4224
Fax: 205-824-0321

Henry Lewis Gillis
Thomas Means Gillis & Seay PC
PO Drawer 5058
Montgomery, Alabama
Phone: 334-270-1033
Fax: 334-260-9393

Attorneys for Richard M. Scrushy

## CERTIFICATE OF SEVICE

I hereby certify that on the 23rd day of November, 2005, a copy of the foregoing "Motion For Reconsideration Of Magistrate's Order and Memorandum Opinion Denying Defendant's Motion For Recusal" was served on the following Counsel of record by placing same in United States mail:


Louis V. Franklin, Sr.
Acting United States Attorney
Middle District of Alabama
P.O. Box 197
Montgomery, Alabama 36101-0197

G. Douglas Jones
Whatley Drake, LLC
P.O. Box 10647
Birmingham, Alabama 35203

Joel Dillard
Baxley, Dillard, Dauphin & McKnight
2008 Third Avenue South
Birmingham, Alabama 35233

Ronald W. Wise
2000 Interstate Park Drive, Suite 105
Montgomery, Alabama 36109

Leslie V. Moore
2310 Marin Drive
Birmingham, Alabama 35243
Phone: (205) 822-4224
Fax:    (205) 824-0321
E-Mail:  les.moore@lvmlaw.com