FILED

DEC 1 2 2005

CLERK
U. S. DISTRICT COURT
MIDDLE DIST. OF ALA.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **CRIMINAL NO. 2:05-CR-119-F** |
| | ) | |
| DON EUGENE SIEGELMAN, | ) | |
| PAUL MICHAEL HAMRICK, | ) | |
| GARY MACK ROBERTS, and | ) | **SECOND SUPERSEDING** |
| RICHARD M. SCRUSHY. | ) | **INDICTMENT** |

**THE GRAND JURY CHARGES:**

## INTRODUCTION

1.     At all times material to this Indictment:

a.     The State of Alabama was governed according to a Constitution and Statutes providing for an Executive Department, headed by the Governor of the State of Alabama as the Supreme Executive, and by a Lieutenant Governor.

b.     The Executive Department of the State of Alabama was comprised of various government agencies, including the Alabama Alcoholic Beverage Control Board, the Alabama Certificate of Need Review Board, the Alabama Licensing Board General Contractors , the Alabama Department of Environmental Management, the Alabama Department of Finance, the Alabama Department of Transportation, the Alabama Department of Revenue, the Alabama Department of Economic and Community Affairs, the Alabama Development Office, and other Alabama departments, agencies, and authorities.

c.     DON EUGENE SIEGELMAN was, from on or about January 16, 1995, to on or about January 18, 1999, the Lieutenant Governor of the State of Alabama, and while Lieutenant Governor was also, from on or about March 31, 1996, to on or about November 3, 1998, a

SCANNED

61

candidate for Governor of the State of Alabama, and was, from on or about January 18, 1999, to

on or about January 20, 2003, the Governor of the State of Alabama.

    d.    PAUL MICHAEL HAMRICK was, from on or about January 16, 1995, to on or

about May 8, 1998, employed in the Lieutenant Governor's Office of the State of Alabama; and

was, from on or about January 19, 1999, to on or about June 30, 2001, the Chief of Staff to the

Governor of the State of Alabama.

    e.    GARY MACK ROBERTS was, from on or about December 23, 1996, to on or

about January 18, 1999, an employee of a business owned by Jimmy Lynn Allen, and from on or

about January 19, 1999, to on or about June 30, 2001, the Director of the Alabama Department of

Transportation.

    f.    RICHARD M. SCRUSHY was the Chairman and Chief Executive Officer of

HealthSouth Corporation (hereafter sometimes "HealthSouth"), a business selling medical

products and services in the State of Alabama and elsewhere, which was regulated by the State of

Alabama Certificate of Need Review Board (hereafter sometimes "CON Board").

## COUNT ONE
### (RICO Conspiracy, 18 U.S.C. § 1962(d))

    2.    The Grand Jury realleges and incorporates Paragraph 1 of this Indictment as

though fully set forth in this Count.

### The Enterprise

    3.    At all times relevant to this Indictment, the Executive Department of the State of

Alabama constituted an "enterprise," as defined by Title 18, United States Code, Section 1961(4)

(hereafter sometimes "the enterprise"), which was engaged in, and the activities of which

affected, interstate and foreign commerce, and the enterprise constituted an ongoing organization,

whose members functioned as a continuing unit for a common purpose of achieving the

objectives of the enterprise.

## The Racketeering Conspiracy

4.    From in or about August 1997, to on or about January 20, 2003, within the Middle

District of Alabama and elsewhere, the defendants

DON EUGENE SIEGELMAN and
PAUL MICHAEL HAMRICK,

together with Nicholas D. Bailey, Clayton "Lanny" Young, and other persons known and

unknown to the Grand Jury, being persons employed by and associated with the enterprise, which

engaged in, and the activities of which affected, interstate and foreign commerce, knowingly, and

intentionally conspired to violate 18 U.S.C. § 1962(c), that is, to conduct and participate, directly

and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering

activity, as that term is defined in Sections 1961(1) and 1961(5) of Title 18, United States Code,

consisting of multiple acts indictable under the following provisions of federal law:

        a.     18 U.S.C. §§ 2, 1341, 1343, and 1346 (Honest Services Fraud);
        b.     18 U.S.C. §§ 2, 1951 (Extortion);
        c.     18 U.S.C. §§ 2, 1956 (Money Laundering);
        d.     18 U.S.C. §§ 2, 1512 (Obstruction of Justice);

and  multiple acts involving bribery in violation of  ALA. CODE 1975 §§ 13A-10-61 & ALA.

CODE 1975 § 17-22A-7.  It was a further part of the conspiracy that each defendant agreed that a

conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of

the enterprise.

<u>Purpose of the Conspiracy</u>

5.    The purpose of the racketeering activity was:

a.    to give or withhold official governmental acts and influence, and to threaten to give and withhold official governmental acts and influence, in exchange for money and property to which the participants in the conspiracy were not entitled;

b.    to deprive the State of Alabama of its right to the honest services of its public officials and employees in exchange for money and property; and

c.    to conceal and otherwise protect the conspiracy and its participants from detection and prosecution.

<u>Manner and Means of the Conspiracy</u>

6.    It was a part of the conspiracy that defendants DON EUGENE SIEGELMAN and PAUL MICHAEL HAMRICK, as well as other co-conspirators known and unknown to the Grand Jury, engaged in a scheme to defraud and deprive the State of Alabama of its right to the honest services of DON EUGENE SIEGELMAN and PAUL MICHAEL HAMRICK in their capacity as state officials and employees, and of other state officials and employees, as more fully described in Count Two.

7.    It was a part of the conspiracy that defendants DON EUGENE SIEGELMAN and PAUL MICHAEL HAMRICK, as well as other co-conspirators known and unknown to the Grand Jury, engaged in bribery and extortion under color of official right, as more fully described in Count Two.

8.    It was a part of the conspiracy that defendant DON EUGENE SIEGELMAN as well as co-conspirators known and unknown to the Grand Jury, engaged in money laundering by

4

financial transactions concealing the proceeds of unlawful activity, as more fully described in Count Two.

9.     It was a part of the conspiracy that defendants DON EUGENE SIEGELMAN and PAUL MICHAEL HAMRICK, as well as co-conspirators known and unknown to the Grand Jury, attempted to obstruct justice by corruptly persuading others, and engaging in misleading conduct toward others, to hinder, delay, and prevent the communication to law enforcement officers of the United States of information relating to the commission and possible commission of a federal offense, as more fully described in Count Two.

10.     It was also part of the conspiracy that defendants DON EUGENE SIEGELMAN, PAUL MICHAEL HAMRICK, and co-conspirators known and unknown to the Grand Jury would and did knowingly give and withhold, and threaten to give and withhold, official action and influence to benefit the personal and financial interests of themselves and others not entitled to such benefits.

All done in violation of Title 18, United States Code, Section 1962(d).

## COUNT TWO
### (RICO, 18 U.S.C. § 1962(c))

11.     The Grand Jury realleges and incorporates Paragraphs 1-5 of this Indictment as though fully set forth in this Count.

### The Racketeering Violation

12.     From in or about August 1997, to on or about January 20, 2003, within the Middle District of Alabama and elsewhere, defendants DON EUGENE SIEGELMAN and PAUL MICHAEL HAMRICK, and others known and unknown to the Grand Jury, being employed by

5

and associated with the enterprise, which was engaged in and the activities of which affected interstate and foreign commerce, unlawfully and knowingly conducted and participated, directly and indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity, as set forth in Paragraphs 13-47 below.

Pattern of Racketeering Activity

13.    The pattern of racketeering activity, as that term is defined in Sections 1961(1) and 1961(5) of Title 18, United States Code, consisted of the following acts.

**Racketeering Act 1**

14.    Defendant DON EUGENE SIEGELMAN committed the following acts, any one of which alone constitutes the commission of Racketeering Act 1:

Racketeering Act 1(a)<br>(Extortion under Color of Official Right,<br>18 U.S.C. § 1951)

15.    From on or about November 3, 1998, to on or about May 23, 2000, in the Middle District of Alabama and elsewhere, defendant

DON EUGENE SIEGELMAN

aided and abetted by others known and unknown to the Grand Jury, did knowingly obstruct, delay, affect and attempt to obstruct, delay and affect commerce and the movement of articles and commodities in commerce by extortion, as those terms are defined in Title 18, United States Code, Section 1951; that is, defendant DON EUGENE SIEGELMAN, unlawfully obtained $500,000 from and at the direction of Richard M. Scrushy, with consent, under color of official right, in return for official action and influence to afford HealthSouth official membership on, representation at, and influence over, the CON Board, all in violation of 18 U.S.C. § 1951.

6

Racketeering Act 1(b)
(Bribery, ALA. CODE 1975 § 13A-10-61(a)(2))

16.     From on or about November 3, 1998, to on or about May 23, 2000, in the Middle

District of Alabama and elsewhere, defendant

DON EUGENE SIEGELMAN

while a public servant, solicited, accepted, and agreed to accept a pecuniary benefit upon an

agreement and understanding that his vote, opinion, judgment, exercise of discretion, and other

action as a public servant would thereby be corruptly influenced, to wit defendant DON EUGENE

SIEGELMAN, while the Governor-elect of the State of Alabama and while Governor of the State

of Alabama, solicited, accepted, and agreed to accept $500,000 from and at the direction of

Richard M. Scrushy upon an agreement and understanding that defendant DON EUGENE

SIEGELMAN would give official action and influence to afford HealthSouth official membership

on, representation at, and influence over the CON Board, all in violation of ALA. CODE 1975 §

13A-10-61(a)(2).

Racketeering Acts 1(c)-(e)
(Honest Services Mail Fraud,
18 U.S.C. §§ 2, 1341, & 1346)

The Scheme

17.     From on or about November 3, 1998, and continuing through on or about January

20, 2003, in the Middle District of Alabama and elsewhere, defendant

DON EUGENE SIEGELMAN,

aided and abetted by Richard M. Scrushy and others known and unknown to the Grand Jury,

knowingly and willfully devised and intended to devise a scheme and artifice to defraud and

7

deprive the State of Alabama of its right to his honest and faithful services in his capacity as

Governor of the State of Alabama, performed free from deceit, favoritism, bias, self-enrichment,

self-dealing, and conflict of interest concerning the CON Board.

### Purpose of the Scheme

18.     It was the purpose of the scheme for DON EUGENE SIEGELMAN, Richard M.

Scrushy, and others to give HealthSouth official membership on, representation at, and influence

over the CON Board by means of hidden payments and financial relationships, and to conceal

these activities.

### Manner and Means of the Scheme

19.     It was part of the scheme and artifice to defraud that:

a.     Richard M. Scrushy would and did pay $500,000 to DON EUGENE SIEGELMAN

in two disguised and concealed payments of $250,000.

b.     DON EUGENE SIEGELMAN would and did appoint Richard M. Scrushy to the

CON Board.

c.     Richard M. Scrushy would and did take a seat on the CON Board.

d.     Richard M. Scrushy would and did use his seat on the CON Board to attempt to

affect the interests of HealthSouth and its competitors.

e.     Richard M. Scrushy and DON EUGENE SIEGELMAN would and did orchestrate

Richard M. Scrushy's replacement on the CON Board by another person employed by

HealthSouth.

### Execution of the Scheme

20.     On or about each date listed below, in the Middle District of Alabama and

8

elsewhere, defendant DON EUGENE SIEGELMAN, aided and abetted by Richard M. Scrushy

and others known and unknown to the Grand Jury, for the purpose of executing and attempting to

execute the above-described scheme and artifice to defraud and deprive, placed and caused to be

placed in a post office and an authorized depository for mail, to be sent and delivered by the

United States Postal Service, and to be sent and delivered by a private and commercial interstate

carrier, the following matters and things:

| Act | Date | Description |
|------|---------|-------------|
| 1(c) | 7/26/99 | Letter of Appointment of Richard M. Scrushy to the Alabama CON Board, mailed from Montgomery, AL, to Birmingham, AL |
| 1(d) | 1/18/01 | Letter of Appointment of a member of the CON Board employed by HealthSouth, mailed from Montgomery, AL, to Birmingham, AL |

all in violation of 18 U.S.C. §§ 2, 1341, & 1346.

Racketeering Act 1(e)
(Honest Services Wire Fraud,
18 U.S.C. §§ 2, 1343, & 1346)

21.    The Grand Jury realleges and incorporates Paragraphs 17-19 of this Indictment,

describing the Scheme, the Purpose of the Scheme, and the Manner and Means of the Scheme, as

though fully set forth in this Racketeering Act.

Execution of the Scheme

22.    On or about the date of the Racketeering Act listed below, in the Middle District of

Alabama and elsewhere, defendant DON EUGENE SIEGELMAN, aided and abetted by others

known and unknown to the Grand Jury, for the purpose of executing the above-described scheme

and artifice to defraud and deprive, transmitted and caused to be transmitted by means of wire

communication in interstate commerce, the following writings, signals and sounds:

9

| Act | Date | Description |
|---|---|---|
| 1(e) | 7/16/99 | Facsimile transmission from HealthSouth in Birmingham, AL, to an employee of a company in Sparks, MD |

all in violation of 18 U.S.C. §§ 2, 1343, & 1346.

Racketeering Act 1(f)

(Money Laundering,

18 U.S.C. §§ 2 & 1956(a)(1)(B)(i))

23.     On or about November 5, 1999, in the Northern District of Alabama and

elsewhere, the defendant DON EUGENE SIEGELMAN, aided and abetted by others known and

unknown to the Grand Jury, did knowingly conduct and attempt to conduct a financial transaction,

such transaction involving the use of a financial institution which is engaged in, and the activities

of which affect, interstate commerce, to wit:  defendant DON EUGENE SIEGELMAN caused the

deposit of a check, made payable to the Alabama Education Lottery Foundation and drawn on the

account of a business in the amount of $250,000, to account number 59468 in the name of the

Alabama Education Foundation, at First Commercial Bank, Birmingham, AL, said transaction

involving the proceeds of a specified unlawful activity, that is violation of 18 U.S.C. §§ 666,

1341, 1343, 1346, and 1951, and an act involving bribery in violation of ALA. CODE 1975 §

13A-10-61, knowing that the transaction was designed in whole and in part to conceal and

disguise the nature, location, source, ownership, and control of the proceeds of said specified

unlawful activity, and that while conducting and attempting to conduct such financial transaction

knew that the property involved in the financial transaction represented the proceeds of some form

of unlawful activity, all in violation of 18 U.S.C. §§ 2 & 1956(a)(1)(B)(i).

Racketeering Act 1(g)
(Money Laundering,
18 U.S.C. §§ 2 & 1956(a)(1)(B)(i))

24.    On or about May 23, 2000, in the Northern District of Alabama and elsewhere, the

defendant DON EUGENE SIEGELMAN, aided and abetted by others known and unknown to the

Grand Jury, did knowingly conduct and attempt to conduct a financial transaction, such

transaction involving the use of a financial institution which is engaged in, and the activities of

which affect, interstate commerce, to wit:  defendant DON EUGENE SIEGELMAN caused the

deposit of a check, made payable to the Alabama Education Foundation and drawn on the account

of HealthSouth, in the amount of $250,000 to an outstanding loan account in the name of the

Alabama Education Foundation, at First Commercial Bank, Birmingham, AL, said transaction

involving the proceeds of a specified unlawful activity, that is violation of 18 U.S.C. §§ 666,

1341, 1343, 1346, 1951, and ALA. CODE 1975 § 13A-10-61, knowing that the transaction was

designed in whole and in part to conceal and disguise the nature, location, source, ownership, and

control of the proceeds of said specified unlawful activity, and that while conducting and

attempting to conduct such financial transaction knew that the property involved in the financial

transaction represented the proceeds of some form of unlawful activity, all in violation of 18

U.S.C. §§ 2 & 1956(a)(1)(B)(i).

**Racketeering Act 2**

25.    The defendants named below committed the following acts, any one of which

alone constitutes the commission of Racketeering Act 2.

<u>Racketeering Act 2(a)</u>
(Conspiracy to Commit Extortion under Color of Official Right,
18 U.S.C. § 1951)

26.     From on or about November 3, 1998, to December 1, 1999, in the Middle District

of Alabama and elsewhere, defendant

DON EUGENE SIEGELMAN,

did knowingly conspire to obstruct, delay, and affect commerce and the movement of articles and

commodities in commerce by extortion, as those terms are defined in Title 18, United States

Code, Section 1951; that is, defendant DON EUGENE SIEGELMAN, unlawfully conspired with

Clayton "Lanny" Young and others known and unknown to the grand jury to obtain money from a

business represented by Clayton "Lanny" Young, with consent, under color of official right, in

exchange for official action and influence to advance the financial interests of that business as to

waste disposal fees and taxes at a facility at Emelle, Alabama, all in violation of 18 U.S.C. §

1951.

<u>Racketeering Act 2(b)</u>
(Bribery, ALA. CODE 1975 § 13A-10-61(a)(2))

27.     Between on or about November 3, 1998, to on or about December 1, 1999, in the

Middle District of Alabama and elsewhere, defendant

DON EUGENE SIEGELMAN,

while a public servant, did solicit, accept, and agree to accept pecuniary benefits upon an

agreement and understanding that his vote, opinion, judgment, exercise of discretion, and other

action as a public servant would thereby be corruptly influenced, to wit, defendant DON

EUGENE SIEGELMAN, while Governor of the State of Alabama and having been elected

12

Governor of the State of Alabama, solicited, accepted, and agreed to accept a pecuniary benefit,

to-wit:  money, in return for being influenced in the performance of official acts concerning waste

disposal fees and taxes at a facility at Emelle, Alabama, in favor of a business represented by

Clayton "Lanny" Young, all in violation of ALA. CODE 1975 § 13A-10-61(a)(2).

Racketeering Acts 2(c)-(o)
(Honest Services Mail Fraud,
18 U.S.C. §§ 2, 1341, & 1346)

The Scheme

28.    From in or about August 1997, to on or about January 20, 2003, in the Middle

District of Alabama and elsewhere, defendants

DON EUGENE SIEGELMAN and
PAUL MICHAEL HAMRICK,

aided and abetted by each other, by Clayton "Lanny" Young, by Nicholas D. Bailey, and by others

known and unknown to the Grand Jury, knowingly and willfully devised and intended to devise a

scheme and artifice to defraud and deprive the State of Alabama of its right to the honest and

faithful services of themselves as public officials and employees of the State of Alabama,

performed free from deceit, favoritism, bias, self-enrichment, self-dealing, and conflict of interest,

concerning alcoholic beverage and waste disposal regulation, the assessment and collection of

hazardous waste fees and taxes, allocation of municipal bond funding, and state construction

contracting.

Purpose of the Scheme

29.    It was the purpose of the scheme for DON EUGENE SIEGELMAN and PAUL

MICHAEL HAMRICK to use their positions in the Executive Department of the State of

13

Alabama to obtain money, property, and other things of value, in exchange for their official

power, actions, and influence, concerning the business and financial interests of Clayton "Lanny"

Young and persons represented by Clayton "Lanny" Young, and thus enriching Clayton "Lanny"

Young so that they would have continued access to his money, property, and other things of value.

### Manner and Means of the Scheme

30.    It was part of the scheme and artifice to defraud that:

a.    Defendants DON EUGENE SIEGELMAN and PAUL MICHAEL HAMRICK

engaged in a course of conduct with Clayton "Lanny" Young establishing an agreement and

understanding by which Clayton "Lanny" Young could obtain official acts in exchange for money,

property, and other things of value.

b.    Clayton "Lanny" Young would and did give valuable private airplane

transportation to DON EUGENE SIEGELMAN and PAUL MICHAEL HAMRICK.

c.    Clayton "Lanny" Young would and did give, directly and indirectly, valuable

property to DON EUGENE SIEGELMAN including a Polaris Magnum 325 4X4 All Terrain

Vehicle and other items worth approximately $23,000.

d.    Clayton "Lanny" Young would and did give, directly and indirectly, approximately

$204,200 to DON EUGENE SIEGELMAN.

e.    Clayton "Lanny" Young would and did give, directly and indirectly, approximately

$20,000 to Nicholas D. Bailey.

f.    Clayton "Lanny" Young would and did give, directly and indirectly, approximately

$46,000 to PAUL MICHAEL HAMRICK.

14

g.    DON EUGENE SIEGELMAN and PAUL MICHAEL HAMRICK would and did assist Clayton "Lanny" Young and endeavor to enrich him and enable him to provide them with money and property through their official power, actions, and influence, including the following acts on or about the following dates:

| Date | Action |
|------|--------|
| between August 1997 and September 1997 | Influencing passage of legislation allowing sale of alcoholic beverages each day of the week, including Sunday, at a motor speedway |
| between 11/3/98 and 1/31/99 | Influencing the Cherokee County Commission in favor of Clayton "Lanny" Young's business interests |
| between July 1998 and 7/15/99 | Influencing a waste disposal business represented by Clayton "Lanny" Young to continue paying for his services, and influencing regulation of waste disposal fees and taxes at a facility at Emelle, AL |
| between 7/1/00 and 11/2/00 | Influencing the *de facto* Director of the Alabama Development Office to advance a business represented by Clayton "Lanny" Young on the list of the companies eligible for industrial tax-free bond issues |
| between September 2000 and May 2001 | Influencing the award of a construction management contract to a company controlled by Clayton "Lanny" Young to build warehouses for the Alabama Department of Economic and Community Affairs and the State of Alabama Alcoholic Beverage Control Board |

h.    DON EUGENE SIEGELMAN would and did solicit and obtain money and property from businesses that benefitted from official action taken by DON EUGENE SIEGELMAN and PAUL MICHAEL HAMRICK for Clayton "Lanny" Young.

Execution of the Scheme

31.    On or about the date of each Racketeering Act listed below, in the Middle District of Alabama and elsewhere, defendants DON EUGENE SIEGELMAN and PAUL MICHAEL HAMRICK, aided and abetted by each other and others known and unknown to the Grand Jury, for the purpose of executing and attempting to execute the above-described scheme and artifice to

15

defraud and deprive, placed and caused to be placed in a post office and an authorized depository

for mail, to be sent and delivered by the United States Postal Service, and to be sent and delivered

by a private and commercial interstate carrier, the following matters and things:

| Act | Date | Description |
|------|---------|-------------|
| 2(c) | 12/2/98 | Letter concerning $1,000,000 payment to Clayton "Lanny" Young for reduction of fees at Cherokee County landfill via Federal Express from Birmingham, AL, to Antioch, TN |
| 2(d) | 1/19/00 | Hazardous Waste Fee Report mailed from a facility in Emelle, AL, to the Alabama Department of Revenue in Montgomery, AL |
| 2(e) | 1/10/01 | Hazardous Waste Fee Report mailed from a facility in Emelle, AL, to the Alabama Department of Revenue in Montgomery, AL |
| 2(f) | 1/15/02 | Hazardous Waste Fee Report mailed from a facility in Emelle, AL, to the Alabama Department of Revenue in Montgomery, AL |
| 2(g) | 1/14/03 | Hazardous Waste Fee Report mailed from a facility in Emelle, AL, to the Alabama Department of Revenue in Montgomery, AL |

all in violation of 18 U.S.C. §§ 2, 1341, & 1346.

Racketeering Acts 2(h)-(o)
(Honest Services Wire Fraud,
18 U.S.C. §§ 2, 1343, & 1346)

32.   The Grand Jury realleges and incorporates Paragraphs 28-30 of this Indictment,

describing the Scheme, the Purpose of the Scheme, and the Manner and Means of the Scheme, as

though fully set forth in this Racketeering Act.

Execution of the Scheme

33.   On or about the date of each Racketeering Act listed below, in the Middle District

of Alabama and elsewhere, defendants

DON EUGENE SIEGELMAN and
PAUL MICHAEL HAMRICK,

16

aided and abetted by each other and others known and unknown to the Grand Jury, for the purpose

of executing the above-described scheme and artifice to defraud and deprive, transmitted and

caused to be transmitted by means of wire communication in interstate commerce, the following

writings, signals and sounds:

| Act | Date | Description |
|-----|------|-------------|
| 2(h) | 12/7/98 | Wire transfer of $1,000,000 from Chicago, IL, to Montgomery, AL, concerning Cherokee County landfill |
| 2(i) | 1/29/99 | Wire transfer of $2,000,000 from Chicago, IL, to Montgomery, AL, concerning Cherokee County landfill |
| 2(j) | 8/12/99 | Facsimile transmission of DON EUGENE SIEGELMAN's resume from Montgomery, AL, to a business in Atlanta, GA |
| 2(k) | 9/7/00 | Facsimile transmission from Cincinnati, OH, to Montgomery, AL, concerning $10,000,000 bond issuance |
| 2(l) | 3/15/01 | Facsimile transmission from Roanoke, AL, to an insurance company, in Nashville, TN, concerning performance bonds for the GH Construction project |
| 2(m) | 3/23/01 | Facsimile transmission from an insurance company in Nashville, TN, to Louisville, KY, concerning performance bonds for the GH Construction project |
| 2(n) | 4/6/01 | Facsimile transmission from Montgomery, AL, to an insurance company in Nashville, TN, concerning performance bonds for the GH Construction project |
| 2(o) | 4/6/01 | Facsimile transmission from Louisville, KY, to an insurance company in Nashville, TN, relating to the issuance of performance bonds for the GH Construction project |

all in violation of 18 U.S.C. §§ 2, 1343, & 1346.

## Racketeering Act 3
### (Obstruction of Justice,
### 18 U.S.C. § 1512(b)(3))

34.    On or about October 9, 2001, in the Middle District of Alabama, the defendant

PAUL MICHAEL HAMRICK,

did knowingly corruptly persuade and attempt to knowingly corruptly persuade another person,

and did engage in misleading conduct toward another person, with intent to hinder, delay, and

prevent the communication to a law enforcement officer of the United States of information

relating to the commission of a federal offense and a possible commission of a federal offense, to

wit, defendant PAUL MICHAEL HAMRICK did give a check in the amount of $3,000 to Clayton

"Lanny" Young with intent to hinder, delay, and prevent communication to the Federal Bureau of

Investigation by Clayton "Lanny" Young of information concerning federal offenses related to

$6,000 that Clayton "Lanny" Young gave to PAUL MICHAEL HAMRICK on September 25,

2000, all in violation of 18 U.S.C. § 1512(b)(3).

### Racketeering Act 4

35.    The defendant DON EUGENE SIEGELMAN committed the following acts, any

one of which alone constitutes the commission of Racketeering Act 4.

Racketeering Act 4(a)
(Obstruction of Justice,
18 U.S.C. §§ 2 & 1512(b)(3))

36.    On or about June 5, 2001, in the Middle District of Alabama, the defendant

DON EUGENE SIEGELMAN,

aided and abetted by others known and unknown to the Grand Jury, did knowingly corruptly

persuade and attempt to knowingly corruptly persuade another person, and did engage in

misleading conduct toward another person, with intent to hinder, delay, and prevent the

communication to a law enforcement officer of the United States of information relating to the

commission of a federal offense and a possible commission of a federal offense, to wit, defendant

18

DON EUGENE SIEGELMAN did cause Nicholas D. Bailey to write a check in the amount of

$10,503.39 to Clayton "Lanny" Young with the notation "repayment of loan plus interest" with

intent to hinder, delay, and prevent communication to the Federal Bureau of Investigation by

Clayton "Lanny" Young and Nicholas D. Bailey of information concerning federal offenses

related to $9,200 that Clayton "Lanny" Young gave to DON EUGENE SIEGELMAN on January

20, 2000, all in violation of 18 U.S.C. §§ 2 &  1512(b)(3).

Racketeering Act 4(b)
(Obstruction of Justice,
18 U.S.C. §§ 2 & 1512(b)(3))

37.    On or about October 16, 2001, in the Middle District of Alabama, the defendant

DON EUGENE SIEGELMAN,

aided and abetted by others known and unknown to the Grand Jury, did knowingly corruptly

persuade and attempt to knowingly corruptly persuade another person, and did engage in

misleading conduct toward another person, with intent to hinder, delay, and prevent the

communication to a law enforcement officer of the United States of information relating to the

commission of a federal offense and a possible commission of a federal offense, to wit, defendant

DON EUGENE SIEGELMAN did cause Nicholas D. Bailey to provide him with a check in the

amount of  $2,973.35 with the notation "balance due on m/c" with intent to hinder, delay, and

prevent communication to the Federal Bureau of Investigation by Clayton "Lanny" Young and

Nicholas D. Bailey, and by counsel for Nicholas D. Bailey, of information concerning federal

offenses related to $9,200 that Clayton "Lanny" Young gave to DON EUGENE SIEGELMAN on

January 20, 2000, all in violation of 18 U.S.C. §§ 2 & 1512(b)(3).

19

**Racketeering Act 5**

38.    Defendant DON EUGENE SIEGELMAN committed the following acts, any one of which alone constitutes the commission of Racketeering Act 5:

Racketeering Act 5(a)
(Extortion under Color of Official Right and
by Fear of Economic Harm, 18 U.S.C. § 1951)

39.    From on or about October 15, 1998, to on or about November 2, 1998, in the Middle District of Alabama and elsewhere, defendant

DON EUGENE SIEGELMAN

did knowingly obstruct, delay, affect, and attempt to obstruct, delay, and affect, commerce and the movement of articles and commodities in commerce by extortion, as those terms are defined in Title 18, United States Code, Section 1951; that is, defendant DON EUGENE SIEGELMAN, while Lieutenant Governor and a candidate for Governor of the State of Alabama, unlawfully demanded $100,000 and obtained $40,000 from Jimmy Lynn Allen, with Jimmy Lynn Allen's consent, induced by wrongful use of fear of economic harm and under color of official right in that defendant DON EUGENE SIEGELMAN demanded $100,000 and accepted $40,000 from Jimmy Lynn Allen upon a threat to use official action and official influence as the Governor of the State of Alabama to cause economic harm to Jimmy Lynn Allen's business interests involving the Alabama Department of Transportation if Jimmy Lynn Allen did not consent to pay, and upon a promise to use official action and official influence as the Governor of the State of Alabama to facilitate Jimmy Lynn Allen's business interests involving the Alabama Department of Transportation if Jimmy Lynn Allen did consent to pay, all in violation of 18 U.S.C. § 1951.

Racketeering Act 5(b)
(Fair Campaign Practices Act Bribery,
ALA. CODE 1975 § 17-22A-7(c))

40.    From on or about October 15, 1998, to on or about November 2, 1998, in the

Middle District of Alabama and elsewhere, defendant

DON EUGENE SIEGELMAN

while a candidate for Governor of the State of Alabama, solicited, accepted, agreed to accept, and

received contributions upon an agreement and understanding that his vote, opinion, judgment,

exercise of discretion, and other action as a public servant would thereby be corruptly influenced

and for the intention of corruptly influencing his official actions, to wit, defendant DON

EUGENE SIEGELMAN, as a candidate for Governor of the State of Alabama, solicited

$100,000, and accepted, agreed to accept, and received $40,000 from Jimmy Lynn Allen upon a

promise to use official action and official influence as the Governor of the State of Alabama to

facilitate Jimmy Lynn Allen's business interests involving the Alabama Department of

Transportation, all in violation of ALA. CODE 1975 § 17-22A-7(c).

Racketeering Act 5(c)
(Extortion under Color of Official Right and
by Fear of Economic Harm, 18 U.S.C. § 1951)

41.    In or about September 2002, in the Middle District of Alabama and elsewhere,

defendant

DON EUGENE SIEGELMAN

while the Governor of the State of Alabama, did knowingly obstruct, delay, affect, and attempt to

obstruct, delay, and affect, commerce and the movement of articles and commodities in commerce

by extortion, as those terms are defined in Title 18, United States Code, Section 1951; that is,

defendant DON EUGENE SIEGELMAN, unlawfully demanded $250,000 from Forrest "Mac"

Marcato, induced by wrongful use of fear of economic harm and under color of official right in

that defendant DON EUGENE SIEGELMAN demanded $250,000 from Forrest "Mac" Marcato

upon a threat to use official action and official influence as the Governor of the State of Alabama

to cause economic harm to Forrest "Mac" Marcato's  business interests involving the Alabama

Department of Transportation if Forrest "Mac" Marcato did not consent to pay, all in violation of

18 U.S.C. § 1951.

Racketeering Act 5(d)
(Bribery, ALA. CODE 1975 § 13A-10-61(a)(2))

42.    In or about September 2002, in the Middle District of Alabama and elsewhere,

defendant

DON EUGENE SIEGELMAN

while a public servant, solicited a pecuniary benefit upon an agreement and understanding that his

vote, opinion, judgment, exercise of discretion, and other action as a public servant would thereby

be corruptly influenced, to wit defendant DON EUGENE SIEGELMAN, as the Governor of the

State of Alabama, solicited $250,000 from Forrest "Mac" Marcato in exchange for official action

and influence to protect Forrest "Mac" Marcato's business interests involving the Alabama

Department of Transportation from economic harm, all in violation of ALA. CODE 1975 § 13A-

10-61(a)(2).

Racketeering Acts 5(e)-(kk)
(Honest Services Mail Fraud,
18 U.S.C. §§ 2, 1341, & 1346)

The Scheme

43.    From on or about October 15, 1998, and continuing through on or about January

20, 2003, in the Middle District of Alabama and elsewhere, defendant

DON EUGENE SIEGELMAN

aided and abetted by Gary Mack Roberts and others known and unknown to the Grand Jury,

knowingly and willfully devised and intended to devise a scheme and artifice to defraud and

deprive the State of Alabama of its right to the honest and faithful services of DON EUGENE

SIEGELMAN as Governor of the State of Alabama and of Gary Mack Roberts as Director of the

Alabama Department of Transportation (hereafter sometimes "ALDOT"), performed free from

deceit, favoritism, bias, self-enrichment, self-dealing, and conflict of interest concerning ALDOT.

Purpose of the Scheme

44.    It was the purpose of the scheme for DON EUGENE SIEGELMAN to use the

Executive Department of the State of Alabama to exchange official position, power, actions, and

influence concerning ALDOT for money and property to which he was not entitled.

Manner and Means of the Scheme

45.    It was part of the scheme and artifice to defraud that:

a.    DON EUGENE SIEGELMAN would and did demand money and property to

which he was not entitled from Jimmy Lynn Allen in exchange for DON EUGENE

SIEGELMAN's official protection from economic harm of Jimmy Lynn Allen's business interests

involving ALDOT, including Jimmy Lynn Allen's investment of approximately $20 million in

23

certain bridges affected by prospective Alabama road construction contracts.

    b.    DON EUGENE SIEGELMAN would and did demand money and property to which he was not entitled from Jimmy Lynn Allen in exchange for allowing Jimmy Lynn Allen to select for appointment by DON EUGENE SIEGELMAN a Director of ALDOT who would both protect and further Jimmy Lynn Allen's business interests involving ALDOT, including Jimmy Lynn Allen's investment of approximately $20 million in certain bridges affected by Alabama road construction contracts, and ALDOT's specifications of Rainline Inverted Profile Traffic Stripe (hereafter sometimes "Rainline") for use in Alabama road construction contracts.

    c.    DON EUGENE SIEGELMAN would and did demand $100,000 to which he was not entitled from Jimmy Lynn Allen.

    d.    DON EUGENE SIEGELMAN would and did accept $40,000 to which he was not entitled from Jimmy Lynn Allen.

    e.    DON EUGENE SIEGELMAN and Jimmy Lynn Allen would and did make Gary Mack Roberts aware of the scheme.

    f.    Gary Mack Roberts would and did monitor election polls prior to the 1998 general election in Alabama to advise Jimmy Lynn Allen on the likelihood of DON EUGENE SIEGELMAN becoming Governor of the State of Alabama.

    g.    Gary Mack Roberts would and did accept the position of Director of ALDOT from DON EUGENE SIEGELMAN with Jimmy Lynn Allen's approval.

    h.    Gary Mack Roberts would and did use official action and official influence as the Director of ALDOT to facilitate Jimmy Lynn Allen's business interests involving ALDOT, including Jimmy Lynn Allen's investment of approximately $20 million in certain bridges affected

by Alabama road construction contracts, and ALDOT's specifications of Rainline for use in Alabama road construction contracts.

i.      DON EUGENE SIEGELMAN would and did demonstrate to Jimmy Lynn Allen that DON EUGENE SIEGELMAN was aware of benefits to Jimmy Lynn Allen's business interests in Rainline from ALDOT actions under the Directorship of Gary Mack Roberts.

j.      DON EUGENE SIEGELMAN would and did demand $250,000 to which he was not entitled from Forrest "Mac" Marcato, owner of the Rainline patent, in exchange for official protection from economic harm of Forrest "Mac" Marcato's business interests, including ALDOT's specifications of Rainline for use in Alabama road construction contracts.

### Execution of the Scheme

46.     On or about each date listed below, in the Middle District of Alabama and elsewhere, defendant DON EUGENE SIEGELMAN, aided and abetted by Gary Mack Roberts and others known and unknown to the Grand Jury, for the purpose of executing and attempting to execute the above-described scheme and artifice to defraud and deprive, placed and caused to be placed in a post office and an authorized depository for mail, to be sent and delivered by the United States Postal Service, the following matters and things:

| Act | Date | Description |
|-----|------|-------------|
| 5(e) | 5/24/99 | Agreement allocating $1,265,280 from ALDOT in Montgomery, AL, to Tuscaloosa County Commission, Tuscaloosa, AL |
| 5(f) | 5/24/99 | Agreement allocating $502,000 from ALDOT in Montgomery, AL, to Tuscaloosa County Commission, Tuscaloosa, AL |
| 5(g) | 5/24/99 | Agreement allocating $309,191 from ALDOT in Montgomery, AL, to the Tuscaloosa County Commission, Tuscaloosa, AL |

| 5(h) | 7/2/99 | Agreement allocating $3,107,500 from ALDOT in Montgomery, AL, to Tuscaloosa County Commission, Tuscaloosa, AL |
|------|--------|---|
| 5(i) | 11/10/99 | Agreement allocating $13,392,600, from ALDOT in Montgomery, AL, to Tuscaloosa County Commission, Tuscaloosa, AL |
| 5(j) | 11/10/99 | Agreement allocating $3,456,200 from ALDOT in Montgomery, AL, to Tuscaloosa County Commission, Tuscaloosa, AL |
| 5(k) | 9/11/00 | Agreement allocating $5,960,000 from ALDOT in Montgomery, AL, to Tuscaloosa County Commission, Tuscaloosa, AL |
| 5(l) | 5/23/01 | Agreement allocating $10,153,100 from ALDOT in Montgomery, AL, to Tuscaloosa County Commission, Tuscaloosa, AL |
| 5(m) | 6/29/01 | Agreement allocating $4,397,800 from ALDOT in Montgomery, AL, to Tuscaloosa County Commission, Tuscaloosa, AL |
| 5(n) | 9/19/01 | Revised Agreement allocating $13,392,600 from ALDOT in Montgomery, AL, to Tuscaloosa County Commission, Tuscaloosa, AL |
| 5(o) | 10/26/99 | A check in the amount of $37,752 from a contractor in Huntsville, AL, to Rainline Corporation in Montgomery, AL |
| 5(p) | 12/23/99 | A check in the amount of $37,752 from a contractor in Huntsville, AL, to Rainline Corporation in Montgomery, AL |
| 5(q) | 1/3/00 | A check in the amount of $71,588.88 from a contractor in Ozark, AL, to Rainline Corporation in Montgomery, AL |
| 5(r) | 3/29/00 | A check in the amount of $104,897.61 from a contractor in Ozark, AL, to Rainline Corporation in Montgomery, AL |
| 5(s) | 4/24/00 | A check in the amount of $69,931.74 from a contractor in Ozark, AL, to Rainline Corporation in Montgomery, AL |
| 5(t) | 5/15/00 | A check in the amount of $139,863.48 from a contractor in Ozark, AL, to Rainline Corporation in Montgomery, AL |
| 5(u) | 6/19/00 | A check in the amount of $139,863.48 from a contractor in Ozark, AL, to Rainline Corporation in Montgomery, AL |
| 5(v) | 8/14/00 | A check in the amount of $139,863.48 from a contractor in Ozark, AL, to Rainline Corporation in Montgomery, AL |
| 5(w) | 9/13/00 | A check in the amount of $314,692.83 from a contractor in Ozark, AL, to Rainline Corporation in Montgomery, AL |

| 5(x) | 10/19/00 | A check in the amount of $291,577.25 from a contractor in Ozark, AL, to Rainline Corporation in Montgomery, AL |
| 5(y) | 12/21/00 | A check in the amount of $36,300 from a contractor in Huntsville, AL, to Rainline Corporation in Montgomery, AL |
| 5(z) | 12/30/00 | A check in the amount of $35,464 from a contractor in Saraland, AL, to Rainline Corporation in Montgomery, AL |
| 5(aa) | 5/4/01 | A check in the amount of $36,300 from a contractor in Saraland, AL, to Rainline Corporation in Montgomery, AL |
| 5(bb) | 5/14/01 | A check in the amount of $99,429 from a contractor in Ozark, AL, to Rainline Corporation in Montgomery, AL |
| 5(cc) | 6/25/01 | A check in the amount of $36,300 from a contractor in Pascagoula, MS, to Rainline Corporation in Montgomery, AL |
| 5(dd) | 6/26/01 | A check in the amount of $38,500 from a contractor in Huntsville, AL, to Rainline Corporation in Montgomery, AL |
| 5(ee) | 9/25/01 | A check in the amount of $36,300 from a contractor in Huntsville, AL, to Rainline Corporation in Montgomery, AL |
| 5(ff) | 9/26/01 | A check in the amount of $36,300 from a contractor in Pascagoula, MS, to Rainline Corporation in Montgomery, AL |
| 5(gg) | 12/18/01 | A check in the amount of $38,500 from a contractor in Enterprise, AL, to Rainline Corporation in Montgomery, AL |
| 5(hh) | 1/3/02 | A check in the amount of $38,500 from a contractor in Saraland, AL, to Rainline Corporation in Montgomery, AL |
| 5(ii) | 2/19/02 | A check in the amount of $38,500 from a contractor in Enterprise, AL, to Rainline Corporation in Montgomery, AL |
| 5(jj) | 8/21/02 | A check in the amount of $64,922.60 from a contractor in Saraland, AL, to Rainline Corporation in Montgomery, AL |
| 5(kk) | 9/9/02 | A check in the amount of $50,000 from a contractor in Theodore, AL, to Rainline Corporation in Montgomery, AL |

all in violation of 18 U.S.C. §§ 2, 1341, & 1346.

Racketeering Act 5(ll)-(tt)
(Money Laundering,
18 U.S.C. §§ 2 & 1956(a)(1)(B)(i))

47.    On or about November 3, 1998, in the Middle District of Alabama, the defendant

DON EUGENE SIEGELMAN,

aided and abetted by others known and unknown to the Grand Jury, did knowingly conduct and

attempt to conduct a financial transaction, such transaction involving the use of a financial

institution which is engaged in, and the activities of which affect, interstate commerce, to wit:

defendant DON EUGENE SIEGELMAN caused the deposit of each check described below and

written on the account of Black Warrior Parkway, LLC, at Regions Bank in Montgomery, AL,

into the account of a political action committee named below at Colonial Bank in Montgomery,

AL, and each transaction involved the proceeds of a specified unlawful activity, that is violation

of 18 U.S.C. §§ 1341, 1343, & 1951, and an act involving bribery in violation of ALA. CODE

1975 § 17-22A-7, knowing that the transaction was designed in whole and in part to conceal and

disguise the nature, location, source, ownership, and control of the proceeds of said specified

unlawful activity, and that while conducting and attempting to conduct such financial transaction

knew that the property involved in the financial transaction, that is each check described below

represented the proceeds of some form of unlawful activity.

| Act | Check Number | Payee\PAC | Amount |
|-----|--------------|-----------|--------|
| 5(ll) | 1628 | 21st Cen Pac | $4,444.44 |
| 5(mm) | 1629 | Alabez Pac | $4,444.44 |
| 5(nn) | 1630 | Ecodev Pac | $4,444.44 |
| 5(oo) | 1631 | Enviro Pac | $4,444.48 |

| 5(pp) | 1632 | Green Pac | $4,444.44 |
| 5(qq) | 1633 | Growth-Pac | $4,444.44 |
| 5(rr) | 1634 | JDC Pac | $4,444.44 |
| 5(ss) | 1635 | Jefferson Pac | $4,444.44 |
| 5(tt) | 1636 | Vision Pac | $4,444.44 |

all in violation of 18 U.S.C. §§ 2 & 1956(a)(1)(B)(i).

All done in violation of Title 18, United States Code, Section 1962(c).

## COUNT THREE
### (Federal Funds Bribery,
### 18 U.S.C. §§ 2 & 666(a)(1)(B))

48.    The executive branch of the State of Alabama (the "State") received benefits in

excess of $10,000 in every twelve month period from January 1998 to the present pursuant to

federal programs providing assistance to the State.

49.    From on or about July 19, 1999, and continuing through on or about May 23, 2000,

the exact dates being unknown to the grand jury, in Montgomery County, Alabama, within the

Middle District of Alabama and elsewhere, the defendant

### DON EUGENE SIEGELMAN

being an agent of a State government, aided and abetted by defendant

### RICHARD SCRUSHY

and others known and unknown to the grand jury, which State government received federal

assistance in excess of $10,000 in a one-year period, did corruptly solicit and demand for the

benefit of any person, and accept and agree to accept, anything of value from any person,

29

intending to be influenced and rewarded in connection with any business, transaction, and series

of transactions of such State government involving anything of value of $5,000 or more, to wit:

defendant DON EUGENE SIEGELMAN, being Governor of the State of Alabama, corruptly

solicited, demanded, accepted, and agreed to accept $500,000 from defendant RICHARD

SCRUSHY, intending to be influenced and rewarded in connection with the appointment of

defendant RICHARD SCRUSHY to the CON Board.

All done in violation of Title 18, United States Code, Sections 666(a)(1)(B) and 2.

### COUNT FOUR
### (Federal Funds Bribery,
### 18 U.S.C. §§ 2 & 666(a)(2))

50.    The executive branch of the State of Alabama (the "State") received benefits in

excess of $10,000 in every twelve month period from January 1998 to the present pursuant to

federal programs providing assistance to the State.

51.    From on or about July 19, 1999, and continuing through on or about May 23, 2000,

the exact dates being unknown to the grand jury, in Montgomery County, Alabama, within the

Middle District of Alabama and elsewhere, the defendant

### RICHARD SCRUSHY

aided and abetted by defendant

### DON EUGENE SIEGELMAN

and others known and unknown to the grand jury, did corruptly give, offer, and agree to give

anything of value to any person, with intent to influence and reward an agent of State government,

which State government received federal assistance in excess of $10,000 in a one-year period, in

connection with any business, transaction, or series of transactions of such State government

involving anything of value of $5,000 or more, to wit: defendant SCRUSHY corruptly gave,

offered, and agreed to give $500,000 to defendant DON EUGENE SIEGELMAN, Governor of

the State of Alabama, intending to influence and reward defendant DON EUGENE SIEGELMAN

in connection with the appointment of defendant RICHARD SCRUSHY to the CON Board.

All done in violation of Title 18, United States Code, Sections 666(a)(2) and 2.

### COUNT FIVE
### (18 U.S.C. § 371)

### INTRODUCTION

52.     The Grand Jury realleges and incorporates Paragraph 1 as though fully set forth in

this Count.

### THE CONSPIRACY AND ITS OBJECTS

53.     From on or about November 3, 1998, and continuing through at least on or about

January 20, 2003, in the Middle District of Alabama and elsewhere, defendants

DON EUGENE SIEGELMAN and
RICHARD M. SCRUSHY

knowingly and willfully did combine, conspire, confederate, and agree among themselves and

each other, and with persons both known and unknown to the Grand Jury, to violate Title 18,

United States Code, Sections 1341 and 1346. It was the object of the conspiracy for the

defendants to devise and intend to devise a scheme and artifice to defraud and deprive the State of

Alabama of its right to the honest and faithful services of DON EUGENE SIEGELMAN and

RICHARD M. SCRUSHY in their capacities as Governor of the State of Alabama and a member

of the CON Board, respectively, as well as other members of the CON Board, performed free

from deceit, favoritism, bias, self-enrichment, self-dealing, and conflict of interest concerning the

31

CON Board to give HealthSouth membership on and representation at the CON Board and to allow HealthSouth to exert influence over the CON Board.

## MANNER AND MEANS OF THE CONSPIRACY

54.    It was a part of the conspiracy that DON EUGENE SIEGELMAN and RICHARD M. SCRUSHY and others would give HealthSouth official membership on, representation at, and influence over the CON Board by means of hidden payments and financial relationships, and to conceal the conspiracy.

55.    It was a further part of the conspiracy that:

a.    RICHARD M. SCRUSHY would and did pay $500,000 to DON EUGENE SIEGELMAN in two disguised and concealed payments of $250,000.

b.    DON EUGENE SIEGELMAN would and did appoint RICHARD M. SCRUSHY to the CON Board.

c.    RICHARD M. SCRUSHY would and did take a seat on the CON Board.

d.    RICHARD M. SCRUSHY would and did use his seat on the CON Board to attempt to affect the interests of HealthSouth and its competitors.

e.    RICHARD M. SCRUSHY and others would and did offer things of value to another CON Board member to attempt to affect the interests of HealthSouth and its competitors.

f.    RICHARD M. SCRUSHY and DON EUGENE SIEGELMAN would and did orchestrate RICHARD M. SCRUSHY's replacement on the CON Board by another person employed by HealthSouth.

g.    DON EUGENE SIEGELMAN, RICHARD M. SCRUSHY, and others knowingly caused to be mailed, by the United States Postal Service, letters from the CON Board in Montgomery, Alabama, to HealthSouth and its agents in Birmingham, Alabama.

## OVERT ACTS

56.    In furtherance of the conspiracy and to affect the objects of the conspiracy, the following overt acts, among others, were caused and committed on or about the date alleged below in the Middle District of Alabama and elsewhere, by at least one of the co-conspirators herein:

| Act | Date | Description |
|---|---|---|
| 8(a) | 1/18/01 | Letter of Appointment of a member of the CON Board employed by HealthSouth, mailed from Montgomery, AL, to Birmingham, AL |
| 8(b) | 7/27/01 | Letter of Re-appointment of a member of the CON Board employed by HealthSouth, mailed from Montgomery, AL, to Birmingham, AL |
| 8(c) | 8/2/02 | Letter Notifying HealthSouth of final order for Certificate of Need for HealthSouth Regional Rehabilitation Hospital mailed from Montgomery, AL, to Birmingham, AL. |
| 8(d) | 8/2/02 | Undisclosed payment of $3,000 to CON Board member for attending and creating a quorum at the meeting of the CON Board on July 17, 2002, at which the CON Board approved the final order for HealthSouth Regional Rehabilitation Hospital. |
| 8(e) | 1/2/03 | Letter Notifying HealthSouth of final order for Certificate of Need for PET scanner for HealthSouth mailed from Montgomery, AL, to Birmingham, AL. |
| 8(f) | 2/6/02 | Undisclosed payment of $8,000 to CON Board member for drafting a Certificate of Need application for the PET scanner which was approved by the CON Board on December 18, 2002, at which meeting the presence of the CON Board member who had been paid by HealthSouth created a quorum. |

All in violation of Title 18, United States Code, Section 371.

.

## COUNTS SIX THROUGH NINE
### (Honest Services Mail Fraud,
### 18 U.S.C. §§ 2, 1341, & 1346)

### The Scheme

57.    From on or about November 3, 1998, and continuing through at least on or about

January 20, 2003, in the Middle District of Alabama and elsewhere, defendants

### DON EUGENE SIEGELMAN and
### RICHARD M. SCRUSHY,

aided and abetted by each other and others known and unknown to the Grand Jury, knowingly and

willfully devised and intended to devise a scheme and artifice to defraud and deprive the State of

Alabama of its right to the honest and faithful services of DON EUGENE SIEGELMAN and

RICHARD M. SCRUSHY in their capacities as Governor of the State of Alabama and a member

of the CON Board, respectively, as well as other members of the CON Board, performed free

from deceit, favoritism, bias, self-enrichment, self-dealing, and conflict of interest concerning the

State of Alabama Certificate of Need Review Board.

### Purpose of the Scheme

58.    It was the purpose of the scheme that DON EUGENE SIEGELMAN and

RICHARD M. SCRUSHY and others known and unknown to the Grand Jury would give

HealthSouth official membership on, representation at, and influence over the CON Board by

means of hidden payments and financial relationships, and to conceal these activities.

### Manner and Means of the Scheme

59.    It was part of the scheme and artifice to defraud that:

a.    RICHARD M. SCRUSHY would and did pay $500,000 to DON EUGENE

34

SIEGELMAN in two disguised and concealed payments of $250,000.

       b.    DON EUGENE SIEGELMAN would and did appoint RICHARD M. SCRUSHY to the CON Board.

       c.    RICHARD M. SCRUSHY would and did take a seat on the CON Board.

       d.    RICHARD M. SCRUSHY would and did use his seat on the CON Board to attempt to affect the interests of HealthSouth and its competitors.

       e.    RICHARD M. SCRUSHY and others would and did offer things of value to another CON Board member to attempt to affect the interests of HealthSouth and its competitors.

       f.    RICHARD M. SCRUSHY and DON EUGENE SIEGELMAN would and did orchestrate RICHARD M. SCRUSHY's replacement on the CON Board by another person employed by HealthSouth.

       g.    DON EUGENE SIEGELMAN, RICHARD M. SCRUSHY, and others knowingly caused to be mailed, by the United States Postal Service, letters from the CON Board in Montgomery, Alabama, to HealthSouth and its agents in Birmingham, Alabama.

Execution of the Scheme

    60.    On or about the date listed below, in the Middle District of Alabama and elsewhere, defendants DON EUGENE SIEGELMAN and RICHARD M. SCRUSHY, aided and abetted by each other and others known and unknown to the Grand Jury, for the purpose of executing and attempting to execute the above-described scheme and artifice to defraud and deprive, placed and caused to be placed in a post office and an authorized depository for mail, to

be sent and delivered by the United States Postal Service, and to be sent and delivered by a private

and commercial interstate carrier, the following matters and things:

| COUNT | Date | Description |
|-------|------|-------------|
| **SIX** | 1/18/01 | Letter of Appointment of a member of the CON Board employed by HealthSouth Corporation, mailed from Montgomery, AL, to Birmingham, AL |
| **SEVEN** | 7/27/01 | Letter of Re-appointment of a member of the CON Board employed by HealthSouth, mailed from Montgomery, AL, to Birmingham, AL |
| **EIGHT** | 8/2/02 | Letter Notifying HealthSouth of final order for Certificate of Need for HealthSouth Regional Rehabilitation Hospital mailed from Montgomery, AL, to Birmingham, AL. |
| **NINE** | 1/2/03 | Letter Notifying HealthSouth of final order for Certificate of Need for PET scanner for HealthSouth mailed from Montgomery, AL, to Birmingham, AL. |

All in violation of Title 18, United States Code, Sections 2, 1341, & 1346.

## COUNTS TEN THROUGH TWELVE
### (Honest Services Mail Fraud,
### 18 U.S.C. §§ 2, 1341, & 1346)

The Scheme

61.    From in or about August 1997, to on or about January 20, 2003, in the Middle

District of Alabama and elsewhere, defendants

DON EUGENE SIEGELMAN and
PAUL MICHAEL HAMRICK,

aided and abetted by each other, by Clayton "Lanny" Young, by Nicholas D. Bailey, and by others

known and unknown to the Grand Jury, knowingly and willfully devised and intended to devise a

scheme and artifice to defraud and deprive the State of Alabama of its right to the honest and

faithful services of themselves as public officials and employees of the State of Alabama,

36

performed free from deceit, favoritism, bias, self-enrichment, self-dealing, and conflict of interest, concerning alcoholic beverage and waste disposal regulation, the assessment and collection of hazardous waste fees and taxes, allocation of municipal bond funding, and state construction contracting.

62.    The Grand Jury realleges and incorporates Paragraphs 29-30 of this Indictment, describing the Purpose of the Scheme and the Manner and Means of the Scheme, as though fully set forth in this Count.

### Execution of the Scheme

63.    On or about the date of each Count listed below, in the Middle District of Alabama and elsewhere, defendants DON EUGENE SIEGELMAN and PAUL MICHAEL HAMRICK, aided and abetted by each other and others known and unknown to the Grand Jury, for the purpose of executing and attempting to execute the above-described scheme and artifice to defraud and deprive, placed and caused to be placed in a post office and an authorized depository for mail, to be sent and delivered by the United States Postal Service, and to be sent and delivered by a private and commercial interstate carrier, the following matters and things:

| COUNT | Date | Description |
|-------|------|-------------|
| **TEN** | 1/10/01 | Hazardous Waste Fee Report mailed from a facility in Emelle, AL, to the Alabama Department of Revenue in Montgomery, AL |
| **ELEVEN** | 1/15/02 | Hazardous Waste Fee Report mailed from a facility in Emelle, AL, to the Alabama Department of Revenue in Montgomery, AL |
| **TWELVE** | 1/14/03 | Hazardous Waste Fee Report mailed from a facility in Emelle, AL, to the Alabama Department of Revenue in Montgomery, AL |

All done in violation of Title 18, United States Code, Sections 2, 1341, & 1346.

## COUNTS THIRTEEN THROUGH FOURTEEN
### (Honest Services Wire Fraud,
### 18 U.S.C. §§ 2, 1343, & 1346)

64.    The Grand Jury realleges and incorporates Paragraphs 55 and 29-30 of this

Indictment, describing the Scheme, the Purpose of the Scheme, and the Manner and Means of the

Scheme, as though fully set forth in this Count.

### Execution of the Scheme

65.    On or about the date of each Count listed below, in the Middle District of Alabama

and elsewhere, defendants DON EUGENE SIEGELMAN and PAUL MICHAEL HAMRICK,

aided and abetted by each other and others known and unknown to the Grand Jury, for the purpose

of executing the above-described scheme and artifice to defraud and deprive, transmitted and

caused to be transmitted by means of wire communication in interstate commerce, the following

writings, signals and sounds:

| COUNT | Date | Description |
|-------|------|-------------|
| **THIRTEEN** | 3/15/01 | Facsimile transmission from Roanoke, AL, to an insurance company in Nashville, TN, concerning performance bonds for the GH Construction project |
| **FOURTEEN** | 4/6/01 | Facsimile transmission from Montgomery, AL, to an insurance company in Nashville, TN, concerning performance bonds for the GH Construction project |

All done in violation of Title 18, United States Code, Sections 2, 1343, & 1346.

## COUNT FIFTEEN
### (Obstruction of Justice,
### 18 U.S.C. § 1512(b)(3))

66.    On or about October 9, 2001, in the Middle District of Alabama, the defendant

PAUL MICHAEL HAMRICK,

did knowingly corruptly persuade and attempt to knowingly corruptly persuade another person,

and did engage in misleading conduct toward another person, with intent to hinder, delay, and

prevent the communication to a law enforcement officer of the United States of information

relating to the commission of a federal offense and a possible commission of a federal offense, to

wit, defendant PAUL MICHAEL HAMRICK did give a check in the amount of $3,000 to Clayton

"Lanny" Young with intent to hinder, delay, and prevent communication to the Federal Bureau of

Investigation by Clayton "Lanny" Young of information concerning federal offenses related to

$6,000 that Clayton "Lanny" Young gave to PAUL MICHAEL HAMRICK on September 25,

2000.

All done in violation of Title 18, United States Code, Section 1512(b)(3).

### COUNT SIXTEEN
(Obstruction of Justice,
18 U.S.C. §§ 2 & 1512(b)(3))

67.    On or about June 5, 2001, in the Middle District of Alabama, the defendant

DON EUGENE SIEGELMAN,

aided and abetted by others known and unknown to the Grand Jury, did knowingly corruptly

persuade and attempt to knowingly corruptly persuade another person, and did engage in

misleading conduct toward another person, with intent to hinder, delay, and prevent the

communication to a law enforcement officer of the United States of information relating to the

commission of a federal offense and a possible commission of a federal offense, to wit, defendant

DON EUGENE SIEGELMAN did cause Nicholas D. Bailey to write a check in the amount of

$10,503.39 to Clayton "Lanny" Young with the notation "repayment of loan plus interest" with

intent to hinder, delay, and prevent communication to the Federal Bureau of Investigation by Clayton "Lanny" Young and Nicholas D. Bailey of information concerning federal offenses related to $9,200 that Clayton "Lanny" Young gave to DON EUGENE SIEGELMAN on January 20, 2000.

All done in violation of Title 18, United States Code, Sections 2 & 1512(b)(3).

### COUNT SEVENTEEN
### (Obstruction of Justice,
### 18 U.S.C. §§ 2 & 1512(b)(3))

68.    On or about October 16, 2001, in the Middle District of Alabama, the defendant

DON EUGENE SIEGELMAN,

aided and abetted by others known and unknown to the Grand Jury, did knowingly corruptly persuade and attempt to knowingly corruptly persuade another person, and did engage in misleading conduct toward another person, with intent to hinder, delay, and prevent the communication to a law enforcement officer of the United States of information relating to the commission of a federal offense and a possible commission of a federal offense, to wit, defendant DON EUGENE SIEGELMAN did cause Nicholas D. Bailey to provide him with a check in the amount of $2,973.35 with the notation "balance due on m/c" with intent to hinder, delay, and prevent communication to the Federal Bureau of Investigation by Clayton "Lanny" Young and Nicholas D. Bailey, and by counsel for Nicholas D. Bailey, of information concerning federal offenses related to $9,200 that Clayton "Lanny" Young gave to DON EUGENE SIEGELMAN on January 20, 2000.

All done in violation of Title 18, United States Code, Sections 2 and 1512(b)(3).

40

## COUNTS EIGHTEEN THROUGH THIRTY-THREE
### (Honest Services Mail Fraud,
### 18 U.S.C. §§ 2, 1341, & 1346)

The Scheme

69.    From on or about October 15, 1998, and continuing through on or about January

20, 2003, in the Middle District of Alabama and elsewhere, defendant

### DON EUGENE SIEGELMAN

aided and abetted by defendant

### GARY MACK ROBERTS

and others known and unknown to the Grand Jury, knowingly and willfully devised and intended

to devise a scheme and artifice to defraud and deprive the State of Alabama of its right to the

honest and faithful services of DON EUGENE SIEGELMAN as Governor of the State of

Alabama and of GARY MACK ROBERTS as Director of the Alabama Department of

Transportation (hereafter sometimes "ALDOT"), performed free from deceit, favoritism, bias,

self-enrichment, self-dealing, and conflict of interest concerning ALDOT.

70.    The Grand Jury realleges and incorporates Paragraphs 44-45 of this Indictment, the

Purpose of the Scheme and the Manner and Means of the Scheme, as though fully set forth in this

Count.

Execution of the Scheme

71.    On or about the date of each Count listed below, in the Middle District of Alabama

and elsewhere, defendant DON EUGENE SIEGELMAN, aided and abetted by GARY MACK

ROBERTS and others known and unknown to the Grand Jury, for the purpose of executing and

attempting to execute the above-described scheme and artifice to defraud and deprive, placed and

caused to be placed in a post office and an authorized depository for mail, to be sent and delivered

by the United States Postal Service, the following matters and things:

| COUNT | Date | Description |
|---|---|---|
| EIGHTEEN | 5/23/01 | Agreement allocating $10,153,100 from ALDOT in Montgomery, AL, to Tuscaloosa County Commission, Tuscaloosa, AL |
| NINETEEN | 6/29/01 | Agreement allocating $4,397,800 from ALDOT in Montgomery, AL, to Tuscaloosa County Commission, Tuscaloosa, AL |
| TWENTY | 9/19/01 | Revised Agreement allocating $13,392,600 from ALDOT in Montgomery, AL, to Tuscaloosa County Commission, Tuscaloosa, AL |
| TWENTY-ONE | 12/21/00 | A check in the amount of $36,300 from a contractor in Huntsville, AL, to Rainline Corporation in Montgomery, AL |
| TWENTY-TWO | 12/30/00 | A check in the amount of $35,464 from a contractor in Saraland, AL, to Rainline Corporation in Montgomery, AL |
| TWENTY-THREE | 5/4/01 | A check in the amount of $36,300 from a contractor in Saraland, AL, to Rainline Corporation in Montgomery, AL |
| TWENTY-FOUR | 5/14/01 | A check in the amount of $99,429 from a contractor in Ozark, AL, to Rainline Corporation in Montgomery, AL |
| TWENTY-FIVE | 6/25/01 | A check in the amount of $36,300 a contrator in Pascagoula, MS, to Rainline Corporation in Montgomery, AL. |
| TWENTY-SIX | 6/26/01 | A check in the amount of $38,500 from a contractor in Huntsville, AL, to Rainline Corporation in Montgomery, AL |
| TWENTY-SEVEN | 9/25/01 | A check in the amount of $36,300 from a contractor in Huntsville, AL, to Rainline Corporation in Montgomery, AL |
| TWENTY-EIGHT | 9/26/01 | A check in the amount of $36,300 from a contractor in Pascagoula, MS, to Rainline Corporation in Montgomery, AL |
| TWENTY-NINE | 12/18/01 | A check in the amount of $38,500 from a contractor in Enterprise, AL, to Rainline Corporation in Montgomery, AL |

| **THIRTY** | 1/3/02 | A check in the amount of $38,500 from a contractor in Saraland, AL, to Rainline Corporation in Montgomery, AL |
|---|---|---|
| **THIRTY-ONE** | 2/19/02 | A check in the amount of $38,500 from a contractor in Enterprise, AL, to Rainline Corporation in Montgomery, AL |
| **THIRTY-TWO** | 8/21/02 | A check in the amount of $64,922.60 from a contractor in Saraland, AL, to Rainline Corporation in Montgomery, AL |
| **THIRTY-THREE** | 9/9/02 | A check in the amount of $50,000 from a contractor in Theodore, AL, to Rainline Corporation in Montgomery, AL |

All done in violation of Title 18, United States Code, Sections 2, 1341, & 1346.

## COUNT THIRTY-FOUR
### (Extortion under Color of Official Right and by Fear of Economic Harm, 18 U.S.C. § 1951)

72.     In or about September 2002, in the Middle District of Alabama and elsewhere, defendant

### DON EUGENE SIEGELMAN

while the Governor of the State of Alabama, did knowingly obstruct, delay, affect, and attempt to obstruct, delay, and affect, commerce and the movement of articles and commodities in commerce by extortion, as those terms are defined in Title 18, United States Code, Section 1951; that is, defendant DON EUGENE SIEGELMAN, unlawfully demanded $250,000 from Forrest "Mac" Marcato, induced by wrongful use of fear of economic harm and under color of official right in that defendant DON EUGENE SIEGELMAN demanded $250,000 from Forrest "Mac" Marcato upon a threat to use official action and official influence as the Governor of the State of Alabama to cause economic harm to Forrest "Mac" Marcato's business interests involving the Alabama Department of Transportation if Forrest "Mac" Marcato did not consent to pay.

All done in violation of Title 18, United States Code, Section 1951.

43

A TRUE BILL:

Foreperson

NOEL L. HILLMAN
Chief, Public Integrity Section
Criminal Division
United States Department of Justice

LOUIS V. FRANKLIN, SR.
Acting United States Attorney

Richard C. Pilger
Trial Attorney
Public Integrity Section

Stephen P. Feaga
Assistant United States Attorney

J.B. Perrine
Assistant United States Attorney

Joseph L. Fitzpatrick, Jr.
Special Assistant United States Attorney
Middle District of Alabama

44