# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

UNITED STATES OF AMERICA,

v.                                                    Case No. 2:05cr119-F

RICHARD M. SCRUSHY,
Defendant.

## DEFENDANT RICHARD M. SCRUSHY'S MOTION FOR SEVERANCE PURSUANT TO FEDERAL RULES OF CRIMINAL PROCEDURE 8(b) AND 14

COMES NOW Richard M. Scrushy, by and through his undersigned counsel and, pursuant to Fed. R. Crim. P. 8(b) and 14, moves this Court for entry of an Order severing his trial from the trial of the other Defendants in the above-styled action. In support of this request, Defendant respectfully shows this Court the following:

1. Defendant Scrushy has been charged in a second superseding indictment that was filed on December 12, 2005. (Doc 61.) [1] The indictment also charges Don Eugene Siegelman, Paul Michael Hamrick, and Gary Mack Roberts. (*Id.* at 1.)

2. Broadly stated, the indictment relates to allegations of wrongdoing by the four Defendants during the periods when Defendant Siegelman was either Lieutenant Governor of the State of Alabama,[2] a candidate for Governor of the State of Alabama,[3] or

---

[1]   Defendant Scrushy was previously charged in an indictment filed under seal on May 17, 2005. (Doc. 3.) A first superseding indictment was filed on October 27, 2005. (Doc 9.)

[2]   From on or about January 16, 1995, to on or about January 18, 1999. (Doc 61 at 1.)

[3]   From on or about March 31, 1996, to on or about November 3, 1998. (Doc 61 at 1-2.)

the Governor of Alabama.[4]    During parts of this period, Defendant Hamrick was employed in the Lieutenant Governor's Office and later as Chief of Staff to the Governor. (*Id.* at 2.)  During parts of this period, Defendant Roberts was an employee of Jimmy Lee Allen and later employed as the Director of the Alabama Department of Transportation ("ALDOT"). (*Id.*) During this period, Defendant Scrushy was Chairman and CEO of HealthSouth, a healthcare corporation whose activities in the State of Alabama were regulated by the Alabama Certificate of Need Review Board ("CON Board"). (*Id.*)

  3. The heart of the second superseding indictment relates to allegations of wrongdoing in seven areas of activities of the Alabama State government:

   a. the CON Board, (*id.* at 6-10);

   b. waste disposal fees and taxes, (*id.* at 11-12);

   c. alcoholic beverage regulation, (*id.* at 12-15);

   d. the assessment and collection of hazardous waste fees and taxes, (*id.* at 12-17);

   e. allocation of municipal bond funding, (*id.*);

   f. state construction contracting, (*id.* at 20); and

   g. business activities involving ALDOT, (*id.* at 20-27).

The second superseding indictment alleges that Defendant Scrushy was involved in wrongdoing only as to the first of these seven areas, the CON Board. (*Id.* at 29-36.) The indictment does not allege that Defendant Scrushy was involved in the alleged wrongdoing in any of the other six areas, or involved in any overall scheme. (*Id.* at 1-43.)

---

[4] From on or about January 18, 1999, to on or about January 20, 2003. (Doc 61 at 2.)

The indictment does not allege that Defendant Scrushy was aware of or had any knowledge of the alleged wrongdoing in any of the other six areas.

4. Defendant Scrushy is charged in only seven counts of the thirty-four count second superseding indictment: Counts Three through Nine. All seven counts allege essentially one act, giving $500,000[5] to Defendant Siegelman in an attempt to obtain representation and influence over the CON Board:

a. Count Three charges Defendant Siegelman with corruptly soliciting and accepting $500,000 from Defendant Scrushy with the intent to be influenced and rewarded in connection with the appointment of Defendant Scrushy to the CON Board, in violation of 18 U.S.C. § 666(a)(1)(b), with Defendant Scrushy charged with aiding and abetting that act, in violation of 18 U.S.C. § 2, (Doc 61 at 29-30);

b. Count Four charges Defendant Scrushy with giving $500,000 to Defendant Siegelman with the intent to influence and reward Defendant Siegelman in connection with the appointment of Defendant Scrushy to the CON Board, in violation of 18 U.S.C. § 666(a)(2), with Defendant Siegelman charged with aiding and abetting that act, in violation of 18 U.S.C. § 2, (Doc 61 at 30-31);

c. Count Five charges Defendant Scrushy and Defendant Siegelman with a conspiracy in violation of 18 U.S.C. § 371 to commit honest services mail fraud in violation of 18 U.S.C. § 1341 and 1346 "concerning the CON

---

[5] While the indictment repeatedly refers to this amount as $500,000, (Doc 61 at 6, 7, 30, and 31), a careful reading of the indictment shows that it alleges that this amount was given to Defendant Siegelman "in two disguised and concealed payments of $250,000." (*Id.* at 32).

Board to give HealthSouth membership on and representation at the CON

Board and to allow HealthSouth to exert influence over the CON Board."

(Doc 61 at 31-33); and

c. Counts Six through Nine charge Defendant Scrushy and Defendant

Siegelman with substantive counts of honest services mail fraud for the

same scheme, in violation of 18 U.S.C. §§ 2, 1341, and 1346, (Doc 61 at

34-36).

5. Defendant Scrushy is not named as a Defendant in any of the remaining 27

counts of the second superseding indictment. These counts charge some of the other

three Defendants with the following offenses:

a. Count One charges Defendants Siegelman and Hamrick with a RICO

conspiracy in violation of 18 U.S.C. § 1962(d), (Doc 61 at 2-5);

b. Count Two charges Defendants Siegelman and Hamrick with a

substantive RICO offense in violation of 18 U.S.C. § 1962(c), (Doc 61 at

5-29);[6]

c. Counts Ten through Twelve charge Defendants Siegelman and Hamrick

with honest services mail fraud in violation of 18 U.S.C. §§ 2, 1341 and

1346, involving payments of approximately $270,200 and other things of

value from Lanny Young "concerning alcoholic beverage and waste

disposal regulations, the assessment of hazardous waste fees and taxes,

allocation of municipal bond funding, and state construction contracting,"

---

[6]  Count Two alleges 62 racketeering acts. (*Id.*) Only seven of those racketeering acts,
Racketeering Acts 1(a) through 1(g) relate to the CON Board allegations, and the second
superseding indictment does not allege that Defendant Scrushy had any knowledge of the
money laundering alleged in Racketeering Acts 1(f) and 1(g). (*Id.*at 6-11.)

with the execution of the scheme to defraud involving the mailing of three Hazardous Waste Fee Reports, (Doc 61 at 36-38);

d. Counts Thirteen and Fourteen charge Defendants Siegelman and Hamrick with honest services wire fraud in violation of 18 U.S.C. §§ 2, 1343, and 1346, involving the payments of approximately $270,200 and other things of value from Lanny Young for the same purposes as in Counts Ten through Twelve, with the execution of the scheme to defraud involving two facsimile transmissions concerning performance bonds, (Doc 61 at 38);

e. Count Fifteen charges Defendant Hamrick with obstruction of justice in violation of 18 U.S.C. § 1512(b)(3) relating to a payment of $3,000 to Lanny Young to obstruct an investigation of a $6,000 payment from Young to Defendant Hamrick, (Doc 61 at 38-39);

f. Count Sixteen charges Defendant Siegelman with obstruction of justice in violation of 18 U.S.C. §§ 2 and 1512(b)(3) relating to a payment of $10,503.29 to Lanny Young to obstruct an investigation relating of a $9,200 payment from Young to Defendant Siegelman, (Doc 61 at 39-40);

g. Count Seventeen charges Defendant Siegelman with obstruction of justice relating to the issuance of a check in the amount of $2,973.35 to obstruct the investigation of a payment of $9,200 from Young to Defendant Siegelman, (Doc 61 at 40);

h. Counts Eighteen through Thirty-Three charge Defendants Siegelman and Roberts with honest services fraud in violation of 18 U.S.C. § 2, 1341,

and 1346, involving demands for payments or receipt of payments of $140,000 from Jimmy Lynn Allen and $250,000 from Forrest "Mac" Marcato, concerning ALDOT business activities, with the execution of the scheme to defraud involving three mailings of allocation agreements totaling $27,943,500 from ALDOT to the Tuscaloosa County Commission (Counts Eighteen through Twenty) and the mailing of 13 checks to Rainline Corporation totaling $585,315.60 (Counts Twenty-One through Thirty-Three), (Doc 61 at 41-43); and

j. Count Thirty-Four charges Defendant Siegelman with extortion in violation of 18 U.S.C. § 1951 relating to a demand for payment of $250,000 from Forrest "Mac" Marcato, (Doc 61 at 43).

6. Defendant Scrushy is not charged with any violation of the RICO Act, 18 U.S.C. § 1962. While the second superseding indictment charges a RICO conspiracy in Count One, (Doc 61 at 2-5), and a substantive RICO offense in Count Two, (*id.* at 5-29), Defendant Scrushy is not charged in either count.

7. While the second superseding indictment charges Defendant Scrushy in Count Five with a conspiracy to commit honest services mail fraud, the only co-defendant charged in this count is co-Defendant Siegelman. The second superseding indictment specifically describes this conspiracy as follows:

> It was the object of the conspiracy for the defendants to devise and intend to devise a scheme and artifice to defraud and deprive the State of Alabama of its right to the honest and faithful services of DON EUGENE SIEGELMAN and RICHARD M. SCRUSHY in their capacities as Governor of the State of Alabama and a member of the CON Board, respectively, as well as other members of the CON Board, performed free from deceit, favoritism, bias, self-enrichment, self-dealing, and conflict of interest *concerning the CON Board to give*

> *HealthSouth membership and representation at the CON Board and to*
> *allow HealthSouth to exert influence over the CON Board.*

(Doc 61 at 31-32) (emphasis added).

8. Nowhere in the second superseding indictment is there any allegation of any kind that Defendant Scrushy participated in any of the activities or transactions alleged in the 27 counts of the second superseding indictment which charge Defendants Siegelman, Hamrick, and Roberts with various offenses. Nowhere in the second superseding indictment is there any allegation that Defendant Scrushy participated in any other conspiracy save the specific conspiracy charged in Count Five. Nowhere in the second superseding indictment is there any allegation that Defendant Scrushy participated in any overall scheme. Nowhere in the second superseding indictment is there any allegation of any kind that Defendant Scrushy was aware of or had any knowledge of the activities or transactions which Defendants Siegelman, Hamrick and Roberts allegedly participated in, or that Defendant Scrushy had any knowledge of any overall scheme alleged in the indictment. The allegations concerning Defendant Scrushy relate solely to his alleged involvement with giving $500,000 to Defendant Siegelman in relation to the CON Board.

### Argument and Authorities

### A. DEFENDANT SCRUSHY'S JOINDER WITH CO-DEFENDANTS SIEGELMAN, HAMRICK AND ROBERTS VIOLATES FED. R. CRIM. P. 8(b).

The joinder of Defendant Scrushy with co-Defendants Siegelman, Hamrick and Roberts violates Fed. R. Crim. P. 8(b) because Defendant Scrushy is not charged with the same series of acts or transactions as his co-Defendants, and there is no allegation that Defendant Scrushy participated in or had knowledge of the acts or transactions charged to his co-Defendants nor any allegation that Defendant Scrushy participated in or had

knowledge of any overall scheme alleged in the superseding indictment. As a consequence, severance of Defendant Scrushy's case is mandatory under Rule 8(b).

Rule 8(b) provides:

> **(b) Joinder of Defendants.** The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately.

Fed. R. Crim. P. 8(b).

For purposes of a motion to sever pursuant to Rule 8(b), this Court must accept the allegations of the indictment as true unless the joinder is based on an improper legal interpretation or there are allegations of prosecutorial bad faith. *United States v. Sutherland*, 656 F.2d 1181, 1190 n.6 (5th Cir. 1981).[7] Where defendants are joined in violation of Rule 8(b), severance is mandatory. *United States v. Nettles*, 570 F.2d 547, 551 (5th Cir. 1978); *United States v. Levine*, 546 F.2d 658, 661 (5th Cir. 1977).

Joinder of defendants in a multi-party indictment is analyzed under Rule 8(b). *United States v. McLain*, 823 F.2d 1457, 1466-67 (11th Cir. 1987). "We note initially that whether there has been misjoinder in a trial involving multiple defendants is governed by Rule 8(b) only; Rule 8(a) has no application in such instances." *United States v. Bova*, 493 F.2d 33, 35 (5th Cir. 1974) (citations omitted). The standard for joinder of offenses under Rule 8(a) is more permissive than the standard for joinder of defendants under Rule 8(b). The stricter standard under Rule 8(b) is based on the

---

[7]    In *Bonner v. City of Pritchard*, 661 F.2d 1206 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the Fifth Circuit rendered prior to the close of business on September 30, 1981.

enhanced danger of prejudice when multiple defendants are joined for trial. As the former Fifth Circuit stated in its decision in *Bova*:

> As Professor Wright notes, 'it may well be doubted if this was the intention of the draftsmen. * * * It is a good thing, however, that Rule 8(b) has been read as independent and exclusive of Rule 8(a). The significant difference between the two subsections is that Rule 8(a) allows joinder of offenses of 'the same or similar character' and Rule 8(b) does not.' Wright, supra at 318-19. Professor Wright, quoting the rule, points out that joinder of offenses under Rule 8(b) requires a showing that the offenses were part of 'the same act or transaction or ... the same series of acts or transactions ....' Id. at 325. The purpose is to prevent the 'cumulation of prejudice from charging several defendants with similar but unrelated offenses.'

*Bova*, 493 F.2d at 35 (quoting *Cupo v. United States*, 359 F.2d 990, 993 (D.C. Cir. 1966)).

"Rule 8(b) provides for the joinder of two or more defendants in the same indictment if it is alleged that they participated in the same criminal transaction upon which the prosecution is brought." *United States v. Weinstein*, 762 F.2d 1522, 1541 (11th Cir. 1985). In this Circuit, the phrase "the same series of acts or transactions" in Rule 8(b) is interpreted as requiring a "substantial identity of facts or participants" between the offenses charged in the indictment. *Levine*, 546 F.2d at 662 (citing *United States v. Marionneaux*, 514 F.2d 1244, 1248-49 (5th Cir. 1975)). In order for joinder of defendants to be proper under Rule 8(b), "[e]ach of the actors must have known that he acted in furtherance of a common plan in which other participants were involved." *United States v. Andrews*, 765 F.2d 1491, 1496 (11th Cir. 1985) (citing *Levine*, 546 F.2d 658). The fact that two defendants are charged jointly with the same offense does not preclude a finding of misjoinder under Rule 8(b). *See, e.g., Bova*, 493 F.2d at 37 (holding

severance required under Rule 8(b) even though defendants charged as accomplices in two counts of four-count indictment).

Rule 8 addresses the balancing between the benefit to the court and the public from joint trials and the possibility of prejudice to an individual defendant:

> 'Rule 8 is an attempt to set the limits of tolerance, and any joinder which does not fall within it is per se impermissible…. It may be … prejudicial to try two defendants together. Because of the natural tendency to infer guilt by association, a defendant may suffer by being joined with another allegedly "bad man."'

*Bova*, 493 F.2d at 36 (quoting *King v. United States*, 355 F.2d 700, 703-04 (1st Cir. 1966)).

In its 1986 decision in *United States v. Lane*, 474 U.S. 438, 106 S.Ct. 725 (1986), the Supreme Court resolved a split among the circuits involving the standard of review for Rule 8(b) joinder issues. Rejecting the approach of a majority of the circuits that misjoinder is error *per se,* 474 U.S. at 440 n.1, the Supreme Court held that for purposes of appellate review, Rule 8 joinder issues would be subject to harmless error analysis, and that reversal would be required only if the misjoinder results in actual prejudice. *Id.* at 449.[8] The significance of *Lane* to the determination of Defendant Scrushy's instant motion for severance, however, is found in the Supreme Court's explicit limitation of the analysis to appellate proceedings:

> Rule 8(b), however, requires the granting of a motion for severance unless its standards are met, *even in the absence of prejudice*; review

---

[8]    As recognized by the Eleventh Circuit in *United States v. Watson*, 866 F.2d 381, 385 n.3 (11th Cir. 1989), *Lane* effectively overruled prior cases "that were previously binding authority in the Eleventh Circuit, to the extent that they hold or imply that misjoinder under either Rule 8(a) of 8(b) is inherently prejudicial…" including *McLain*, 823 F.2d at 1467; *United States v. Ellis*, 709 F.2d 688, 690 (11th Cir. 1983); *Levine*, 546 F.2d at 661; *Marionneaux*, 514 F.2d at 1248, and *Bova*, 493 F.2d at 35. The underlying holding in each of these cases that joinder was improper under Rule 8(b) was unaffected by *Lane*.

> on appeal is for an error of law. Applying the harmless-error rule to Rule 8(b) misjoinder simply goes to the additional question whether the error requires setting aside the convictions.

474 U.S. at 449 n.12 (emphasis added). In other words, unless the allegations in the Government's second superseding indictment meet the requirements of Rule 8(b), then Defendant Scrushy's case must be severed from the cases of his three co-Defendants, without need for any finding that joinder would harm Defendant Scrushy.

As the Supreme Court held in *McElroy v. United States*, 164 U.S. 76, 17 S.Ct. 31 (1896):

> [J]oinder cannot be sustained where the parties are not the same, and where the offenses are in no wise parts of the same transaction, and must depend upon evidence of a different state of facts as to each or some of them. It cannot be said in such case that all the defendants may not have been embarrassed and prejudiced in their defense, or that the attention of the jury may not have been distracted to their inquiry in passing upon distinct and independent transactions.

*Id.* at 81.

In assessing the propriety of the joinder in the instant case, the Government's failure to charge Defendant Scrushy in either of the RICO counts in the indictment (Counts One and Two),[9] or to charge Defendant Scrushy with an overall conspiracy

---

[9]    Under Section 9-110.101 of the United States Attorneys Manual, the United States Attorney is prohibited from filing any RICO criminal indictment or information without prior approval of the Criminal Division. A specific procedure for authorization of a RICO prosecution is set out in USAM 9-110.210, which also provides that "[s]eparate approval is required for superseding indictments or indictments based upon a previously approved information." *Id.* As a consequence, in the instant case, the United States Attorney would have had to have sought and obtained approval for the RICO counts in both the first superseding indictment in this case, as well as the second superseding indictment. In regard to Defendant Scrushy, who was not charged in either RICO count in either superseding indictment, one of two possible events had to have occurred. Either the United States Attorney requested permission to charge Defendant Scrushy in a RICO count and was turned down by the Criminal Division, or the United States Attorney did not include Defendant Scrushy in his RICO request submitted to the Criminal Division. Either possibility yields the same significant inference: that either the Criminal Division

involving the other Defendants is of substantial significance. A general rule holds that where an indictment charges an overall conspiracy, joinder of all members of the conspiracy is proper, even if some are not charged with some of the substantive offenses underlying the conspiracy. *See, e.g., United States v. Weinrich*, 586 F.2d 481, 495 (5th cir. 1979) ("It is settled law that an indictment that charges multiple defendants with participation in a single conspiracy and also charges one or more but not all of the defendants with various substantive counts arising from the same conspiracy is proper and involves no misjoinder."). The absence of Defendant Scrushy as a defendant charged with either RICO count or in an overall conspiracy count with the other three Defendants is a telling indication that the multiple criminal acts alleged in the indictment are not part of the "same act or transaction, or in the same series of acts or transactions" as required by Rule 8(b) to justify joinder of the Defendants.

As set forth above, the second superseding indictment charges Defendant Scrushy with seven offenses (Counts Three through Nine), all related to a single transaction: giving $500,000 to Defendant Siegelman in relation to membership on and representation at the CON Board. (Doc 61 at 29-36.) While Count Five charges Defendant Scrushy with participation in a conspiracy under 18 U.S.C. § 371, the only co-defendant charged in this count is co-Defendant Siegelman. More importantly, the conspiracy has a single object: a conspiracy to commit honest services fraud. Most importantly, the conspiracy to commit honest services fraud is limited to a single subject matter: "concerning the

---

or the United States Attorney concluded that there was insufficient evidence to charge Defendant Scrushy with participation in this alleged overarching common criminal activity.

CON Board to give HealthSouth membership on and representation at the CON Board and to allow HealthSouth to exert influence over the CON Board." (Doc 61 at 31-32.)

The indictment charges Defendant Scrushy's three co-Defendants with 27 other offenses, none of them involving Defendant Scrushy. The other offenses relate to alleged bribes solicited or paid in relation to: waste disposal fees and taxes, alcoholic beverage regulation, the assessment and collection of hazardous waste fees and taxes, allocation of municipal bond funding, state construction contracts, and ALDOT construction contracting. (*Id.* at 1-29, 36-43.) There is no allegation in the indictment that Defendant Scrushy had any interest of any kind in these other governmental activities, all of which are totally unrelated to Defendant Scrushy's sole business interest in healthcare.

All of the other offenses charged against co-Defendants Siegelman, Hamrick and Roberts relate to allegations of bribes demanded of or paid by different individuals in relation to their individual business concerns. Counts Ten through Fourteen involve payments by Lanny Young of $270,200 and other things of value for influence concerning Young's business interests impacted by alcoholic beverage and waste disposal regulation, hazardous waste fees and taxes, allocation of municipal bond funding, and state construction contracting. (*Id.* at 36-38.) Counts Eighteen through Thirty-Three involve demands or payments of $140,000 from Jimmy Lynn Allen and $250,000 from Mac Marcato for influence concerning Allen's and Marcato's business interests involving ALDOT road construction contracts. (*Id.* at 41-43.) The remaining counts of the indictment charge various offenses, including RICO conspiracy, RICO, obstruction of justice, and extortion, none of which charge Defendant Scrushy with any offense.

Defendant Scrushy is not charged in the Count One RICO conspiracy, nor does the second superseding indictment charge or allege facts that would support a finding of an overall conspiracy between the four Defendants. (*Id.* at 2-5.) Defendant Scrushy is not charged in the Count Two substantive RICO offense. (*Id.* at 5-29.) Most importantly, the indictment does not allege anywhere that Defendant Scrushy was in any way involved in any of the other transactions, nor does it allege that Defendant Scrushy was aware of had any knowledge of any of the other transactions or the existence of any overall scheme involving the other Defendants.

In a case involving the payment of bribes to three county commissioners of Bulloch County, Alabama to influence bids for supplying concrete pipe to the county, the Eleventh Circuit found that the three county commissioners were improperly joined. *United States v. Ellis*, 709 F.2d. 688, 690 (11th Cir. 1983). Each of the commissioners was charged and convicted of a single count of mail fraud for receiving a 10% kickback from the owner of Dixie Concrete Pipe Company when the company received payment from the county for the pipe requisitioned by each commissioner. The indictment contained 36 counts charging violations of the mail fraud statute, 18 U.S.C. § 1341. 709 F.2d at 688. While there was no conspiracy charged in the indictment, the Government argued that the owner of the pipe company devised a scheme to defraud and that the commissioners knowingly entered a conspiracy to effectuate the scheme. *Id* at 689. The Eleventh Circuit rejected this theory, concluding:

> We have combed the record for a shred of evidence from which an inference may be drawn that either appellant was aware that the others were accepting bribes and have found none. Beyond peradventure, the record reveals that appellants did not 'participate in the same act or transaction or the same series of acts or

14

> transactions constituting an offense or offenses.' The record
> evidence discloses three conspiracies and not one.

709 F.2d at 690 (citing *Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239 (1946)).

Similarly, in *Bova*, 493 F.2d 626, there was no charge or allegation of conspiracy or an overarching agreement. Two defendants, Bova and Coccuzza, were jointly charged in counts one and two with substantive drug offenses involving the distribution of 8.3 grams of heroin on August 31, 1972. Counts three and four charged Coccuzza alone with possession and distribution of 25.7 grams of heroin on September 8, 1972. The former Fifth Circuit found that joinder of the two defendants was precluded by Rule 8(b):

> Here, there was no allegation, either in the indictment or, so far as it
> appears from the record, in pretrial proceedings indicating any
> involvement in or relationship to the September 8th sale of heroin by
> Bova. There was no 'series' of transactions as to Bova. The first and
> second counts should not have been joined with the third and fourth
> counts of the indictment involving Coccuzza alone.

493 F.2d at 37.

In a case involving bribery of an IRS agent, the district court found that Rule 8(b) required severance of a defendant who was not named in all counts of the indictment and not alleged to have participated in a common conspiracy. *United States v. Gentile*, 60 F.R.D. 686, 688 (S.D. N.Y 1973). Counts one and two charged defendant Gentile with offering $3,000 to IRS employee Tsotsos, in an attempt to influence a determination of Gentile's outstanding tax liability. Counts three and four charged Gentile and defendant LaPonzina with offering $1,000 to Tsotsos and conspiring to commit fraud against the United States for the purpose of influencing LaPozina's outstanding tax liability. Counts five and six charged Gentile and defendant Lucandana with offering $500 to Tsotsos and

conspiring to commit a fraud against the United States for the purpose of influencing

Lucandana's tax liability. *Id.* at 687. The court granted LaPonzina's severance motion

under Rule 8(b):

> The common thread running through the various counts of the indictment is the common involvement of Tsotsos and Gentile. Beyond that there is nothing in the indictment which indicates the defendants had acted in concert or participated in a common scheme or plan. On the contrary, the allegations of the indictment evince that LaPonzina and Lucadana were not involved in Gentile's activities concerning his own outstanding tax liability and that neither of them had anything to do with the separate attempts to influence the determination of the other's tax liability. The money offers were made on different days and were of varying amounts. The dates of the various conversations which constitute the overt acts of the two alleged conspiracies also evidence a pattern of separate and independent conspiracies.... Under [Rule 8(b)] the government has an obligation to allege more than that the offenses are of a similar nature or that there are common participants.

*Id.* at 687-88.

Even where the Government charges all defendants in a single overarching

conspiracy count or RICO conspiracy count—which the Government was unable to do in

the instant case in regard to its allegations against Defendant Scrushy—the Rule 8(b)

requirement that the defendants must be "alleged to have participated in the same act of

transaction, or in the same series of acts or transactions" still must be met, or severance is

mandatory.

In *United States v. Castro*, 829 F.2d 1038 (11th Cir. 1987), *clarified on other*

*grounds on rehearing*, 837 F.2d 441 (11th Cir. 1988), all of the defendants, including

defendant Castro, were charged in a single conspiracy count in relation to insider bank

fraud during an effort to keep a failing coffee company afloat. Two separate schemes

were used to obtain money for the company. The first involved the creation of fictitious

inventory records that secured loans to the company; the second involved an effort to conceal the pledged nature of company certificates of deposit that were used to secure additional loans. Quoting *Andrews*, 765 F.2d at 1496-97, for the proposition that "[t]he character of the acts must have been similar, and each of the actors must have known that he acted in furtherance of a common plan in which other participants were involved," the Eleventh Circuit concluded that defendant Castro, who was involved only in the scheme relating to the pledged CDs, was improperly joined under Rule 8(b). *Castro*, 829 F.2d at 1045 (citing *Marionneaux*, 514 F.2d at 1248-49, and *Gentile*, 495 F.2d 626). In reaching this determination, the Court held:

> Although the existence of a conspiracy often allows joinder when joinder otherwise would be improper, joinder is allowed in such a situation only if 'the substantive offenses alleged in the indictment fall within the scope of the conspiracy.' The only overt acts alleged in the conspiracy count relating to the CD conspiracy were unrelated, in any meaningful way, to the overt acts alleged in the conspiracy count relating to the inventory conspirators.

829 F.2d at 1045 (quoting *Gentile*, 495 F.2d at 632) (footnote omitted).

Similarly, in *Levine*, 546 F.2d 658, the Government relied on its charge of a single overarching conspiracy charge to justify joinder of two groups of defendants in a pornography prosecution. Counts two and three charged substantive offenses in relation to a 36 millimeter film produced by defendant Abrams. Counts four and five involved a group of 16 millimeter films for defendant Levine. Three defendants were common to both groups, including defendant Harvard, who supervised both projects. All of the defendants were involved in the same activity; all of the films used the same processing laboratory and sound studio; and some of the same film actors were used by both groups. *Id*. at 663-64. The Court concluded that a single overt act in which Abrams and Levine

participated in a single phone call with defendant Harvard "among 20 other overt acts which point overwhelmingly to the existence of two unrelated conspiracies to distribute obscene films, is too tenuous to support the substantial identity of facts or participants necessary and justify rule 8(b) joinder." *Id.* at 665. As a result, the former Fifth Circuit held that "[t]he indictment as drawn contravenes rule 8(b) joinder." *Id.* at 666.

The former Fifth Circuit also reached a similar conclusion under a variance analysis, with the Court noting that a misjoinder analysis would have been applicable had the Government not alleged a single conspiracy, as to the joint trial of two defendants who were charged in a RICO conspiracy to fix traffic tickets with the same judge. *Sutherland*, 656 F.2d at 1190 n.6.[10] The Court concluded that the Government failed to introduce any evidence of a single conspiracy involving both defendants to bribe the same judge. In concluding that there was a variance in the indictment, the Court noted:

> The government does not suggest that either bribery scheme was dependent on or benefited from the other, and does not dispute the defendants' contentions that neither Walker nor Maynard knew or should have known of the other.... While two people may in fact conspire together to bribe a single judge, there is no reason why one who has individually acted must necessarily have assumed that others have also bribed the same judge.

*Id.* at 1190-91.[11]

---

[10] "A strong argument can be made that a variance between a single conspiracy indictment and evidence of multiple conspiracies should be treated not as a 'variance' problem at all, but rather as a 'misjoinder' question under Federal Rules of Criminal Procedure 8(b)." *Sutherland*, 656 F.2d at 1190 n.6 (citing J. Moore, 8 Moore's Federal P. 8.06(4)(1981)).

[11] Despite its conclusion that the single RICO conspiracy count alleged two separate conspiracies, the Court determined that the variance error was harmless in light of the small number of conspiracies and defendants, the distinct evidence as to each conspiracy, and the overwhelming evidence of guilt. *Id.* at 1196.

In the instant matter, the case for a conclusion of misjoinder is even more compelling, because the Government has not charged Defendant Scrushy in a single conspiracy along with co-Defendants Siegelman, Hamrick and Roberts.    The only conspiracy with which Defendant Scrushy is charged is the discrete honest services conspiracy alleged in Count Five of the second superseding indictment. (Doc 61 at 31-33.)    As set forth above, the sole object of this conspiracy was "concerning the CON Board to give HealthSouth membership on and representation at the CON Board and to allow HealthSouth to exert influence over the CON Board."    (*Id.* at 31-32.)    There is no allegation or suggestion that this conspiracy was related to or dependent on in any way the allegations concerning influence over the disparate areas of alcoholic beverage and waste disposal regulation, the assessment of hazardous waste fees and taxes, allocation of municipal bond funding, state construction contracting, or ALDOT construction contracts. Most critically, there is no allegation or suggestion anywhere in the second superseding indictment that Defendant Scrushy was aware of or had any knowledge about these other activities, let alone joined in any overall common scheme or plan.

In a case that is strikingly similar to the instant case, a district court granted a motion to sever in a case involving bribes paid to obtain three separate construction contracts from the New York City Board of Education. *United States v. Lech*, 161 F.R.D. 255 (S.D. N.Y. 1995).    Counts one through three of the indictment charged defendants Russo and Fulton with conspiracy, bribery and mail fraud in connection with a Board of Education construction project referred to as the Eastern Parkway Project.    Counts four and five of the indictment charged defendants Russo, Fulton and Lech with conspiracy and bribery in a scheme to have the Board of Education grant a contract to remove

asbestos from a high school, referred to as the Richman Project. Counts six and seven

charged defendant Russo with bribery to induce Board of Education officials to enter into

a long-term lease and renovation for a commercial property referred to as the 125th Street

Project. *Id.* at 255-56. The court noted that:

> As a general rule, these requirements [for Rule 8(b) joinder] are
> satisfied where the Government alleges the existence of an overall
> conspiracy linking the various substantive crimes charged in an
> indictment.... It is well settled, however, that two separate
> transactions do not constitute a 'series' within the meaning of Rule
> 8(b) 'merely because they are of a similar character of involve one or
> more common participants.'

*Id.* at 255 (citation omitted). Based on its conclusion that there was no allegation that

defendant Lech participated in or had specific knowledge of the schemes involving the

Eastern Parkway and 125th Street Projects, the court held that Rule 8(b) mandated

severance of his case, noting that "[e]ven if the Eastern Parkway Project was a

springboard for the other two schemes, only Russo and Fulton knew how to use the

secrets of that success." *Id.* at 257-58.

The same situation pertains to the instant case in regard to the charges against

Defendant Scrushy in Counts Three through Nine of the second superseding indictment.

All seven of those charges involve a single, discrete transaction which the Government

alleges was in violation of federal law: Defendant Scrushy's giving $500,000 in an effort

to influence or reward Defendant Siegelman for appointments to give HealthSouth

membership on and representation at the CON Board. This transaction, even assuming it

occurred as alleged by the Government in its second superseding indictment, had no

relation of any kind to the transactions alleged to have occurred involving demands for

payments or receipt of payments from Lanny Young, Jimmy Lynn Allen, and Mac

Marcato to Defendant Siegelman which related to alcoholic beverage and waste disposal regulation, the assessment and collection of hazardous waste fees and taxes, allocation of municipal bond funding, state construction contracting, and ALDOT construction projects. All of the counts in the indictment, save the seven counts in which Defendant Scrushy is charged, directly relate to these transactions that are totally unrelated to Defendant Scrushy. There is no allegation that Defendant Scrushy participated in any overall agreement or conspiracy in this matter. There is no allegation that Defendant Scrushy participated in any of the activities of these other individuals, except the single transaction involving the $500,000 payment alleged in Counts Three through Nine. Most importantly, there is no allegation or even any inference that Defendant Scrushy had any inkling that these other transactions were occurring.

In light of all of these considerations, the indictment fails to allege that Defendant Scrushy "participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense of offenses," and severance of his case from the cases of his co-Defendants is mandatory under Rule 8(b).

## B. DEFENDANT SCRUSHY'S TRIAL MUST BE SEVERED PURSUANT TO FED. R. CRIM. P. 14 IN ORDER TO AVOID COMPELLING PREJUDICE TO DEFENDANT SCRUSHY.

Mr. Scrushy is also entitled to severance under Fed. R. Crim. P. 14. Rule 14 governs motions for severance involving prejudicial joinder of defendants or charges, as opposed to improper joinder of defendants or charges under Rule 8. Rule 14 provides:

> (a) Relief. If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

Fed. R. Crim. P. 14.

"Rule 14 requires the Court to 'balance the right of the defendants to a fair trial, absent the prejudice inherent in a joint trial, against the interests of judicial economy and efficiency.'" *United States. v. Shankman*, 13 F. Supp.2d 1358, 1367 (S.D.Ga. 1998) (citing *United States v. Gonzalez*, 804 F.2d 691, 694 (11th Cir.1986)) (citing *United States v. Hewes*, 729 F.2d 1302, 1318 (11th Cir. 1984))).

Severance under Rule 14 should be granted when "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539, 113 S.Ct. 933, 938 (1993).   As the Supreme Court explained, there are a number of circumstances in which that serious risk can present itself:

> Such a risk might occur when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant. For example, evidence of a codefendant's wrongdoing in some circumstances erroneously could lead a jury to conclude that a defendant was guilty. When many defendants are tried together in a complex case and they have markedly different degrees of culpability, this risk of prejudice is heightened. *See Kotteakos v. United States*, 328 U.S. 750, 774-775, 66 S.Ct. 1239, 1252-1253, 90 L.Ed. 1557 (1946). Evidence that is probative of a defendant's guilt but technically admissible only against a codefendant also might present a risk of prejudice. *See Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Conversely, a defendant might suffer prejudice if essential exculpatory evidence that would be available to a defendant tried alone were unavailable in a joint trial. *See, e.g., Tifford v. Wainwright*, 588 F.2d 954 (CA5 1979) (per curiam ).

*Zafiro*, 506 U.S. at 539.

Another "instance when separate trials are warranted is when there is a gross disparity in the weight of the evidence presented against the various codefendants." *Shankman*, 13 F. Supp. 2d at 1367 (citing *Zafiro*, 506 U.S. at 539; *United States v. Paul*,

150 F.R.D. 696, 698 (S.D. Fla.1993)) (citing *United States v. Garner*, 837 F.2d 1404 (7th Cir.1987))). "When the majority of the evidence presented at a joint trial is directed at the crimes committed by one defendant, there is a risk that the codefendant will suffer 'spillover' prejudice." *Shankman*, 13 F. Supp. 2d at 1367 (citing *United States v. Schlei*, 122 F.3d 944, 983 (11th Cir. 1997); *United States v. Alvarez*, 755 F.2d 830, 857 (11th Cir. 1985)).

No matter which risks to a fair trial are present in a given case, a defendant is entitled to severance under Rule 14 only if he will be subjected to "compelling prejudice" by a joint trial.

> The test for compelling prejudice is whether under all the circumstances of the particular case, as a practical matter, it is within the capacity of the jury to follow the admonitory instructions and accordingly to collate and appraise the independent evidence against each defendant solely upon that defendant's own acts, statements and conduct.

*Shankman*, 13 F. Supp. 2d at 1367-1368 (quoting *Hewes*, 729 F.2d at 1319). "If the jury cannot keep separate the evidence that is relevant to each defendant and render a fair and impartial verdict as to each, severance should be granted." *United States v. Carrazana*, 921 F.2d 1557, 1567 (11th Cir. 1991). *See also McClain*, 823 F.2d at 1467 (citation omitted) ("[E]ven if Rule 8(b) is not violated, the defendant is still entitled to a severance if he can show specific and compelling prejudice due to the counts being joined, *i.e.*, by showing that the jury could not keep the evidence against each defendant separate.")

Each of these concerns is directly applicable to the proposed joint trial of Defendant Scrushy in the instant case, and lead to the conclusion that he will suffer compelling prejudice if this Court does not grant severance pursuant to Rule 14.

First, there is a gross disparity in the weight of the evidence that will be admitted

in a joint trial against Defendant Scrushy as opposed to his three co-Defendants. *See Shankman*, 13 F. Supp.2d at 539. As set forth above in § A, the seven charges against Defendant Scrushy are limited to a single transaction: giving $500,000 to Defendant Siegelman, allegedly to influence or reward him for an appointment to or representation at the CON Board. The evidence against Defendant Scrushy, then, will be limited to this single transaction. By contrast, the evidence against his three co-Defendants will encompass the remaining 27 counts of the indictment. This evidence will cover multiple alleged bribes or solicitations of bribes which relate to six different areas of governmental activity: alcoholic beverage and waste disposal regulation, the assessment and collection of hazardous waste fees and taxes, assessment and collection of hazardous waste fees and taxes, allocation of municipal bond funding, state construction contracting, and ALDOT construction projects.

A vivid illustration of the gross disparity of the evidence between Defendant Scrushy and his co-Defendants is found in the allegations of racketeering acts in Count Two of the superseding indictment. Count Two alleges 62 individual racketeering acts. (Doc 61 at 6-29.) Yet only seven of these racketeering acts relate to the transaction involving Defendant Scrushy (Racketeering Acts 1(a) through 1(g)), and two of those racketeering acts (Racketeering Acts 1(f) and 1(g)) relate to money laundering and contain no allegation that Defendant Scrushy was involved or even aware of the transactions alleged. (*Id.* at 6-11.) The simple fact that these acts are charged in Count Two as part of the substantive RICO violation, where Defendant Scrushy is not charged, significantly heightens the possibility for confusion and improper spillover prejudice against Defendant Scrushy. In other words, a jury in a joint trial would be hard-pressed

to understand that the acts charged in the RICO offense relate only to Defendant Siegelman, and do not support any inference that Defendant Scrushy was in any way involved with the RICO offenses with which only co-Defendants Siegelman and Hamrick are charged.

Additionally, an examination of the remaining 55 racketeering acts, in which only Defendant Scrushy's co-Defendants are alleged to have been involved, demonstrates that these transactions are far more complex than the single-purpose transaction alleged against Defendant Scrushy (to influence an appointment to or representation at the CON Board). *See Zafiro*, 506 U.S. at 539. As the indictment sets out, these other transactions involve: alcoholic beverage sales at a motor speedway, regulation of waste disposal facilities, efforts to advance a business on the list of companies eligible for industrial tax-free bonds, and construction of warehouses for the Alabama Department of Economic and Community Affairs and State of Alabama Alcoholic Beverage Control Board, (Doc 61 at 15); reduction of fees for the Cherokee County landfill and multiple Hazardous Waste Fees involving a facility in Emelle, Alabama, (*id.* at 16); the issuance of numerous performance bonds, (*id.* at 17); and the allocations of $ 55,936,271 from ALDOT to the Tuscaloosa County Commission and at least 23 checks totaling $ 1,933,098.35 relating to the Rainline Corporation. (*I d.* at 25-27).

Further, the evidence of the nature of the wrongdoing alleged to two of Defendant Scrushy's co-Defendants will inevitably result in considerable prejudice to Defendant Scrushy. This basis for severance is enhanced by the fact that none of this evidence would be admissible in a trial of Defendant Scrushy were he granted a separate trial under Rule 14. For instance, Defendant Siegelman is charged in Count Thirty-Four with

extortion under color of official right and by fear of harm pursuant to 18 U.S.C. § 1951, with the allegation being that Defendant Siegelman extorted $250,000 from Mac Marcato based on a threat to cause economic harm to his business interests involving ALDOT. (Doc 61 at 43.) Additionally, either Defendant Siegelman or Defendant Hamrick is charged in Counts Fifteen, Sixteen and Seventeen with obstruction of justice, where it is alleged that they paid money to "hinder, delay, and prevent" the federal investigation into payments by Lanny Young. (*Id.* at 38-40.) Attempts to obstruct a federal investigation can be powerful evidence to a jury of a consciousness of guilt. Again, there is no allegation that Defendant Scrushy was involved in any of these activities or that he was even aware of them. None of this evidence would be admissible before the jury at Defendant Scrushy's trial unless he is tried together with these co-Defendants. Yet all of this evidence relating to these allegations will be admissible in a joint trial. Simply the association of Defendant Scrushy with these co-Defendants in a joint trial will cause a substantial risk of compelling prejudice. "Because of the natural tendency to infer guilt by association, a defendant may suffer by being joined with another allegedly 'bad man.'" *Bova*, 493 F.2d at 36 (quoting *King v. United States*, 355 F.2d 700, 703-04 (1st Cir. 1966)).

Finally, the evidence relating to the allegations that Defendant Siegelman solicited and accepted bribes from other individuals in numerous transactions totally unrelated to Defendant Scrushy will result in compelling prejudice to Defendant Scrushy. The impact of the considerable evidence relating to Defendant Siegelman's alleged practices—none of which would be admissible in a trial of Defendant Scrushy if he were severed—cannot help but color the jury's view of the single transaction with which

Defendant Scrushy is charged. It will be Defendant Scrushy's defense that the $500,000 in question was a legitimate political contribution and that there was no relationship between that contribution and any appointment to the CON Board. Were this transaction tried alone—as it should be—the evidence will be limited to any information relevant to that transaction, and it will be up to the jury to determine the intent of the parties relative to that single transaction.

The contrast between the evidence in that trial and the evidence in a joint trial involving allegations of multiple bribes solicited from or paid by multiple individuals over a lengthy period of time relating to numerous and very different business transactions, all of which involved immediate, perceptible, and significant financial gain to the participants, could not be more stark. The single transaction with which Defendant Scrushy is charged should be tried and decided by the jury on the merits of that transaction and nothing else. Evidence relating solely to transactions and offenses which Defendant Scrushy had nothing to do with—and which Defendant Scrushy did not even know were going on—has no place in a trial on the single, discrete transaction with which Defendant Scrushy is charged.

Defendant respectfully submits that this Court should grant a severance pursuant to Rule 14 in order to avoid compelling prejudice to Defendant Scrushy which will deny him a fair trial before a fair and impartial jury which is untainted by evidence that has nothing to do with Defendant Scrushy and would be inadmissible in a trial based solely on the charges for which he was indicted.

WHEREFORE, Defendant respectfully prays that this Court enter an Order severing his trial from the trial of his co-Defendants pursuant to Rule 8(b) or, in the alternative, that this Court enter an Order severing his trial pursuant to Rule 14, and for such other and further relief as this Court may deem just and proper.

This 21st day of December, 2005.

Respectfully submitted,

Arthur W. Leach
Leslie V. Moore
2310 Marin Drive
Birmingham, Alabama 35203
Phone: 205-822-4224
Fax: 205-824-0321

Henry Lewis Gillis
Thomas Means Gillis & Seay
PO Drawer 5058
Montgomery, Alabama
Phone: 334-270-1033
Fax: 334-260-9393

James K. Jenkins
Bruce Maloy
Maloy & Jenkins
25th Floor
75 Fourteenth Street NW
Atlanta, Georgia 30309
Phone: 404-875-2700
Fax: 404-875-7857

Attorneys for Richard M. Scrushy

## CERTIFICATE OF SEVICE

I hereby certify that on the 21st day of December, 2005, I electronically filed the foregoing "Defendant Richard M. Scrushy's Motion for Severance Pursuant to Federal Rules of Criminal Procedure 8(b) and 14" with the Clerk of the Court using the CM/ECF system which will send notification of such to counsel of record.

Leslie V. Moore
2310 Marin Drive
Birmingham, Alabama 35243
Phone: (205) 822-4224
Fax:    (205) 824-0321
E-Mail: les.moore@lvmlaw.com