IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | **CRIMINAL NO. 2:05-CR-119-F** |
| DON EUGENE SIEGELMAN, | ) | |
| PAUL MICHAEL HAMRICK, | ) | |
| GARY MACK ROBERTS, and | ) | |
| RICHARD M. SCRUSHY | ) | |

**UNITED STATES' RESPONSE TO DEFENDANTS SCRUSHY'S AND ROBERTS'S
MOTIONS FOR SEVERANCE**

COMES NOW the United States of America, by and through Louis V. Franklin, Sr., Acting

United States Attorney for the Middle District of Alabama, and hereby files its Response to

Defendants Scrushy's and Roberts's Motions for Severance (hereinafter, collectively, the

"Motions"). This Court should deny the Motions because joinder of all four Defendants in the

second superseding indictment is proper under Fed. R. Crim. P. 8(b) and Defendants Scrushy and

Roberts have each failed to carry his burden to show prejudice from such joinder sufficient to

warrant severance under Fed. R. Crim. P. 14. Substantial authority from this and other Circuits

compels the denial of the Motions. Joinder is proper under Rule 8(b) because each Defendant has

participated in the same series of acts or transactions constituting the offenses charged – namely, the

series of acts and transactions relating to the enterprise and pattern of racketeering activity charged

in the RICO counts of the second superseding indictment. The rare remedy of severance is

undeserved under Rule 14 because the evidence against each Defendant is sufficiently distinct to

permit a jury to compartmentalize and consider the evidence against, and return a verdict specific

to, each Defendant. As grounds to support its position, the United States submits the following:

I.     **The Proper Analytical Framework to Assess Defendants' Allegations of Misjoinder Under Rule 8(b) and for Severance Under Rule 14**

Defendants Scrushy and Roberts each demand separate trials from the other three Defendants named in the second superseding indictment.  See Scrushy Mot. at 1; Roberts Mot. at 1.  In particular, Defendants Scrushy and Roberts each argue that the second superseding indictment improperly joins him with the other Defendants in violation of Rule 8(b), see Scrushy Mot. at 7; Roberts Brief at 3,[1] and that even if joinder is proper, severance is required under Rule 14 because of the prejudice from being tried jointly with the other Defendants.  See Scrushy Mot. at 23-26; Roberts Brief at 6-9.

The Eleventh Circuit explained the proper analytical framework for ruling on motions for severance under Rules 8 and 14 in United States v. Bryan, 843 F.2d 1339 (11th Cir. 1988).

> Although the remedy for misjoinder under Rule 8(b) and prejudicial joinder under Rule 14 is the same – severance and separate trials – the two rules are analytically and procedurally distinct.  A motion for severance based on misjoinder under Rule 8 alleges an error in the indictment, and severance must be granted if the defendants were improperly joined. Rule 14 comes into play only if joinder was initially proper under Rule 8 but a joint trial would prejudice one or more defendants.  It is addressed to the discretion of the trial judge.

Id. at 1342 (emphasis in original). See Zafiro v. United States, 506 U.S. 534, 539 (1993) (noting that a court should consider severance under Rule 14 only after finding that joinder was proper under Rule 8(b)); United States v. Lane, 474 U.S. 438, 447 (1986) ( noting that once the requirements of Rule 8 are met, "severance thereafter is controlled entirely by [Rule] 14, which requires a showing of prejudice").

---

[1]Technically, Roberts moves only for severance under Rule 14.  See Roberts Mot. at 1.  In his Brief accompanying his Motion, however, Roberts states that joinder is not proper under Rule 8(b).  Consequently, the United States will respond to Roberts's assertions of misjoinder under Rule 8(b) and for severance under Rule 14.

In assessing Defendants' allegations, therefore, joinder must first be found proper under Rule 8(b). Only after a determination that joinder is correct does the issue of severance under Rule 14 arise. Importantly, both "Rules 8(b) and 14 are designed to promote economy and efficiency and to avoid a multiplicity of trials, so long as these objectives can be achieved without substantial prejudice to the right of the defendants to a fair trial." Zafiro, 506 U.S. at 540 (quotations and citations omitted).

## II.    Rule 8(b) Permits Joinder of all Four Defendants in the Second Superseding Indictment

### A.    A Substantive RICO or RICO Conspiracy Count Provides the Connexity Necessary to Satisfy Rule 8(b) and Join non-RICO and RICO Defendants

Rule 8(b) provides:

> The indictment . . . may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count.

"Rule 8(b) is a pleading rule." United States v. Morales, 868 F.2d 1562, 1567 (11th Cir. 1989). Typically, a court looks only to the allegations in the indictment to determine whether joinder is proper under Rule 8(b), though it may also consider a proffer of evidence from the government where the connection between the charges may not be apparent from the face of the indictment. See United States v. Dominguez, 226 F.3d 1235, 1240-41 (11th Cir. 2000) (discussing the analysis for assessing misjoinder claims under Rule 8(b)), cert. denied, 532 U.S. 1039 (2001). Consequently, a motion for severance based on misjoinder under Rule 8(b) fundamentally alleges an error in the indictment. See Bryan, 843 F.2d at 1342.

-3-

This Circuit has construed Rule 8(b) broadly. See United States v. Diaz, 248 F.3d 1065, 1100 (11th Cir. 2001) ("The prevailing attitude is that persons who are charged together should be tried together."); United States v. Cassano, 132 F.3d 646, 651 (11th Cir.) ("The general rule is that defendants indicted together should be tried together."), cert. denied, 525 U.S. 840 (1998); Bryan, 843 F.2d at 1342 ("Rule 8(b) is to be construed liberally in favor of joinder."); United States v. Zielie, 734 F.2d 1447, 1464 (11th Cir. 1984) ("'Rule 8 is to be broadly construed in favor of initial joinder.'") (quoting United States v. Park, 531 F.2d 754, 761 (5th Cir. 1976)), cert. denied, 469 U.S. 1189, and cert. denied, 469 U.S. 1216 (1985).[2] Rule 8 "recognizes that joint trials are beneficial not only for efficiency but because they limit inconvenience to witnesses, avoid delays in bringing defendants to trial, and allow the 'total story' to be presented to a single jury." United States v. Stillo, 57 F.3d 553, 557 (7th Cir.), cert. denied, 516 U.S. 945 (1995).

"For joinder to be proper defendants must have participated in the 'same series of acts or transactions.'" United States v. Holloway, 971 F.2d 675, 679 (11th Cir. 1992) (quoting Rule 8(b)), cert. denied, 507 U.S. 962 (1993). To meet this requirement, "the government must demonstrate that the acts alleged are united by substantial identity of facts and/or participants." Id. (quotations and citations omitted). "Each participant need not participate in all acts or even know the other participants' roles in the ventures." Id.

Well-settled law in this and other Circuits establishes that either a substantive RICO or RICO conspiracy count "supplies a unifying link" to properly join defendants under Rule 8(b). United States v. Welch, 656 F.2d 1039, 1052 (5th Cir. Unit A 1981), cert. denied, 456 U.S. 915 (1982). As

---

[2]See Bonner v. City of Pritchard, 661 F.2d 1206 (11th Cir. 1981) (adopting as binding precedent all decisions of the Fifth Circuit handed down prior to the close of business on September 30, 1981).

long as "a single RICO count embraces all of the acts and transactions upon which the other counts are based joinder under Rule 8(b) is proper." United States v. Houle, 237 F.3d 71, 75 (1st Cir.) (quotations and citations omitted), cert. denied, 532 U.S. 1074 (2001). In other words, a substantive RICO or RICO conspiracy count in the indictment provides the "substantial identity of facts and/or participants" required to join multiple defendants under Rule 8(b). Welch, 656 F.2d at 1053 (noting that the requirements of Rule 8(b) were "met by the RICO count of the indictment"). Consequently, joinder of defendants not charged in the RICO count ("non-RICO defendants") with defendants charged in the RICO count ("RICO defendants") is proper as long as the counts against the non-RICO defendants arose out of or are related to the enterprise and pattern of racketeering activity alleged in the RICO count. Houle, 237 F.3d at 75 (finding that joinder under Rule 8(b) was proper and that "[t]he fact that [the defendant] was not charged as a RICO defendant is of no consequence"); Stillo, 57 F.3d at 557 (finding joinder proper because the extortion count against the non-RICO defendant was connected to the pattern of racketeering activity charged in the RICO count); United States v. Krout, 66 F.3d 1420, 1429 (5th Cir. 1995) ("If an indictment charges RICO violations, offenses committed as part of the pattern of racketeering activity are properly joined even if the defendant objecting is not named in the RICO count."), cert. denied, 516 U.S. 1136 (1996); United States v. Cervone, 907 F.2d 332, 341 (2d Cir. 1990) (upholding joinder where the non-RICO defendant "was the only defendant charged in the two counts naming him[, ]was not charged in the RICO conspiracy count or in any of the underlying racketeering acts, and [] was the only one of the eighteen defendants not charged jointly in any count in the indictment with a defendant named in the RICO count," because the counts against him concerned a single labor bribe that was connected to the enterprise and the pattern of racketeering activity), cert. denied, 498 U.S. 1028 (1991); Bryan,

843 F.2d at 1342 (holding that joinder of non-RICO defendants was proper under Rule 8(b) because "[t]he indictment asserts one overarching RICO conspiracy and then lists other separate charges, including specific conspiracies that arose from and made up that RICO scheme"); United States v. Manzella, 782 F.2d 533, 540 (5th Cir.) (ruling that joinder was proper where the two counts of mail fraud against the non-RICO defendant were examples of a RICO defendant's pattern of racketeering activity) (citing Welch, 656 F.2d at 1052-53), cert. denied, 476 U.S. 1123, and cert. denied, 479 U.S. 961 (1986); Welch, 656 F.2d at 1052 ("The acts directed at conducting the affairs of the Sheriff's Office through a pattern of racketeering activity were related to each other and were part of a series of acts or transactions."); United States v. Weisman, 624 F.2d 1118, 1129 (2d Cir.) (holding that joinder was proper where the non-RICO defendant was charged only with bankruptcy fraud charges that were also included as "predicate acts of racketeering under the unifying RICO count"), cert. denied, 449 U.S. 871 (1980); United States v. Gotti, No. X5-02-CR-743(RCC), 2004 WL 602689, at *4 (S.D.N.Y. March 26, 2004) ("[T]he Second Circuit has held on more than one occasion that joinder is proper under Rule 8(b) when a defendant in a RICO indictment is charged only with the predicate acts as independent offenses and not with violating the RICO statute."); United States v. Triumph Capital Group, Inc., 260 F. Supp. 2d 432, 438 (D. Conn. 2002) ("[W]here a RICO count sufficiently alleges a pattern of racketeering activity, the defendants charged in the RICO counts can be properly joined in an indictment with defendants who are only charged in the substantive counts relating to the racketeering activity."); United States v. Castellano, 610 F. Supp. 1359, 1396-97 (S.D.N.Y. 1985) ("Indeed, even if a defendant is not named in a conspiracy or RICO count, he may be charged in a separate count, in the same indictment, if he is alleged to have participated in the same series of acts or transactions that constituted the conspiracy or RICO offense, despite the fact

-6-

that his participation may have been too limited to permit his being included as a co-conspirator or co-racketeer.").

The propriety of joinder of non-RICO and RICO defendants naturally follows from Congress' enactment of the RICO statute. By "loosening the statutory requirements for what constitutes joint criminal activity, Congress limited the force of Rule 8(b) in such situations." Castellano, 610 F. Supp. at 1396. Courts have recognized that if certain acts could be the basis for a "pattern of racketeering activity," then those same acts could also constitute part of a "series of acts or transactions constituting an offense" as defined by Rule 8(b). See Weisman, 624 F.2d at 1129. "Indeed, a construction of Rule 8(b) that required a closer relationship between transactions than that necessary to establish a 'pattern of racketeering activity' under RICO might possibly prohibit joinder in circumstances where Congress clearly envisioned a single trial." Id.

**B.    Defendants Scrushy and Roberts Are Properly Joined with the Other Defendants Because the Offenses Charged Against Them Relate to and Arise out of the Enterprise and Pattern of Racketeering Activity Charged in the RICO Conspiracy and Substantive RICO Counts of the Second Superseding Indictment**

The second superseding indictment charges Defendants Siegelman and Hamrick with RICO conspiracy (Count 1) and a substantive RICO count (Count 2) as well as substantive offenses that all relate to and arise out of the enterprise and pattern of racketeering activity described in the RICO counts. Though not named in the RICO counts, Defendants Scrushy and Roberts are each charged with substantive offenses that name Defendant Siegelman, and are based on acts and transactions embraced by the RICO counts. See Houle, 237 F.3d at 75. Ergo, Defendants Scrushy and Roberts are properly joined with the other Defendants in the second superseding indictment under Rule 8(b).

See supra (citing cases holding that joinder of non-RICO and RICO defendants is proper under Rule 8(b)).

### 1.     Defendant Scrushy Is Properly Joined with the Other Defendants in the Second Superseding Indictment

Defendant Scrushy is charged with Defendant Siegelman in Counts 3-9 of the second superseding indictment. Each of these counts relates to and arises out of the acts and transactions involving Defendants Siegelman's and Scrushy's unlawful conspiracy and scheme whereby, pursuant to their agreement, Defendant Scrushy paid, and Defendant Siegelman accepted, a bribe of $500,000 in exchange for providing HealthSouth official membership on, representation at, and influence over the CON Board. In particular, Counts 3 and 4 charge Defendants Siegelman and Scrushy with committing, and aiding and abetting each other in the commission of, Federal Program Bribery in violation of 18 U.S.C. § 666(a)(1)(B) and (a)(2), respectively. Count 5 charges Defendants Siegelman and Scrushy with Conspiracy to commit honest services mail fraud in violation of 18 U.S.C. § 371. Counts 6-9 charge Defendants Siegelman and Scrushy with Honest Services Mail Fraud in violation of 18 U.S.C. §§ 1341 and 1346.

Each of the substantive counts jointly charging Defendants Scrushy and Siegelman is reflected in the RICO counts charged against Defendant Siegelman. More specifically, each substantive count is comprised in the pattern of racketeering activity described in the substantive RICO count (i.e., count 2) of the second superseding indictment. Racketeering Act 1(a) charges Siegelman with Hobbs Act Extortion in violation of 18 U.S.C. § 1951 in that he "unlawfully obtained $500,000 from and at the direction of Richard M. Scrushy, with consent, under color of official right, in return for official action and influence to afford HealthSouth official membership

on, representation at, and influence over the CON Board." Racketeering Act 1(b) charges Defendant Siegelman with Bribery in violation of Ala. Code 1975 § 13A-10-61(a)(2) in that he "solicited, accepted, and agreed to accept $500,000 from and at the direction of Richard M. Scrushy upon an agreement and understanding that defendant DON EUGENE SIEGELMAN would give official action and influence to afford HealthSouth official membership on, representation at, and influence over the CON Board." Racketeering Acts 1(c)-(e) charge Defendant Siegelman with Honest Services Mail and Wire Fraud in violation of 18 U.S.C. §§ 1341, 1343, and 1346, in that he, "aided and abetted by Richard M. Scrushy and others known and unknown to the Grand Jury, knowingly and willfully devised and intended to devise a scheme and artifice to defraud and deprive the State of Alabama of its right to his honest and faithful services in his capacity as Governor . . . concerning the CON Board." The purpose of this scheme, as detailed in the second superseding indictment, was for Siegelman, "Richard M. Scrushy, and others to give HealthSouth official membership on, representation at, and influence over the CON Board by means of hidden payments and financial relationships, and to conceal these activities." The description of the manner and means of this scheme includes Defendant Scrushy's payment of $500,000 to Defendant Siegelman and Defendant Siegelman's appointment of Defendant Scrushy to the CON Board as well as other acts they took to accomplish this scheme.

This review of the second superseding indictment shows that the substantive counts against Defendant Scrushy, in which Defendant Siegelman is also charged, arise from, make up, and are embraced by the substantive RICO count against Defendant Siegelman, namely, Racketeering Acts 1(a)-(e), which expressly mention Defendant Scrushy. Consequently, Defendant Scrushy is properly

joined with Defendant Siegelman and the other Defendants in the second superseding indictment.

See Houle, 237 F.3d at 75; Bryan, 843 F.2d at 1342.

This case is akin to Manzella, 782 F.2d 533, in which the defendant Jimenez procured a

Louisiana crime organization to steal his vehicle so that he could defraud his insurance company.

In finding that joinder was proper even though Jimenez, charged with mail fraud which was also

used as a RICO predicate act, was not charged in the RICO counts, the court explained:

> We conclude that no misjoinder occurred. That Jimenez was not indicted on the
> RICO counts does not militate against the joinder's propriety under Rule 8(b). We
> have already recognized the general construction of the rule as permitting "joinder
> in cases where individual defendants are charged with some but not all counts of the
> indictment." Welch, 624 F.2d at 1129. Although Jimenez was not charged with
> participating in the enterprise, his dealings with Provenzano [the kingpin of the crime
> organization] allowed Provenzano to further the baleful influence of his criminal
> organization. The mail fraud was listed as a predicate act in counts one and two, and
> the jury found Provenzano guilty of a racketeering pattern that included this act.
> Jimenez may have been a customer only once instead of the two times required for
> prosecution under RICO, but this difference seems a mere technicality, insufficient
> to prevent joinder of Jimenez with the other appellants under Rule 8(b). See Welch,
> 656 F.2d at 1052-53, quoting Weisman, 624 F.2d at 1129.

782 F.2d at 540.

Similar to Jimenez in Manzella, Defendant Scrushy is properly joined with Defendant

Siegelman and the other Defendants in this case because the substantive charges against him arise

out of, relate to, and are embraced by the substantive RICO count charged against Defendant

Siegelman. Contrary to Defendant Scrushy's assertions, see Scrushy Mot. at 11, joinder is not

defeated because he was a "one-time" customer of Defendant Siegelman's unlawful racketeering

enterprise and not charged in the RICO counts. See id. at 540. Interestingly, Defendant Scrushy

admits that a conspiracy charge can provide the "unifying link" to join defendants under Rule 8(b).

See Scrushy Mot. at 11-12. Tellingly, however, Defendant Scrushy fails to cite to any of the cases

cited supra that holds that a RICO conspiracy or substantive RICO count, like a conspiracy charge, can provide the unifying link to join multiple defendants, including non-RICO defendants, under Rule 8(b). See Welch, 656 F.2d at 1051 ("A conspiracy charge, however, is not the only way to establish that acts which appear to be separate are actually part of a series of acts or transactions."). Defendant Scrushy's decision to ignore this line of cases leads him to the incorrect conclusion that he did not participate "in the same series of acts or transactions" as the other Defendants. See Scrushy Mot. at 21. A full consideration of the jurisprudence on joinder and the second superseding indictment compels the result in this case that the requirements of Rule 8(b) are satisfied and that Defendant Scrushy is properly joined with the other Defendants. See Gotti, 2004 WL 602689, at *5 (finding joinder proper where the non-RICO defendant was charged in substantive offenses with a RICO defendant and was "named, but not charged, in the RICO counts").

### 2. Defendant Roberts Is Properly Joined with the Other Defendants in the Second Superseding Indictment

Defendant Roberts is charged with Defendant Siegelman in Counts 18-33 of the second superseding indictment. Each of these counts charges a mailing in furtherance of Defendants Siegelman's and Roberts's unlawful scheme to defraud and deprive the State of Alabama of its right to the honest and faithful services of Defendants Siegelman and Roberts as Governor and Director of the Alabama Department of Transportation (ALDOT), respectively, concerning ALDOT in violation of 18 U.S.C. §§ 1341 and 1346. Each mailing charged in the substantive mail fraud counts against Defendants Siegelman and Roberts is also charged against Siegelman in Count 2 of the second superseding indictment – the substantive RICO count. That is, the pattern of racketeering activity charged against Defendant Siegelman in Count 2 comprises the honest services mail fraud

scheme charged in Counts 18-33. In fact, as shown in the following table, each substantive count jointly charged against Defendants Siegelman and Roberts is also a racketeering act charged against Defendant Siegelman in Count 2.

| Count 2: Racketeering Act | Substantive Count |
| --- | --- |
| 5(l) | 18 |
| 5(m) | 19 |
| 5(n) | 20 |
| 5(y) | 21 |
| 5(z) | 22 |
| 5(aa) | 23 |
| 5(bb) | 24 |
| 5(cc) | 25 |
| 5(dd) | 26 |
| 5(ee) | 27 |
| 5(ff) | 28 |
| 5(gg) | 29 |
| 5(hh) | 30 |
| 5(ii) | 31 |
| 5(jj) | 32 |
| 5(kk) | 33 |

Defendant Roberts is expressly named in the racketeering acts, though charged only in the substantive counts, involving the ALDOT scheme, while Defendant Siegelman is charged in both the substantive mail fraud and RICO counts.

Where, as here, the same acts and transactions form the basis for the substantive counts against a non-RICO defendant as well as for predicate acts against a RICO defendant, joinder of the

non-RICO and RICO defendants is proper under Rule 8(b) because the substantive counts arise out of, relate to, and are embraced by the RICO count. See Weisman, 624 F.2d at 1129 (ruling that joinder of the non-RICO defendant was proper because the bankruptcy charges against him were also properly charged as predicate acts under the "unifying RICO count"); Triumph Capital Group, 260 F. Supp. 2d at 438 ("[I]f the RICO charge is valid, an indictment charging the substantive crimes alleged as predicate acts along with the RICO claim satisfies the requirements for valid joinder under Rule 8(b).") (citations and quotations omitted).  In such a situation, all the defendants have "participated in the same . . . series of acts or transactions, constituting an offense or offenses." Rule 8(b).  Consequently, Defendant Roberts is properly joined with Defendant Siegelman and the other Defendants in the second superseding indictment.  See Gotti, 2004 WL 602689, at *5 (finding joinder proper where the non-RICO defendant was charged in substantive offenses with a RICO defendant and was "named, but not charged, in the RICO counts").

This case is akin to Stillo, 57 F.3d 553, in which Stillo, a non-RICO defendant, was charged only with a substantive count of extortion involving the bribe of the RICO defendant – a state trial judge.  The extortion scheme was also charged as a subpredicate racketeering act against the RICO defendant.  The other predicate acts charged against the RICO defendant involved other bribery schemes in which Stillo did not participate.  Id. at 557.  The court found that joinder was proper under Rule 8(b) because the scheme involving Stillo overlapped with the pattern of racketeering activity charged against the RICO defendant.  Id.

Like the non-RICO defendant in Stillo, Defendant Roberts in this case was involved with only one of the unlawful bribery schemes charged in the RICO counts against Defendant Siegelman – namely, the honest services mail fraud scheme involving ALDOT.  As to whether joinder is proper,

it is of no moment that Defendant Roberts is not charged in the RICO counts because the substantive counts for which he is charged are mirrored in the racketeering acts charged against Defendant Siegelman. See Houle, 237 F.3d at 75 ("The fact that Houle was not charged as a RICO defendant is of no consequence."); Stillo, 57 F.3d at 557. Contrary to Defendant Roberts's assertions, see Roberts Mot. at 9, the RICO counts of the second superseding indictment provide the "substantial identity of facts and participants" required to justify joinder of Defendant Roberts with the other Defendants in the second superseding indictment.

Like Defendant Scrushy, Defendant Roberts fails to acknowledge the line of cases recognizing a RICO count as an unifying link for joinder under Rule 8(b) and incorrectly asks this court to find a misjoinder of Defendants. See Roberts Brief at 9. Defendant Roberts cites to Manzella, 782 F.2d 533, see Roberts Brief at 8, but fails to recognize its instruction on joinder in RICO cases -- namely that joinder of a non-RICO defendant with a RICO defendant is proper where the substantive counts against the non-RICO defendant are examples of the RICO defendant's pattern of racketeering. See id. at 540 (upholding joinder where the two counts of mail fraud against the non-RICO defendant were also charged as predicate acts against the RICO defendant). Contrary to Defendant Roberts's assertion, the authority cited and discussed herein compels the conclusion that he is properly joined with Defendant Siegelman and the other Defendants.

## III.  Defendants Scrushy and Roberts Fail to Carry Their Heavy Burden to Justify Severance Under Rule 14

Rule 14 provides that "[i]f the joinder of . . . defendants in an indictment . . . appears to prejudice a defendant . . . the court may . . . sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14. Rule 14, like Rule 8(b), is to be liberally construed in

favor of joinder; persons jointly indicted should be tried together. See Zafiro, 506 U.S. at 537 (noting the "preference in the federal system for joint trials of defendants who are indicted together"). The determination of whether a severance should be granted under Rule 14 is entrusted to the sound discretion of the trial court and is reviewable on appeal only for an abuse of that discretion. United States v. Kopituk, 690 F.2d 1289, 1314-15 (11th Cir. 1982), cert. denied, 461 U.S. 928, and cert. denied, 463 U.S. 1209 (1983). See also Zafiro, 506 U.S. at 541 ("Rule 14 leaves the determination of risk of prejudice and any remedy that may be necessary to the sound discretion of the district court."). This Circuit has specifically noted that appellate courts are generally reluctant to second guess a district court's decision on severance. United States v. Baker, No. 00-13083, 2005 WL 3369204, at *32 (11th Cir. Dec. 13, 2005); Zielie, 734 F.2d at 1464.

The Supreme Court, in Zafiro, articulated a "two-step test" for determining whether a defendant is entitled to a severance. United States v. Blankenship, 382 F.3d 1110, 1122 (11th Cir. 2004) (citing Zafiro), cert. denied, __ U.S. __, 126 S.Ct. 42 (2005). First, a defendant must show that he would be prejudiced by a joint trial. Id. Only after a finding of sufficient prejudice does the district court "turn to the second step – determining whether severance . . . is the proper remedy for that prejudice." Id. As the Court in Zafiro emphasized, "Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." Zafiro, 506 U.S. at 538-39. A severance should be granted only in two circumstances: "if there is a serious risk that a joint trial would [1] compromise a specific trial right of one of the defendants, or [2] prevent the jury from making a reliable judgment about guilt or innocence." Id. at 539. See Blankenship, 382 F.3d at 1122-23.

-15-

In establishing the threshold consideration (i.e., whether the defendant will be prejudiced by a joint trial), the Eleventh Circuit pronounced in United States v. Hewes, 729 F.2d 1302 (11th Cir. 1984), cert. denied, 469 U.S. 1110 (1985), that

> "In order to demonstrate an abuse of discretion, the defendant must establish that the joint trial subjected him not just to some prejudice, but to compelling prejudice against which the district court could not afford protection." [United States v.] Harper 680 F.2d [731] at 733 [(11th Cir.), cert. denied, 459 U.S. 916 (1982)]. The test for compelling prejudice is "whether [considering] all the circumstances of the particular case, as a practical matter, it is within the capacity of the jury to follow the admonitory instructions and accordingly to collate and appraise the independent evidence against each defendant solely upon that defendant's own acts, statements, and conduct." [United States v.] Kabbaby 672 F.2d [857] at 861 [(11th Cir.1982)], quoting United States v. Zicree, 605 F.2d 1381, 1389 (5th Cir.1979), cert. denied, 445 U.S. 966, 100 S.Ct. 1656, 64 L.Ed.2d 242 (1980).

Id. at 1319. See also United States v. Schlei, 122 F.3d 944, 984 (11th Cir. 1997) (commenting that to satisfy the compelling-prejudice requirement a defendant must show that the jury will be unable to sift through the evidence and make an individualized determination of guilt as to each defendant), cert. denied, 523 U.S. 1077 (1998).

The defendant's burden under Rule 14 to demonstrate that a joint trial will result in specific and compelling prejudice against which the district court could not afford protection is "a heavy burden, and one which mere conclusory allegations cannot carry." United States v. Hogan, 986 F.2d 1364, 1375 (11th Cir. 1993). See also United States v. Baltas, 236 F.3d 27 (1st Cir.) (conclusory allegations of prejudice will not suffice to overcome the presumption in favor of joinder; "'[t]here is always some prejudice in any trial where more than one offense or offender are tried together but such "garden variety" prejudice, in and of itself, will not suffice.'") (quoting United States v. Boylan, 898 F.2d 230, 246 (1st Cir. 1990)), cert. denied, 532 U.S. 1030 (2001). For example, it is well settled that the compelling-prejudice standard is not met by a defendant's showing that he may have

-16-

a better chance at acquittal if tried separately. Zafiro, 506 U.S. at 540; Cassano, 132 F.3d at 651; Hewes, 729 F.2d at 1319. See also Baker, 2005 WL 3369204, at *32 ("It is not enough for a defendant appealing a denial of severance to show that acquittal would have been more likely had the defendant been tried separately, since some degree of bias is inherent in any joint trial.").

Defendants Scrushy and Roberts each claim that the "prejudicial spillover" from the evidence presented at a joint trial would result in compelling prejudice and meet the first step of the Zafiro test. See Scrushy Mot. at 23-27; Roberts Mot. at 6-9. Each Defendant claims that the quantity and quality of the evidence against him would produce compelling prejudice to warrant a severance. See Scrushy Mot. at 23-27; Roberts Mot. at 6-9. In particular, Defendants argue that the evidence presented at trial against each of them will be slight compared to the evidence admitted against Defendants Siegelman and Hamrick, Scrushy Mot. at 23-25; Roberts Mot. at 6-7, and that the nature of the offenses against them are vastly different compared to the charges against Defendants Siegelman and Hamrick. Scrushy Mot. at 25-27; Roberts Brief at 7-9. According to Defendants, these factors will preclude the jury from being able to assess and determine their guilt solely from the evidence admissible against them. Scrushy Mot. at 27; Roberts Brief at 7. In making these assertions, Defendants ignore, however, substantial precedent that rejects such assertions, the nature of the charges against them, and the evidence the government intends to offer at trial. Consequently, Defendants have not carried their "heavy burden" to justify a severance under Rule 14. Hogan, 986 F.2d at 1375.

As to Defendants' first allegation of "prejudicial spillover" (i.e., the quantity of evidence admissible against them is less than the amount of evidence admissible against the other Defendants), this Circuit has consistently held that a defendant does not suffer compelling prejudice

simply because much of the evidence at trial applies only to his co-defendants. Zielie, 734 F.2d at 1464. See also Baker, 2005 WL 3369204, at *32 (finding no compelling prejudice even when the disparity in the evidence was "enormous"); Blankenship, 382 F.3d at 1123 (same); Schlei, 122 F.3d at 984 (same); Krout, 66 F.3d at 1430 ("[N]either a quantitative disparity in the evidence nor the presence of a spillover effect requires a severance."); United States v. Cross, 928 F.2d 1030, 1039 n. 21 (11th Cir. 1991) (ruling that severance was not warranted even when "most of the evidence presented at trial is applicable only to [a defendant's] co-defendant"), cert. denied, 502 U.S. 985 (1991), and cert. denied, 502 U.S. 1060 (1992). In fact, "[t]his Circuit has displayed great reluctance to grant motions to sever on the basis of 'de minimis evidence' arguments." United States v. Watchmaker, 761 F.2d 1459, 1476 (11th Cir. 1985), cert. denied, 474 U.S. 1100, and cert. denied, 474 U.S. 1101 (1986). Contrary to their arguments, neither Defendant Scrushy nor Defendant Roberts is a marginal defendant who will sit idly by through a lengthy trial, most of which will not concern him. Even if they were, however, "joint trials involving defendants who are only marginally involved alongside those heavily involved are constitutionally permissible." United States v. Locascio, 6 F.3d 924, 947 (2d Cir. 1993), cert. denied, 511 U.S. 1070 (1994). "Similarly, it is not enough for the defendant to show that . . . the evidence against his co-defendant was stronger than that against himself." Cross, 928 F.2d at 1039 n. 21.

This is simply not a case where the evidence against either Defendant Scrushy or Defendant Roberts is so slight relative to the other Defendants that this Court should expect the jury to be unable to "'individualize each defendant in his relation to the mass.'" Watchmaker, 761 F.2d at 1476 (quoting Kotteakos v. United States, 328 U.S. 750 (1946)). In other words, the jury here should certainly be able to "avoid cumulating the evidence against all of the defendants and [] make

-18-

individualized guilt determinations." Id. Though the United States has produced a number of documents in discovery, the government expects that the vast majority of this material will not be presented to the jury. Moreover, Defendants cannot leverage the discovery obligations of the United States to obtain a severance under Rule 14. Contrary to Defendants Scrushy's and Roberts's suggestion, this is not a case where the jury will have to sift through a "warehouse" of evidence.[3] See Roberts Brief at 6. In addition, the United States expects the trial to last approximately two weeks, while counsel for Defendant Scrushy agreed with counsel for Defendant Siegelman that the trial would last between four to six weeks. Counsel for Defendant Roberts predicted that his defense would take between three and five days. See Exh. A at 29-30 (Transcript of Pretrial Hearing on November 16, 2005).

Most importantly for determining whether Defendants will suffer compelling prejudice from a joint trial and warrant a severance under Rule 14, the evidence against Defendants Scrushy and Roberts is neatly compartmentalized as to each one and sufficiently distinct in character to permit the jury "to follow the admonitory instructions and accordingly to collate and appraise the independent evidence against each defendant solely upon that defendant's own acts, statements, and conduct." Hewes, 729 F.2d at 1319 (citations and quotations omitted). Defendants Scrushy and Roberts affirm that the offenses charged against them, and the evidence to be presented to prove these offenses, are easily distinguishable as to each of them and that one can easily determine their particular association with the racketeering enterprise in which Defendants Siegelman and Hamrick participated. see Scrushy Mot. at 24 (noting that the charges against Defendant Scrushy relate to

---

[3]As the Court is well aware, the parties, in preparing for trial, always consider and evaluate much more material than what is actually presented to the jury during trial.

Racketeering Acts 1(a)-(g)); Roberts Mot. at 1 (noting that Defendant Roberts is charged only with offenses involving ALDOT). Furthermore, much of the same evidence offered at a joint trial against all Defendants is admissible in a separate trial against Defendants Scrushy and Roberts individually since, as Defendant Scrushy recognizes, see Scrushy Mot. at 27, a key element in the offenses charged against Scrushy and Roberts is the intent of the parties (i.e., Siegelman, Scrushy, and Roberts) to engage in the various bribery schemes alleged.[4]  In each situation, however, Defendant Scrushy is only on trial for the offenses arising out of the CON Board bribery scheme and Defendant Roberts is only on trial for the offenses arising out of the ALDOT bribery scheme.  No more is required to rebut Defendants' claim of compelling prejudice from a joint trial.  See Lane, 474 U.S. at 450 n.13 (finding that severance was not warranted under Rule 14 because the evidence as to the counts against the different defendants was "distinct and easily segregated"); Krout, 66 F.3d at 1430 (finding no compelling prejudice because the "evidence about [the defendant's] illicit activity was focused and compartmentalized . . . [and the] actual disputed factual issues concerning his guilt were simple and limited"); Welch, 656 F.2d at 1054 (holding that the district court properly denied the severance motion because the "evidence was neither so complex nor so confusing that the jury could not separate the evidence and properly apply it only to those against whom it was offered").

Though the United States contends that Defendants have not shown prejudice from a joint trial, "Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring

---

[4]For example, to prove the offenses arising out of and related to the bribery scheme against Defendants Siegelman and Scrushy concerning the CON Board, evidence of Defendant Siegelman's acceptance of bribes and things of value in exchange for official discretion in other bribery schemes is relevant and admissible against Defendant Scrushy to prove that Defendant Siegelman had the intent to accept bribes.  A similar analysis applies to the bribery scheme involving Defendants Siegelman and Roberts concerning ALDOT.

of the relief to be granted, if any, to the district court's sound discretion." <u>Zafiro</u>, 506 U.S. at 538-39.

<u>See</u> Rule 14 ("the court may . . . grant a severance of defendants or provide whatever other relief

justice requires"). "[L]ess drastic measures, such as limiting instructions, often will suffice to cure

any risk of prejudice." <u>Zafiro</u>, 506 U.S. at 539. <u>See also</u> <u>Blankenship</u>, 382 F.3d at 1125 n.27 (noting

that where defendants present mutually antagonistic defenses, the "best solution . . . is not

severance, but for the trial judge to issue proper limiting instructions"). This Circuit has repeatedly

held that the district court can prevent or mitigate any potential spillover prejudice by instructing the

jury to consider certain evidence as relevant only as to certain defendants or certain charges, to

consider the evidence separately as to each count of the indictment, and to determine guilt or

innocence on an individual basis. <u>See, e.g.</u>, <u>Baker</u>, 2005 WL 3369204, at *32; <u>Schlei</u>, 122 F.3d at

984 (potential prejudice avoided by instructions that each offense and the evidence pertaining to it

and each defendant should be considered separately and individually). <u>See also</u> <u>Zafiro</u>, 506 U.S. at

540-41 (even if there were some risk of prejudice, it was cured by jury instructions that the

government has the burden of proving beyond a reasonable doubt that each defendant committed the

crimes with which he was charged; that the jury must give separate consideration to each individual

defendant and to each separate charge against him; and that each defendant is entitled to have his

case determined from his own conduct and from the evidence that may be applicable to him).

Though Defendants fail to mention curative instructions as a possible, much less the proper,

remedy to cure any prejudice from a joint trial, the United States anticipates that this Court will

properly charge the jury about its duty to reach a verdict against each Defendant solely on the basis

of the evidence admissible against each Defendant, and thus diffuse and cure any potential prejudice

to any Defendant from a joint trial. In particular, the relevant Eleventh Circuit Pattern Jury

Instructions provide

> A separate crime or offense is charged against one or more of the Defendants in each
> count of the indictment. Each charge, and the evidence pertaining to it, should be
> considered separately. Also, the case of each Defendant should be considered
> separately and individually. The fact that you may find any one or more of the
> Defendants guilty or not guilty of any of the offenses charged should not affect your
> verdict as to any other offense or any other Defendant.
>
> I caution you, members of the Jury, that you are here to determine from the evidence
> in this case whether each Defendant is guilty or not guilty. Each Defendant is on trial
> only for the specific offense alleged in the indictment.

Eleventh Circuit Pattern Jury Instructions (Criminal), Basic Instructions § 10.4 (2003). Moreover,

the trial court will instruct the jury on the limited purposes for which certain evidence may be used.

Courts have routinely held that the giving of such instructions will cure any possible prejudice from

a joint trial and makes a severance unnecessary. See, e.g., United States v. Alvarez, 755 F.2d 830,

857-59 (11th Cir. 1985) (any potential prejudice in Government's introduction of evidence of a

murder and assault for which defendants A and B were not charged was minimized by trial court's

instructions immediately prior to and soon after the Government's introduction of such evidence that

the jury was not to consider such evidence in deciding the guilt or innocence of A or B for the counts

charging them with drug offenses), cert. denied, 474 U.S. 905 (1985), and cert. denied, 482 U.S. 908

(1987); Kopituk, 690 F.2d at 1320 ("The most efficacious tool to protect against this danger [of

'spillover'] is a clear cautionary instruction from the trial court as to the duty of the jurors to consider

each defendant and the evidence against him . . . separately."); Houle, 237 F.3d at 76 (noting that

"the district court took adequate measures to safeguard against the possibility of spillover prejudice

by repeatedly instructing the jury to consider the evidence separately as to each defendant").

"In general, the strong presumption is that jurors are able to compartmentalize evidence by respecting limiting instructions specifying the defendants against whom the evidence may be considered." Blankenship, 382 F.3d at 1123. See Zafiro, 506 U.S. at 540 ("'juries are presumed to follow their instructions'") (quoting Richardson v. Marsh, 481 U.S. 200, 211 (1987)); United States v. Harris, 9 F.3d 493, 501 (6th Cir. 1993) (recognizing the mandatory presumption that the jury is capable of sorting out the evidence and considering each defendant separately). "The courts have great faith in the efficacy of cautionary instructions in preventing any prejudice that might otherwise arise." 1A C. Wright, Federal Practice and Procedure Criminal 3d § 223 (2005 Pocket Part). Defendants Scrushy and Roberts have not overcome that presumption that the jury, pursuant to the trial court's instructions, will be capable of sorting out the evidence and making an individualized determination of their guilt. Consequently, they have failed to carry their "heavy burden" to have their trials severed from the other Defendants under Rule 14.

Defendants' other argument for severance (i.e., that prejudice will ensue from the differing nature of the charges alleged against all Defendants in the second superseding indictment) must also fail. Defendants Scrushy and Roberts each assert that a RICO case is too confusing to permit a jury to consider and assess evidence of RICO and non-RICO charges and make a finding of guilt as to RICO and non-RICO defendants. See Scrushy Mot. at 24-25; Roberts Brief at 8-9. Defendants' assertions are specious. Courts throughout the United States routinely try RICO cases involving RICO and non-RICO defendants. See Manzella, 782 F.2d at 540 (noting that though the evidence in the RICO case was, as expected, "massive and complex . . . [i]t was not so complicated, however, to prevent the jury from separating the evidence and properly applying it only to those against whom it was offered"). In such cases, the court instructs the jury to consider only the evidence presented

as to each defendant and make a determination of culpability as to each defendant for each offense charged against him. See supra at 5-6 (citing cases approving joint trials of RICO and non-RICO defendants and denying severance under Rules 8 and 14). Severance is granted only in the exceedingly rare case where "there is an overwhelming probability that the jury will be unable to follow the court's instructions and the evidence is devastating to the defense." Blankenship, 382 F.3d at 1124. Comparing the instant case to much more complex RICO cases in which the courts denied severance under Rule 14 shows that this litigation is not an exceedingly rare case deserving of the drastic remedy of severance of Defendants.

For example, in Castellano, 610 F. Supp. 1359, the district court denied the defendants' motions to sever under Rule 14 on the basis of prejudicial spillover. See id. at 1413. In that case, the court approved the joint trial of 21 defendants charged with various offenses in a 78-count indictment which included two RICO charges alleging 80 acts of racketeering involving an enterprise that spanned over 11 years and which would require the jury to make over 500 separate verdicts. See id. at 1396, 1397, and 1410. The court even rejected the severance motions of the eight defendants not named in the offenses pertaining to the "many murders" alleged in the indictment, including murders of "innocent witnesses." Id. at 1410-13. A joint trial, expected to last several months, was proper because the jury could be expected to obey the court's instructions to compartmentalize the evidence against each defendant and would be aided in this task via the use of notebooks, exhibit lists, and verdict forms. Id. at 1412. The court considered the defendants' claims of jury confusion and prejudicial spillover to be "overstated" and "exaggerated," respectively. Id.

Similarly, in <u>Cervone</u>, 907 F.2d 332, the court denied the non-RICO defendant's motion for severance under Rule 14 though the link between him and "the rest of the indicted defendants [was] somewhat tenuous." <u>Id</u>. at 341. The non-RICO defendant was the only defendant charged in the two counts against him, was neither charged in the RICO conspiracy count nor named in any of the racketeering acts, and "was the only one of the eighteen defendants not charged jointly in <u>any</u> count in the indictment with a defendant named in the RICO count." <u>Id</u>. The indictment charged 102 counts against the 18 defendants. <u>Id</u>. at 336. The court denied the non-RICO defendant's severance motion because the evidence of his "common scheme of a single labor bribe" was an "analytically discrete instance[] of corrupt interaction" with the RICO enterprise "which easily could have been considered separately by the jury." <u>Id</u>. at 342. Instead of granting a severance, the district court properly "twice delivered a limiting instruction designed to safeguard against the possibility of 'spillover' prejudice." <u>Id</u>. at 341. <u>See also</u> <u>Kopituk</u>, 690 F.2d at 1320 (denying Rule 14 motion in a case involving a seven-month trial, a 70-count indictment, 12 defendants, and 130 witnesses) (citing cases denying severance motions).

Finally, the instant case does not present any of the circumstances warranting a mandatory severance as articulated in <u>Blankenship</u>, 382 F.3d at 1124. Neither Defendant Scrushy nor Defendant Roberts points to any particularly "gruesome" or "powerful" evidence that will be admissible solely against the other Defendants and would call into "question a jury's ability or willingness to follow limiting instructions." <u>Id</u>. at 1124 n.25. Certainly, if the defendants not named in murder charges can be tried jointly with co-defendants who are charged with murder, <u>see</u> <u>Castellano</u>, 610 F. Supp. at 1410-13, then Defendants Scrushy and Roberts can be jointly charged with Defendants Siegelman and Hamrick though the latter two face obstruction-of-justice charges.

-25-

Even a cursory review of the precedent in this and other Circuits, as detailed herein, shows that this is not one of "an extremely narrow range of cases in which the sheer number of defendants and charges with different standards of proof and culpability, along with the massive volume of evidence, makes it nearly impossible for a jury to juggle everything properly and assess the guilt or innocence of each defendant independently." Blankenship, 382 F.3d at 1124. A jury sitting in the Middle District of Alabama is as able, competent, and intelligent to follow this Court's instructions and make individualized determinations of guilt as any jury in any other federal district. Defendants do not claim anything to the contrary, nor can they.

Lastly, neither Defendant Scrushy nor Defendant Roberts is "being charged with a crime that, while somehow related to the other defendants or their overall criminal scheme, is significantly different from those of the other defendants." Id. at 1125. Defendants Scrushy and Roberts are charged with offenses pertaining to respective bribery schemes involving Defendant Siegelman – schemes that are very similar to each other and to the bribery scheme that is the basis for the remaining counts alleged against Defendants Siegelman and Hamrick. Even the obstruction-of-justice charges against Defendants Siegelman and Hamrick pertain to their attempts to cover up their actions in a bribery scheme not involving Defendants Scrushy or Roberts. Simply stated, this entire case involves the sale of official action and influence by Defendants Siegelman, Hamrick and Roberts in exchange for money, property, and other things of value from Defendants Scrushy and others. Consequently, all Defendants should be tried jointly and not in separate trials. See id. at 1126 (noting that a joint trial of all defendants was proper because "the numerous charges concern essentially related courses of criminal conduct").

**IV.    Conclusion**

The United States has a strong interest in trying this case jointly with all Defendants. "Rule 8(b) and 14 are designed 'to promote economy and efficiency and to avoid a multiplicity of trials, [so long as] these objectives can be achieved without substantial prejudice to the right of the defendants to a fair trial.'" Zafiro, 506 U.S. at 540 (quoting Bruton v. United States, 391 U.S. 123, 131, n.6 (1968) (internal quotations omitted)). In addition, trying jointly defendants who have been indicted together "serves the interest of justice by avoiding the scandal and inequity of inconsistent verdicts." Richardson v. Marsh, 481 U.S. 200, 210 (1987). See also United States v. Soto-Beniquez, 356 F.3d 1, 29 (1st Cir. 2003) ("the general rule is that those indicted together are tried together to prevent inconsistent verdicts and to conserve judicial and prosecutorial resources"), cert. denied, 541 U.S. 1074, and cert. denied, __ U.S. __, 125 S.Ct. 639 (2004).

Defendants Scrushy and Roberts have failed to show that joinder is improper under Rule 8(b) or that a severance is warranted under Rule 14. The offenses charged against Defendants Scrushy and Roberts arise out of, relate to, and are embraced by the RICO counts charged in the second superseding indictment. Consequently, joinder is proper under Rule 8(b). In addition, the offenses charged against Defendants Scrushy and Roberts and the proof of their guilt of such offenses is sufficiently distinct to permit a jury to make an individualized determination of their culpability. This Court can cure any possible prejudice from a joint trial of Defendants by giving the appropriate limiting instructions. Ergo, Defendants Scrushy and Roberts have not carried their burden to be granted a severance under Rule 14. Based on the foregoing and the great weight of authority of this and other Circuits, Defendants Scrushy's and Roberts's Motions are due to be DENIED.

Respectfully submitted this the 11th day of January, 2006

                    LOUIS V. FRANKLIN, SR.
                    ACTING UNITED STATES ATTORNEY

                    /s/ J.B. Perrine
                    Assistant United States Attorney
                    One Court Square, Suite 201
                    Montgomery, AL 36104
                    Phone: (334)223-7280
                    Fax:   (334)223-7135
                    Email: jb.perrine@usdoj.gov
                    ASB-9077-E31J

# EXHIBIT A

Page 1

```
 1          IN THE UNITED STATES DISTRICT COURT FOR

 2              THE MIDDLE DISTRICT OF ALABAMA

 3                     NORTHERN DIVISION

 4

 5

 6   UNITED STATES OF AMERICA

 7

 8        Vs.              CR. NO. 05-119-F

 9

10   DON EUGENE SIEGELMAN, RICHARD

11   M. SCRUSHY, PAUL MICHAEL HAMRICK

12   and GARY MACK ROBERTS

13             Defendants

14

15

16

17             STATUS CONFERENCE

18      *    *    *    *    *    *    *

19      Before Hon. Mark E. Fuller, Judge,

20      at Montgomery, Alabama, November 16, 2005

21      *    *    *    *    *    *    *

22

23

24

25
```

Page 2

```
 1   APPEARANCES: For the Government: Louis V. Franklin, James B.

 2                          Perrine, Stephen P. Feaga,

 3                          Richard C. Pilger and Joseph

 4                          L. Fitzpatrick, Jr.,

 5                          Assistant U.S. Attorneys

 6   For the Defendant, Seigelman:  G. Douglas Jones,

 7                          Charles R. Pitt

 8                          Attorneys at Law

 9   For the Defendant, Scrushy:  H. Lewis Gillis,

10                          Chris Whitehead and Bruce

11                          Maloy,

12                          Attorneys at Law

13   For the Defendant, Hamrick: Ronald W. Wise,

14                          Attorney at Law

15   For the Defendant, Roberts: Stewart D.

16                          McKnight, III,

17                          Attorneys at Law

18   Also Present:

19             Richard M. Scrushy

20             Paul M. Hamrick

21             Don Eugene Siegelman

22

23

24

25
```

Page 3

1    (The above case coming on for hearing at Montgomery,
2  Alabama, November 16, 2005, before Honorable Mark E. Fuller,
3  Judge, the following proceedings were had commencing at 11:07
4  a.m.:)
5       THE COURT: Good morning, counsel, and parties.
6  Because of the number of participants this morning I thought
7  it would be better to have our status conference in
8  chambers -- or in the courtroom in lieu of chambers. I had a
9  request from my court reporter to get a rollcall from
10  everyone, so if you would go around and take this time to
11  introduce each client and the attorney representing that
12  client, as well as the attorneys for the United States so
13  that Jimmy can get an accurate identification of everyone for
14  an accurate record. We will have all of these proceedings,
15  status conferences as well as all formal proceedings on the
16  record. So let's do that first.  If we can, start with the
17  United States and get a rollcall.
18       MR. FRANKLIN: Yes, Your Honor. Louis Franklin for
19  the United States, Your Honor.
20       MR. FEAGA: Steven Feaga for the United States, Your
21  Honor.
22       MR. FITZPATRICK: Good morning, Your Honor, Joseph
23  Fitzpatrick for the United States.
24       MR. PILGER: Richard Pilger for the United States,
25  Your Honor.

Page 4

1       MR. PERRINE: J.B. Perrine for the United States,
2  Your Honor.
3       MR. JONES: Your Honor, I am Doug Jones for Governor
4  Siegelman.
5       MR. PITT: Your Honor, Redding Pitt for Governor
6  Siegelman.
7       MR. WISE: Ron Wise, Your Honor, for Mr. Paul
8  Hamrick.
9       MR. MCKNIGHT: David McKnight on behalf of Mack
10  Roberts.
11       MR. MALOY: Your Honor, I am Bruce Maloy from
12  Atlanta, Georgia, on behalf of Richard Scrushy and I have
13  filed a petition to appear pro hac in this matter.
14       THE COURT: That's still pending as of this morning
15  I believe, Mr. Maloy.  You may proceed as though it were
16  ruled on and we will get a ruling on that timely.
17       MR. MALOY: Thank you, Your Honor.
18       MR. GILLIS: Your Honor, Lewis Gillis for Richard
19  Scrushy.
20       MR. SCRUSHY: Richard Scrushy, Your Honor.
21       THE COURT: Good morning.
22       MR. WHITEHEAD: Your Honor, Chris Whitehead on
23  behalf of Richard Scrushy.  I have not filed a notice of
24  appearance yet, but I will do that.
25       MR. SIEGELMAN: Your Honor, I'm Don Siegelman.

## Page 25

1   And I don't know that this Court has ever done that,
2   but to avoid the argument that if we needed to put a summary
3   witness on, that we had failed to notify them, and that's why
4   the information we gave them is pretty general. Is that, you
5   know, and we haven't really formulated our final trial
6   strategy yet. The focus of these would be witnesses like
7   that, they have the discovery, these witnesses might come in
8   and say I have reviewed this series of bank records and yeah,
9   I found this check and that check in there and here's what
10  the payee says on it and that sort of thing. We just don't
11  want to get caught in the trap of having someone say that was
12  expert testimony. We don't believe it is.
13     Now, with regards to say the ethics commission,
14  generally by and large witnesses like that from state
15  agencies or from governmental agencies we would expect that
16  we might ask them about the procedures for how their agencies
17  are operating, how they normally operate, and did they
18  operate that way in regard to certain facts that may come
19  into evidence in this case. If that's expert testimony, we
20  don't believe it is, but it might be determined to be, we
21  have notified them of that.
22     It is possible, and if we get there, that we have
23  someone who is actually rendering what we traditionally
24  classify as a true expert opinion, which would be -- say we
25  are going to ask the Court to allow evidence in let's say

## Page 26

1   from the ethics commission director as to whether or not a
2   given transaction should have been reported under the law.
3   That's the kind of thing that if we get to that point, and we
4   are not there right now, that we would I think turn that over
5   to them if we get something like that, where he is actually
6   rendering an opinion so-to-speak, for what we consider expert
7   testimony. I hope that answers their question. These
8   witnesses I think are really going to be summarizing, to the
9   extent that we use them, and we may not, we just want to be
10  able to do that to summarize exhibits that will be in
11  evidence through the custodians of various records, that sort
12  of thing.
13     THE COURT: Well, I would imagine that in this type
14  of case with the volume of discovery and the volume of
15  documentation and the likelihood of having a large number of
16  witnesses, that we will be very careful about trying to set a
17  pretrial in this case early on and identify things such as
18  disclosure of expert witnesses and cover who would qualify as
19  an expert and who would not qualify as an expert. And I
20  would be in contact with Magistrate Judge Coody and we can
21  help counsel give some guidance to what you should expect.
22     MR. FEAGA: Yes, sir.
23     THE COURT: And while I'm on the topic of the
24  pretrial order I would likely have a pretrial hearing and an
25  order correspondingly at least 45 to 60 days before trial so

## Page 27

1   that you could have an idea about an earlier deadline for
2   filing proposed voir dire, jury instructions, motions in
3   limine and then have some time for response before trial,
4   rather than in the typical criminal case the eve of trial. Do
5   you see any problem with that, Judge Coody?
6      JUDGE COODY: Not really.
7      THE COURT: Should the Court expect a motion to
8   sever from any of the Defendants in this case?
9      MR. MALOY: Yes, Your Honor, on behalf of Mr.
10  Scrushy.
11     MR. MCKNIGHT: Yes, Your Honor, on behalf of Mr.
12  Roberts.
13     THE COURT: Let me start with Mr. Maloy on behalf of
14  Mr. Scrushy, how soon would you be in a position to file a
15  motion to sever along with a legal brief?
16     MR. MALOY: Your Honor, I would ask for a date three
17  weeks from today, the same date as the reciprocal discovery,
18  I believe December 7th.
19     THE COURT: Mr. McKnight, is that --
20     MR. MCKNIGHT: Yes, sir, we can meet that date also.
21     MR. WISE: Your Honor, on behalf of Mr. Hamrick,
22  until I have had an opportunity to review the discovery I
23  can't absolutely rule out a motion to sever.
24     THE COURT: Do you think, Mr. Wise, that you would
25  have enough time to review discovery and have a meaningful

## Page 28

1   opportunity to prepare a motion to sever within three weeks?
2      MR. WISE: Based on the representations of the
3   United States Government as to what I am getting today, yes,
4   sir, I think that would be fine.
5      THE COURT: All right. I will require any party
6   wishing to file a motion to sever to file its motion along
7   with a corresponding brief in support of your motion no later
8   than December 14th. Because of the holiday schedule would the
9   government like an opportunity to respond to the motion, if
10  any is filed?
11     MR. FRANKLIN: Yes, Your Honor, we would.
12     THE COURT: How long do you think you would need to
13  file a motion or response to the motion, Mr. Franklin?
14     MR. FRANKLIN: One moment, Your Honor. Judge Fuller,
15  we would ask three weeks to respond. We would ask for that
16  amount of time because of the holiday season. If their
17  motions are filed on the 14th, we would ask for three weeks.
18     THE COURT: Response to any motion to sever along
19  with corresponding brief by January the 4th, 2006. And I will
20  allow the moving party one week to file a reply, which will
21  be January the 14th of '06. I wrote down the 7th. The motions
22  and the briefs are to be filed by December 14th, the
23  responses with briefs due by January the 4th, and the replies
24  with any additional documentation by January the 11th. How
25  long does each side expect this case to try? Do you have any

Page 29

1  idea of that under the circumstances, Mr. Franklin?

2      MR. FRANKLIN: Judge, we believe that we could put

3  our case on in about two weeks.

4      THE COURT: Mr. Jones, how long would you anticipate

5  either the trial or your case in defense on behalf of Mr.

6  Siegelman?

7      MR. JONES: Your Honor, it's so hard for us to gauge

8  at this point. I would be very surprised if the government

9  can put their case on in two weeks unless these cases are

10  severed. Two weeks for each case, that's possible I guess,

11  but with cross-examination from four defense lawyers that may

12  be a little optimistic. I was thinking total, and this is

13  just -- I mean this is just a wild guess, Judge, I would

14  think total four to six weeks, for total, for everyone.

15  That's assuming one trial with all Defendants, Your Honor.

16      THE COURT: Mr. Wise, how long do you anticipate

17  either the case in chief on behalf of Mr. Hamrick or the case

18  as a whole taking to try?

19      MR. WISE: Your Honor, as far as Mr. Hamrick, until

20  I have had an opportunity to review all the discovery it

21  would be nothing but a guess, therefore I have no opinion at

22  this time. But I do agree with Mr. Jones from reading the

23  indictment and the little bit of discovery I have been able

24  to review thus far, I think four to six weeks is reasonable.

25      THE COURT: Mr. McKnight, are you in a position to

Page 30

1  render any better opinion than what the other two defense

2  counsel have been able to render?

3      MR. MCKNIGHT: No, sir. I would guess that Mr.

4  Roberts' portion of the defense would take three to five

5  days.

6      THE COURT: Mr. Maloy or Mr. Gillis, is there any

7  expectation on behalf of your client as to the length of the

8  defense?

9      MR. MALOY: Your Honor, I can only say I can't

10  disagree with the estimate of four to six weeks, that sounds

11  reasonable with the caveat that it's pretty speculative, but

12  reasonable.

13      THE COURT: Well, obviously I am looking at a

14  special term setting this case for trial. The Speedy Trial

15  Act I think by my calculations begins to run as to three of

16  the Defendants on January the 3rd and maybe to the fourth

17  Defendant on January the 4th. Let me start with the defense

18  and ask if there is a suggested time or month for trial?

19      MR. JONES: Your Honor, that is the dilemma that we

20  have been discussing among ourselves. There are a number of

21  issues, Your Honor.

22      THE COURT: I understand.

23      MR. JONES: Mr. Siegelman is not -- has not filed a

24  written waiver and we will not file a written waiver of

25  speedy trial rights and we'd like an early setting. I would

Page 31

1  note for the Court that at least counsel for three of the

2  Defendants and possibly a fourth within a week are also set

3  for trial in front of Judge Propst the first week of April in

4  a public corruption case up there as well. From my client's

5  perspective we'd like to try this case prior to that time. I

6  don't know, Your Honor, candidly if that is something that

7  could also be taken up with Judge Propst. There are a number

8  of lawyers that are assembled and also the lawyers up there

9  would probably not be opposed to some delay in that case, but

10  there are some logistics issues with trying this case at the

11  earliest opportunity, but from Governor Siegelman's

12  standpoint we'd certainly like one at the earliest

13  opportunity.

14      THE COURT: How about Mr. Hamrick?

15      MR. WISE: Your Honor, I am one of the lawyers that

16  Mr. Jones is referring to that's involved in the case in

17  front of Judge Propst in Birmingham which is set I believe

18  April 2nd or April 3rd. Until I look at the discovery, Your

19  Honor, I don't know whether or not my client would be willing

20  to file a waiver of speedy trial. He may want to go ahead

21  depending on what is in discovery. So at this time, Your

22  Honor, I cannot answer your question. I don't know what all

23  is going to be involved as far as the work we will have to do

24  to defend this case until I get it.

25      THE COURT: Mr. Roberts?

Page 32

1      MR. MCKNIGHT: Judge, I am the lawyer he referred to

2  who may be in that case in Birmingham. We have -- I have

3  obtained and prepared to file today a waiver of the speedy

4  trial on behalf of my client, Mack Roberts. And with the

5  Court's permission will do so at this time.

6      THE COURT: You may approach.

7      MR. MCKNIGHT: (complies)

8      THE COURT: Mr. Scrushy?

9      MR. MALOY: Yes, Your Honor, on behalf of Mr.

10  Scrushy let me first say that one of the lawyers who will be

11  most involved in defending Mr. Scrushy, Mr. Art Leach, who

12  couldn't be here today because he is on trial in Birmingham,

13  is also involved in this specially set April case in

14  Birmingham, so he has that same conflict. Mr. Scrushy's

15  position is that he wants an early trial in this matter. He

16  is not waiving his speedy trial rights. Having said that,

17  Your Honor, we understand that we are asking for the Court's

18  assistance through its rulings in getting this case ready for

19  trial and there's a lot of things that we are asking for that

20  are with the routine operation of the Speedy Trial Act going

21  to stop the clock and cause that 70 days to get spread out

22  with a number of excludable days. From the perspective of

23  when this case could be ready for trial, my opinion is, and I

24  haven't had a chance to discuss this with Mr. Leach because

25  he has been on trial, is that a setting unfortunately about

1 the same time as the case in Birmingham of the latter part of
2 March or early part of April would be the earliest practical
3 time to try it given the volume of discovery and other issues
4 pending in this case.
5     THE COURT: Let me hear from the United States.
6     MR. FRANKLIN: Well, Judge, just looking at the
7 schedule that the Court has entered in terms of the motion to
8 sever, and keeping in mind the Speedy Trial Act, that would
9 put us in February at this point, and that's without any
10 other motions being filed. If the Court were to set it in
11 February the United States would be ready to go. We'd be
12 ready to go at whatever time the Court sets this matter.
13     MR. JONES: Your Honor, if I could, and I do agree
14 with Mr. Maloy that all things being equal that a late March
15 or early April setting would be appropriate, it's just that
16 bumping into the Northern District case --
17     THE COURT: I understand. Do counsel find that these
18 types of status conferences helpful if we were to stay
19 diligent as far as maintaining the status of discovery and
20 the status of the cases and identifying any problems having
21 these types of status conferences, do you find that they are
22 helpful?
23     MR. FRANKLIN: The government does, Your Honor.
24     MR. JONES: Your Honor, we certainly would. Knowing
25 we have probably got two or three different lawyers and with

1 our schedules you may see a different lawyer each time but we
2 will be consistent.
3     THE COURT: And I will try not to set them without
4 having some purpose behind it, and obviously the next status
5 conference may well be after the motions to sever have been
6 briefed and under submission so that we can take a look at
7 the realistic possibility of a severance and a trial date
8 afterwards. How about other counsel, Mr. McKnight or Mr. Wise
9 or Mr. Gillis or Mr. Maloy, do you find them to be helpful?
10     MR. WISE: Yes, sir, Your Honor.
11     MR. McKNIGHT: Very helpful, Your Honor.
12     MR. MALOY: I agree, Your Honor.
13     THE COURT: I am not the kind of Judge that just
14 wants you to tell me that you agree with something just
15 because I think it's a good idea, I want you to know up
16 front, if you don't think what I have suggested is a good
17 idea please don't hesitate to say I believe that's a bad
18 idea.
19     MR. MALOY: I genuinely feel that it would be
20 helpful.
21     MR. FEAGA: We genuinely feel that way also, Judge.
22     THE COURT: Well, I have never had the experience
23 that you ever held short on telling me something was a bad
24 idea when, in fact, it turned out to be so.
25     MR. FEAGA: Thank you for that, Your Honor.

1     THE COURT: All right. Then I know there are some
2 matters that have been brought to the Court's attention that
3 we might need to take up outside of a public setting here.
4 There was an issue about indictments, issues about protective
5 orders. We covered the Speedy Trial Act. I will take up
6 those issues lastly. Are there any issues that the parties
7 can think of that we need to take up before we take up the
8 two other matters in chambers?
9     MR. JONES: Your Honor, just -- I think it would be
10 more of a matter in chambers but we would like to briefly
11 discuss the recusal order, denying the recusal order of last
12 week, but -- we do plan on appealing that, but the logistics
13 in chambers.
14     THE COURT: Certainly. Anything else from either the
15 United States or any of the Defendants that we need to take
16 up during the status conference before we take these matters
17 up in chambers?
18     MR. FRANKLIN: Nothing from the United States, Your
19 Honor.
20     THE COURT: All right. Then I certainly am aware of
21 the desire and the need to make as many of these hearings
22 public as absolutely possibly can be because of the good name
23 and character of certain persons involved. The Court deems it
24 necessary to recess the remainder of these proceedings to
25 chambers and we will do so immediately following the

1 adjournment of this hearing. For the record, I also have a
2 criminal jury trial that is out deliberating and I have been
3 notified that they have a question. If I could take the
4 question at this time and we can decide what we are going to
5 do on both issues.
6     THE MARSHAL: (complies)
7     THE CLERK: (complies)
8     THE COURT: If I could ask the attorneys in case
9 number 05cr-119, United States versus Mr. Siegelman, Hamrick,
10 Roberts and Scrushy to adjourn upstairs to my chambers, my
11 law clerks will follow you up there to make sure that you are
12 taken care of there. We will take up this question and I will
13 meet you upstairs as soon as this issue is resolved. Court
14 will be in recess.
15     (At which time, 11:58 a.m., the hearing was
16 adjourned.)
17     . . . . .
18     I certify that the foregoing is a correct transcript
19 from the record of proceedings in the above-entitled matter.
20 This the 22nd day of November, 2005.
21     _Official Court Reporter_
22
23
24
25

IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | )    **CRIMINAL NO. 2:05-CR-119-F** |
| DON EUGENE SIEGELMAN, | ) |
| PAUL MICHAEL HAMRICK, | ) |
| GARY MACK ROBERTS, and | ) |
| RICHARD M. SCRUSHY | ) |

## CERTIFICATE OF SERVICE

I hereby certify that on January 11, 2006, I electronically filed the foregoing with the Clerk of the Court  using the CM/ECF system which will send notification of such filing to all counsel of record.

Respectfully submitted,

LOUIS V. FRANKLIN, SR.
ACTING  UNITED STATES ATTORNEY

/s/ J.B. Perrine
Assistant United States Attorney
One Court Square, Suite 201
Montgomery, AL 36104
Phone: (334)223-7280
Fax:    (334)223-7135
Email: jb.perrine@usdoj.gov
ASB-9077-E31J