IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

UNITED STATES OF AMERICA,

v.                                                    Case No. 2:05cr119-F

RICHARD M. SCRUSHY,
    Defendant.

## OBJECTIONS TO ORDER AND MEMORANDUM OPINION OF MAGISTRATE JUDGE DENYING DEFENDANTS' MOTIONS FOR RECUSAL

COMES NOW Richard M. Scrushy, by and through his undersigned counsel and, pursuant to 28 U.S.C § 636(b)(1)(A), files this objection to the November 10, 2005 Order and Memorandum Opinion on Recusal of the United States Magistrate Judge, (Doc 41), denying Defendant's motion for recusal and the January 3, 2006 Order (Doc 84) denying Defendant's motion for reconsideration. In support of these objections, Defendant respectfully shows this Court the following:

1. On October 28, 2005 United States Magistrate Judge Charles S. Coody ("Judge Coody") orally informed Defendant Scrushy and counsel of certain facts which could raise a basis for recusal, and directed Defendant to file a motion within seven days if Defendant contended that recusal was necessary. (Transcript of Proceedings, October 28, 2005 at 7-9.)

2. On November 4, 2005 Defendant filed "Defendant Richard M. Scrushy's Motion to Recuse Pursuant to 28 U.S.C. §§ 455(a) and (b)(5)(iii)" (hereinafter "motion to

recuse"). (Doc 34.)  Co-Defendants Gary Mack Roberts and Don Eugene Siegelman also filed motions to recuse.  (Doc 32, 33.)

3.  On November 9, 2005, the Government filed its "United States' Response to Defendants' Motions for Recusal." (Doc 38.)

4.  On the next day, November 10, 2005, Judge Coody filed a 20-page Memorandum Opinion (hereinafter "Memorandum Opinion") (Doc 41.)

5.  Pursuant to this Court's direction in a status conference on November 16, 2005, Defendant Scrushy filed a "Motion for Reconsideration of Magistrate's Order and Memorandum Opinion Denying Defendants' Motions for Recusal" ( hereinafter "motion for reconsideration"). (Doc 56.)  Co-defendant Siegelman filed a similar request. (Doc 58.)

6.  On December 21, 2006 the Government filed its "United States' Response to Defendant Scrushy's and Siegelman's Motions for Reconsideration of Magistrate's Order on Recusal" (hereinafter "response to motions for reconsideration"). (Doc 73).[1]

---

[1] Pursuant to this Court's direction, the Government filed this response with the Clerk in Montgomery under seal. Since the pleading was filed under seal, it was not served on all counsel of record electronically through the Court's ECF system. The only service on counsel that the Government attempted was to send *by regular United States Mail* to *one* of Defendant's counsel of record, Arthur W. Leach, at his mailing address in Birmingham, Alabama. This was done despite the fact that one of Defendant's counsel of record, Henry Lewis Gillis, maintains offices in Montgomery, Alabama. Despite numerous calls to the Clerk and the United States Attorney's office, a copy of this pleading was not made available to Defendant's counsel until December 27, 2005. The service copy sent by the mail was not received by Defendant's counsel until January 12, 2006. Defendant respectfully requests that this Court direct the Government to serve Defendant's counsel of record with all future sealed pleadings by a method (facsimile or hand delivery) that is contemporaneous with the method employed by the Government to deliver such pleadings to the Clerk's office for filing.

7. On January 3, 2006, Judge Coody entered an Order denying Defendants' motions for reconsideration. (Doc 84.)[2]  The substance of this January 3, 2006 Order states in its entirety:

> I have carefully studied the motions, the evidentiary materials, and the case law on which the parties rely. I conclude that the motions for reconsideration which are replete with innuendo, conjecture and speculation are insufficient to warrant reconsideration of my conclusions reached in the November 11, 2005 memorandum opinion and order.

8. Defendant files these Objections pursuant to 28 U.S.C. § 636(b)(1)(A). *See United States v. Raddatz*, 447 U.S. 667, 680 (1980) (concluding that due process rights are adequately protected by § 636(b)(1) by granting district judge broad discretion to accept, reject or modify magistrate's rulings); *United States v. Mers*, 701 F.2d 1321, 1338 (11th Cir. 1983) (28 U.S.C. § 636(b)(1) "provides that a federal judge may reject, in whole or in part, the findings of the magistrate."); *United States v. Santana*, 808 F.Supp. 77, 79-80 (D. Mass. 1992), *rev'd on other grounds,* 6 F.3d 1 (1st Cir. 1993) ("A dissatisfied litigant may obtain review of a dispositive pretrial motion issued by a magistrate judge by filing an objection to a report and recommendation in the district court. A *de novo* standard of review applies. The district court may accept, reject or modify the recommendation, receive additional evidence or recommit the matter to the magistrate judge with instructions." (citations omitted)).

9. As presented in Defendant Scrushy's initial recusal motion and Defendant's motion for reconsideration, which are both adopted in full as part of these objections, Defendant respectfully submits that Judge Coody's recusal is required under §§ 455(a)

---

[2] On December 23, 2005, Judge Cody entered an Order denying co-Defendant Hamrick's motion to adopt the recusal motions filed by Defendants Scrushy and Siegelman. (Doc 74.)

and/or (b)(5)(iii). Absent the granting of Defendant's motion to recuse, since this motion presents a timely request for recusal that is clearly not frivolous, which rises to the threshold standard to require recusal under § 455, and involves a fact-specific inquiry concerning Judge Coody's relationships related to the factual matters in the instant criminal case, Defendant respectfully submits that this motion should be referred to another United States Magistrate Judge for an evidentiary hearing and determination or, in the alternative, that this Court should determine the full extent of the facts related to this issue and make a *de novo* determination as to the necessity of recusal under all of the facts as determined by this Court.

### Argument and Authorities

### A. The Need for an Evidentiary Hearing

As raised in Defendant Scrushy's initial recusal motion at pages 5-6, and Defendant's motion for reconsideration at pages 3, and 6 n.1, Defendant is being required to raise and litigate this important issue without access to all of the information necessary to understand and assess the potential effect of Judge Coody's relationships under either the standard of § 455(a) (magistrate judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned") or the mandatory disqualification required under § 455(b)(5)(iii) (where a relative is "known by the judge to have an interest that could be substantially affected by the outcome of the proceeding").

At the time Defendant was required by Judge Coody's oral order to file his motion, the only information that Defendant had available to him was what was provided orally by Judge Coody in the October 28, 2005 conference, and set out in his

Memorandum Opinion at page 2. Defendant's initial motion to recuse listed numerous facts which Defendant did not have access to, but were essential to understand the nature and scope of the relationships giving rise to the potential for recusal. (*Id.* at 5-6, 7-8.) Included in those questions was "whether, for instance, Mr. Brandt owns stock in HealthSouth,..." (*Id.* at 7.)

Judge Coody's Memorandum Opinion, entered the day after the Government's response was filed, stated:

> Following these disclosures, I have subsequently learned that my oldest daughter and her husband [Mr. Brandt], by virtue of their ownership of stock in HealthSouth Corporation, are members of the putative plaintiff class in *In Re Healthsouth Corporation Securities Litigation,* 2:03-cv-01500-KOB (N. D. Ala.) in which Richard Scrushy is a named defendant.

(Memorandum Opinion at 2) (footnote omitted). Judge Coody's Order then goes on indicate that these additional facts will be assessed "[e]ven though the parties have not raised this as a ground for recusal." (*Id.*) (footnote omitted). Defendant did not raise that ground in his motion for one simple reason: Defendant was unaware of this important fact until Judge Coody revealed it in his Memorandum Opinion denying Defendant's motion.

In Defendant's motion for reconsideration submitted to Judge Coody, Defendant set out additional facts which Defendant submitted, and Defendant respectfully submits now, are still necessary to litigate and determine the question of whether or not recusal is required under either subsection of § 455. In regard to the relationship of Judge Coody with his daughter and son-in-law, Defendant set out the following unanswered questions:

> For instance, in regard to Judge Coody's son-in-law and daughter, what is the extent of their holdings in HealthSouth stock? What information, if any, has Judge Coody obtained from his son-in-

> law or daughter about HealthSouth that may have come from sources other than "internal corporate information"? *See* Order at 6 n. 5 and 13. What discussions, if any, has Judge Coody had with his family members concerning the massive fraud at HealthSouth, about Richard Scrushy's alleged involvement in that fraud, or the lengthy trial and acquittal on his previous criminal indictment? What are Judge Coody's son-in-law's duties and responsibilities at HealthSouth? What are his contacts, if any, to individuals at HealthSouth who, notwithstanding his acquittal on all counts in the Birmingham criminal trial, still believe that Richard Scrushy is responsible for the fraud at HealthSouth and are actively pursing him for criminal and civil liability for the fraud at HealthSouth?

(*Id.* at 6 n.1.)

In regard to the relationship of Judge Coody to the daughters of Government witness Forest "Mac" Marcato, whom Judge Coody has indicated he helped coach in debate and with whom he had conversations concerning their father's problems with the State of Alabama relating to his road striping business, Defendant's motion for reconsideration set out the following unanswered questions:

> A review of the Marcato FBI 302 demonstrates the paucity of facts concerning Judge Coody's conversations with Jennifer and Emily Marcato that have been related in the oral statements of Judge Coody and his November 10, 2005 Order. For instance, how many of these conversations occurred? Were there any allegations of illegal activities directed at their father? Were there any requests for advice or assistance? From the FBI 302, it is apparent that the activities that Mr. Marcato is claiming occurred were hardly the typical "difficulties with business" that children will hear and repeat. *See* Order at 2.

(*Id.* at 20 n. 4.)

These questions, and many questions their answers might lead to, remain completely unanswered in either of Judge Coody's orders and consequently remain *de hors* the record in this case. This demonstrates the problem inherent in the process that Judge Coody has followed—and the Government so vociferously defends, *see* response

at 1-8—regarding this critical issue of recusal. In his motions, Defendant pointed out the additional facts which he believed were necessary to determine the question of recusal under either subsection of § 455, and specifically alleged that an evidentiary hearing was necessary to make a complete record on this motion in light of the potential problems raised by both Judge Coody's relationship to and conversations with the daughters of a key Government witness and the fact that Judge Coody's son-in-law is currently a Vice President at HealthSouth and has been employed there during Mr. Scrushy's tenure as C.E.O. Further, a reading of Judge Coody's Memorandum Opinion indicates that Judge Coody has conducted additional investigation into the facts relating to recusal, as acknowledged in the Government's response at pages 5-6: "In fact, Judge Coody undertook the proper procedure in ruling on Defendants' Motions to Recuse by conducting an independent investigation of his relationship with his relatives and his interaction with Marcato's daughters." Needless to say, neither the parties nor this Court, know what investigation or conversations took place as part of this inquiry. Likewise, the record in this case does not reveal precisely what these inquiries yielded.

The only response that Judge Coody's Order provided to Defendant's unambiguous request for an evidentiary hearing is found in a footnote at page 2 of the Memorandum Opinion, which states in its entirety:

> Scrushy suggests that his matter be referred to another judge for an evidentiary hearing. The other disqualification statute, 28 U.S.C. § 144, applicable only to district judges requires this approach but § 455 does not.

(Memorandum Opinion at 2 n. 3.)

Defendant respectfully submits that Judge Coody is mistaken in his implication that referrals to a different judge are appropriate only under § 144, and inapplicable under

§ 455. *See, e.g., Liljeberg v. Health Servs. Acquistion Corp.*, 486 U.S. 847, 851, 108 S.Ct 2194 (1988)(noting that "Court of Appeals determined that resolution of [§ 455] motion required factual findings concerning the extent and timing of Judge Collins knowledge of Loyola's interest in the declaratory relief litigation"); *In re BellSouth Corp.*, 334 F.3d 941, 946 (11th Cir. 2003); *United States v. State of Alabama*, 828 F.2d 1532, 1539 (11th Cir. 1987); *Potashnick v. Port City Const. Co.*, 609 F.2d 1101, 1106 (5th Cir. 1980).

More importantly, as the Eleventh Circuit recognized in *United States v. Cerceda*, 139 F.3d 847 (11th Cir. 1998):

> We agree with the Tenth Circuit's assessment that "cases within § 455(a) are extremely fact driven 'and must be judged on [their] unique facts and circumstances more than by comparison to situations considered in prior jurisprudence.'"

139 F.3d at 853 (quoting *Nichols v. Alley*, 71 F.3d 347, 351 (10th Cir. 1995)). The question, then, is what is the proper procedure for determining these facts?

In its response to Defendant's motion for reconsideration, the Government argues that transfer of such motions to another judge is "unwise" and an "'irregular' practice," (response at 3), and contends that any such effort to determine the factual basis for recusal "discounts the statutory and ethical obligations under which Judge Coody must make his recusal decision," and that "an attorney for a party should not demand an inquisition to question a judge about his lack of impartiality." (*Id.* at 7).

The Government, and perhaps Judge Coody, misperceive Defendant's request for an evidentiary hearing: the sole purpose for such a hearing is to make available to the parties and to make a record in this case as to the relevant facts relating to the relationships and conversations that may require Judge Coody's recusal. To date, the

only facts available are those that Judge Coody has revealed, piecemeal, in his October 28, 2005 disclosure and his November 10, 2005 Memorandum Opinion. Defendant concurs with the Government response at 7-8, that it would be improper for Defendant— even if he could—to attempt to conduct any investigation into these relationships. As a consequence, absent some sort of evidentiary hearing or proceeding in which the details of these relationships and conversations are disclosed and made a part of the record in this case, Defendants—and this Court, as well as any appellate court—are left with the bare-bones disclosures provided by Judge Coody and his conclusion that these and other facts not in the record at this time do not require his recusal under either subsection of § 455.

The question remains, then, when a litigant timely presents a non-frivolous, facially sufficient claim as to a possible basis for recusal, and that claim is based on relationships and conversations that are not available to the litigant nor fully disclosed in the record in the case, is there a need for some sort or inquiry to provide those facts in sufficient detail to provide litigants with a full and fair opportunity to pursue their request for recusal, and for this Court to review that claim?

The initial hurdle in answering this question is that the statutory provision governing this basis for recusal, 28 U.S.C. § 455, does not specify any particular procedure. Indeed, the wording of the statute clearly contemplates that the recusal request, in the first instance, is addressed to the judge in question. *Id.* at § 455(a) and (b). It is equally clear that in certain circumstances, in addition to the judge to which the motion is addressed reviewing the basis for recusal, that referral to another judge for

disposition is a proper procedure. As the Court in *United States v. Heldt*, 668 F.2d 1238

(D.C. Cir. 1981) held:

> The very fact that section 455 is addressed directly to the judge
> makes it explicit that some evaluation by the court of the facts giving
> rise to the motion is authorized in most cases. The trial court may,
> of course, at its option transfer the matter to another judge for
> decision. Further, it is well within the trial court's discretion as well
> as desirable in some cases to hold a hearing. The appropriate
> procedure, then, may depend upon the nature of the allegations
> made.

*Id*. at 1271-72 (footnotes omitted).

In contending that there is no right to an evidentiary hearing in the circumstances

in the instant case and arguing that Defendant's request for such a hearing is somehow

improper, in its response at pages 1-4, the Government relies on *dicta* from cases in

which either the factual basis for the recusal motion was fully set out in the record and/or

the party moving for recusal had filed a motion that was untimely or clearly facially

insufficient.

The case relied on most heavily by the Government, *In re Corrugated Container

Litigation*, 614 F.2d 958 (5th Cir. 1980), involved a pretrial appeal and mandamus action

challenging the trial court's denial of a civil defendant's motion to recuse. The motion to

recuse was based on three contentions, on which there appeared to be no lack of clarity as

to the facts. The first contention was based on evidentiary rulings by the trial judge in a

criminal trial involving some of the same parties. The second was based on statements

allegedly made by the judge to an attorney representing one of the criminal defendants,

and set forth in two affidavits of counsel who were advised of the conversation by the

first lawyer. The third was based on statements attributed to the judge's law clerk. The

former Fifth Circuit, assuming the truth of all the allegations, found each of them clearly

insufficient as a matter of law to require recusal, dismissed the appeal and denied the request for mandamus. *Id.* at 963-68. The language quoted by the Government in their December 21 response at pages 2-3 simply states that no negative inference can be drawn from the fact that the judge to whom a motion to recuse is directed rules on the motion and, more importantly, simply quotes a Ninth Circuit case that "the adoption of such a procedure [referring recusal requests to another judge] *as a general rule* would be unwise." *Id.* at 963 n. 9 (emphasis added).

In the Government's second principal case offered to support its assertion that an evidentiary hearing would be improper in the instant case, *Chitimacha Tribe of Louisiana v. Harry L. Laws Co.*, 690 F.2d 1157 (5th Cir. 1982), the Fifth Circuit, in *dicta*, criticized the decision of the trial judge to refer the recusal motion to the chief judge for hearing and determination. Again, the Court of Appeals found that, even assuming the facts as alleged in the affidavit of counsel for the plaintiffs were true, they were legally insufficient to justify recusal under either §§ 144 or 455. *Id.* at 1167. In reaching this conclusion, the court discussed the timeliness of the motion to recuse and motion to amend the complaint, which had been filed the day before a motion for leave to amend was to be heard (which had been scheduled for months in advance), over two years after the plaintiffs became aware of the main factual basis for recusal and amend their complaint. *Id.* at 1161, 1164. Again, the factual basis for the primary ground advanced for recusal (the trial judge's ownership of land in a different parish that might be subject to a similar claim of aboriginal ownership) was clearly established in the record, and not subject to any need for further elucidation.

An examination of the Government's third case, *Schurz Communications, Inc. v. FCC*, 982 F.2d 1057, 1059 (7th Cir. 1992), likewise demonstrates that the language quoted by the Government to support its claim that "decisions with respect to disqualification should be made by the judge sitting in the case and not by another judge," (response at 3), is extracted from a context so far removed from the instant case that is not only uninstructive, but misleading.    *Schurz* involved a motion for disqualification directed to a circuit judge which was not filed until *after* that judge sat on a panel of the Seventh Circuit which had decided the case adversely to the party moving for recusal, despite the fact that the recusal motion was based on the circuit judge's having authored an expert witness affidavit *sixteen years* prior, in a totally unrelated case, a fact which was known to movants prior to oral argument. *Id.* at 1060-62.

None of these cases, nor the *dicta* relied on by the Government in their response provide reliable guidance for determining the necessity of some procedure in the instant case which supplies the parties and this Court with all of the necessary facts to resolve the pending recusal motions.    Defendant respectfully submits, in the absence of clear procedural guidance in the statute, that a more logical reading of the procedures courts have employed in regard to recusal motions is to have the judge to whom the motion is directed determine if the motion rises to a threshold standard within the meaning of § 455. If it does not (such as in the circumstances presented in *Corrugated Container*, *Chitimacha Tribe*, and *Schurz*), then there is no need for an evidentiary hearing, and the judge to whom it is presented can properly dispose of the motion. However, Defendant submits that if the basis for recusal rises to a threshold standard, then the appropriate

procedure is to have a different judge conduct an evidentiary hearing. As the Fifth

Circuit held in *Levitt v. University of Texas at El Paso*, 847 F.2d 221, 226 (5th Cir. 1988):

> The judge can himself decide whether the claim asserted is within § 455.
> If he decides that it is, then a disinterested judge must decide what the
> facts are. *See* 13A C. Wright, A. Miller & E. Cooper, Federal Practice
> and Procedure § 3550 (1984) and the cases cited there.

Relying on the analysis in *Levitt*, the court in *In re Lieb*, 112 B.R. 830 (Bankr. W.D. Tex.

1990) wrote:

> Accordingly, based upon *Levitt*, the proper procedure is as follows:
>
> > (1) This court should decide whether the "claim asserted" by the
> > Defendants "rises to the threshold standard of raising a doubt in the
> > mind of a reasonable observer as to this court's impartiality."
>
> > (2) If so, another judge should "decide what the facts are, i.e., hold
> > an evidentiary hearing." [FN 12. Presumably then this judge would
> > decide whether disqualification is appropriate.]
>
> > (3) If not, this court should not recuse itself.

*Lieb*, 112 B.R. at 836.

Defendant's motion clearly meets any threshold for a recusal motion that should

be determined by a judge other than the judge to whom it is addressed. Defendant's

motion is timely, and the relationships and conversations in questions are, at a minimum,

fraught with potential problems. The crux of the problem presented in the instant case is

that Judge Coody's daughter and son-in-law own stock in HealthSouth and are a putative

class members in a lawsuit against Mr. Scrushy; Judge Coody's son-in-law is an officer

of HealthSouth, the company which the Government alleges paid some or all of the

putative $500,000 bribe with which Defendant is charged; and that Judge Coody had

conversations with two of the daughters of a key Government witness in this case, about

the subject matter that witness will testify to. Notwithstanding these facts, the only

information that has been revealed about these relationships and conversations is the information that Judge Coody revealed orally in the October 28, 2005 hearing and the additional facts that Judge Coody apparently learned of after that hearing and subsequent to Defendant's filing of his motion, which were revealed for the first time in Judge Coody's Memorandum Opinion denying Defendant's motion to recuse.

Defendant respectfully submits that there must be some procedure for the details concerning these relationships and conversations to be made available to the parties and to this Court. As set forth above, the facts currently available do not answer many of the obvious questions relating to these conversations and relationships that are essential to answer the issue of recusal. Otherwise, this issue will be determined on the basis of an incomplete understanding of all the facts and the record in this case will be limited to those facts which Judge Coody has revealed as of this date, coupled with this conclusion that there is no basis for recusal in light of his knowledge of all the facts. The standard for determining whether a judge should disqualify himself under § 455(a) is "whether a reasonable person *knowing all the facts* would conclude that the judges impartiality might reasonably be questioned." *Byrne v. Nezhat*, 261 F.3d 1075, 1101 (11th Cir. 2001)(citing *Hepperle v. Johnson*, 590 F.2d 609, 614 (5th Cir. 1979)) (emphasis added). Until all of the facts are revealed, that standard cannot be applied by this Court.

Finally, and perhaps most critically, the importance and complexity of this litigation, as well as considerations of judicial economy, militate in favor of a thorough and careful resolution of this issue at this initial stage. Were further additional facts relative to this issue revealed at a later date, the investment of considerable legal resources—most especially this Court's—could be wasted. *See United States v. Kelly*,

888 F.2d 732, 744 (11th Cir. 1989) ("The duty of recusal applies equally before, during and after a judicial proceeding, whenever disqualifying circumstances become known to the judge." (citing *Liljeberg*, 108 S.Ct. at 2202-03).

For all of these reasons, Defendant respectfully submits that the motions to recuse should be referred to another Magistrate Judge for hearing or, in the alternative, this Court should conduct an evidentiary hearing or employ some other appropriate procedure so that the record in this case is complete as to the factual basis upon which recusal is either granted or denied.

### B. Recusal Under 28 U.S.C § 455(a)

Magistrate Judge Coody addresses the issue of recusal under § 455(a) at pages 11-20 of his Memorandum Opinion. The Memorandum Opinion correctly states the applicable standard as "whether an objective, fully informed lay observer would entertain significant doubt about the judge's impartiality." *Id.* at 11 (citing *Christo v. Padgett*, 223 F.3d 1324, 1333 (11th Cir. 2000)). The Memorandum Opinion also acknowledges that: "Stated another way, the question is 'whether an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt about the judge's impartiality.'" *Id.* at 11, quoting *Byrne*, 261 F.3d at 1101 (quoting *Carter v. West Pub. Co.*, NO. 99-11959-EE, 1999 WL 994997 (11th Cir. November 1, 1999)).

The discussion that follows in Judge Coody's Memorandum Opinion, however, focuses on an exposition of the reasons why Judge Coody is not partial, and includes factual assertions and intimations of conversations or investigations in which Judge Coody has assured himself that he is not subject to recusal based on the relationships in

15

questions. For instance, at page 13 of the Memorandum Opinion, Judge Coody states, "In particular, I have assured myself my son-in-law's position with HealthSouth did not bring him into contact with any matter in dispute in this criminal case."

Such an analysis should not be the focus of the inquiry under § 455(a). First, it again raises the serious question of whether the record in this case contains all of the facts relevant to the question of recusal. The "objective, informed lay observer" standard is difficult to apply unless and until all of the facts are available. Second, implicit in Judge Coody's analysis is that the sole inquiry should be as to the existence of partiality. The purpose of § 455(a) is far broader than that: "The very purpose of § 455(a) is to promote confidence in the judiciary by avoiding even the possible appearance of impropriety whenever possible." *Liljeberg*, 486 U.S. at 865 (citing S.Rep. No. 93-419 at 5; H.R.Rep. No. 93-1453 at 5).. As a consequence, "Neither actual partiality, nor knowledge of the disqualifying circumstances on the part of the judge during the affected proceedings, are prerequisites to disqualification under this section." *Kelly*, 888 F.2d at 744 (citing *Liljeberg*, 108 S.Ct. at 2202-03). Finally, Judge Coody's analysis overlooks a key consideration that is central to the goal of "promoting confidence in the judiciary:" "[A]ny doubts must be resolved in favor of recusal." *United States v. Patti*, 337 F.3d 1317, 1321 (11th Cir. 2003) (citing *Kelly*, 888 F.2d at 745).

There are two distinct relationships at issue in the instant recusal. The first stems from the fact that Judge Coody's son-in-law, Mr. Brandt, was employed at HealthSouth during Defendant Scrushy's tenure and is currently a Vice President at HealthSouth. In addition, as revealed for the first time in Judge Coody's November 10, 2005 Memorandum Opinion, both Judge Coody's daughter and son-in-law are owners of an

undisclosed quantity of HealthSouth stock. (*Id.* at 2.)  As a consequence, Judge Coody's daughter and son-in-law are parties to a lawsuit against Richard Scrushy, the Defendant in whose criminal case Judge Coody will be making critical determinations under the Federal Magistrate's Act.  Given the significant profile of all of the recent and on-going litigation concerning Richard Scrushy and HealthSouth in the State of Alabama, Defendant respectfully submits that it is difficult to conclude that an "objective, fully informed lay observer" would not necessarily "entertain significant doubts" about the impartiality of a Judge whose daughter and son-in-law are suing the Defendant who is before him on criminal charges, as well as the fact that the son-in-law is a Vice President at HealthSouth.

Judge Coody's Order addresses these concerns with two principal assertions.  The first is to offer the conclusion that there is no relationship, save "some temporal overlap," between the alleged criminal violations and the alleged civil violations. (Memorandum Opinion at 16.)  Notwithstanding the Government's contentions that the allegations in the instant indictment are "not intertwined with the internal fraud at HealthSouth," (response at 15), Defendant respectfully submits that the Government's initial discovery response demonstrates the frailty of that assumption. Defendant submits that a review of the statements of Michael D. Martin, as memorialized  by an FBI 302 dated September 19, 2003, demonstrates how key Government testimony will attempt to link the transaction in the instant indictment to the overall fraud at HealthSouth.[3]

The second assertion advanced by Judge Coody's Order is the claim that the only potential effect of a conviction in Defendant's case is that the possibility of conviction

---

[3] This FBI 302 was filed as a sealed exhibit in support of Defendant's motion for reconsideration, which has been adopted as part of these objections.

might subject Defendant to imprisonment, fines, and restitution, which might affect Defendant's ability to pay any judgment in the civil suit that Judge Coody's daughter and son-in-law are parties to. (Memorandum Opinion at 18.) Judge Coody goes on to dismiss the effect of such an event by pointing to 15 U.S.C. § 78(h), which provides for joint and several liability in securities cases, concluding that even if Mr. Scrushy's finances were affected by the outcome of the criminal case, HealthSouth would still be required to pay any judgment. (Order at 18-19.) This finely-tuned analysis of the potential financial impact of a criminal conviction in this case ignores the elephant in the room regarding this issue: if Richard Scrushy were to be found guilty of the instant criminal charges, such a verdict would be a substantial and undeniable boon to the civil claim that HealthSouth and Richard Scrushy defrauded the stockholders of HealthSouth, including Judge Coody's daughter and son-in-law who are suing Mr. Scrushy in that action. The appearance created by Judge Coody determining critical procedural matters in a case in which the Government will be trying to prove that Mr. Scrushy paid a bribe to obtain influence over the CON Board to foster HealthSouth's business interests while the Judge's daughter and son-in-law are parties to a lawsuit against Defendant alleging fraud by Mr. Scrushy while he was CEO of HealthSouth will not create confidence in the judiciary. The issues and interests are far too intertwined to avoid creating significant doubt as to Judge Coody's impartiality, and to "promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible." *Liljeberg,* 486 U.S. at 865.

The second factual area of concern is Judge Coody's relationship to the daughters of Forrest "Mac" Marcato, whose name appears in the indictment. According to Judge

Coody's oral notice to the Defendants, Judge Coody's wife was the debate coach at Saint James High School. Judge Coody worked with his wife's students, including the two daughters of Mr. Marcato, Jennifer Marcato and Emily Marcato. As a result of these contacts, "[a]nd those two young ladies at various times would, in casual conversation about family life, describe difficulties that her father had with the Alabama Department of Transportation. It was things like griping about I didn't get a contract, they won't pay any attention to my striping." (Memorandum Opinion at 2.) In his Memorandum Opinion, Judge Coody dismisses the significance of Mr. Marcato's complaints as having any possibility of having an impact on his appearance of impartiality:

> I considered then and now that these comments were simply complaints about decisions by a government agency to which Marcato was attempting to market a product. If a judge were required to disqualify himself in a case involving a public figure because he knew or was associated with persons who complained about decisions, only judges who resided in caves or monasteries could ever sit on a case.

(*Id.* at 14.)

A reading of the second superseding indictment alone indicates that Mr. Marcato is alleged to be somewhat more than a citizen "who complained about decisions." As set forth in ¶ 42 of that indictment, Racketeering Act 5(d) is alleged to involve the solicitation of $250,000 from Mr. Marcato "in exchange for official action and influence to protect Forrest 'Mac' Marcato's business interests involving the Alabama Department of Transportation from economic harm,...." (Doc 61 at 22.) The FBI 302 dated December 13, 2004 relating to the interview of Mr. Marcato paints an even more vivid picture of his version of the events, again hardly a simple complaint of someone who was

attempting to market a product.[4] Additionally, page 2 of that FBI 302 indicates that Mr. Marcato's daughter Jennifer (who complained to the Judge about her father's situation) was a close friend of the daughter of another individual who plays a key role in the Government's allegations. Moreover, as revealed by Judge Coody in his October 28, 2005 statement and his November 10. 2005 Memorandum Opinion at pages 2 and 14, the conversations with Marcato's daughters specifically involved the issue of "problems or difficulties with getting the Alabama Department of Transportation to use a road striping product which would improve safety during rainy weather at night." (*Id.* at 14.) A comparison of the excerpt of Marcato's grand jury testimony which was attached as a sealed exhibit to the Government's response to Defendants' motions for reconsideration demonstrates that the subject matter of these conversations and the allegations of Marcato against co-Defendant Siegelman are one and the same.

Ultimately, the problem with both of Judge Coody's relationships to people with an interest in this case is that the situations, and their potential impacts, are far from simple. While Judge Coody constructs an analysis of why these relationships do not necessarily result in a conclusion that his impartiality might reasonably be questioned, that is not the issue. The issue is the appearance created by these relationships and the concomitant impact on the principal goal of § 455(a): "to promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible." *Liljeberg*, 486 U.S. at 865.

This appearance problem is exacerbated by the fact that Judge Coody apparently undertook, in response to Defendants' motions to recuse, an independent investigation of

---

[4] Again, this FBI 302 was attached as a sealed exhibit to Defendant's motion for reconsideration.

the facts underlying these relationships. As Judge Coody states at page 13 of his Memorandum Opinion, "In particular, I have assured myself that my son-in-law's position with Healthsouth did not bring him into contact with any matter in dispute in this case." Additionally, Judge Coody apparently was unaware of the fact that his daughter and son-in-law owned stock in HealthSouth at the time of his initial October 28, 2005 disclosure. As his Memorandum Opinion states at page 2: "Following these disclosures, I have subsequently learned that my oldest daughter and her husband, by virtue of their ownership of stock in Healthsouth Corporation are members of the putative plaintiff class in *In re Healthsouth Corporation Securities Litigation,* 2:03-cv-01500-KOB (N.D. Ala.) in which Richard Scrushy is a named defendant."

Such inquiries, outside of court and outside the presence of the parties, create an appearance problem in and of themselves, as recognized by the Seventh Circuit in granting a petition for a writ of mandamus and ordering recusal based on the appearance of a law firm of the judges brother:

> Further, the judge's "Memorandum of Decision" suggests that he made a confidential inquiry, presumably to his brother, to determine in what capacity Donald A. Morgan was involved in this case. (Petitioner's App. D-3). Counsel was not present and were unaware of the inquiry at the time it was made. While it is understandable why the judge may have felt his brother could present the most accurate evidence as to his role in the pending litigation, *the judge's inquiry creates an impression of private consultation and appearance of partiality which does not reassure a public already skeptical of lawyers and the legal system.*

*SCA Services, Inc. v. Morgan,* 557 F.2d 110, 116 (7th Cir. 1977) (emphasis added).

Finally, in light of the overarching policy goal of promoting confidence in the judiciary by avoiding even the appearance of impropriety, it is important to note that there is an easily available remedy for this situation. Defendant filed his motion for

recusal within seven days of being advised of the relationships and conversations in questions, and that filing occurred within seven days of Defendant's initial appearance in this case. The only substantive pretrial motions that have been filed to date are the motions to recuse and Defendant Scrushy's motion for severance, (Doc 69), and a similar motion filed by co-Defendant Roberts. (Doc 70). Reply briefs are not due on that issue until January 18, 2005, pursuant to this Court's December 13, 2005 Order. (Doc 68.) As a consequence, there is nothing to indicate that Judge Coody has so immersed himself in this litigation that his recusal would cause any delay.

More importantly, there are currently three additional Magistrate Judges sitting in this District. There is no indication of any kind that any of these three judges have any relatives who are stockholders of HealthSouth, or who are employed as officers of HealthSouth, or who have a relationship with the daughters of a key Government witness and have had conversations with those daughters about the subject matter of their father's testimony in this case. Despite the Government's innuendoes of "judge shopping" (*see* response at 4 and 10), there is nothing in the record or otherwise to indicate that Defendants are engaging in any such activity.[5] It is simply that in circumstances where a case is at the initial stages, and there is one Magistrate Judge who has not insignificant family contacts involving one Defendant and a relationship and having conducted relevant conversations with the daughters of a key Government witness, and there are three additional Magistrate Judges equally available to handle this matter, the appropriate

---

[5] In fact, since Defendant Scrushy has indicated his intention to file a challenge to the composition of the grand and petit juries in this District, the recommendation written by Judge Coody declaring the Middle District's jury selection procedure substantially violated the Jury Selection and Service Act in *United States v. Clay*, 159 F. Supp.2d 1357 (M.D. Ala. 2001), rebuts any such claim by the Government.

step is to err on the side of caution. "[A]ny doubts must be resolved in favor of recusal." *Patti*, 337 F.3d at 1321 (citing *Kelly*, 888 F.2d at 745).

Defendant respectfully submits that Judge Coody's Memorandum Opinion does not justify his refusal to recuse himself. In the alternative, in light of all of the foregoing, Defendant respectfully submits that the claim for recusal here asserted is "within § 455 … [and] a disinterested judge must decide what the facts are." *Levitt*, 847 F.2d at 226.

### C. Recusal Under § 455(b)(5)(iii)

As set forth in Defendant Scrushy's previously filed motion to recuse at page 6, § 455(b)(5)(iii) requires recusal whenever a person within the third degree of relationship to the judge or the spouse of such a person "is known to have an interest that could be substantially affected by the outcome of the proceeding;…" Judge Coody addresses this ground for recusal in pages 5-11 of his Memorandum Opinion.

In *Patti*, the Eleventh Circuit held:

> Although both subsections provide reasons for recusal, subsection (b) is stricter than subsection (a) because the need for a judge's recusal under subsection (b) is clear; once it has been established that one of the enumerated conditions exists, there can be no dispute about the propriety of recusal.

337 F.3d at 1321-22.

In response to this claim, Judge Coody writes: "In the criminal case presently under consideration, the possible future affect of its outcome on an interest of my adult children is even more difficult to discern. The affect of either acquittal or conviction would have on the civil securities litigation seems purely speculative." (Memorandum Opinion at 8-9.) After discussing the vagaries and uncertainties associated with predicting the outcome of any litigation, Judge Coody concludes: "After careful

consideration I conclude that any possible affect is too remote and uncertain to be properly considered as having a substantial affect." (*Id.* at 10-11.)

Judge Coody's Order does not address the principal authority relied on in Defendant's argument under § 455(b)(5)(iii), *Potashnick v. Port City Construction Co.*, 609 F.2d 1101 (5th Cir. 1980).[6] In *Potashnick*, the Court held that § 455(b)(5)(iii) required recusal of a judge based on his father's position as a partner in a law firm which was representing a party. 609 F.2d at 1113. More importantly, the Court held that:

> The language of section 455(b)(5)(iii) does not require the judge to investigate whether his lawyer-relative's interest will in fact be affected by the outcome of the proceeding. Instead, the statute requires automatic disqualification when the judge in a proceeding knows of his relative's interest, and the outcome of the proceeding *may potentially affect that interest.*

609 F.2d at 1113-14 (emphasis added).

For the first time in his Memorandum Opinion denying Defendant's motion to recuse, Judge Coody informed the parties that his daughter and his son-in-law were stockholders of HealthSouth. (Memorandum Opinion at 2.) As such, they are parties to a lawsuit which seeks to recover substantial damages against Mr. Scrushy and others.

Judge Coody's Memorandum Opinion does not question that his daughter and son-in-law are within the third degree of relationship as defined by § 455(d)(2). Instead, Judge Coody frames the issue as: "Thus, the precise question is whether the outcome of this criminal proceeding can be said to substantially affect the interest which my children may have in the civil litigation." (Memorandum Opinion at 7.)

---

[6] In *Bonner v. City of Pritchard*, 661 F.2d 1206 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the Fifth Circuit rendered prior to the close of business on September 30, 1981.

Judge Coody's Memorandum Opinion does not reveal the scope of his children's holdings in HealthSouth stock, while nonetheless noting at page 15 that there are over 396 million shares of HealthSouth during the class period. (*Id.* at 15.) However, the size of that financial interest is of no moment, as § 455(d)(4) provides: "'financial interest' means ownership of a legal or equitable interest, however small,…." *See Securities Investor Protection Corp. v. Bell  Beckwith,* 28 B.R. 285, 287 (Bankr. Ohio 1983) (holding that even if interest of debtor in bankruptcy action is de minimus, "the fact that these financial interests may be affected justifies recusal.").

As plaintiffs in a civil suit, the financial interest of Judge Coody's children is a direct interest—they stand to recover money from the defendants in that case, including Mr. Scrushy, if the plaintiffs prevail in the lawsuit.  Instead of applying the "potentially affect" standard mandated by *Potashnick,* Judge Coody's Memorandum Opinion relies on authorities which caution against the vagaries of predicting  the outcome of civil litigation, concluding that "[t]he affect of either acquittal or conviction would have on the civil securities litigations seems purely speculative." (*Id.* at 8-9) (footnote omitted).

Defendant respectfully submits that common sense dictates that a conviction in the pending criminal case would be a plus to the plaintiffs in that litigation, as it would be perceived as a vindication of the claim that Defendant conducted his business affairs outside of the law. That is a "potential effect" on the lawsuit in which Judge Coody's relatives have an interest. Common sense likewise dictates that the conviction of Mr. Scrushy in the instant case would be celebrated, rather than lamented, by the current management of HealthSouth.  Included in the management of HealthSouth is Mr. Brandt, Judge Coody's son-in-law, who is currently a Vice President at HealthSouth.

Defendant respectfully submits that Judge Coody is aware of those interests of his daughter and son-in-law, and that the outcome of the current proceeding, the criminal case in which Judge Coody is serving as Magistrate Judge, "may potentially affect that interest." Under the binding authority of *Potashnick*, automatic disqualification is required. Alternatively, Defendant respectfully submits that the interests implicated and the potential effect of the outcome of the current criminal case on those interests surely fall "within § 455 ... [and] a disinterested judge must decide what the facts are." *Levitt*, 847 F.2d at 226.

WHEREFORE, Defendant respectfully prays that this Court enter an Order rejecting the Order and Memorandum Opinion on Recusal filed November 10, 2005, and enter an Order granting Defendant's motion to recuse. In the alternative, Defendant respectfully prays that this Court enter an Order referring Defendant's motion to a different Magistrate Judge for an evidentiary hearing and disposition, or that this Court itself conduct an appropriate proceeding to determine all of the facts relating to the relationships and conversations at issue and make a *de novo* determination of the necessity of recusal, and for such other and further relief as this Court may deem just and proper.

This 17th day of January, 2006.

Respectfully submitted,

Arthur W. Leach
Terry Lucas Butts
Leslie V. Moore

2310 Marin Drive
Birmingham, Alabama 35203
Phone: 205-822-4224
Fax: 205-824-0321


Henry Lewis Gillis
Thomas Means Gillis & Seay PC
PO Drawer 5058
Montgomery, Alabama
Phone: 334-270-1033
Fax: 334-260-9393

James K. Jenkins
Bruce Maloy
Maloy & Jenkins
25th Floor
75 Fourteenth Street NW
Atlanta, Georgia 30309
Phone: 404-875-2700


Attorneys for Richard M. Scrushy

## CERTIFICATE OF SEVICE

I hereby certify that on the 17th day of January, 2006, I electronically filed the foregoing "Objection to Order and Memorandum Opinion of Magistrate Judge Denying Defendants' Motions for Recusal" with the Clerk of the Court using the CM/ECF system which will send notification of such to counsel of record.

Leslie V. Moore
2310 Marin Drive
Birmingham, Alabama 35243
Phone: (205) 822-4224
Fax:    (205) 824-0321
E-Mail:  les.moore@lvmlaw.com