**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

UNITED STATES OF AMERICA,

v.                                                    Case No. 2:05cr119-F

RICHARD M. SCRUSHY,
    Defendant.

**DEFENDANT RICHARD M. SCRUSHY'S REPLY TO GOVERNMENT'S
RESPONSE TO DEFENDANTS' MOTIONS FOR SEVERANCE**

COMES NOW Defendant Richard M. Scrushy, through his undersigned counsel and files this Reply to the "United States' Response to Defendants Scrushy's and Roberts's Motions for Severance," (Doc 86-1) (hereinafter "Gov't Response"):

**A. DEFENDANT SCRUSHY'S JOINDER WITH CO-DEFENDANTS
SIEGELMAN, HAMRICK AND ROBERTS VIOLATES FED. R. CRIM. P. 8(b).**

In his initial "Defendant Richard M. Scrushy's Motion for Severance Pursuant to Federal Rules of Criminal Procedure 8(b) and 14," (Doc 69) (hereinafter "Severance Motion"), Defendant argued that his case was improperly joined with co-Defendants Siegelman, Hamrick and Roberts "because Defendant Scrushy is not charged with the same series of acts or transactions as his co-Defendants, and there is no allegation that Defendant Scrushy participated in or had knowledge of any overall scheme alleged in the superseding indictment." (Severance Motion at 7-8.)

In its response, the Government argues that the simple allegation of a substantive RICO or RICO conspiracy count, in and of itself, is sufficient to satisfy the requirements

of Rule 8(b) and defeat any misjoinder argument. This rule applies, the Government argues, even where a particular defendant, like Defendant Scrushy, is not charged in the RICO count or counts, so long as the RICO count embraces all of the acts and transactions upon which the other counts are based. (Gov't Response at 3-7.) In support of this, the Government cites eleven cases in which it claims this broad principle is established as "[w]ell settled law in this and other Circuits." (*Id.* at 4-7.) In other words, the Government's argument is that the inclusion of a RICO charge is a "silver bullet" that defeats all misjoinder claims so long as the act with which a non-RICO defendant is charged was part of the RICO activity charged to one or more of the RICO defendants.

Defendant Scrushy respectfully submits that the Government has overstated the reach of this principle and the circumstances in which it has been applied. Moreover, Defendant submits that there is no clear support, especially in the Eleventh Circuit, for the application of such a broad rule in the factual context presented in the instant case: where the indictment does not allege that Defendant Scrushy agreed to participate in the overall criminal activity or that he was aware of the existence of or joined in the activities of the alleged criminal enterprise, and where it is not readily apparent that the enterprise is criminal in nature.

If the Government's analysis is correct, the passage of the RICO statutes would have effectively carved out a blanket "RICO Exception" that vitiates the clear requirements of Rule 8(b) in all cases in which a RICO charge is properly lodged. Defendant respectfully submits that is not what the cases that have developed this principle hold, and that even if they did, the extension of that logic to the precise factual

context of the instant case would be wrong and contrary to Eleventh Circuit RICO precedent.

The Government presents its argument on this critical point in a cascade of eleven cases followed by parentheticals that contain either quotes without factual context or pithy descriptions of only a portion of the facts. (Gov't Response at 4-7.) On close examination, the cases will be found to have significant limitations or facts which do not support the broad reading which the Government has presented to this Court. Defendant respectfully urges this Court to carefully examine the full facts in each case, as well as the analysis on which each court reaches its conclusion that each defendant was properly joined.

The Government cites *United States v. Welch*, 656 F.2d 1039, 1053 (5th Cir. Unit A 1981), for the proposition that "the requirements of Rule 8(b) were 'met by the RICO count of the indictment.'" (Gov't Response at 5.) Similarly, the Government cites *United States v. Triumph Capital Group, Inc.*, 260 F. Supp. 2d 432, 438 (D. Conn. 2002), for the proposition that defendants who are only charged in substantive counts can be properly joined in an indictment where a RICO count sufficiently alleges a pattern of racketeering activity. (Gov't Response at 6.) The Government cites *United States v. Castellano*, 610 F. Supp. 1359, 1396-97 (S.D.N.Y. 1985), for the proposition that even if a defendant is not named in a conspiracy or RICO count, he may be charged in a separate count in the same indictment even if his participation is too limited to permit his being included as a co-conspirator or co-racketeer. (Gov't Response at 6-7). The Government's representation of the holding of each of these cases, however, fails to reveal that in all three cases, *all* of the defendants arguing misjoinder had been charged in the RICO count.

In *Welch*, all four defendants on appeal (Welch, Cashell, Satterwhite and Cochran) were charged in Count V, the substantive RICO count. 636 F.2d at 1047. In *Triumph Capital Group*, all five defendants seeking severance were charged in Count One with a substantive RICO violation and in Count Two with a RICO conspiracy. 260 F. Supp. 2d at 436. In *Castellano*, the court begins its 84-page opinion by stating that, "Count 1 of the indictment names all the defendants, along with others, and alleges that they participated in a racketeering enterprise of extensive scope and variety." 610 F. Supp. at 1378.

The Government cites *United States v. Weisman*, 624 F.2d 1118, 1129 (2d Cir. 1980), for the proposition that "joinder was proper where the non-RICO defendant was charged only with bankruptcy charges that were also included as 'predicate acts of racketeering under the unifying RICO count.'" (Gov't Response at 6.) The Government cites *United States v. Bryan*, 843 F.2d 1339, 1342 (11th Cir. 1988), for holding that "joinder of non-RICO defendants was proper under Rule 8(b) because '[t]the indictment asserts one overarching RICO conspiracy and then lists other separate charges, including specific conspiracies that arose from and made up that RICO scheme.'" (Gov't Response at 5-6.) The Government's representation of the *Weisman* holding in the Second Circuit is accurate, but fails to mention a key factual finding in the district court when it ruled on the severance motions below: "The conspiracies are not in any real sense distinct or independent but are part of a common scheme or plan....The indictment here alleges the aforementioned common scheme which was jointly and individually executed by the defendants." *United States v. DePalma*, 461 F. Supp. 778, 788 (S.D.N.Y. 1978) (citations omitted). In *Bryan*, the Government correctly notes that the Court included the

key phrase "'[t]he indictment asserts one overarching RICO conspiracy," 843 F.2d at 1342, but fails to reveal that the Court only discussed "briefly" the applicability of Rule 8(b), 843 F.2d at 1342, that the defendants had only filed a motion for severance under Rule 14, but had "mentioned" Rule 8(b) in an oral motion for severance at trial, 843 F.2d at 1340, and that a partial severance had been granted pretrial. *Id.* Without access to the precise wording in the indictment as to how the "overarching RICO conspiracy" was alleged, and whether defendants Ferguson and Pelchart were alleged to be a part of the larger activity, which involved serial drug importations and common participants, even though not RICO defendants, it is impossible to conclude that the Court was adopting such a broad exception to Rule 8(b) based on so little analysis. Moreover, *Bryan* fails to cite as authority any of the cases which recognize that the allegations of a RICO charge can limit Rule 8(b). *Id.* at 1342.

The Government cites *United States v. Houle*, 237 F.3d 71, 75 (1st Cir. 2001), for its finding that "joinder under Rule 8(b) was proper and '[t]he fact that [the defendant] was not charged as a RICO defendant is of no consequence.'" (Gov't Response at 5.) The Government quotes from *United States v. Gotti*, No. X5-02-CR-743(RCC), 2004 WL 602689, at *4 (S.D.N.Y. March 26, 2004), to the effect that the Second Circuit had held on more than one occasion that joinder is proper under Rule 8(b) when a defendant is not charged with RICO, but only with predicate acts as substantive offenses. (Gov't Response at 6.) The Government quotes *United States v. Krout*, 66 F.3d 1420, 1429 (5th Cir. 1995), for the proposition that "If an indictment charges RICO violations, offenses committed as part of the pattern of racketeering activity are properly joined even if the defendant objecting is not named in the RICO count." (Gov't Response at 5.) And the

Government cites *United States v. Manzella*, 782 F.2d 533, 540 (5th Cir. 1986), for its holding of proper joinder as to a non-RICO defendant charged with mail fraud which were "examples of a RICO defendant's pattern of racketeering activity." (Gov't Response at 6.) The Government's presentation of these four cases and their holdings has one thing in common: the Government neglects to provide the factual context of the type of enterprise involved and the non-RICO defendant's relationship to that enterprise. As will be discussed below, this distinction concerning the readily apparent knowledge of the non-RICO defendant and the existence of the RICO enterprise and its activities is of crucial importance in the validity of the joinder of Defendant Scrushy. What the Government neglects to apprise this Court of in its Response is that each of these four RICO enterprises was quite different from the RICO enterprise alleged in the instant case (the Executive Department of the State of Alabama) and Defendant Scrushy's relationship with that enterprise was distinctly different than the relationships in the Government's cited cases. *Houle* involved a non-RICO defendant who engaged in drug activity while at a national meeting for officers of the El Diablos Motorcycle Club. The written constitution of the club, which Houle belonged to, required members to be 21 years of age, Caucasian, and ownership of a firearm and a Harley-Davidson. 237 F.2d at 74. *Gotti* involved a RICO enterprise identified as the "Gambino Organized Crime Family of La Cosa Nostra," and the court rejected non-RICO defendant Matera's 8(b) joinder based on the indictment's allegations that Matera was an "associate in the Gambino Organized Crime Family" and that he participated in the racketeering act of murder of one Hydell "'for the purpose of gaining entrance to and maintaining and increasing his position' in the Gambino family." 2004 WL 602689 at *2. *Krout*, the

6

Government neglected to inform this Court, involved a Texas prison gang known as the "Mexican Mafia," and the principal offenses proved at trial involved a heroin and cocaine distribution scheme inside state prisons and on the streets of San Antonio. 66 F.3d at 1424. Likewise, *Manzella* involved a non-RICO defendant (Jimenez) who the indictment alleged went to a "Louisiana crime organization" headed by "kingpin Joseph Provenzano" and hired the enterprise's services to commit a fictional "theft" of his automobile, for which Jimenez was indicted for two counts of mail fraud. 782 F.2d at 536, 540.

The Government cites *United States v. Cervone*, 907 F.2d 332, 341 (2d Cir. 1990) as a case in which the Second Circuit rejected an 8(b) argument of a non-RICO defendant who "was the only defendant charged in the two counts naming him[,] was not charged in the RICO conspiracy count or in any of the underlying racketeering acts, and [ ] was the only one of eighteen defendants not charged jointly in any count of the indictment with a defendant named in the RICO count." (Gov't Response at 5.) The Government's Response neglects to reveal that the Second Circuit reached this conclusion based on its finding that the non-RICO defendant's offense was a labor bribe in a labor racketeering indictment and that it was "integrally related" to Cervone (the business manager of the corrupt labor union) in two brief paragraphs, in which the Court does not cite to any authority, let alone any case linking the exception to Rule 8(b) to the existence of the RICO charge, most notably *Weismann*, 624 F.2d at 1129, the seminal Second Circuit case for this proposition. *Cervone*, 907 F.2d at 341. Finally, the Government cites to *United States v. Stillo*, 57 F. 3d 553, 557 (7th Cir. 1995) for its "finding joinder proper because the extortion count against the non-RICO defendant was connected to the pattern of

racketeering activity charged in the RICO count." (Gov't Response at 5.)  A careful reading of *Stillo*, however, reveals that Seventh Circuit's analysis, also without citing any case for the proposition that RICO is an exception to Rule 8(b), was tied to its conclusion that the scheme involving the non-RICO defendant "was the sole predicate act to have occurred within five years of the indictment, it was a necessary element of the RICO claim against Judge Stillo.  Therefore, severance of the two counts would have required trying the *Hess* episode twice."  57 F.3d at 557.

The foregoing is more than an exercise in factually distinguishing the Government's authority from the factual context of the misjoinder issue in Defendant Scrushy's case.  It is an effort to identify and isolate what is really at work in this line of authority that the Government claims constitutes nothing less than a blanket "RICO Exception" to the clear and mandatory requirements of Rule 8(b), despite the fact that in all non-RICO contexts the Eleventh Circuit has unambiguously held that for joinder to be proper under 8(b) "[e]ach of the actors must have known that he acted in furtherance of a common plan in which other participants were involved." *United States v. Andrews*, 765 F.2d 1491, 1496 (11th Cir. 1985) (citing *United States v. Levine*, 546 F.2d 658 (5th Cir. 1977)).

As the Government's Response notes, this "RICO Exception" is rooted in the intent of Congress in enacting the RICO provisions to "loosen[] the statutory requirements for what constitutes joint criminal activity," and thereby limiting the force of Rule 8(b) in such situations.  (Gov't Response at 7.)  Does this, however, mean that the enactment of the RICO statutory scheme abrogated completely the requirements of Rule 8(b) in all RICO cases for all defendants, especially those charged only with non-RICO

offenses that may have been part of a RICO defendant's "series of acts or transactions" but may or may not have been a "series of acts or transactions" within the ken of the non-RICO defendant?

Defendant Scrushy respectfully suggests that the answer to this question is found in the seminal RICO decision of the former Fifth Circuit, *United States v. Elliott*, 571 F.2d 880 (5th Cir. 1978). In the Fifth Circuit's analysis of a variance argument for a RICO defendant in *Manzella*, 782 F.2d at 538, the Court stated:

> In *United States v. Elliott*, 571 F.2d 880 (5th Cir. 1978, we nevertheless held that a group of defendants could together be convicted for violating RICO even though multiple conspiracies existed. Under the enterprise concept, agreement among all conspirators is no longer necessary:
>
>> …[E]ach agreed to participate, directly or indirectly, in the affairs of the enterprise by committing two or more predicate crimes. Under the statute, it is irrelevant that each defendant participated in the enterprise's affairs through different, unrelated crimes, so long as we may reasonably infer that each crime was intended to further the enterprise's affairs.
>
> 507 F.2d at 902-03. To prevent unjust association with crimes of others, however, *we required the government to show that each defendant had some knowledge of the enterprise's nature. See id.* at 903….[T]he language of *Elliott* explains that what ties these conspiracies together is not the mere fact that they involve the same enterprise but is instead—as in any other conspiracy—an "agreement on an overall objective.
>
> "Agreement on an overall objective" can be proved by either an explicit agreement to participate in the enterprise or circumstantial evidence showing "that each defendant must necessarily have known that others were also conspiring to participate in the same enterprise through a pattern of racketeering activity." [*United States v. Sutherland*, 665 F.2d 1181] at 1193.

*Manzella*, 782 F.2d at 538-39 (emphasis added). In other words, a defendant cannot be convicted of participating in a RICO offense or conspiracy without proof of some degree of awareness of the enterprise and its activities.

In finally determining that all RICO defendants were properly joined in *Castellano*, the district court employed a similar analysis. After concluding that the existence of a RICO count charging all defendants satisfied the requirements of Rule 8(b), the court went on to consider defendants' challenge to the good faith of the Government's RICO allegation. 610 F.Supp. at 1397. The court rejected the Government's argument that the only *mens rea* requirement was proof of at least two acts of racketeering. The court noted, "Under the government's view, strictly applied, the cashier who handles transactions at the request of bank officers, knowing the transactions are improper under banking regulations, could be named as a RICO defendant even though he or she had no knowledge whatever of the source of the funds or the overall scheme involved." *Id.* at 1400. The court went on to conclude that the language of § 1962(c) "can only be given content in association-in-fact cases by a requirement that the government show, at a minimum, that the defendant was aware of the existence of a group of persons, organized into a structure of some sort, and engaged in ongoing activities, which the government can prove falls within the definition of an enterprise contained in section 1961(4)." *Id.* at 1401. After examining government proffers as to each RICO defendant, *id.* at 1402-07, the court determined that the government had adequately demonstrated that each defendant was properly joined in the two RICO counts. *Id.* at 1402.

This same reasoning demonstrates the fatal flaw underlying the concept of a blanket "RICO Exception" to Rule 8(b).  For purposes of 8(b) joinder, how can a defendant "participate in … the same series of acts or transactions" within the meaning of Rule 8(b) if the defendant has no knowledge of the series or of acts or transactions or the enterprise that commits them, save the defendant's knowledge of the single act or transaction with which he is charged?  To conclude that the RICO charge which is not lodged against this defendant, who is unaware of either the enterprise or its activities, supplies the "connexity" for purpose of 8(b) joinder of the unknowing defendant is not only reverse engineering of the worst sort, it flies in the face of the binding authority of *Elliott,* 571 F.2d at 902-03, that one cannot be a part of a RICO enterprise or its activities without knowledge of the enterprise or its activities.

It is this requirement—an awareness of the existence of a RICO enterprise and its activities—that is missing in the Government's advocacy of a blanket "RICO Exception" to the requirements of Rule 8(b).  Moreover, a careful examination of the Government's cases which hold that a non-RICO defendant can properly be joined based on the existence of a RICO count and a linkage between that defendant's charged offenses and the RICO activity demonstrate that the facts in virtually every case would easily establish the existence of an awareness of the existence of a RICO enterprise and its activities. As demonstrated above, each of the cases cited by the Government in its Response to support its claim of a "RICO Exception" involved either an allegation of joint obviously criminal activity by each defendant, a RICO charge against each defendant, clear knowledge of the enterprise—such as the El Diablo Motorcycle Club or the Gambino Organized Crime Family—and/or a non-RICO defendant, such as defendant Jiminez in

11

*Manzella,* who went to the Provenzano-led "Louisiana crime organization" in order to procure assistance with a clearly illegal act (a phony car theft to facilitate a fraudulent insurance claim), an activity that was patently criminal.

It is just these critical elements that are so conspicuously absent from Defendant Scrushy's indictment, and which necessitate the application of the mandatory protections of Rule 8(b) notwithstanding the fact that he is charged in an indictment with acts which are also alleged to be part of a pattern of racketeering activity carried out by two of his co-Defendants. The key element missing in the instant indictment is any allegation or any factual context that would allow this Court to infer that Defendant Scrushy had any awareness of the alleged enterprise or the activities associated with this enterprise. If this Court does not require this element to justify joinder under Rule 8(b), this Court will have carved out an unlimited blanket "RICO Exception" to Rule 8(b) that is unprecedented in any Circuit, most especially the Eleventh Circuit. The Government is asking this Court to go where no other court has gone before in upholding joinder under its proffered blanket "RICO Exception."

There is no allegation in the indictment that Defendant Scrushy had any awareness of the alleged activities relating to influence over alcoholic beverage and waste disposal regulation, the assessment of hazardous waste fees and taxes, allocation of municipal bond funding, state construction contracting, or ALDOT construction contracts. There is no allegation in the indictment that Defendant Scushy had any awareness that the Executive Department of the State of Alabama was being operated as a criminal enterprise. Without an allegation of such knowledge of the alleged enterprise

or its activities, the indictment fails to allege that Defendant Scrushy participated in a "series of acts or transactions" within the meaning of Rule 8(b).

Unlike the defendants who joined or went to an undeniably criminal enterprise like a prison gang or an Organized Crime Family, Defendant Scrushy, the indictment alleges, went to the duly elected Governor of the State of Alabama. There is nothing in the indictment's allegations that would demonstrate an awareness in Defendant Scrushy that he was contacting the representative of a RICO enterprise. Similarly, it is not alleged that Defendant Scrushy met with co-Defendant Siegelman to participate in an obviously criminal act—like the car "theft" in *Manzella* or the drug smuggling in *Bryan*. Instead, the indictment alleges that Defendant Scrushy's dealings with the Governor were in regard to a campaign contribution, an area subject to considerable dispute and interpretation as to intent and criminality.

While these "series of acts or transactions" may be properly alleged as to co-Defendants Siegelman and Hamrick, since the indictment charges them with participating in the RICO offense, without the critical allegation of Defendant Scrushy's awareness of the enterprise or the activities, the "RICO Exception" cannot be applied to bring him into a trial with an enterprise or activities that he was unaware of without rendering the protections of Rule 8(b) meaningless. There is no indication that Congress intended to repeal Rule 8(b) in all RICO cases, and it would be fundamentally unfair to strip Defendant of those protections in the absence of any allegation that he was aware of the enterprise or its activities.

While the RICO statutory scheme clearly expanded the concept of joint criminal activity, it did not expand it to allow the prosecution or the joinder of defendants who are

completely unaware of the existence of the enterprise or the joint criminal activity. Defendant respectfully submits that in light of all these considerations, the indictment fails to allege that he, *Defendant Scrushy*, "participated in the same act or transaction, or the same series of acts or transactions, constituting an offense or offenses," within the meaning and intent of Rule 8(b), and that severance of his case from the cases of his co-defendants is mandatory under Rule 8(b).

## B. DEFENDANT SCRUSHY'S TRIAL MUST BE SEVERED PURSUANT TO FED. R. CRIM. P. 14 IN ORDER TO AVOID COMPELLING PREJUDICE TO DEFEDANT SCRUSHY.

In Section B of his initial Severance Motion, Defendant Scrushy argued that his case should also be severed under Rule 14(a) in order to avoid compelling prejudice from the gross disparity in the weight of evidence to be presented against his co-Defendants, the disparity between the complexity of the transaction charged against Defendant Scrushy and those charged against his co-defendants, and the evidence that would be adimissible at a joint trial that would not be admissible in a severed trial (particularly the evidence relating to allegations of other bribery schemes involving co-Defendants that Defendant Scrushy was not only not involved in, but had no knowledge of). (Severance Motion at 21-27.)

In its Response, the Government emphasized the heavy burden a defendant faces in persuading a trial court that compelling prejudice will result from a joint trial, the general preference for joint trials, the ability of the jury to compartmentalize the evidence of the single transaction involving Defendant Scrushy, and the presumed efficacy of cautionary and limiting instructions to the jury. (Gov't Response at 14-26.)

Defendant does not dispute that he has a substantial burden under existing case law to convince this Court that the potential for prejudice outweighs the considerations of judicial economy that flow from a joint trial. But, contrary to the Government's implication, that burden is one that can be met in the appropriate circumstances.[1] As recognized by the Supreme Court in *Zafiro v. United States*, 506 U.S. 534, 539, 113 S.Ct. 933, 938 (1993), severance under Rule 14 should be granted when "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Of particular relevance to the analysis of the need for severance in the instant case is the Supreme Court's discussion in *Zafiro* noting that:

> Such a risk might occur when evidence that the jury should not consider against a defendant what would not be admissible if a defendant were tried alone is admitted against a codefendant. For example, evidence of a codefedant's wrongdoing in some circumstances erroneously could lead a jury to conclude that a defendant was guilty. When many defendants are tried together in a complex case and they have markedly different degrees of culpability, this risk is heightened.

*Zafiro*, 506 U.S. at 539 (citing *Kotteakos v. United States*, 328 U.S. 750, 774-75, 66 S.Ct. 1239, 1252-1253 (1946)).

In his Severance Motion, Defendant Scrushy specifically argued in regard to this concern:

---

[1] The Government specifically points out the deferential standard of review of any decision by this Court on this ground for severance, going so far as to advise this Court that, "This Circuit has specifically noted that appellate courts are generally reluctant to second guess a district court's decision on severance." (Gov't Response at 15) (citations omitted). Defendant respectfully submits that this Court should, and will, make its Rule 14 severance decision based on the appropriate legal standard, by balancing the obligation to insure Defendant a fair trial against the judicial economy of a joint trial, rather than a calculation based on the likelihood of reversal on appeal.

Finally, the evidence relating to the allegations that Defendant Siegelman solicited and accepted bribes from other individuals in numerous transactions totally unrelated to Defendant Scrushy will result in compelling prejudice to Defendant Scrushy. The impact of the considerable evidence relating to Defendant Siegelman's alleged practices—none of which would be admissible in a trial of Defendant Scrushy if he were severed—cannot help but color the jury's view of the single transaction with which Defendant Scrushy is charged. It will be Defendant Scrushy's defense that the $500,000 in question was a legitimate political contribution and that there was no relationship between that contribution and any appointment to the CON Board. Were this transaction tried alone—as it should be—the evidence will be limited to any information relevant to that transaction, and it will be up to the jury to determine the intent of the parties relative to that single transaction.

(Motion to Sever at 26-27.)

The Government's response to this argument is curious. The Government claims that "much of the same evidence offered at a joint trial against all Defendants is admissible in a separate trial against Defendants Scrushy and Roberts individually since, as Defendant Scrushy recognizes, see Scrushy Mot. at 27, a key element in the offenses charged against Scrushy and Roberts is the intent of the parties (i.e., Siegelman, Scrushy, and Roberts) to engage in the various bribery schemes alleged." (Gov't Response at 20). So far so good. However, the Government adds a footnote to this assertion which claims:

For example, to prove the offenses arising out of and related to the bribery scheme against Defendants Siegelman and Scrushy concerning the CON Board, evidence of Defendant Siegelman's acceptance of bribes and things of value in exchange for official discretion in other bribery schemes is relevant and admissible against Defendant Scrushy to prove that Defendant Siegelman had the intent to accept bribes. A similar analysis applies to the bribery scheme involving Defendants Siegelman and Roberts concerning ALDOT.

(Gov't Response at 20 n. 4.)

The Government's concept of relevance is novel, but hardly consistent with the Federal Rules of Evidence. The Court has two alternatives if it determines that Defendant Scrushy is entitled to a severance.

First, the Court could sever Defendant Scrushy's case entirely and grant him a separate trial at which he would be the sole defendant on trial. Should the Court grant this relief, there is absolutely no way that any evidence of Defendant Siegelman's acceptance of bribes and things of value other than the $500,000 allegedly received from Defendant Scrushy would have any relevance to justify the admission of such evidence against Defendant Scrushy. To convict Defendant Scrushy of any of the offenses charged in the indictment, the Government must show that *Defendant Scrushy*, not some other Defendant, committed the prohibited act with the requisite *mens rea*. Defendant Siegelman's state of mind in soliciting or accepting $500,000 from Defendant Scrushy, if that occurred as alleged, has absolutely no relevance to Defendant Scrushy's state of mind in providing that money, if it occurred as alleged, unless the Government can prove that Defendant Scrushy was aware of Defendant Siegelman's state of mind. Such knowledge cannot be attributed to Defendant Scrushy absent evidence of a statement by Defendant Siegelman in Scrushy's presence of his state of mind in regard to the transaction, or other similar evidence that Scrushy learned of Siegelman's state of mind in regard to the transaction. More importantly, evidence that Siegelman conducted other similar transactions would be completely inadmissible against Scrushy absent evidence that Scrushy was aware of the similar transactions. As a result, if Defendant Scrushy is granted a separate trial as an individual defendant, any evidence of the other Siegelman transactions would not be admissible.

In the alternative, this Court could grant a separate trial as to Counts Three though Nine in which Defendants Scrushy and Siegelman would be tried together. In such a trial, the evidence of Siegelman's other transactions would likewise be irrelevant to Scrushy's intent in regard to the CON Board transaction, and inadmissible against Scrushy. Any evidence of the other transactions involving Siegelman would not be admissible against Siegelman unless the evidence were admitted pursuant to Fed. R. Evid. 404(b). Such admissibility would be determined by this Court under a very different and more limited standard than its admissibility in a trial on all of the indicted charges, where its admissibility would be determined pursuant to Rules 401 and 402. While admission in either circumstance would be subject to the balancing of probative value versus unfair prejudice under Rule 403, the incremental probative value under 404(b) where it is admitted for a limited, specific purpose authorized by the rule is far different from the probative value where the evidence is proof of the commission of an offense that is being tried before that jury. Additionally, when, and if, such evidence is admitted under Rule 404(b), that evidence would be admissible only against Defendant Siegelman, and the Court's cautionary instruction can be far more specific—and effective—in insuring that the Rule 404(b) evidence is not considered against the other defendant. Such a cautionary instruction would include both the element that the evidence is only adimissible against Defendant Siegelman for a limited purpose *and* the additional instruction that the evidence is not admissible against Defendant Scrushy for any reason whatsoever. The contrast between such an instruction and the more generalized instruction that certain evidence is admissible against some defendants and not others that

18

would be applicable in a joint trial of all Defendants on all charges in this case is substantial, as is the protection it affords against unfair prejudice.

While the other reasons for Rule 14 severance in this case are not insignificant, and should be carefully considered in determining the need for severance, Defendant respectfully submits that the admission of the evidence involving the six areas of alleged bribery that do not involve Defendant Scrushy in any way, and as to which Scrushy had no inkling they were occurring and which are charged as part of a racketeering case will result in compelling prejudice against Defendant that cannot be overcome by any limiting instruction.

Defendant respectfully submits that it will be impossible for any jury, regardless of cautionary instructions, to accurately determine the intent of Defendant Richard Scrushy vis-à-vis the single, discrete transaction in which he was involved if the determination must be made in the presence of evidence that co-Defendants Siegelman, Hamrick, and/or Roberts were involved in six different bribery schemes over a significant period of time involving bribes and solicitations of bribes relating to alcoholic beverage sales at a motor speedway, regulation of waste disposal facilities, efforts to advance a business on the list of companies eligible for industrial tax-free bonds, and construction of warehouses for the Alabama Department of Economic and Community Affairs and State of Alabama Alcoholic Beverage Control Board, (Doc 61 at 15); reduction of fees for the Cherokee County landfill and multiple Hazardous Waste Fees involving a facility in Emelle, Alabama, (*id.* at 16); the issuance of numerous performance bonds, (*id.* at 17); and the allocations of $55,936,271 from ALDOT to the Tuscaloosa County Commission and at least 23 checks totaling $1,933,098.35 relating to

the Rainline Corporation. (*id*. at 25-27).

Defendant asks this Court to consider the following hypothetical. Defendant A is a professional bank robber who has robbed twelve banks in the same city within the past two years. Defendant A's *modus opperandi* in robbing the first eleven banks is to drive to the bank with another person (either one of two confederates, Defendants C and D) in a late model car, enter the bank dressed as a businessman carrying a briefcase, and present a check to the teller. The check has a note written on it instructing the teller to remain calm and to pretend to cash the check by counting out exactly $550.50 and giving it to Defendant A with a cheerful smile and a hearty "Thank you, Mr. Robertson." The note also indicates that Defendant A has a gun in his briefcase. On the day of Defendant A's twelfth robbery, Defendant A goes to a car dealership. He is dressed as a businessman and carrying a briefcase. He approaches a car salesman who he has met casually at the local golf club on a number of occasions, and expresses an interest in purchasing a new car. After some discussion, Defendant A agrees to go for a test drive with the car salesman, soon to be Defendant B, in the car. During the test drive, Defendant A approaches a bank, and asks Defendant B if he minds if Defendant A runs into the bank to cash a check. Defendant B, sensing a possible sale, accedes to this request. Unbeknownst to Defendant B, Defendant A enters the bank and robs the bank using his usual *modus opperandi*. Defendant A leaves the bank with $550.50 in his briefcase, returns to the car, and drives off toward the car dealership with Defendant B in the car. They are both arrested two blocks away and charged with armed bank robbery. Prior to trial, Defendant B files a motion for severance, claiming that he will be prejudiced by a joint trial with Defendants A, C, and D where the other eleven bank

robberies committed by Defendant A along with either Defendant C or D will come into evidence. Defendant B's defense will be that while he provided the car to Defendant A to travel to the bank and was in the car before, during and after the robbery, he had no idea that Defendant A was a bank robber, or that he was going to rob a bank on that day.

Could a jury in a joint trial of Defendants A, B, C, and D be expected to accurately understand and sort the independent evidence against Defendant B solely based on Defendant B's own acts, statements and conduct? Or would there be substantial risk that the jury could be influenced by the evidence admissible only against Defendants A, C, and D? When a defendant is charged with a discrete act such as the single bank robbery charged to Defendant B, should he face a trial where his intent is to be determined in the context of numerous other illegal acts committed by another group of individuals without his knowledge or involvement, or should Defendant B be entitled to have his case determined by a jury that is given an accurate picture of what occurred within the presence and knowledge of Defendant B, so that the jury may accurately determine Defendant B's knowledge and intent in regard to the single transaction in which he participated and knew about? [2]

Defendant Scrushy respectfully submits that the single transaction with which he is charged should be tried on the merits of that transaction and nothing else. What co-Defendant Siegelman knew or thought or intended when he entered into the alleged

---

[2] To carry this hypothetical back to the issue of misjoinder discussed in Section A of this Reply, *supra*, what if Defendants A, C, and D were part of an Organized Crime Family? Defendant A, C, and D are charged with a RICO conspiracy which includes as a predicate act the robbery involving Defendant B. Notwithstanding Defendant B's lack of knowledge of the existence of the enterprise and its activities, is joinder of Defendant B, a non-RICO defendant, proper under the authority which the Government claims recognizes a "RICO Exception" to the requirements of Rule 8(b)?

transaction with Defendant Scrushy does not inform the jury anything about Defendant Scrushy's *mens rea* in regard to that transaction unless the Government can prove that Siegelman made Scrushy aware of his thoughts or intentions. More importantly, what Defendant Siegelman, or any other Defendant did or thought or intended in regard to the numerous other transactions charged in the indictment does not inform the jury anything about Defendant Scrushy's actions or intent where, as here, the indictment fails to allege that Defendant Scrushy knew about those transactions nor agreed in some way to participate in some overall scheme involving the other Defendants.

It is simply far too much to expect of any jury, regardless of cautionary or limiting instructions, to ignore the evidence of an on-going bribery scheme involving a wide-ranging group of six areas of governmental functions having nothing to do with Defendant Scrushy when the jury undertakes to make the difficult determination of Defendant Scrushy's individual intent in regard to his single, discrete transaction. As the district court in *United States v. Shankman*, 13 F. Supp.2d 1358 (S.D.Ga. 1998), indicated when it was considering and granting a new trial based on its failure to grant severance to a defendant charged as an employee in a medical office's fraudulent billing scheme:

> The test for compelling prejudice is whether under all the circumstances of the particular case, as a practical matter, it is within the capacity of the jury to follow the admonitory instructions and accordingly to collate and appraise the independent evidence against each defendant solely upon that defendant's own acts, statements and conduct.

*Shankman,* 13 F. Supp. 2d at 1367-1368 (quoting *Hewes,* 729 F.2d at 1319). "If the jury cannot keep separate the evidence that is relevant to each defendant and render a fair and impartial verdict as to each, severance should be granted." *United States v. Carrazana,* 921 F.2d 1557, 1567 (11th Cir. 1991).

Defendant respectfully submits that the jury in the instant case will be unable to render a fair and impartial verdict as to his charges unless this Court permits him to be tried before a jury which is not exposed to the mass of evidence which has nothing to do with Defendant Scrushy and which would be completely inadmissible, or at least properly sequesterd as Rule 404(b) evidence admitted for a limited purpose against a single co-Defendant, in a trial based solely on the charges for which he was indicted.

WHEREFORE, Defendant respectfully prays that this Court enter an Order severing his trial from the trial of his co-Defendants pursuant to Rule 8(b) or, in the alternative, that this Court enter an Order severing his trial pursuant to Rule 14, and for such other and further relief as this Court may deem just and proper.

This 18th day of January, 2006.

Respectfully submitted,

Arthur W. Leach
Terry Lucas Butts
Leslie V. Moore
2310 Marin Drive
Birmingham, Alabama 35203
Phone: 205-822-4224
Fax: 205-824-0321

Henry Lewis Gillis
Thomas Means Gillis & Seay
PO Drawer 5058
Montgomery, Alabama
Phone: 334-270-1033
Fax: 334-260-9393

James K. Jenkins
Bruce Maloy
Maloy & Jenkins
25th Floor
75 Fourteenth Street NW
Atlanta, Georgia 30309
Phone: 404-875-2700
Fax: 404-875-7857

Attorneys for Richard M. Scrushy

## CERTIFICATE OF SEVICE

I hereby certify that on the 18th day of January, 2006, I electronically filed the foregoing "Defendant Richard M. Scrushy's Reply to United States' Response to Defendants Scrushy's and Roberts's Motions for Severance" with the Clerk of the Court using the CM/ECF system which will send notification of such to counsel of record.

Arthur W. Leach
2310 Marin Drive
Birmingham, Alabama 35243
Phone: (205) 822-4224
Fax:    (205) 824-0321
E-Mail: les.moore@lvmlaw.com