IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 2:05-cr-119-MEF |
| | ) | (WO) |
| RICHARD SCRUSHY | ) | |
| GARY MACK ROBERTS | ) | |

## MEMORANDUM OPINION AND ORDER

### I.  INTRODUCTION

Defendants Scrushy and Roberts have filed motions to sever pursuant to Federal Rules of Criminal Procedure 8(b) and 14.  (Docs. # 69 & 70).  A Rule 8(b) claim questions the propriety of joining two or more defendants in a single indictment in the first instance.  A Rule 14 claim assumes that the initial joinder of the defendants was proper but challenges their joint trial as unduly prejudicial.  *See United States v. Bryan*, 843 F.2d 1339, 1342 (11th Cir. 1988).  For the reasons that follow, the Court concludes that neither Scrushy nor Roberts were improperly joined under Rule 8(b), nor is their joinder unduly prejudicial under Rule 14.  Thus, it is ORDERED that Defendant Scrushy and Roberts' Motions for Severance (Docs. # 69 & 70) are DENIED.

The court will first describe the counts of the second superseding indictment and then explain its conclusions that there is no improper joinder in this case.

1

## II.  THE INDICTMENT[1]

The indictment in this case names Don Eugene Siegelman as a defendant and alleges that during relevant periods of time, he held various public offices in the executive branch of the government of the State of Alabama.

> [F]rom on or about January 16, 1995, to on or about January 18, 1999, [Siegelman was] the Lieutenant Governor of the State of Alabama, and while Lieutenant Governor was also, from on or about March 31, 1996, to on or about November 3, 1998, a candidate for Governor of the State of Alabama, and was, from on or about January 18, 1999, to on or about January 20, 2003, the Governor of the State of Alabama.

(Second Superseding Indictment, ¶ 1.c.).

The indictment also names as defendants Paul Michael Hamrick, Gary Mack Roberts and Richard Scrushy.  During the relevant time periods, Defendant Hamrick was employed in the Lieutenant Governor's Office of the State of Alabama and later as Chief of Staff to the Governor.  Defendant Roberts was appointed by Siegelman as the Director of the Alabama Department of Transportation.[2]  Defendant Scrushy was the Chairman and Chief Executive Officer of Healthsouth Corporation which was regulated by the State of Alabama Certificate of Need Review Board ("CON Board").

Count One of the indictment alleges that Defendants Siegelman and Hamrick engaged

---

[1]  Unless otherwise specifically noted, all references to the indictment are to the second superseding indictment in this case.

[2]  Prior to his appointment, Roberts was employed by a business which had substantial dealings with the Alabama Department of Transportation.

2

in a RICO conspiracy in violation of 18 U.S.C. § 1962(d).[3]  With respect to the "enterprise"

requirement of the RICO statutes, the indictment alleges that the "enterprise" is the

"Executive Department of the State of Alabama . . . whose members functioned as a

continuing unit for a common purpose of achieving the objectives of the enterprise."  The

alleged broad purpose of the racketeering conspiracy alleged in Count One was "to give or

withhold official governmental acts and influence . . . in exchange for money and property

to which the participants in the conspiracy were not entitled," and "to deprive the State of

Alabama of its right to the honest services of its public officials and employees in exchange

for money and property" and "to conceal and otherwise protect the conspiracy and its

participants from detection and prosecution."  (Indict. at ¶ 5).

Count Two of the indictment is a substantive RICO count charging a violation of 18

U.S.C. § 1962(c) which provides as follows:

> It shall be unlawful for any person employed by or associated with any
> enterprise engaged in, or the activities of which affect, interstate or foreign
> commerce, to conduct or participate, directly or indirectly, in the conduct of
> such enterprise's affairs through a pattern of racketeering activity or collection
> of unlawful debt.

Count Two of the indictment alleges that Defendants Siegelman and Hamrick

"unlawfully and knowingly conducted and participated . . . in the conduct of the affairs of

the enterprise through a pattern of racketeering activity" as further set out in the indictment.

Count Two sets forth a number of separate racketeering acts, and the Court will describe the

---

[3] This section of the statute provides that it is "unlawful for any person to conspire to violate
any of the provisions" of the first three subsections of 18 U.S.C. § 1962.

two that are relevant to this opinion.

Count Two alleges that Racketeering Act 1 consisted of Siegelman, Scrushy[4] and others using various means[5] to engage in a scheme through which a representative[6] of HealthSouth would obtain a position on Alabama's CON Board in exchange for Scrushy's payment to Siegelman of the sum of $500,000.

Count Two alleges that Racketeering Act 5 consisted of Siegelman and others, including Roberts,[7] using various illegal means including bribery, extortion, mail fraud, and money laundering to obtain money and property to which they were not entitled in exchange for the use of official action and influence regarding the work and business of the Alabama Department of Transportation.[8]

Counts Three and Four of the indictment, in which Siegelman and Scrushy are named, charges them with federal funds bribery and aiding and abetting each other "in connection

---

[4] Scrushy is not named as a defendant in count two of the indictment.

[5] Those means are extortion under color of official right in violation of 18 U.S.C. § 1951; bribery in violation of ALA. CODE 13A-10-61(a)(2); honest services mail fraud in violation of 18 U.S.C. §§ 2, 1341 and 1346; and money laundering in violation of 18 U.S.C. §§ 2 and 1956(a)(1)(B)(i).

[6] Scrushy was appointed to the CON Board in 1999; another HealthSouth employee was appointed in 2001.

[7] Roberts is not named as a defendant in Count Two. However, the indictment does allege in Count Two, ¶ 43 that Roberts aided and abetted Siegelman to deprive the State of Alabama of the honest services of Siegelman as Governor and Roberts as Director of the Alabama Department of Transportation.

[8] Racketeering Acts 2 through 4 do not involve Scrushy or Roberts but do allege similar acts of conducting the "enterprise" for illegal activities.

with the appointment of Richard Scrushy to the CON Board," all in violation of 18 U.S.C. §§ 2 & 666(a)(1)(B).  (Indict. at ¶¶ 49-51).

Count Five, in which Siegelman and Scrushy are named, charges them with conspiracy to "defraud and deprive the State of Alabama of its right to the honest and faithful services" of Siegelman as Governor and Scrushy as a member of the CON board, in violation of 18 U.S.C. § 371.  (Indict. at ¶ 52-66)

Counts Six through Nine, in which Siegelman and Scrushy are named, charge them with aiding and abetting each other to commit honest services mail fraud as part of their scheme to defraud and deprive the State of Alabama of its right to honest and faithful services of Siegelman and Scrushy in connection with the CON board, in violation of 18 U.S.C. §§ 2, 1341 & 1346.  (Indict. at ¶ 57-60).

Counts Ten through Twelve, in which Siegelman and Hamrick are named, charge them with aiding and abetting each other to commit honest services mail fraud as part of their scheme to defraud and deprive the State of Alabama of its right to honest and faithful services from themselves as public officials in connection with governmental regulation of specified activities, allocation of bond funding and construction contracting, in violation of 18 U.S.C. §§ 2, 1341 & 1346.  (Indict. at ¶ 61- 63).

Counts Thirteen and Fourteen, in which Siegelman and Hamrick are named, charge them with aiding and abetting each other to commit honest services mail fraud concerning performance bonds on a construction contract as part of their scheme to defraud and deprive the State of Alabama of its right to honest and faithful services from themselves as public

officials, in violation of 18 U.S.C. §§ 2, 1343 & 1346.  (Indict. at ¶ 64- 65).

Count Fifteen, in which Hamrick is charged, and Counts Sixteen and Seventeen, in which Siegelman is named, charges them with obstruction of justice, in violation of 18 U.S.C. §§ 1512(b)(3) & 2.  (Indict. at ¶ 64- 68).

Counts Eighteen through Thirty-Three, in which Siegelman and Roberts are named, charge them with aiding and abetting each other to commit honest services mail fraud as part of their scheme to defraud and deprive the State of Alabama of its right to honest and faithful services from themselves as public officials in connection with functions of the Alabama Department of Transportation, in violation of 18 U.S.C. §§ 2, 1341 & 1346.  (Indict. at ¶ 69- 71).

Finally, Count Thirty-Four, in which Siegelman is named, charges him with extortion under color of official right and by fear of economic harm, in violation of 18 U.S.C. § 1951. (Indict. at ¶ 72).

### III.  DISCUSSION

#### A.  Joinder under Rule 8(b)

Federal Rule of Criminal Procedure 8(b) is a pleading rule.  *United States v. Morales*, 868 F.2d 1562, 1567-68 (11th Cir.1989).  The rule permits two or more defendants to be charged in the same indictment if "they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." FED.R.CRIM.P. 8(b).  *See also United States v. Blankenship*, 382 F.3d 1110, 1120 (11th Cir. 2004); *United States v. Liss*, 265 F.3d 1220, 1227 (11th Cir. 2001); *United States v. Andrews*,

765 F.2d 1491, 1496 (11th Cir. 1985). The rule is "to be construed liberally in favor of joinder." *Bryan*, 843 F.2d at 1342. In analyzing a Rule 8(b) claim, the court looks only to the indictment in order to determine if the initial joinder was proper. *Liss*, 265 F.3d at 1228; *Morales*, 868 F.2d at 1567; *Andrews*, 765 F.2d at 1496.

The Defendants argue that because they are not charged in either RICO count or in "an overall conspiracy . . . the multiple criminal acts alleged in the indictment are not part of the 'same act or transaction, or in the same series of acts or transactions' as required by Rule 8(b) . . ." (Scrushy Mot. For Severance (Doc. # 69) at 12). Rule 8(b) is not so limiting as the Defendants argue.[9] "[I]n order to establish that the [defendants] have engaged in the 'same series of acts or transactions' under Rule 8(b) the government must demonstrate that the acts alleged are united by some substantial identity of facts and/or participants." *United States v. Wilson*, 894 F.2d 1245, 1253 (11th Cir. 1990) (quoting *Morales*, 868 F.2d at 1569). "[E]ach participant need not have been involved in every phase of the venture, however, and each participant need not know each of the other participants' roles and identities." *Wilson*, 894 F.2d at 1253 (citing *Andrews*, 765 F.2d at 1496). *See also United States v. Holloway*, 971 F.2d 675, 679 (11th Cir. 1992).

The Defendants rely on *United States v. Ellis*, 709 F.2d 688 (11th Cir. 1983) in which the court found joinder improper.

---

[9] The Defendants rely on broad statements of the law in several cases (which have effectively been overruled on other grounds by *United States v. Lane*, 474 U.S. 438 (1986)) including *United States v. Levine*, 546 F.2d 658 (5th Cir. 1977), *United States v. Bova*, 493 F.2d 33 (5th Cir. 1974), and *United States v. Marionneaux*, 514 F.2d 1244 (5th Cir. 1975).

> A short-handed rendition of the Government's theory is that Dixie Pipe devised a scheme to defraud the citizens of Bullock County, Alabama, of honest public service within the intendment of the mail fraud statute (R.Vol. II, pp. 131- 32) and that appellants knowingly entered a conspiracy to effectuate such scheme. To paraphrase Judge Fay's opinion for the Court in *United States v. Nettles*, 570 F.2d 547, 551 (5th Cir. 1978), if the evidence showed one large conspiracy with Dixie Pipe as the hub, the three appellants as the spokes, and some interaction between the bribes to provide the rim, then the defendants could have been joined in one indictment. However, "for a wheel conspiracy to exist, those people who form the wheel's spokes must have been aware and must do something in furtherance of some single, illegal enterprise. If not, there is no rim to enclose the spokes." *United States v. Levine*, 546 F.2d 658, 663 (5th Cir.1977).

*Ellis,* 709 F.2d at 689 - 690 (footnote omitted).

Albeit in the civil context, the First Circuit's analysis shows that reliance on *Ellis'* metaphor is misplaced.

> A defendant who does not know the "entire conspiratorial sweep" is nevertheless jointly and severally liable, in the civil context, for all acts in furtherance of the conspiracy. Using a common metaphor, one may say . . . the Aetna appraisers, were at the hub of the overall RICO conspiracy, providing the central point through which all the defendant body shops were connected.

*Aetna Cas. Sur. Co. v. P & B Autobody,*  43 F.3d 1546, 1562 (1st Cir. 1994).  In the instant case, assuming the allegations in the indictment are true, Siegelman is was at the hub of the overall RICO conspiracy, providing the central point through which all of the participants sought to exert influence over and deprive the citizens of Alabama of the honest services of its executive department.  Scrushy and Roberts acted in a manner which furthered the enterprise.  Consequently, the Court concludes that the alleged offenses are factually similar, involving corruption and conspiracy in the Governor's office, and fully satisfy Rule 8(b)'s requirements.

8

The linchpin of the Defendants' argument to the contrary is based on their lack of knowledge about the enterprise that forms the basis of the RICO charges or the overall RICO scheme. They argue that they are improperly joined because the indictment contains no allegation that either Scrushy or Roberts knew about the RICO conspiracy or the other Defendants' schemes.[10] However, the actions of both Scrushy and Roberts form the basis of two of the predicate racketeering acts alleged in the RICO conspiracy. In addition, if the allegations set forth in the indictment are true, Siegelman is the common thread that links both Scrushy and Roberts to the overall scheme to deprive the citizens of Alabama of the honest services of its executive department.

Thus, the ultimate issue becomes whether, as a matter of law, Scrushy and Roberts must have had knowledge of the entire RICO enterprise or whether it is sufficient, for Rule 8(b) purposes, that they knew about and played a part in the overarching scheme. "[I]n proving the existence of a single RICO conspiracy, the government does not need to prove that each conspirator agreed with every other conspirator, knew his fellow conspirators, was aware of all of the details of the conspiracy, or contemplated participating in the same related crime." *United States v. Castro*, 89 F.3d 1443, (11th Cir. 1996). In *Bryan*, the court held that it is permissible to allege "one overarching RICO conspiracy and then list[] other separate charges, including specific conspiracies that arose from and [make] up that RICO scheme."

---

[10]  The government readily admits that Scrushy and Roberts are not named in the RICO conspiracy count or the RICO substantive count precisely because they had no knowledge of the RICO conspiracy.

*Bryan*, 843 F.2d at 1342. Rule 8(b) does not require that Scrushy or Roberts be charged in each count, or even in the RICO count. *Id*. In this case, a jury reasonably could conclude that the Defendants agreed on a single objective – to devise a scheme to deprive the State of Alabama of honest and fair services of its officials.

The Defendants seek to distance themselves from the overall scheme by emphasizing their limited roles and involvement only with Defendant Siegelman. For example, Scrushy argues that all of his charges relate to and arise out of the single transaction involving membership on and representation at the CON Board. In *United States v. Liss*, the defendants were physicians charged with conspiring with a laboratory to defraud the United States by receiving kickbacks for referring Medicare patients to the laboratory. The physicians did not know of each other and did not meet until they were indicted. The court held that their joinder was proper because they were both named in a conspiracy with the laboratory. 265 F.3d at 1227. In this case, both Scrushy and Roberts are charged, albeit in different counts, with conspiring with Siegelman to deprive the State of Alabama of the honest and fair services of its state officials. "Joinder under Rule 8(b) . . . is proper where, as here, an indictment charges multiple defendants with participation in a single conspiracy and also charges some but not all of the defendants with substantive counts arising out of the conspiracy." *Liss*, 265 F.3d at 1227. *See also United States v. Alvarez*, 755 F.2d 857 (11th Cir. 1985).

In *United States v. Andrews*, the court looked to the character of the acts, and knowledge of a common plan. 765 F.2d at 1496. "[E]ach participant need not have been

involved in every phase of the venture, . . . , nor need he have known the identity and role of each of the other participants. . . . Repetition of the same mode of operation may also provide a strong indiction of a larger scheme behind numerous individual offenses." *Id.* at 1496-97 (internal citations omitted). In this case, the indictment charges that each Defendant knew and participated with the main actor, Defendant Siegelman; they shared a general objective – to deprive the State of Alabama of the honest and fair services of the Governor; and they shared a common mode of operation of exchanging money and property to give or withhold official governmental influence. *See generally, Andrews*, 765 F.2d at 1497. The Court thus concludes that joinder under Rule 8(b) is proper.

### B. Severance under Rule 14

The general rule in this Circuit is that defendants who are jointly indicted should be tried together. *United States v. Baker*, 432 F.3d 1189, 1236 (11th Cir. 2005); *Morales*, 868 F.2d at 1571. This rule has been held to be particularly applicable to conspiracy cases. *Baker,* 432 F.3d at 1236. *See also United States v. Castillo-Valencia*, 917 F.2d 494, 498 (11th Cir. 1990); *Alvarez*, 755 F.2d at 857.

However, Defendants argue that they are entitled to severance under Federal Rule of Criminal Procedure 14 because they will be subjected to "compelling prejudice" if they are tried with the other Defendants. Federal Rule of Criminal Procedure 14(a) provides as follows:

> If the joinder of offenses or defendants in an indictment, an information, or consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or

provide any other relief that justice requires.

When deciding whether to sever based on Rule 14, the court "must balance the right of the defendant to a fair trial against the public's interest in efficient and economic administration of justice." *Baker*, 432 F.3d at 1236; *Alvarez*, 755 F.2d at 857.

"[W]hen defendants properly have been joined under Rule 8(b), a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent a jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539; *Blankenship*, 382 F.3d at 1123. A severance becomes necessary if, without a severance, a defendant would be unable to receive a fair trial and he would suffer "compelling prejudice against which a trial court could offer no protection." *United States v. Freyre-Lazaro*, 3 F.3d 1496, 1501 (11th Cir. 1993) (quoting *United States v. Magdaniel-Mora*, 746 F.2d 715, 718 (11th Cir. 1984)). *See also United States v. Morales*, 868 F.2d 1562.

To justify severance, a defendant must demonstrate "'specific and compelling prejudice' to the conduct of his or her defense . . . resulting in 'fundamental unfairness.'" *Baker*, 432 F.3d at 1236 (quoting *United States v. Knowles*, 66 F.3d 1146, 1159 (11th Cir. 1995)). *See also United States v. Meester*, 762 F.2d 867, 883 (11th Cir. 1985). The standard for determining compelling prejudice is whether the jury could compare and evaluate the independent evidence against each defendant on each count and reach individual verdicts as to each count. *Wilson*, 894 F.2d at 1253. *See also United States v. Pirolli*, 742 F.2d 1382, 1386 (11th Cir. 1984); *United States v. Silien*, 825 F.2d 320, 323 (11th Cir. 1987). A

defendant does not incur compelling prejudice merely because he may be acquitted if he is tried separately or because much of the trial evidence is applicable to his co-defendants.[11] *Baker*, 432 F.3d at 1236; *Alvarez*, 755 F.2d at 857.  *See also United States v. Kabbaby*, 672 F.2d 857, 861-62 (11th Cir. 1982) (per curiam).  A severance "is justified only if prejudice flowing from a joint trial is clearly beyond the curative powers of a cautionary instruction." *Baker*, 432 F.3d at 1237; *Alvarez*, 755 F.2d at 857.

The Defendants concede that their burden is daunting.  At this juncture, the Defendants do not raise a *Bruton*[12] issue or assert inconsistent antagonistic defenses.  In this case, the court finds that there is no reasonable possibility that the jury will not be able to keep track of the evidence as it pertains to each Defendant.  *See Bryan*, 843 F.2d at 1341. There are only four Defendants. The charges against each Defendant contain discreet, factually distinct and relatively uncomplicated offenses.  Key witnesses against the Defendants will be different.  "[T]here [i]s relatively little potential for jury confusion resulting from evidentiary 'spill-over' or 'guilt by association.'"  *Id*.  Moreover, the Court can ameliorate any possible prejudice by giving contemporaneous cautionary instructions as well as appropriate instructions at the conclusion of the trial.  Consequently, the Court

---

[11]  The mere fact that there may be some prejudice to a defendant is insufficient to justify severance because, as the courts have recognized, "[a] joint trial is necessarily going to involve some degree of prejudice."  *Morales*, 868 F.2d at 1572.

[12]  *See Bruton v. United States*, 391 U.S. 123 (1968).  In *Bruton*, the Court held that the Sixth Amendment was violated by the introduction at a joint trial of the confession of one defendant implicating another defendant when the confessing defendant did not testify and was not subject to cross-examination.

concludes that the Defendants have failed to demonstrate that they would suffer specific and compelling prejudice.

Finally, the Defendants question the abilities of any potential jurors in this cases, as non-legal lay people, to properly weigh the evidence as well as properly follow the court's instructions at the conclusion of the trial. The Court does not share the Defendants' concerns about the abilities of jurors who in this district are drawn from the rolls of those Alabama citizens registered to vote. "Juries are presumed to follow their instructions." *Zafiro*, 506 U.S. at 540 *quoting Richardson v. Marsh*, 481 U.S. 200, 211 (1987). In this Circuit, "the strong presumption is that jurors are able to compartmentalize evidence by respecting limiting instructions specifying the defendants against whom the evidence may be considered." *Blankenship*, 382 F.3d at 1123.

## CONCLUSION

Accordingly, for the reasons as stated, it is

ORDERED that the Defendants' motions to sever (Docs. # 69 & 70) be and are hereby DENIED.

Done this the 2nd day of February, 2006.

_____/s/ Mark E. Fuller_____
CHIEF UNITED STATES DISTRICT JUDGE