IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

UNITED STATES OF AMERICA,

v.                                                        Case No. 2:05cr119-F

RICHARD M. SCRUSHY,
        Defendant.

### DEFENDANT RICHARD M. SCRUSHY'S MOTION TO DISMISS INDICTMENT BECAUSE OF PROSECUTORIAL MISCONDUCT AND DELAY IN UNSEALING THE INDICTMENT

COMES NOW Defendant Richard M. Scrushy, by and through undersigned counsel, and moves this Court for entry of an Order dismissing the indictment in this case because of prosecutorial misconduct and undue delay in unsealing the indictment. In support of this request, Defendant respectfully shows this Court the following:

### Factual and Procedural Background

On May 17, 2005, a grand jury in the Middle District of Alabama returned the original indictment in this case in which it charged Defendant Scrushy and Don Eugene Siegelman with one count of conspiracy and two counts of federal funds bribery. (Doc 3.) That same day, the United States Attorney's Office filed a "Sealed Motion to Seal Case." (Doc. 1.) According to the Government, the primary reason to seal the indictment was to protect the Defendant Scrushy, who was at that time being tried as a Defendant in an unrelated case in the Northern District of Alabama. *Id.* In its motion, the Government represented to this Court:

> One of the defendants charged in the indictment is presently being
> tried in the Northern District of Alabama in a complex, high profile
> case. The United States requests that the instant indictment and the
> entire case, including all files and documents associated with the case,
> be sealed to prevent and preclude any undue prejudice to this
> defendant in the ongoing trial.

*Id.* ¶ 4. In the same motion, the Government also claimed to be investigating "*other*

criminal offenses" by the named defendants and by other people. *Id.* ¶ 5 (emphasis

added). Based on these representations, United States Magistrate Judge Charles S. Coody

entered an Order granting the Government's motion on May 17, 2005. (Doc 2.)

Defendant Scrushy was acquitted on all counts in the Northern District of

Alabama case on June 28, 2005.

Unaware that an indictment had been filed in the Middle District of Alabama five

months earlier naming Mr. Scrushy as a Defendant, on October 4, 2005, counsel for Mr.

Scrushy approached the Government in this District to engage in negotiations relating to

a grand jury investigation which was in progress in the Middle District. Present at that

meeting on behalf of Mr. Scrushy were attorneys Arthur W. Leach, Henry Lewis Gillis,

Christopher Whitehead, and Les Moore. *See* Sworn Statement of Leslie V. Moore, ¶ 5,

attached to this motion as EXHIBIT A and hereby incorporated. Present at that meeting

representing the Government were Acting United States Attorney Louis V. Franklin, Sr.,

Assistant United States Attorney James B. Perrine, Richard Pilger of the Public Integrity

Section, Department of Justice, and Joseph Fitzpatrick of the Alabama Attorney

General's Office. *Id.*

In the early stages of this meeting, the Government indicated what it believed to

be the relevant facts regarding Mr. Scrushy's conduct in the matter it was investigating.

Defense counsel asked what the Government would do if Mr. Scrushy could not testify

the way the Government wanted him to testify. Richard C. Pilger, an attorney with the Public Integrity Section of the Department of Justice, indicated that Mr. Scrushy "can expect to be indicted" if he could not testify as the Government expected. *Id.* ¶ 6. Later in the same meeting, Defendant's counsel Arthur W. Leach asked whether the Government had made a decision regarding whether to charge Mr. Scrushy with a crime. Mr. Leach's exact words were, "Has a charging decision been made?" *Id.* ¶ 7. Mr. Pilger responded, "No." *Id.* Mr. Pilger made this representation despite his knowledge that this decision had been made five months earlier and that Mr. Scrushy, at that moment, was a named Defendant in a sealed indictment. At the time he made the statement, Mr. Pilger had actual knowledge of the existence of the indictment and the decision to charge Mr. Scrushy because he signed the original indictment. (Doc. 3 at 11.)

In reliance on this answer from Mr. Pilger, one of Defendant's lead counsel, Mr. Leach, gave the Government attorneys a detailed proffer in which he revealed to the Government attorneys all the facts relating to Mr. Scrushy's involvement and counsels' legal theories as to why Mr. Scrushy's conduct did not violate the law.[1] EXHIBIT A, ¶ 8. Counsel provided the Government attorneys with specific factual information that, but for the Defendant's limited waiver of the attorney-client privilege, would have been privileged and with legal theories that were attorney work-product. Thereafter, Mr. Leach asked the Government to let Mr. Scrushy testify before the grand jury and tell his story to the grand jurors. *Id.* ¶ 10. The Government refused—as we know now because it could not subpoena an indicted defendant.

---

[1] The discussions were pursuant to Fed. R. Crim. P. 11 and hence are inadmissible at trial pursuant to Fed. R. Evid. 410. Out of an abundance of caution, Defendant has not included the details in this public filing. Counsel is willing to share them with the Court if needed once any attorney-client privilege issues are resolved.

Over the next three weeks, defense counsel had additional telephone conversations with Government attorneys on the case. In those telephone conversations, defense counsel continued to provide the Government attorneys with confidential information that counsel would not have disclosed had he known that a charging decision already had been made and an indictment had been returned five months earlier. On October 25, 2005, Defendant's counsel Leach was on the telephone with several Government attorneys. Defense counsel Les Moore was in the room and heard the conversation. Mr. Leach once again asked whether a charging decision had been made. *Id.* ¶ 12. This time Acting United States Attorney Louis Franklin responded. He told counsel, "No, not at this time." *Id.* Like Mr. Pilger, Mr. Franklin had signed the initial indictment five months before, (Doc 3 at 11), and had also signed the "Motion to Seal Case" on May 17, 2005. (Doc 1 at 2). The next day, October 26, 2005, the grand jury returned the first superseding indictment in this case, signed by Acting United States Attorney Louis Franklin. (Doc 9.) The Government filed a "Motion to Unseal Case" on that same day, (Doc 5), and Magistrate Judge Coody signed an Order unsealing the May 17, 2005 indictment. (Doc 6.)

### Argument and Legal Authorities

## A. THE INDICTMENT MUST BE DISMISSED BECAUSE THE GOVERNMENT MISLED THE MAGISTRATE JUDGE AND REPEATEDLY MADE FALSE REPRESENTATIONS TO DEFENSE COUNSEL TO INDUCE COUNSEL TO REVEAL CONFIDENTIAL FACTS AND LEGAL THEORIES.

Between May of 2005 and October of 2005, the Government intentionally misled Defendant Scrushy's counsel as to whether a charging decision had been made. It did so not for Defendant Scrushy's protection, as it argued in its original motion to seal the

4

indictment, but for tactical litigation advantages. It used the five months between the original indictment on May 17, 2005 and the first superseding indictment on October 26, 2005 to interview witnesses and investigate its case against Defendant Scrushy. In regard to Mr. Scrushy individually, the Government went even further: it pressured him to cooperate with the prediction of indictment even though he already had been indicted, and it used that same tactic, in conjunction with a deliberate misrepresentation that no charging decision had been made, to trick Defendant's counsel into engaging in negotiations during which the Government elicited highly material facts from counsel, as well as their theory of Mr. Scrushy's defense against those charges that counsel had developed—counsel to which Defendant Scrushy was constitutionally entitled once the original indictment was filed. *See Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019 (1938). Therefore, the indictment in this case must be dismissed.

A critical component of the Government's ruse was the sealing of the May 17, 2005 indictment. The Government may request that the magistrate judge seal an indictment where "public interest requires it" or "for sound reasons of public policy." *United States v. Edwards*, 777 F.2d 644, 648 (11th Cir. 1985), *citing United States v. Southland*, 760 F.2d 1366, 1379, 1380 (2d Cir. 1985). Moreover, great deference normally is given to a magistrate judge's decision to seal an indictment as the Government should be able to rely on that decision without risking a later dismissal. *Id.* That deference, however, is misplaced in this case.

When Magistrate Judge Coody ordered that the May 17, 2005 indictment be sealed, he relied on the Government's motion, which cited at least one reason of public interest: the protection of a defendant who was on trial at the time the indictment was

returned. (Doc 1, ¶ 4.) Magistrate Judge Coody was entitled to rely on the reason, which was proffered in a document signed by an officer of the Court, Acting Assistant United States Attorney Louis V. Franklin, Sr. (*Id.* at 2.) On June 28, 2005, that reason ceased to exist when a jury acquitted Mr. Scrushy of the charges against him in the Northern District of Alabama. Yet the Government did not move to lift the seal or otherwise notify the Magistrate Judge of the change in circumstances.[2]

The Government's second reason—continued investigation of *other* criminal offenses—can be legitimate in some circumstances, but was not in this case. In *Edwards*, the Government had to indict on drug charges before the statute of limitations ran. 77 F.2d at 648-49. It moved to seal the indictment so it could continue to investigate separate tax charges and because it was afraid the defendants would flee in the interim. Here, there was no danger of Defendant Scrushy fleeing the jurisdiction, and no such allegation in the Government's motion to seal. More significantly, the Government did not continue to investigate *other* criminal offenses—it merely worked to attempt to strengthen its evidence on the three existing charges. It is well-settled that the Government may not use the grand jury for the primary purpose of strengthening its case on a pending indictment. *See United States v. Alred*, 144 F.3d 1405, 1413 (11th Cir. 1998); *United States v. Beasely*, 550 F.2d 261, 266 (5th Cir. 1977).

Moreover, the Government never informed the Magistrate Judge of its real purpose in moving to seal the May 17, 2005 indictment—to gain extra time in which to continue to re-interview witnesses and thereby strengthen its case. Because the

---

[2] The Government's subsequent misrepresentations to Defendant Scrushy's counsel that a charging decision had not been made are particularly ironic in light of its assertion to the Magistrate Judge that it was sealing the indictment to protect the Defendant. (Doc. 3, ¶ 4.)

Government misled the Magistrate Judge, the Magistrate Judge was, unbeknownst to him, exercising discretion over nonexistent facts. In those circumstances, through no fault of the Magistrate Judge, the exercise of discretion is necessarily meaningless and cannot be entitled to deference. *See, e.g., United States v. Cross*, 928 F.2d 1030, 1040 (11th Cir. 1991) (no deference to decision made based on misleading information); *United States v. Canfield*, 212 F.3d 713, 717 (2d Cir. 2000) (same); *United States v. Conley*, 85 F.Supp.2d 1034, 1043 n.11 (W.D. Pa. 1994) (logic dictates that affiant forfeits deference afforded the magistrate's determination of probable cause when magistrate has been misled).

Rather than review the Magistrate Judge's May 17, 2005 Order with deference, this Court should review it as the Eleventh Circuit Court of Appeals reviewed the search warrant in *Cross*, where the affidavit contained misleading statements. First, the Court excises the misleading facts from the motion to seal—the protection of Richard Scrushy and the continued investigation of other charges—and adds the omitted facts—the Government's desire to strengthen its case by pressuring witnesses to change their stories. 928 F.2d at 1040. Then, the Court reviews the motion to seal *de novo*. *Id.* Moreover, the Court should not rely on any new reasons the Government might put forth to justify sealing the indictment. *See United States v. Wright*, 343 F.3d 849, 858 (6th Cir. 2003). Instead, the Court looks only to the non-misleading reasons presented on May 17, 2005 in support of its motion to seal. *Id.*

Applying these standards, it is clear that the indictment never should have been sealed, or any sealing should have ended upon Mr. Scrushy's acquittal on June 28, 2005. Once the Government's misleading reasons are removed from its motion, there are no

reasons remaining. Federal Rule of Criminal Procedure 6(e)(4) grants the courts broad grounds to seal an indictment, but giving the Government an extra five months to re-interview witnesses and to make an end run around the Sixth Amendment by deliberately misleading Defendant Scrushy's counsel into revealing critical facts not otherwise available to the Government and defense strategy are not among them. The Government misled the Magistrate to achieve a blatant violation of Rule 6(e)(4), and used the improperly obtained Order sealing the indictment to trick Defendant Scrushy's lawyers into revealing confidential information.

The Government's violation of Rule 6(e)(4) is reviewed for harmless error under Fed. R. Crim. P. 52(a). *See Bank of Nova Scotia v. United States*, 487 U.S. 250, 255, 108 S.Ct. 2369, 2373-74 (1988). Rule 52(a) requires this Court to disregard the prosecutorial misconduct in moving to seal the indictment unless misconduct affected the defendant's "substantial rights." *See United States v. Thompson*, 287 F.3d 1244, 1252-53 (10th Cir. 2002). Although harmless error typically is assessed after a trial, when a case involves improper sealing of the indictment, it is appropriate for the Court to assess pretrial whether "the sealing violation substantially affected the defendant's ability to defend against the charges." *Id.* at 1254.

The Government's misconduct in this case—both in misleading the Magistrate Judge and deliberately misrepresenting a known fact to defense counsel—caused real and measurable prejudice to Defendant Scrushy. *See United States v. Accetturo*, 858 F.2d 679 (11th Cir. 1988) (defendant must show actual prejudice from government misconduct for indictment to be dismissed). First, while the May 17, 2005 indictment was under seal, reports of interviews already furnished in discovery demonstrate that the Government

8

brought in numerous witnesses for interviews and re-interviews. The Government's tactics in its dealings with Defendant Scrushy's lawyers supports a strong inference that the Government's meetings with witnesses—especially witnesses similarly situated to Defendant Scrushy where the Government was seeking testimony to support the Government's version of transcactions which allegedly occurred with co-Defendant Siegelman—were designed to strengthen the case which the Government had already indicted. When questioning Defendant Scrushy's counsel in this case, the Government attorneys repeatedly tried to have counsel confirm the Government's version of the facts rather than simply present Defendant Scrushy's version. The Government told counsel that if Defendant Scrushy could not remember the facts the way it wanted them remembered, he could "expect to be indicted." EXHIBIT A, ¶ 6. This conduct supports an inference that the Government attorneys behaved in a similar manner with other important witnesses.

The Eleventh Circuit Court of Appeals specifically censured this type of pressure in *United States v. Heller*, 830 F.2d 150 (11th Cir. 1987). There, the defendant's accountant had not given the answers the government wanted. The agent told the accountant that if he did not cooperate against the defendant, he would soon be the defendant's co-defendant. *Id.* at 153. The accountant then changed his story and began cooperating. *Id.* at 153-54. The Eleventh Circuit found substantial interference with the defendant's rights and reversed his conviction. *Id.*; *accord United States v. Hammond*, 598 F.2d 1008, 1012-13 (5th Cir. 1979) (government statement to witness that he would have "nothing but trouble" if he continued to testify for defendant required reversal); *see also Webb v. Texas*, 409 U.S. 95, 97-98, 93 S.Ct. 351, 353 (1972) (defendant denied due

process where trial judge singled out sole defense witness to admonish about the dangers of perjury and witness thereafter refused to testify).

Second, and resulting in even more compelling prejudice to Defendant's ability to defend himself against the Government's charges, the Government attorneys made deliberate misrepresentations that "no charging decision had been made" despite their actual knowledge of the existence of a sealed indictment naming Defendant Scrushy. These misrepresentations were at the heart of a ruse to convince Defendant Scrushy to authorize his counsel to lay out his entire case in advance of trial. Defendant Scrushy's attorneys had repeated conversations with Government attorneys about the very facts contained in the sealed indictment. These conversations occurred for one reason and one reason only: because the Government attorneys told defense counsel that a charging decision had not been made, even though they knew full well that the grand jury had returned an indictment on May 17, 2005. Equipped with this ill-gotten intelligence, the Government could accomplish two improper goals. First, by knowing what Defendant Scrushy would say as to key transactions and events, the Government also knew which witnesses the Defendant would call at trial. Perhaps more importantly, the Government had a road map to weaknesses in its case, and contradictions in the testimony of its witnesses against Defendant Scrushy—and therefore which witnesses it needed to re-interview and the specific facts that needed to be revisited prior to unsealing the indictment. This misconduct and the prejudice it has caused Defendant Scrushy have deprived him of his ability to effectively defend against the instant charges, and require that the indictment be dismissed.

**B.  THE INDICTMENT MUST BE DISMISSED BECAUSE THE DELAY IN
UNSEALING THE INDICTMENT VIOLATED DEFENDANT'S RIGHT TO DUE
PROCESS.**

The Government delayed unsealing the indictment in this case for more than five

months, and it did so deliberately to gain a tactical advantage over Defendant Scrushy.

As discussed above, this delay substantially prejudiced Defendant in his ability to defend

against the Government's charges.  Defense counsel was duped into revealing privileged

information.  Based on this information, it is reasonable to infer that witnesses have been

interviewed or re-interviewed in order to investigate and rebut the information revealed to

the Government by Defendant's counsel. The deliberate delay and resulting prejudice

require that the indictment be dismissed.

When the Government deliberately delays indicting a defendant to gain a tactical

advantage and that delay causes the defendant prejudice, the defendant's due process

rights are violated, and the indictment must be dismissed. *See*, *e.g.*, *United States v.

Foxman*, 87 F.3d 1220, 1222 (11th Cir. 1996). Bad faith on the Government's part—that

is, acting to delay in the hope that the delay in and of itself would prejudice the

defendant—is not necessary to find a due process violation.  *Id.* at 1223 n.2. As the

Eleventh Circuit Court of Appeals has noted, "[t]he critical element is that the

government makes a judgment about how it can best proceed with litigation to gain an

advantage over the defendant and, as a result of that decision, an indictment is delayed."

*Id.*

If the Government had decided in May 2005 to indict Defendant Scrushy and had

deliberately refrained from so doing until October 26, 2005, to gain a tactical advantage

over Defendant, then this case would fit squarely within the line of cases that prohibit the

Government from deliberately delaying indictment to gain a tactical advantage over a defendant. *See id.* at 1222-23 (government waited until other defendants had been convicted and could be given immunity; defendant lost witnesses and evidence in the interim; case remanded to determine whether there was a due process violation); *United States v. LeQuire*, 943 F.2d 1554, 1560 (11th Cir. 1991) (indictment must be dismissed when prejudice from deliberate delay impairs the fairness of the trial).

That the Government chose here instead to indict Defendant Scrushy and then have the indictment sealed is no reason for this Court to treat the delay in unsealing the indictment more leniently than it would a delay in bringing the indictment. Indeed, given that the Government misled the Magistrate Judge to have the indictment sealed and then used that sealing Order to deliberately mislead defense counsel about the existence of the indictment, there is reason for this Court to treat these circumstances less leniently. The Government purposefully delayed letting Defendant Scrushy know he had been indicted to gain a tactical advantage over Defendant, and the deliberate delay worked: the Government has learned Defendant Scrushy's factual and legal defense and has had the time to adjust accordingly. Defendant Scrushy has suffered substantial prejudice in his ability to effectively defend against the instant charges. The Government's course of conduct is a flagrant violation of Defendant's due process rights and the indictment should be dismissed.

WHEREFORE. Defendant Scrushy respectfully prays that this Court conduct an evidentiary hearing into the circumstances surrounding the sealing to the May 17, 2005 indictment, the delay until October 26, 2005 in unsealing that indictment, and the conduct of the Government in meetings and discussions with counsel for Defendant and counsel

for witnesses and individuals who were subjects of the investigation in the period between May 17, 2005 and October 26, 2005, and after that period to the extent such interviews continued after that time, and, upon good cause shown, enter an Order dismissing the indictment in this case, and for such other and further relief as this Court may deem just and proper.

This 13th day of February, 2006.

Respectfully submitted,

Arthur W. Leach
Terry Lucas Butts
Leslie V. Moore
2310 Marin Drive
Birmingham, Alabama 35203
Phone: 205-822-4224
Fax: 205-824-0321

Henry Lewis Gills
Christopher K. Whitehead
Thomas Means Gillis & Seay
PO Drawer 5058
Montgomery, Alabama
Phone: 334-270-1033
Fax: 334-260-9393

James K. Jenkins
Bruce Maloy
Maloy & Jenkins
25th Floor
75 Fourteenth Street, NW
Atlanta, Georgia 30309
Phone: 404-875-2700
Fax: 404-875-7857

Attorneys for Richard M. Scrushy

13

## CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of February, 2006, I electronically filed the foregoing "Defendant Richard M. Scrushy's Motion to Dismiss Indictment Because of Prosecutorial Misconduct and Delay in Unsealing the Indictment" with the Clerk of the Court using the CM/ECF system which will send notification of such to counsel of record.

Leslie V. Moore
2310 Marin Drive
Birmingham, Alabama 35203
Phone: 205-822-4224
Fax: 205-824-0321