IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | Case No. 2:05cr119-F |
| RICHARD M. SCRUSHY,<br>Defendant. | |

### DEFENDANT RICHARD M. SCRUSHY'S MOTION
### FOR ENHANCED JURY SELECTION PROCEDURES

COMES NOW Defendant Richard M. Scrushy, by and through his undersigned counsel of record, and moves this Court for entry of an Order approving enhanced procedures to be employed in the selection of the petit jury in this case. In support of this request, Defendant respectfully shows this Court the following:

1. By Order of this Court dated January 23, 2006, jury selection in Defendant's case is currently scheduled to begin on April 19, 2006. (Doc 103.)

2. Defendant has retained Edward J. Bronson to conduct a review of the jury venire in the Middle District of Alabama to assess the effects of the extensive prejudicial pretrial publicity relating to this case.

3. Dr. Bronson's credentials are set forth in his *Curriculum Vitae*, which is attached to Dr. Bronson's Sworn Statement. Dr. Bronson's credentials are also summarized in ¶¶ 4-14 of his sworn statement. Dr. Bronson's sworn statement is attached to this motion as EXHIBIT A and hereby incorporated. Dr. Bronson's CV is ATTACHMENT 1 to EXHIBIT A, and hereby incorporated.

4. As set forth in detail in EXHBIT A, Dr. Bronson conducted a review of the pretrial publicity relevant to the selection of a jury in this case. (*Id.* at ¶¶ 24-42.) Dr. Bronson concluded that, "It is fair to say that there has been extensive coverage of Mr. Scrushy and the charges against him, and most of it have been very negative." (*Id.* at ¶ 42.) Defendant respectfully urges this Court to carefully review the details of the analysis leading up to this conclusion, found in EXHIBIT A, ¶¶ 21-42.

5. Dr. Bronson also designed and supervised a "qualified public opinion survey" of the Middle District of Alabama, as described in detail in EXHIBIT A, ¶¶ 43-90. Key results from the survey include the following:

   a. 73% of respondents were aware of Defendant Scrushy's trial in Birmingham, (*id* at ¶ 61);

   b. 67.7% of respondents had read, seen, or heard about the Scrushy-Siegelman case pending in this Court, (*id.*);

   c. cross-tabulation of the results demonstrates that 79.7% of the representative cross-section of the jury pool are already familiar with one or both of the cases, and 59.7% are familiar with both case, (*id.* at ¶ 62);

   d. of those respondents familiar with the jury trial in Birmingham, almost three times as many respondents (39.3%) thought the jury was wrong as those who thought the jury was correct (13.7%), (*id.* at ¶ 65);

   e. of those respondents who thought the jury verdict in Birmingham was correct, 13% now believe that Defendant Scrushy is guilty of the current bribery charges, while 81% of those who disagreed with the Birmingham

verdict think Defendant Scrushy is guilty of the current bribery charges, (*id.* at ¶ 69);

f. in a measure of prejudgment, 46.5% of respondents believed that Defendant Scrushy is either definitely guilty (13.0%) or probably guilty (33.5%), as opposed to only 8% of respondents who believed that Defendant Scrushy was probably not guilty (4%) or definitely not guilty (4%), (*id.* at ¶ 70); and

g. as demonstrated in responses to open-ended questions, there were a high number of negative characterizations of Defendant, guilt-oriented responses, comments about abuse of power and money, and other negative comments. (*Id.* at ¶¶ 71-79).

6. Based on his analysis, Dr. Bronson reached the following general conclusions:

a. "There is a substantial amount of prejudicial pretrial publicity in the jury pool for the venue in which the trial is currently scheduled, the Middle District of Alabama."

b. "While there is also substantial bias against Mr. Scrushy in the 23 jury-pool counties of the district, I do not believe that the prejudice meets the legal and social science standards necessary for me to recommend a transfer of the venue to a different district, at least based on the information available at this time."

c. "However, to protect the fair trial rights of Mr. Scrushy against bias arising from the media coverage, I believe it is essential that the Court

utilize certain heightened voir dire procedures, described below." (*Id.* at ¶ 3.)

7. Based on these conclusions, Dr. Bronson's sworn statement goes on to recommend six specific procedures that he believes are necessary in the instant case to deal with the effects of the prejudicial pretrial publicity which his study identified and measured in the community from which the jury will be selected. The six enhanced jury selection procedures are:

a. "Provide for expanded and thorough jury questionnaires to be mailed to the jury panel."

b. "No pre-instructing of members of the jury panel either as part of questionnaires or before the voir dire on such matters as presumption of innocence, seeking a fair and impartial jury and jurors, making decisions only on the evidence at trial, etc."

c. "Allow partial attorney-conducted voir dire."

d. "Where appropriate, use open-ended questions."

e. "Utilize individual and sequestered voir dire for those panel members for whom there is any indication of a potential problem on the questionnaire or in response to voir dire questioning."

f. "Provide two additional peremptory challenges to each Defendant, or more if appropriate."(*Id.* at ¶ 91.)

Dr. Bronson's sworn statement goes on to detail what problems these procedures are designed to address, why these additional procedures are necessary in this case, and how

they help to meet the peculiar challenges presented in jury selection in cases such as this. *See id.* at ¶¶ 93-116.

8. Defendant respectfully urges that this Court give careful consideration to the study that Dr. Bronson has conducted in support of the requested enhanced procedures, the data that Dr. Bronson has gathered to support his conclusions, Dr. Bronson's credentials and experience, and the reasoning and supporting studies contained in his sworn statement as to the necessity and effectiveness of the suggested enhanced procedures. Defendant specifically offers to make Dr. Bronson available for testimony and cross-examination if this Court determines it would be necessary or helpful to the determination of this motion, or if the Government requests an opportunity to cross-examine Dr. Bronson as to the conclusions, recommendations, or the underlying basis for the matters contained in his sworn statement.

### Argument and Citation of Authority

The Sixth Amendment to the United States Constitution provides in part: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed." Due process also requires that the accused receive a trial by an impartial jury free from outside influences. *Sheppard v. Maxwell*, 384 U.S. 333, 362, 86 S.Ct. 1507 (1965). "The theory of our system is that the conclusions to be reached in a case will be induced only by evidence and argument in open court, and not by any outside influence, whether private talk or public print." *Patterson v. Colorado ex. rel. Attorney General*, 205 U.S. 454, 462, 27 S.Ct. 556 (1907). The Supreme Court has long recognized that "exposure to pretrial publicity may undermine the Sixth Amendment's impartiality requirement."

*Mu'Min v. Virginia*, 500 U.S. 415, 439, 111 S.Ct. 1899 (1991) (citations omitted)(Marshall, J., dissenting). To fulfill its role, the jury must set aside any preconceptions about the case and base its verdict solely on the evidence at trial. *Id.* at 1912 (citing *Irwin v. Dowd*, 366 U.S. 717, 722, 81 S.Ct. 1639 (1961)). Given the pervasiveness of modern communications and the difficulty of removing prejudicial publicity from the minds of jurors, trial courts must take strong measures to ensure that the balance is never weighed against the accused. *Sheppard*, 384 U.S. at 362. The reason for this is simple and compelling: "In our system of justice, 'only the jury may strip a man of his liberty or his life.'" *Mu'Min*, 500 U.S. at 447 (Marshall, J., dissenting) (quoting *Irwin*, 366 U.S. at 722).

In order to fulfill this obligation in the circumstances of the instant case, Defendant is respectfully requesting that this Court employ six specific enhanced procedures in selecting the jury in this case, all of them recommended by Dr. Bronson and supported by his sworn statement. The first is expanded jury questionnaires that are mailed to the jury panel. This Court has already indicated a plan to do so, and this is a significant step in ensuring the selection of an impartial jury in this case. *See* The Honorable Robert M. Takasugi, "Jury Selection in a High-Profile Case: *United States v. DeLorean*," 40 Am. L. Rev. 837, 839 (1991).

Defendant respectfully submits that detailed questionnaires, coupled with sufficient time for counsel to review them in detail will substantially aid the parties and the Court in this process. The responses on the questionnaire will help focus oral voir dire, as they will alert the court and counsel to the areas that need further exploration. A thorough questionnaire will also save time by providing the Court and counsel with an

efficient means of collecting information about jurors without repeated questioning of each prospective juror. The questionnaire will also provide a means through which prospective jurors can provide responses that are more candid and explicit than those given in group voir dire. *See* EXHIBIT A at ¶¶ 93-105.

The second requested enhanced procedure requested is that the jurors not be instructed either in the questionnaire or as part of voir dire on matters of presumption of innocence, seeking a fair and impartial jury and jurors, making decisions only on the evidence at trial, etc. (*Id.* at ¶ 91.) As set forth in Dr. Bronson's sworn statement, such instructions essentially key jurors' responses and, along with the social pressures of the group and courtroom setting, actively interfere with the accuracy and reliability of jurors' responses to questions that are designed to reveal potential bias or prejudice. *See id.* at ¶¶ 93-110.

A third request is for partial attorney-conducted voir dire. (*Id.* at ¶ 91.) Individual, sequestered voir dire has been used in high-profile cases, and in most federal death penalty trials. *See, e.g., United States v. McVeigh*, 955 F.Supp 1281, 1282 (D. Col. 1997) (court and attorneys conducted individual voir dire of the jurors "with special arrangements to protect their privacy"); *United States v. Layton*, 519 F. Supp. 959, 960 (N.D. Cal. 1981 (individual voir dire conducted in the judge's conference room). As Judge Lay in the Eighth Circuit wrote:

> The grave danger of a voir dire controlled solely by the judge is found in the unnecessary reversal of cases where the judge offers allegedly neutral, flat and non-penetrating questions to potential jurors. Where the judge alone conducts the voir dire it generally provides a paucity of information to allow a judgmental exercise for peremptory challenges by counsel.... Any busy trial judge must candidly admit that he or she knows far less of a given case at the time voir dire commences than the lawyers who have prepared the cases for months

or years. This reason alone compels the conclusion that lawyers should participate in voir dire.

*Harold v. Corwin*, 846 F.2d 1148, 1152 (8th Cir. 1988) (Lay, J. concurring) (citations omitted). Dr. Bronson also addresses the need for some attorney-conducted voir dire in his sworn statement, citing studies that support his conclusion that "prospective jurors are more likely to be candid about their views when the voir dire is conducted by an attorney," because "the judge is seen by prospective jurors as an important authority figure, and that jurors will trend to be concerned about displeasing him or her." (EXHIBIT A at ¶ 111.)

Defendant's fourth request is that during judge-conducted voir dire, whenever possible, open-ended questions should be used. (*Id.* at ¶ 91.) Dr. Bronson discusses the reasoning and support for this technique in his sworn statement at ¶ 113. He concludes that, "Only open-ended questions, which require jurors to formulate their thoughts in a sentence or two, will allow counsel some means of penetrating stereotyped and socially desirable responses, that is, to separate those jurors without unfair prejudice from those who are merely *unaware* of their unfair prejudices." (*Id.*) Significantly, Dr. Bronson also notes, "Voir dire that includes non-leading questions can take *less* time than most customary voir dire. A single open-ended question that allows a prospective juror to speak a few sentences will reveal more information than numerous lengthy leading questions." (*Id.* at ¶ 114.)

Defendant's fifth request is that as to any panel members as to whom there is any indication of a potential problem on the questionnaire or in response to voir dire questioning in the group setting, that that juror be questioned individually and in sequestration. The necessity for this is two-fold. First, individualized sequestered voir

dire will avoid any possibility of a response that might taint the other jurors in the courtroom, leading to the possibility of losing multiple jurors due to a single response by one individual juror. Second, when removed from the group and open-courtroom setting, as discussed in earlier portions of Dr. Bronson's sworn statement, jurors are more likely to provide candid responses, which leads to effective screening of the jurors for potential bias or prejudice.

Finally, Defendant is respectfully asking this Court to consider, in light of all the information contained in Dr. Bronson's survey and media analysis, plus all of the information that this Court obtains in the process of reviewing the questionnaires and the voir dire process itself, that this Court consider providing two (2) additional peremptory challenges to each Defendant in this case. (*Id.* at ¶ 91.) As set forth in ¶ 115 (6) of Dr. Bronson's study, the presence of four Defendants being tried together, combined with the likelihood that there is more bias against the Defendants, especially Defendant Scrushy as herein demonstrated, and the effect of four Defendants with competing interests supports the granting of additional peremptories. In his sworn statement, Dr. Bronson gives one example of the need for additional peremptories based on competing, incompatible interests:

> Defendants Scrushy and Siegelman have political identifications that are likely to be known to many potential jurors. Suppose it is discovered that a potential juror is a strong political partisan, either a Democrat or a Republican. One Defendant might want to excuse that venireperson, while the other Defendant might want to retain that person. The situation might reverse with another panelist. The Defendants' peremptory challenges would cancel each other out.

(*Id.* at ¶ 115(6)). Rule 24(b) of the Federal Rules of Criminal Procedure expressly authorizes this Court to "allow additional peremptory challenges to multiple

9

defendants,...." Defendant respectfully urges this Court to consider the granting of additional challenges after this Court has completed the entire voir dire process, and to grant such additional challenges as this Court deems appropriate in light of all of the circumstances then presented.

As demonstrated by the study and data presented by Dr. Bronson, there is clear evidence that a significant number of potential jurors in this case will come into this Court who have been affected by the prejudicial pretrial publicity or who for other reasons may be biased or prejudiced against Defendant Scrushy. Selecting a fair and unbiased jury which will reach a verdict in this case based only on the evidence and argument in the courtroom will be a substantial challenge. For all of these reasons, Defendant respectfully submits that the enhanced jury selection methods requested in this motion and supported by the sworn statement of Dr. Bronson will greatly assist this Court in insuring the selection of the fairest possible jury under the circumstances.

WHEREFORE, Defendant Scrushy respectfully prays that this Court enter an Order approving enhanced procedures to be employed in the selection of the petit jury in this case, and for such other and further relief as this Court may deem just and proper.

This 13th day of February, 2006.

Respectfully submitted,

*/s/ Arthur W. Leach*
Arthur W. Leach
Terry Lucas Butts
Leslie V. Moore
2310 Marin Drive
Birmingham, Alabama 35203
Phone: 205-822-4224
Fax: 205-824-0321

Henry Lewis Gillis
Christopher K. Whitehead
Thomas Means Gillis & Seay
PO Drawer 5058
Montgomery, Alabama
Phone: 334-270-1033
Fax: 334-260-9393

James K. Jenkins
Bruce Maloy
Maloy & Jenkins
25th Floor
75 Fourteenth Street NW
Atlanta, Georgia 30309
Phone: 404-875-2700
Fax: 404-875-7857

Attorneys for Richard M. Scrush

## CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of February, 2006, I electronically filed the foregoing "Defendant Richard M. Scrushy's Motion for Enhanced Jury Selection Procedures" with the Clerk of the Court using the CM/ECF system which will send notification of such to counsel of record.

Leslie V. Moore
2310 Marin Drive
Birmingham, Alabama 35243
Phone: (205) 822-4224
Fax:   (205) 824-0321
E-Mail: les.moore@lvmlaw.com