# ATTACHMENT 2. CROSS TABULATIONS

# Calculations Based on Responses to Scrushy Survey

Table 1, Cumulative Number of Additional Facts Recognized, demonstrates that in addition to recognizing either the Birmingham or Montgomery cases, respondents knew much else of a relevant nature. Table 1 shows how many additional facts asked about in question 5 (see paragraphs 82-88 for the questions asked) the respondents recognized. Just over 70% knew at least one additional facts and half knew at least two. But these five questions are just limited to those five facts among many that could have been asked about. These results, however, strongly suggest, and the open-ended comments demonstrate, that respondents know much more about the case, and much of that information is prejudicial.

### TABLE 1. CUMULATIVE NUMBER OF ADDITIONAL FACTS* RECOGNIZED

| | |
|---|---|
| One or more additional fact | 70.5% |
| Two or more additional facts | 50.0% |
| Three or more additional facts | 31.5% |
| Four or more additional facts | 15.5% |
| Five additional facts | 6.0% |
| No additional facts | 29.5 |

\* Percentage who knew of incident and answered "yes" to questions Q5a-e.

Internal Validity. The following tables test for internal validity of the study. Any study of the sort undertaken with the community survey in this case makes certain

2

assumptions. I assumed that the media coverage exposed members of the community to the media coverage. I also assumed that the media coverage tended to cause jury-eligible members of the community to prejudge the guilt of Mr. Scrushy. I further assumed that the more one knew about the case, the more likely one would be to prejudge Mr. Scrushy's guilt. If these propositions are untrue, then the suppositions on which I rely to investigate prejudice are untenable. Social scientists say that the work lacks internal validity; in simpler language, the study makes no sense.

Table 2, Recognition of Bribe Case by Media Penetration (next page), tests the thesis that greater exposure to the media leads to a higher awareness, or recognition, of the case, in this table, the bribery case. High media penetration people are those who read a local newspaper regularly *and* regularly watch or listen to local news. Medium media penetration people read *or* watch or listen regularly. Low media penetration people do not read, watch, or listen regularly, although they may read, watch, or listen less than regularly.

What the table shows is a much higher case recognition rate (76.9%) for the high media penetration respondents, a lower recognition rate (48.9%), for the medium media penetration respondents, and a much lower recognition rate (40.0%) among the low media penetration respondents. That confirms our hypothesis about the impact of media on awareness. There is a related implication of this finding. Those most aware of this case and thus most likely to be excluded as jurors are those with the greatest exposure to the media. If we believe that taking an active interest in the community and in the media's local news coverage is desirable in a juror, we might feel some reluctance in selecting a jury from which the most involved and knowledgeable members of the community will tend to be excluded.

The entries beneath the table show the results of a test for statistical significance called chi-square. The chi-square ($X^2$) test is used to determine the probability (Sig.) that the variables (media penetration and recognition of the case) are associated by chance. $X^2$ is a standard and basic statistical technique. Social scientists generally agree that a Sig. of .05 or less means that a result is statistically significant; such a relationship will occur by chance only five times in a hundred. A result of .01 or less (fewer than one chance in a hundred) is said to be highly statistically significant. In Table 2 we see there is less than one chance in 10,000 (Sig. = .0000) that these results could have occurred by chance, that is, that there is no relationship between media penetration and recognition of the case.

3

Table 2. Recognition of Bribe Case
by Media Penetration*
(N = 300)

| Col Pct (Count) | High media penetration | Medium media penetration | Low media penetration |
|---|---|---|---|
| Recognizes case | 76.9% (150) | 48.9% (44) | 40.0% (6) |
| Doesn't recognize case/Don't know Refused/NA | 23.1% (45) | 51.1% (46) | 60.0% (9) |
|  | 100% (105) | 100% (90) | 100% (15) |

$X^2 = 29.55$        Sig. = .000

\* High media penetration is where respondent reads local newspaper regularly—that is, at least several times a week—and listens to local radio or watches local TV regularly.

Medium penetration is where respondent reads or listens or watches regularly but not both.

Low media penetration is where respondent does not read and does not listen or watch regularly.

4

In Table 3, Recognition of Fraud Case by Media Penetration, we perform the same validity test with respect to the fraud case, showing an even stronger pattern.

### Table 3. Recognition of Fraud Case by Media Penetration*
(N = 300)

| Col Pct (Count) | High media penetration | Medium media penetration | Low media penetration |
|---|---|---|---|
| Recognizes case | 84.1% (164) | 56.7% (51) | 26.7% (4) |
| Doesn't recognize case/Don't know Refused/NA | 15.9% (31) | 43.3% (39) | 73.3% (11) |
|  | 100% (195) | 100% (90) | 100% (15) |

$X^2 = 40.82$                                                    Sig. = .000

* High media penetration is where respondent reads local newspaper regularly—that is, at least several times a week—and listens to local radio or watches local TV regularly.

  Medium penetration is where respondent reads or listens or watches regularly but not both.

  Low media penetration is where respondent does not read and does not listen or watch regularly.

5

Table 4, Prejudgment by Media Penetration, appears not to support the thesis of internal validity, but that is because of a statistical truth that appears to be an anomaly in Table 4. The anomaly is that prejudgment appears highest for the low media penetration group. However, the truth is that you cannot do a meaningful statistical analysis when the sample size is too small. For example, we cannot determine empirically the tendency of a coin to come up heads (or tales) if we only flip the coin once or twice to test our assumptions. Doing so would wrongly tell us that half the time the coin comes up all heads or all tails.

### Table 4. Prejudgment by Media Penetration*
(N = 200)

| Col Pct (Count) | High media penetration | Medium media penetration | Low media penetration |
|---|---|---|---|
| Guilty | 48.7% (73) | 36.6% (17) | 50.0% (3) |
| Not guilty/ Don't know Refused/NA | 51.3% (77) | 61.4% (27) | 50.0% (3) |
|  | 100% (150) | 100% (44) | 100% (6) |

$x^2 = 1.41$                                     Sig. = .495

* High media penetration is where respondent reads local newspaper regularly—that is, at least several times a week— and listens to local radio or watches local TV regularly.

  Medium penetration is where respondent reads or listens or watches regularly but not both.

  Low media penetration is where respondent does not read and does not listen or watch regularly.

6

In Table 4 there are only six people in the low media penetration group; three said guilty and three did not. In fact, a chi-square analysis is generally inappropriate where there are fewer than five cases in a cell, and in Table 4 there are two cells with just three cases.

In fact, the validity pattern works well with both the high media penetration and medium media penetration groups, with a substantially larger number of those most exposed to the media saying the Defendant is guilty.

The easy way to deal with this problem is to collapse the two lower groups of media exposure into one, which is done in Table 4a. The analysis now shows marginal statistical significance, using a one-tailed test.)

### Table 4a. Prejudgment by Media Penetration* Collapsed (N = 200)

| Col Pct (Count) | High media penetration | Medium and low media penetration |
|---|---|---|
| Guilty | 48.7% (73) | 40.0% (20) |
| Not guilty/ Don't know Refused/NA | 51.3% (77) | 60.0% (30) |
| | 100% (150) | 100% (50) |

$X^2 = 1.41$   Sig. = <.10 (one-tailed)

\* High media penetration is where respondent reads local newspaper regularly—that is, at least several times a week— <u>and</u> listens to local radio or watches local TV regularly.

7

Table 5, Specifics Recognized by Media Penetration, is another very strong demonstration of internal validity. High media penetration respondents are much more likely to know additional facts about the case. As seen in the bottom row, while 31.3% of high media people recognized three, four, or five of the additional case specifics, only 7.8% of the medium media penetration group knew that many, and just one person (6.7%) in the low media penetration group knew as many as three additional facts. The same pattern held true for the other rows. It is clear that people exposed to the media knew more about the case and related facts.

### Table 5. Specifics Recognized by Media Penetratio (N = 300)

| Col Pct (Count) | High media penetration | Medium media penetration | Low media penetration |
|---|---|---|---|
| Recognize no specifics | 35.9% (70) | 68.9% (62) | 80.0% (12) |
| Recognizes one or two specifics | 32.8% (64) | 23.3% (21) | 13.3% (2) |
| Recognizes three, four or five specifics | 31.3% (61) | 7.8% (7) | 6.7% (1) |
| | 100% (195) | 100% (90) | 100% (15) |

$X^2 = 37.20$      Sig. = .000

* High media penetration is where respondent reads local newspaper regularly—that is, at least several times a week—and listens to local radio or watches local TV regularly.

Medium penetration is where respondent reads or listens or watches regularly but not both.

Low media penetration is where respondent does not read and does not listen or watch regularly.

8

Table 6, Prejudgment by Specifics Recognized, demonstrates another important finding of the survey, and one that also validates the theory of the study. It shows that the more one knows about the case and related facts, the more one is likely to believe the Defendant is guilty. Over half (55.6%) of those who know a lot -- three, four, or five specifics -- believe the Defendant is guilty. But of those who know the least -- no additional facts -- only about a third (35.6% -- believe the Defendant is guilty.

This provides evidence to suggest that the pretrial coverage is prejudicial, and the more one is exposed to it, the more one is biased toward believing the Defendant is guilty.

Table 6. Prejudgment by Specifics Recognized
(N= 200)

| Col Pct (Count) | Recognize no specifics | Recognizes one or two specifics | Recognizes three, four or five specifics |
|---|---|---|---|
| Guilty | 35.6% (21) | 47.4% (37) | 55.6% (35) |
| Not guilty -Don't know- Refused/NA | 64.4% (38) | 52.6% (41) | 44.4% (28) |
|  | 100% (59) | 100% (78) | 100% (63) |

$X^2 = 4.93$                               Sig. = .085