**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | Case No. 2:05cr119-F |
| RICHARD M. SCRUSHY,<br>    Defendant. | |

**DEFENDANT RICHARD M. SCRUSHY'S SECOND MOTION FOR
DISCOVERY OF JURY RECORDS**

COMES NOW Richard M. Scrushy, by and through his undersigned counsel of record, and pursuant to the Jury Selection and Service Act of 1968, 21 U.S.C. § 1867(f), and the Fifth and Sixth Amendments to the United States Constitution, moves this Court for entry of a Second Order allowing him discovery of additional records related to the selection of the grand jury that returned the indictments in the above-styled action, the petit jury that will be selected to try this matter, and the implementation of the "United States District Court Middle District of Alabama Plan for the Random Selection of Grand and Petit Jurors" (hereinafter "M.D. Jury Plan"). In support of this request, Defendant respectfully shows this Court the following:

1. Pursuant to "Defendant Richard M. Scrushy's Motion for Jury Records" filed on January 24, 2006 (Doc 105) (hereinafter "First Discovery Motion"), United States

Magistrate Judge Coody entered an Order dated February 3, 2006 granting in part Defendant's requests for discovery. (Doc 116.)

2. On February 5, 2006, Defendant's intended expert witness Dr. James Gundlach went to the Clerk's office to attempt to review the records identified by the February 3, 2006 Order. Dr. Gundlach was advised that the records were not available at the time, and counsel was notified that the programming needed to produce the records had been requested from ACS (the computer company in Vancouver, British Columbia) and that counsel would be notified when the records would be available.

3. Early on the morning of Friday, February 10, 2006, having heard nothing from the Clerk's office, counsel contacted the Clerk's office by e-mail to inquire as to the status of the record request. Later that morning, the Clerk e-mailed counsel to advise that the material should be available later that day. At approximately 5:45 pm that afternoon, counsel received an e-mail with an attachment titled "gender race.out (2 mb)." The e-mail indicated that this document contained the "Participant #, race and sex of the people in the 2005 Qualified Jury Wheel," in compliance with the discovery listed in ¶ 3 in the February 3, 2006 Order. The same e-mail indicated that the discovery listed in ¶ 1 of the Order would not be available yet because there were additional problems with the computer program and the Clerk was waiting for ACS to respond. Shortly thereafter, a facsimile (3 pages including cover) was received by counsel, containing a document titled "Pool Selection Report 201040604" relating to the information listed in ¶ 2 of the Order.

4. Counsel subsequently determined that the Clerk had inadvertently sent the participant #, race, and sex of the 2005 *Master* Jury Wheel, rather than the 2005

*Qualified* Jury Wheel. On Wednesday, February 15, 2006, when counsel advised the Clerk's office of this mix-up, the Clerk's office transmitted the 2005 Qualified Jury Wheel data previously described, which pertained to ¶ 3 of this Court's Order. Counsel has yet to receive the material listed in ¶ 1 of this Court's Order dated February 3, 2006.

5. Defendant's expert has examined and analyzed the material provided to date. On the basis of this examination, and Dr. Gundlach's examination of records and analysis and conclusions which are set out in his report filed on February 13, 2006 in the case of *United States v. Leon Carmichael, Sr.*, Case NO. 2:03-CR-259-T, [1] Defendant is making the following additional requests for discovery of jury records in the instant case. Defendant relies on the authorities and argument set out in his previously filed First Discovery Motion as the legal basis under which he should be granted access to these additional materials. Defendant also renews his request that he be furnished with the materials that this Court indicated he should be provided and listed in ¶ 1 of this Court's initial Order.[2]

6. In regard to the 2001 Qualified Jury Wheel, Defendant has been furnished the previously described "Pool Selection Report" which relates to the grand jury which

---

[1] Report of James H. Gundlach, Ph.D. on the Operation of the Jury Selection System of the Middle District of Alabama," (Doc 637-2), attached as Exhibit 1 to "Leon Carmichael's Statement of Objections to Venire and to the Jury Selection Procedures of the Middle District of Alabama and Brief in Support Thereof." (Doc 637-1.)

[2] Defendant does, however, advise the Court that his lack of access to these materials at this time is not creating delay in this case, as his expert has access to the materials produced by the Clerk in conjunction with the *Carmichael* case. However, since the two cases are completely unrelated other than the fact that both are pending in this Court, Defendant respectfully submits that furnishing a full set of the materials pursuant to this Court's Order dated February 3, 2006 will ensure that a clear and complete record is made in the instant case relating to the jury challenge filed only in this case and avoid any potential disputes over what records were furnished in this case.

returned the indictments in this case. In regard to the jurors listed in that report by Participant Number, Defendant requests that he be provided with the full juror history file for each of the 100 jurors listed on that report as being part of that entire juror pool. Defendant is specifically seeking information that will indicate every occasion (by date) that each of these jurors received a deferral or an excuse prior to being summoned on June 21, 2004 as part of Pool 201040604. Defendant believes that this information can be fully provided by juror Participant Number, and there will be no need to reveal any jurors' names, or any risk of divulging that information if it is done strictly by juror number. Defendant has a particularized need for this information to determine whether or not jurors who had been previously deferred or excused were included in this pool and, if so, the number and race of such jurors, as well as the distribution of any such previously deferred or excused jurors in the summons list. As set forth in his Report in the *Carmichael* case, it is Dr. Gundlach's opinion that during a significant time period involving the 2001 Qualified Jury Wheel, jury pools were created that contained more than the 15% deferred or excused jurors, in violation of ¶ 14(d)(ii) of the M.D. Plan.[3] The foregoing information is also needed to determine whether or not the previously deferred or excused jurors are being randomly distributed within the pool, as required by ¶ 14(d)(iii) of the M.D. Plan, since the Pool Selection Report appears to indicate that the grand jurors were selected from the first 57 jurors in the pool, and all jurors with numbers lower than 57 were excused.

---

[3] This limitation was put in effect after this Court found that the number and placement of previously deferred jurors in jury pools had a racially discriminatory effect in *United States v. Clay,* 159 F.Supp.2d 1357, 1371 (M.D. Ala. 2001)

4

7. In order to prevail in his challenge relating to the selection of the grand jury from the 2005 Qualified Wheel, Defendant will need to demonstrate a pattern that deprived him of the opportunity to have a grand jury randomly selected from a fair cross-section of the community. As a consequence, Defendant respectfully requests that he be furnished the Pool Selection Reports for each of the other grand juries that were selected from the 2001 Qualified Wheel. In order to examine and analyze the impact of the placement of previously deferred or excused jurors in each of these pools, Defendant respectfully requests the juror history information of each juror in each of these pools, based on the same particularized need set out in the preceding paragraph.

8. In regard to the 2005 Qualified Jury Wheel, Defendant respectfully requests that he be furnished the Participant Number of each juror selected from the Master Jury Wheel that was selected to be sent a jury qualification questionnaire and the date the questionnaires were sent. Dr. Gundlach's initial analysis indicates that the Qualified Jury Wheel is approximately 21.34 % African American, in contrast to a voter-eligible community that Dr. Gundlach's has computed to be 30.466% African-American.[4] The information requested in this paragraph is necessary to examine whether or not there are any irregularities in the process of sending out jury qualification questionnaires that would be contributing to the under-representation of African-Americans in the Qualified Jury Wheel.

9. In regard to the jury qualification questionnaires sent out to create the 2005 Qualified Jury Wheel, Defendant respectfully requests that he be provided the Participant

---

[4] In this regard it is noteworthy that if Dr. Gundlach's figures are correct, the percentage of African-Americans in the 2005 Qualified Jury Wheel has *declined* 3.68% from the percentage of African-Americans (25.02%) that the United States Magistrate Judge determined in the Qualified Jury Wheels in *Clay*, 159 F.Supp.2d at 1363, n. 23.

5

Number of all jury qualification questionnaires that were returned and classified as "non-deliverable." Defendant also requests that he be provided the Participant Number of all jury qualification questionnaires that were not returned and were classified as "non-responders." This information is necessary to examine whether or not the under-representation of African-Americans could be attributed to the use of out of date mailing information in sending out the jury qualification questionnaires.

10. Defendant respectfully requests access to the results of the processing of juror qualification questionnaires, along with the reason for disqualifying or excusing each juror by Participant Number. Defendant is particularly seeking information as to all jurors disqualified based on a determination that they had not lived in the District for more than a year at the time they answered the questionnaire. On information and belief, these jurors are *permanently* disqualified even though they might meet the residency requirement within a short period of time, and certainly within the life of the wheel. Defendant needs to examine the racial composition of this subset of jurors to determine if this process contributes to the under-representation of African-Americans on the Qualified Jury Wheel.

11. Defendant respectfully requests the Participant Numbers, trial identification and pool numbers for all pool members selected for a trial or court session from each pool, including the printed list line number showing the order of each juror within the pool. This information is necessary to examine the presence, number and effect of previously deferred jurors in each pool and panel. As indicated above, Dr. Gundlach has identified a pattern of violations of the M.D. Plan provisions relating to the use of previously deferred and excused jurors in the jury panels selected from the 2001

6

Qualified Wheel indicative of a similar violation as identified by this Court in the *Clay* decision. This information is necessary to determine if a similar process is at work in relation to the pools and panels drawn from the 2005 Qualified Jury Wheel. Such a process, if it were occurring, would be a violation of the M.D. Plan, would constitute a discretionary, non-random procedure with the opportunity to discriminate, and could demonstrate a cause of the under-representation of African-Americans on jury panels drawn form the 2005 Qualified Jury Wheel.

12. Finally, Defendant respectfully requests that he be supplied the voter registration list from which the 2005 master Jury Wheel was drawn, *without any indication of participant number*,[5] along with a Court Order authorizing Dr. Gundlach to send either a sample of those names or the entire list to a United States Postal Service authorized private company that for a fee provides updated addresses. The purpose of this request is to determine if the jury qualification questionnaires that are classified as "non-deliverable" or "non-responders" are caused in significant part by the use of outdated addresses which could be easily and economically updated and whether or not there is any correlation between race and the jurors in this subset. A Court Order for this is necessary because all USP authorized private companies require a certification that the purchaser of the list intends to use the list to conduct a mailing.

---

[5] This will insure that Defendant does not have any access to any information that would identify any jurors on the Qualified Jury Wheel, or any jury pool or panel selected from that wheel.

WHEREFORE, Defendant respectfully prays that this Court issue an Order authorizing the previously described additional discovery in this case, and for such other and further relief as this Court may deem just and proper.

This 22nd day of January, 2006.

          Respectfully submitted,

          /s/ ARTHUR W. LEACH
          Arthur W. Leach
          Leslie V. Moore
          2310 Marin Drive
          Birmingham, Alabama 35203
          Phone: 205-822-4224
          Fax: 205-824-0321

          Henry Lewis Gillis
          Thomas Means Gillis & Seay
          PO Drawer 5058
          Montgomery, Alabama
          Phone: 334-270-1033
          Fax: 334-260-9393

          James K. Jenkins
          Bruce Maloy
          Maloy & Jenkins
          25th Floor
          75 Fourteenth Street NW
          Atlanta, Georgia 30309
          Phone: 404-875-2700
          Fax: 404-875-7857

          Attorneys for Richard M. Scrushy

9

## CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of January, 2006, I electronically filed the foregoing "Defendant Richard M. Scrushy's Second Motion for Discovery of Jury Records" with the Clerk of the Court using the CM/ECF system which will send notification of such to counsel of record.

    /s/  LESLIE  V. MOORE
Leslie V. Moore
2310 Marin Drive
Birmingham, Alabama 35243
Phone: (205) 822-4224
Fax:    (205) 824-0321
E-Mail:  les.moore@lvmlaw.com