IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | Case No. 2:05cr119-MEF |
| RICHARD M. SCRUSHY,<br>    Defendant. | |

**DEFENDANT RICHARD M. SCRUSHY'S REPLY TO
RESPONSE OF THE UNITED STATES TO DEFENDANT'S
MOTION TO DISMISS INDICTMENT BECAUSE OF
PROSECUTORIAL MISCONDUCT AND
<u>UNDUE DELAY IN UNSEALING THE INDICTMENT</u>**

COMES NOW Defendant Richard M. Scrushy, by and through undersigned counsel, and files this Reply to the "Response of the United States to Defendant's Motion to Dismiss the Indictment on Grounds of Prosecutorial Misconduct and Delay in Unsealing the Indictment." (Doc 160) (hereinafter "Gov't Response").

A.   **THE GOVERNMENT'S RESPONSE RELIES PRIMARILY UPON ITS DISPUTE WITH DEFENDANT SCRUSHY'S FACTUAL ALLEGATIONS.**

In his Motion to Dismiss, Defendant Scrushy argued that the Government had misled the United States Magistrate Judge regarding its reasons for moving to seal the indictment initially and its reasons for keeping the indictment sealed for five months. Defendant Scrushy also argued that the Government had been duplicitous with defense counsel regarding whether a charging decision had been made and that the Government had threatened Defendant with indictment if he did not testify as the Government wanted him to. Finally, Defendant argued that the Government's threats and misrepresentations

substantially infected the indictment and prejudiced Defendant's ability to defend against the indictment at trial, and hence, this Court should dismiss the indictment with prejudice.

Throughout its Response, the Government attempts to avoid the central issue addressed by Defendant's motion, while answering questions that were never raised in the motion. The question here is not whether any indictment can be properly sealed when an investigation is continuing. Nor is the question whether Mr. Scrushy has a right to appear before the grand jury and present his testimony. (Gov't Response at 18, n.6.)[1] The question is not whether the Government can seek and return an indictment in order to toll the statute of limitations and continue its investigation.

The question presented is whether it is appropriate for the Government to intentionally mislead defense counsel who repeatedly asked if a charging decision had been made. A closely related question is whether it is appropriate to mislead counsel and continue a dialog when Government counsel knows the purpose of the inquiry by defense counsel is to terminate discussions, or at a minimum reassess continued discussions, if a charging decision had been made. An appropriate question has to be asked, based upon the Government's rambling Response is whether truth and forthrightness ever even

---

[1] The purpose of defense counsels' offer for Mr. Scrushy to appear before the grand jury was part of the exchange with Mr. Pilger in which Mr. Pilger claimed that if Mr. Scrushy's statement varied from the Government's construction of the facts, then it was a lie. The offer of a grand jury appearance was an appropriate counter in that Mr. Scrushy would receive only use and derivative use immunity, not full immunity as claimed in Mr. Franklin's declaration at page 6. Mr. Scrushy was willing to risk the reef and shoals of perjury and perhaps eventual indictment on the case itself to have the opportunity to appear and give the grand jury his version of the events in question. It should go without saying that defense counsel would never have made that offer if counsel knew Mr. Scrushy was already indicted. The Department of Justice cannot place an indicted person before the grand jury under compulsion because the Department will not authorize such a procedure, since it violates numerous provisions of the Constitution and the internal policies of the Department of Justice.

crossed the collective minds of Government counsel. One would think that, at a minimum, after the discussion on October 4, 2005, when counsel for Mr. Scrushy specifically asked about a charging decision, that counsel for the Government would reassess their position and either seek a limited unsealing or present their dilemma to the Magistrate Judge for resolution.

The further question raised by Government counsels' failure to reassess is whether they in fact sought a strategic advantage through the discussion with Defendant's counsel. What else could have been motivating the Government? Did they really believe that Mr. Scrushy was a flight risk after he stood trial in Birmingham in a case where he was facing the rest of his life in prison? Was this a situation where some witness would have faced immediate death had the fact of an indictment been revealed? Even if Government counsel felt they had to initially lie due to the Sealing Order, was there any need to perpetuate that lie? The only answer to all of these questions is obviously "No" – there simply was and can be no legitimate purpose for the lie told by the Government. That lie was intended to bring and in fact brought the Government substantial benefits which should result in dismissal.

Additionally, throughout their Response the Government states that Defendant approached the Government, that Government counsel accurately communicated to defense counsel that no "final" prosecution decision had been made, and that the defense sought a good faith negotiation toward a cooperation agreement. (Gov't Response at 13.) First, while counsel for Defendant Scrushy were willing to talk to the Government, counsels' primary priority was avoidance of an indictment. This fact was unambiguously communicated to the Government at the October 4, 2005 meeting. The Government's

effort to repeatedly cast these discussions as focused toward a cooperation agreement is simply inaccurate. Counsel for Defendant made it clear that Mr. Scrushy did not want to be indicted and that he was willing to stay out of the fight if he were not indicted. Additionally, Defendant's counsel were never told of any "final" decision that had to be made. Such a statement would have provided counsel with an indication that something was not as it should be for such discussions to proceed. No such indication was given by the Government.

The Government spends the first seven pages of its response disputing Defendant Scrushy's factual allegations (Gov't Response at 1-7) – facts sworn to by Defendant's attorney, Leslie V. Moore, an officer of this Court, and attached to Defendant's motion in an affidavit. (Doc 132, Exhibit A.) The Government continues to deny Mr. Moore's factual statements and to assert its own alternative reality throughout its Response. (Gov't Response at 8, 13-14, 15-20.) Despite the fact that the Government's version of what occurred differs dramatically from the facts sworn to in Mr. Moore's affidavit, the Government incredibly argues that this Court need not hold an evidentiary hearing to resolve those disputes because what the Defendant and his attorneys say happened never happened. (*See, e.g., id.* at 5 n.1 (asserting there is no material factual dispute), 10 (arguing that Court can satisfy itself that the Government's version is true), 13 (asserting facts in complete contradiction of Mr. Moore and arguing that, based on its assertion, the record is plain), 16-17 & n.5 (asserting that defense counsel had a "misimpression" about what the Government said, and therefore Court can proceed without concern and without a hearing), 19 (arguing that Court can deny Defendant's motion because there is no proof

of intentional governmental misconduct – defense counsel's allegations to the contrary are merely a misunderstanding of what the Government said)).

When two parties differ as dramatically as the Defendant and the Government do with respect to the facts leading up to October 26, 2005, when the first superseding indictment was filed, the Court may not rely solely on paper to assess the credibility and reliability of the witnesses or of their memory. Instead, the "'open examination of witnesses,'" where the Court can observe the witnesses' demeanor and otherwise assess credibility, "'is much more conducive to the clearing up of truth.'" *Crawford v. Washington*, 541 U.S. 36, 61-62, 124 S.Ct. 1354 (2004) (quoting 3 Blackstone Commentaries at 373). As in other contexts, the best method for this Court to resolve the conflict between the witnesses is "in the crucible of cross-examination." 541 U.S. at 61.

**B.     THE ORIGINAL INDICTMENT WAS SEALED BASED ON PRETEXTUAL REASONS.**

The Government moved to seal the indictment in this case for two reasons: to avoid prejudice to Defendant Scrushy while he faced charges elsewhere, and to investigate *other* offenses by the named defendants and other defendants. (Doc. 1 at 1.) Defendant argued in his initial motion to dismiss that the first of these reasons ceased to exist on June 28, 2005, and that the second reason was pretextual. The Government misled the Magistrate Judge to induce him to seal the indictment and then, with the indictment under seal, the Government misled defense counsel into laying out Defendant Scrushy's factual and legal defenses. These two instances of prosecutorial misconduct, either together or separately, require dismissal of the indictment.

1.   **The Government Improperly Used the Grand Jury.**

The Government asserts that the indictment was properly sealed from May 17, 2005 until October 26, 2005. Its first argument in support of this assertion misperceives Defendant's position. The Government argues that sealing an indictment is justified when the Government has an ongoing investigation into other crimes committed by the defendants named in the sealed indictment. (Gov't Response at 9.) Defendant Scrushy, however, does not disagree with this proposition in the abstract. It is Defendant's position that the Government's alleged reason was *pretextual*. Instead of investigating *other* crimes against the Defendant, it was merely using the grand jury for the primary purpose of strengthening its case against Defendant Scrushy, in direct contravention of Eleventh Circuit precedent. *See United States v. Alred*, 144 F.3d 1405, 1413 (11th Cir. 1998); *United States v. Beasely*, 550 F.2d 261, 266 (5th Cir. 1977).[2]

That the Government's assertion of "ongoing investigation" into other offenses by Mr. Scrushy was pretextual can be seen most clearly by comparing the charges against Defendant Scrushy in the initial and first superseding indictments. There is no material difference in the factual bases of the two indictments with respect to Defendant Scrushy. The Government argues that it added a count of mail fraud against Defendant Scrushy in the first superseding indictment, but that count was based on the exact same factual

---

[2] In its response, the Government simply ignores this line of cases, which is directly on point and binding precedent. Instead, it argues in a footnote that further investigation of charges may in itself be a reason to seal the indictment. The Government then cites to two *non-binding* cases from the First and Eighth Circuit Courts of Appeals, both of which are arguably contrary to the Eleventh Circuit cases cited above: *United States v. Richard*, 943 F.2d 115, 119 (1st Cir. 1991), and *United States v. Lakin*, 875 F.2d 168, 170 (8th Cir. 1989). In any event, both of those cases involved "significant" new or additional information. As explained in the text, the Government had no new information regarding Defendant Scrushy, much less significant information.

6

transactions about which the Government knew on May 17, 2005, that is, the alleged bribing of Defendant Siegelman. Thus, this case differs significantly from *United States v. Edwards*, 777 F.2d 644 (11th Cir. 1985). In *Edwards*, the Government presented an indictment charging the defendants with drug smuggling a few days before the statute of limitations expired. *Id.* at 646. It returned to the grand jury three weeks later to present additional counts against the same defendants, but this time charging markedly different crimes: tax-related offenses. *Id.* In *Edwards*, the Government truly was investigating *other* crimes against the defendants, rather than primarily strengthening its case against them.

Nor is it sufficient for the Government to assert that Defendant's accusations of grand jury abuse "can be conclusively rebuffed" by a showing that new defendants were joined. (Gov't Response at 12.) First, in *United States v. Flemmi*, 245 F.3d 24 (1st Cir. 2001), the case upon which the Government relies for this proposition, no new defendants were added. The Court's statement is merely dictum. Second, the First Circuit Court of Appeals did not make any summary conclusions, as the Government implies, when it looked to the Government's use of the grand jury. Instead, the Court looked to "whether the facts, viewed objectively, reveal a proper justification for the government's continued resort to the grand jury." *Id.* at 29. Examining the facts, the Court concluded that the addition of four new predicate acts under RICO, each of which involved a separate murder, "fundamentally altered the character of the indictment" because they contemplated additional proof against the defendant and enhanced defendant's sentence to life in prison. *Id.* at 29-30. The contrast between the facts in

*Flemmi* and the change in the indictment in this case insofar as it affects Defendant Scrushy could not be starker.

Moreover, even if *Flemmi* had involved the joinder of new defendants, it would be distinguishable from the instant case. The Court of Appeals in *Flemmi* looked to whether the character of the indictment was fundamentally altered as to the defendant objecting to the sealing of the indictment. *Id.* It did not consider whether the indictment had been fundamentally altered as to some other defendants. The first superseding indictment in this case added defendants, but that indictment did not charge that Defendant Scrushy knew of those other defendants or had any knowledge of their allegedly criminal acts.[3] The addition of these defendants may fundamentally alter the character of the indictment with respect to those defendants, but it does not change it at all with respect to Defendant Scrushy.

Nor does this case share any common facts with *United States v. Gibbons*, 607 F.2d 1320 (10th Cir. 1979), a case relied upon by the *Flemmi* court. In *Gibbons*, the defendant also had argued that the Government had misused the grand jury. *Id.* at 1328. The Court rejected this argument because the first indictment had charged the defendant with conspiring with others unknown to the grand jury and the evidence showed that grand jury testimony between the first and second indictments had attempted to put the identities of those unknown co-conspirators before the grand jury. *Id.* at 1328-29. This attempt to add co-conspirators, whose acts were related to the defendants, was the key,

---

[3] Indeed, the Government has conceded that Defendant Scrushy was unaware of and uninvolved in any allegedly criminal acts by anyone other than Defendant Siegelman. *See* Transcript of January 20, 2006 Status Conference at 24.

not whether miscellaneous defendants whose acts were unrelated to the defendants were joined.

### 2. The Government Misled the Magistrate Judge When It Failed to Inform Him of Its Changed Reasons for Sealing the Indictment.

Perhaps recognizing that its second reason for sealing the indictment is indisputably pretextual, the Government also argues that it was not required to inform the Magistrate Judge that Defendant Scrushy was acquitted in June 2005 and to then proffer another legitimate reason for keeping the indictment sealed. (Gov't Response at 11.) The Government goes further and argues it never had to give any reason at all for sealing the indictment. (*Id.*)[4] In making this argument, the Government relies on *United States v. Balsam*, 203 F.3d 72, 81 (1st Cir. 2000), a case that is contrary to spirit of Fed. R. Crim. P. 6(e)(4), as well as contrary to law in the Eleventh Circuit Court of Appeals.[5]

Rule 6(e)(4) provides that a magistrate judge "may direct that the indictment be sealed until the defendant is in custody or has been released pending trial." In addition, a magistrate judge may direct that the indictment be sealed "where the public interest requires it or for other sufficient reason," or "for sound reasons of policy." *United States v. Edwards*, 777 F.2d 644, 648 (11th Cir. 1985) (internal quotations omitted). But in every instance of sealing, there must be a reason for sealing the indictment. *Id.* ("we

---

[4] The Government claims that this accords with its understanding of the practice in the Middle District of Alabama, an assertion that is curious at best in light of the Government's going to the effort in this very case to provide pretextual reasons to the Magistrate Judge.

[5] The Government also relies on *United States v. Ramey*, 791 F.2d 317, 318 (4th Cir. 1986), but the language it quotes is found nowhere in *Ramey*. The Court of Appeals in *Ramey* merely held that an indictment may be sealed for reasons other than the apprehension of the defendant, an unremarkable proposition with which the Defendant does not disagree. *See id.* at 321-22.

must decide whether the prosecutorial needs and objectives justified the sealing of the indictment"). Once a magistrate judge makes the decision to seal the indictment, his decision is reviewed only for an abuse of discretion, *id.*, a rule of law that presupposes that the magistrate judge exercises discretion, that is, that his ruling has some basis and is not merely arbitrary, capricious or a ministerial function of the court. *See United States v. Cross*, 928 F.2d 1030, 1040 (11th Cir. 1991) (no exercise of discretion when decision based on misleading information); *United States v. Wright Motor Co., Inc.*, 536 F.2d 1090, 1094 & n.1 (5th Cir. 1976) (exercise of discretion presupposes an exercise of judgment). Thus, it is clear that a magistrate judge must have some reason, either of his own or presented by motion of the Government, to seal an indictment. *See United States v. Wright*, 343 F.3d 849, 858 (6th Cir. 2003) (decision to seal indictment judged on information before the magistrate judge at time of sealing). To seal an indictment with no reason other than the Government's request is necessarily arbitrary and capricious.

Moreover, once the Magistrate Judge in this case granted the motion to seal, the Government attorneys, as officers of the court, were ethically obligated to inform the Magistrate Judge if and when the circumstances changed. To hold otherwise would make the Magistrate Judge's initial exercise of discretion meaningless and subvert the very purpose of Rule 6(e)(4), which was "to place sealing in the hands of a judicial officer rather than as theretofore in those of a prosecutor." *United States v. Southland*, 760 F.2d 1366, 1380 (2d Cir. 1985). For these reasons, the Court should reject the Government's arguments that an indictment may be sealed with incorrect or no reasons whatsoever.

### 3. The Government Used the Sealed Indictment to Trick Defendant.

Finally, unable to justify its duplicitous behavior to the Magistrate Judge, the Government argues that its behavior does not matter because it never misused the sealed indictment. (Gov't Response at 13.) This argument does not hold water.

The Government argues that it did not actively use the indictment because defense counsel approached the Government first and asked for a meeting. This argument ignores Mr. Moore's sworn statement that defense counsel approached the Government only because they believed an indictment had not been presented to the grand jury. (Doc 132, Exhibit. A at ¶¶ 3, 4.) Indeed, early in the meeting, defense counsel specifically asked whether a charging decision had been made because they previously had agreed that they would not reveal Defendant Scrushy's factual and legal defenses unless one had not been made. *Id.* at ¶¶ 7-9. When asked the question, Mr. Pilger, an attorney for the Government, looked defense counsel in the eye and stated, "No." *Id.* at ¶ 7. This simple word was not misunderstood.

The Government attempts to present two reasons that its lie to defense counsel was acceptable. It first argues that saying a charging decision had not been made was actually true – despite the fact that the Government already had presented charges to the grand jury and the grand jury already had returned the indictment – because the Government could always change its mind. Therefore, the decision was not final. (Gov't Response at 13, 18.) In light of the fact that the Government could easily have received a limited Unsealing Order, this proposition is transparently false. If the Government had wanted to convey that no "final" decision had been made, it simply could have said, "we have not made a final decision." If it had wanted to convey that it could change its mind,

it simply could have said, "yes, but we could change our mind." Instead, it said neither, and its answer was not true.

The Government next argues that it could not have answered defense counsel's question because it was bound by the Sealing Order – the very same Sealing Order that the Government had requested itself, and improperly at that. (Gov't Response at 13.) The Government, however, may not use the Sealing Order as both a shield to hide the indictment and a sword to discover a defendant's trial strategy. *Cf., e.g., GAB Business Serv., Inc. v. Syndicate 627*, 809 F.2d 755, 762 (11th Cir. 1987). More importantly, the rebuttal to the Government's argument is inherent therein. In response to the question whether a charging decision had been made, the Government was not faced with telling either a truth or a lie. Mr. Pilger could have said quite truthfully that he could not answer that question. Further, after that meeting the Government could have sought a limited Unsealing Order, since they were on notice that such a charging decision was of critical importance to defense counsel. Setting the record straight at that point would have given both sides the chance to negotiate openly and honestly.

### 4. The Government's Misconduct Caused Defendant Scrushy Actual and Substantial Prejudice.

In a footnote, the Government argues that, even if the indictment were improperly sealed or there was an improper delay in unsealing the indictment, Defendant Scrushy is not entitled to relief because he suffered no actual, substantial prejudice from the Government's actions. (Gov't Response at 14 n.4.) That the Government relegates this argument to a footnote speaks volumes about the Government's belief in the argument. The Government's misconduct caused Defendant Scrushy "actual, substantial prejudice" in two ways: (1) by improperly sealing the indictment, the Government gained additional

time to pressure witnesses, much as it attempted to do with Defendant, to match their testimony to the Government's theory of the case; and (2) by improperly sealing the indictment, the Government was able to trick defense counsel into revealing Defendant's factual and legal defenses, which information the Government was able to use to steer its grand jury investigation and continued contacts with witnesses, and will be able to use again at trial.

The two methods by which the Government caused Defendant actual and substantial prejudice combined to infect the entire grand jury process and continue to hamper Defendant's ability to defend against the indictment. Defendant Scrushy has reason to believe that he was not the only potential grand jury witness whom the Government threatened or attempted to strong-arm into testifying to the Government's version of facts. Once the Government knew Defendant Scrushy's theory of the case, it was able to use the grand jury to lock in the testimony of witnesses or encourage witnesses to modify their testimony before they could testify on Defendant Scrushy's behalf. For example, the Government once again placed witness Lorrie Skelton before the grand jury in December of 2005. Not only does Defendant believe that the Government utilized information gained in defense counsels' proffer to refine Ms. Skelton's testimony, a careful review of that testimony in comparison to her prior testimony demonstrates that her appearance was simply to lock her testimony down after months of negotiation. The additional count that came with the superseding indictment after that testimony simply completed the manufactured pretense of legitimacy the Government was trying to create for the Court to conceal their improper utilization of the grand jury to the prejudice of Defendant. That prejudice is real and resulted directly from

the improper sealing of the indictment and misleading conduct of Government counsel in their meeting with Defendant Scrushy's counsel, leading to continued negotiations with Ms. Skelton and her eventual appearance before the grand jury in December of 2005.[6]

To the extent that the issue is a question of fact, an evidentiary hearing is required.

### C. THE GOVERNMENT'S THREAT OF INDICTMENT IF THE DEFENDANT DID NOT TESTIFY REQUIRES DISMISSAL OF THE INDICTMENT.

The Government denies that it ever threatened Defendant Scrushy or otherwise pressured him to testify to the Government's version of events. (Gov't Response at 15.) Defense counsel on the other hand, heard the Government attorneys do just that. (Doc 132, Exhibit A ¶ 2.) This conflict can be resolved only through an evidentiary hearing.

The Government further argues that, even if it did threaten Defendant Scrushy, he can show no prejudice and that, in any event, the only remedy for its threats is a new trial. (Gov't Response at 16.) The Government's reliance on *United States v. Heller*, 830 F.2d 150 (11th Cir. 1997), and *United States v. Hammond*, 598 F.2d 1008 (5th Cir. 1979), is misplaced. In *Heller*, the Government pressured a witness to testify falsely at trial, 830 F.2d at 153-54; in *Hammond*, the Government pressured a witness not to testify for the defendant at trial, 598 F.2d at 1012-13. Because the errors occurred at trial and only infected the trials, the cases were remanded for new trials.[7]

---

[6] Because the Defendant has shown "actual, substantial prejudice," the Government's deliberate delay in unsealing the indictment to gain tactical advantage also requires this Court to dismiss the indictment. *United States v. Foxman*, 87 F.3d 1220, 1222 (11th Cir. 1996).

[7] The Court in *Heller* questioned the feasibility of actually correcting the Government's error in a new trial. 830 F.2d at 156 n.6, *citing United States v. Morrison*, 535 F.2d 223

Nothing in those cases, however, suggests that a new trial is the only remedy a court can fashion. *Compare United States v. Morrison*, 535 F.2d 223 (3d Cir. 1976) (defense witness was intimidated into not testifying; court remanded for new trial and directed that if Government did not give witness use immunity, the district court was to enter a judgment of acquittal). Here, it is reasonable to infer that the Government's threat to indict Defendant Scrushy if he did not testify to its version of events did not occur in a vacuum. Instead, it is likely that Defendant Scrushy was neither the first nor the last potential grand jury witness the Government attempted to intimidate. That reasonable likelihood taints the testimony of witnesses who testified before the grand jury and the grand jury process itself. It also threatens to taint the testimony at trial: those witnesses who were intimidated or pressured into testifying incorrectly before the grand jury will be faced with the Hobson's choice of continuing to shave the truth or commit perjury and having it go undetected or admitting to having committed perjury before the grand jury. In these circumstances, dismissal of the indictment is the only effective remedy.

Finally, the Government's argument that dismissal of the indictment is not appropriate because Defendant has not asserted that the Government's misconduct related to the validity of the indictment has no basis in fact. Defendant Scrushy is asserting that the Government's misconduct in this case permeates and taints the grand jury process up and until the indictment was unsealed and will continue to taint the process throughout the trial. In *United States v. Thompson*, 287 F.3d 1244 (10th Cir. 2002), the Court

---

(3d Cir. 1976) (defense witness was intimidated into not testifying; court remanded for new trial and directed that if Government did not give witness use immunity, the district court was to enter a judgment of acquittal). Correcting the error in the grand jury process can only be more difficult, although the initial starting point should be the dismissal of the instant indictment.

specifically addressed the method of proceeding when faced with the improper sealing of the indictment:

> The potential impact of the error could affect not only the outcome of any possible trial, but also the course of plea negotiations, discovery, the preparation of witnesses for trial, and pretrial motions and hearings. In short, the sealing error could have affected the entire post-indictment proceedings and harmed the defendants' ability to defend against the charges even before the commencement of trial. Accordingly, this court holds that, for sealing violations under Rule 6(e)(4), the government must demonstrate that the improper sealing did not substantially affect a defendant's ability to defend against the indictment.

*Id.* at 1253. When this Court correctly applies the appropriate burden of proof required in such circumstances, Defendant respectfully submits that this Court will find, like the court in *Thompson*, that the improper sealing violation has substantially affected Defendant Scrushy's ability to defend against the indictment. Thus, dismissal of the indictment with prejudice is appropriate. *Id.* at 1256.

WHEREFORE, Defendant Scrushy respectfully prays that this Court conduct an evidentiary hearing into the circumstances surrounding the sealing of the May 17, 2005, indictment, the delay until October 26, 2005 in unsealing the indictment, and the conduct of the Government in meetings and discussions with counsel for Defendant in the period between May 17, 2005, and October 26, 2005, and, upon good cause shown, enter an Order dismissing the indictment in this case, and for such other and further relief as this Court may deem just and proper.

This 6th day of March, 2006.

                          Respectfully submitted,

                          */s/ Arthur W. Leach*
                          Arthur W. Leach
                          Terry Lucas Butts
                          Leslie V. Moore
                          2310 Marin Drive
                          Birmingham, Alabama 35203
                          Phone: 205-822-4224
                          Fax: 205-824-0321


                          James K. Jenkins
                          Bruce Maloy
                          Maloy & Jenkins
                          25th Floor
                          75 Fourteenth Street, NW
                          Atlanta, Georgia 30309
                          Phone: 404-875-2700
                          Fax: 404-875-7857

                          Attorneys for Richard M. Scrushy

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of March, 2006, I electronically filed the foregoing "Reply to Government's Response to Defendant Richard M. Scrushy's Motion to Dismiss Indictment Because of Prosecutorial Misconduct and Delay in Unsealing the Indictment" with the Clerk of the Court using the CM/ECF system which will send notification of such to counsel of record.

Arthur W. Leach
2310 Marin Drive
Birmingham, Alabama 35203
Phone: 205-822-4224
Fax: 205-824-0321