IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | CRIMINAL NO. 2:05-CR-119-MEF |
| DON EUGENE SIEGELMAN, ) | |
| PAUL MICHAEL HAMRICK, ) | |
| GARY MACK ROBERTS, and ) | |
| RICHARD M. SCRUSHY ) | |

**UNITED STATES' RESPONSE TO DEFENDANT HAMRICK'S MOTION IN LIMINE TO BAR EVIDENCE AND ARGUMENT THAT MR. HAMRICK DEPRIVED THE STATE OF ALABAMA OR THE PUBLIC OF GOVERNOR SIEGELMAN'S HONEST GOVERNMENTAL SERVICES DURING THE PERIOD WHEN MR. HAMRICK WAS A PRIVATE CITIZEN**

COMES NOW the United States of America, by and through Louis V. Franklin, Sr., Acting United States Attorney for the Middle District of Alabama, and Andrew C. Lourie, Acting Chief of the Public Integrity Section of the Criminal Division of the United States Department of Justice, and hereby files its Response to Defendant Hamrick's Motion in Limine to Bar Evidence and Argument that Mr. Hamrick Deprived the State of Alabama or the Public of Governor Siegelman's Honest Governmental Services During the Period when Mr. Hamrick was a Private Citizen (hereinafter, the "Motion"). In the Motion, Defendant Hamrick requests this Court to bar all evidence and argument exposing him to criminal liability for having violated 18 U.S.C. §§ 1341, 1343, and 1346,[1] on the

---

[1] Defendant Hamrick is charged with honest services mail fraud in Counts 10 through 12, pursuant to §§ 1341 and 1346; and honest services wire fraud in Counts 13 and 14, pursuant to §§ 1343 and 1346. "Except for the jurisdictional nexus (mails in § 1341, interstate wires in § 1343), the statutes are the same, are interpreted identically, and cases decided under one are controlling under the other." United States v. deVegter, 198 F.3d 1324, 1327 n.1 (11th Cir. 1999), cert. denied, 530 U.S.1264 (2000). Thus, the United States, in this Response, applies the jurisprudence of honest services fraud without differentiating between the mail and wire fraud statutes.

1

theory that he deprived the State of Alabama of Defendant Siegelman's honest services during the periods that Defendant Hamrick was a non-public-official or private citizen. During the six-year period of the Second Superceding Indictment, he was not a State officer from May 8, 1998, until January 19, 1999, when he worked for Defendant Siegelman's gubernatorial campaign and then on the Governor-elect's transition team, and for the period from June 30, 2001, until January 20, 2003, after he had resigned as Defendant Siegelman's Chief of Staff. Second Superceding Indictment, at ¶ 1(d).

Defendant Hamrick offers three arguments as to why he cannot be prosecuted for, while a private citizen, having deprived the State of Defendant Siegelman's honest services: (1) the plain language of Counts One, Two, and Ten through Fourteen charges deprivation of only his honest services, not those of Defendant Siegelman; (2) his actions and influence, during the periods he was not in State service, were not illegal, because they do not fall within the typical honest services fraud scenarios involving a private citizen's deprivation of a public official's honest services, i.e., bribery of a public official and helping a public official conceal a material conflict of interest and because he had no independent duty ro render honest services; and (3) to give the jury the responsibility to segment the scheme, according to Hamrick's status as a private citizen or as a public officer, would create intractable difficulties.

---

In relevant part, 18 U.S.C. §§ 1341 and 1343 provide, "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises . . . [uses the mails or wires, or causes their use] for the purpose of executing such scheme or artifice . . . [shall be punished]." Section 1346 defines "scheme or artifice to defraud" as "a scheme or artifice to deprive another of the intangible right of honest services."

**I. The Second Superceding Indictment's Plain Language Supports Prosecution of Defendant Hamrick on the Theory that He Deprived the State of Alabama of Defendant Siegelman's Honest Services**

The Second Superceding Indictment charges, in Counts Two, and Ten through Fourteen,[2] that Defendants Hamrick and Siegelman, aided and abetted by each other, devised a scheme to defraud and deprive the State of Alabama of its right to the honest services of "themselves as public officials and employees of the State," Second Superceding Indictment, at ¶¶ 28, 61, for the purpose of using their positions in the Executive Department of the State to obtain money, property, and other things of value in exchange for "their official power, actions, and influence," concerning the business and financial interests of accomplice Lanny Young and his clients, ¶ 29, and that Defendants Hamrick and Siegelman engaged in a course of conduct with Young, establishing an agreement and understanding by which Young would obtain official acts in exchange for money, property, and other things of value, ¶ 30(a).

This Court has already denied Defendant Hamrick's Motion to Dismiss the Honest Services Fraud Charges in Counts One, Two, and Ten Through Fourteen of the Indictment, Doc. 155. Again, the Government points out that "[l]inguistic precision is not required in an indictment." United States v. deVegter, 198 F.3d 1324, 1330 (11th Cir. 1999), cert. denied, 530 U.S. 1264 (2000). Rather, a court is to give the indictment a common sense construction. United States v. Gold, 743

---

[2] Defendant Hamrick improperly characterizes Count One. That count charges Defendant Hamrick with unlawfully conspiring with Defenadnt Siegelman to violate the substantive RICO statute, 18 U.S.C. § 1962(c). The essence of Count One is Defendant Hamrick's unlawful agreement with Defendant Siegelman, regardless of Defendant Hamrick's postition in State government at a given time.

F.2d 800, 812 (11th Cir. 1984), cert. denied, 469 U.S. 1217 (1985). The Second Superceding Indictment is well-pled and informs Defendant Hamrick of the charges against which he must defend and enables him to assert double jeopardy as a bar to any future prosecution for the same offense.

This same conclusion dismisses Defendant Hamrick's related argument that the indictment's charge that he and Defendant Siegelman assisted Young through their "official power, actions, and influence" is nonsensical in regard to those periods that Hamrick was a private citizen. Mot., at 4.

## II. Defendant Hamrick's Conduct, as Charged in the Second Superceding Indictment, Falls Within the Legal Definition of a Scheme to Fraudulently Deprive Another of Honest Services

### A. Defendant Hamrick's Argument that the Facts Specified in the Indictment Will Not Support the Charges of Honest Services Fraud Should Be Denied on the Procedural Ground that It Is a Premature Rule 29 Motion

Defendant Hamrick argues that the Second Superceding Indictment merely charges that he "received money (at some unspecified time) from Lanny Young, and that he and Governor Siegelman assisted Mr. Young through their official power, actions, and influence." Mot., at 3 (citations, quotations, and alteration omitted). It is upon this elementary construction of the anticipated facts that he bases his argument that a private person cannot be charged with depriving the public of a public officer's honest services. Yet, he then conjectures that the facts will establish that he took money while a private citizen to influence Defendant Siegelman's honest services, which he suggests is "the daily business of lobbyists." Mot., at 4. This inconsistency in just one detail of the anticipated evidence illustrates the futility and danger in addressing a thinly-veiled sufficiency-of-the evidence claim prior to trial.

Because Defendant Hamrick has been properly indicted, the Government is entitled to present

its evidence at trial. Defendant Hamrick may then contest the sufficiency of that evidence tested via a Rule 29 motion. See United States v. Salman, 378 F.3d 1266, 1268 (11th Cir. 2004) ("A motion for acquittal under Rule 29 is the proper avenue for contesting the sufficiency of the evidence in criminal cases because there is no explicit authority to grant a pre-trial judgment as a matter of law on the merits under the Federal Rules of Procedure."); United States v. Triumph Capital Group, Inc., 260 F. Supp. 2d 444, 448 (D. Conn. 2002) ("It is axiomatic that . . . a defendant may not challenge a facially valid indictment prior to trial for insufficient evidence. Instead, a defendant must await a Rule 29 proceeding or the jury's verdict before he may argue evidentiary sufficiency.") (quotations and citation omitted). To entertain this Motion at this procedural juncture, the Court would inject into this proceeding a creature foreign to criminal procedure – the summary judgment motion. See United States v. Critzer, 951 F.2d 306, 307 (11th Cir. 1992) (per curium) ("There is no summary judgment procedure in criminal cases [nor d]o the rules provide for a pre-trial determination of sufficiency of the evidence."). The Court cannot extrapolate from extraneous information submitted by a defendant that the evidence at trial will be insufficient. Triumph Capital Group, Inc., 260 F. Supp. 2d at 459. Thus, this Motion should be denied.

### B. The Facts on the Face of the Second Superceding Indictment Fall Within the Ambit of Section 1346

Congress's clear intent, in enacting Section 1346, was that it be construed broadly. United States v. Lopez-Lukis, 102 F.3d 1164, 1171 (11th Cir. 1997). Instead, Defendant Hamrick promotes a narrow, constrained concept of what constitutes a scheme for a private citizen to deprive another of honest services. He further seeks to cabin the unlawful conduct at issue in this case to the prohibition of a bribe exchanged for a specific benefit, i.e., a quid pro quo.

The Eleventh Circuit has spoken to the essence of a scheme to fraudulently deprive another of honest governmental services is in the following passage:

> When a government officer decides how to proceed in an official endeavor – as when a legislator decides how to vote on an issue – his constituents have a right to have their best interests form the basis of that decision. If the official instead secretly makes his decision based on his own personal interests – as when an official accepts a bribe or personally benefits from an undisclosed conflict of interest – the official has defrauded the public of his honest services.

Id. at 1169. See also deVegter, 198 F.3d at 1328. The Second Superceding Indictment charges that Defendants Hamrick and Siegelman and Young and "Nick" Bailey aided and abetted each other in the commission of the honest services fraud offenses, pursuant to 18 U.S.C. § 2. See, e.g., Second Superceding Indictment, at ¶ 28. Despite Defendant Hamrick's contention that the indictment does not charge him with having personally bribed a public official or having personally helped a public official conceal a material conflict of interest while he was not a pubic official, the indictment charges that, at all times pertinent to the indictment, Defendant Hamrick actively participated in and facilitated Defendant Siegelman's relationship with Young – a symbiotic relationship corrupted by bribery and concealment of material conflicts of interests. Each of the honest services fraud counts in which Defendant Hamrick is charged arises out of a bribery scheme in which he participated – the paradigm case of honest services fraud. See deVegter, 198 F.3d at 1327-28 (citing Lopez-Lukis, 102 F.3d at 1165 n.1). An indictment does not have to set forth evidence or details of how the offenses were committed; resolution of the factual issues must await trial. Triumph Capital Group, Inc., 260 F. Supp. 2d at 448. At trial, the Government will present evidence establishing beyond a reasonable doubt that Defendant Hamrick's conduct falls within the framework set forth in Lopez-Lukis.

In arguing the sufficiency of the evidence he anticipates the Government will introduce

against him at trial, Defendant Hamrick insists that it is impossible to articulate a duty applicable to him. The Eleventh Circuit, however, is clear on the source and nature of the duty to render honest governmental services – a common-law general fiduciary duty. See deVegter, 198 F.3d at 1328 ("Public officials inherently owe a fiduciary duty to the public to make governmental decisions in the public's best interest."); Lopez-Lukis, 102 F.3d at 1169 (same); Castro v. United States, 248 F. Supp. 2d 1170, 1189 (S.D. Fla. 2003) ("The Eleventh Circuit has unambiguously stated that public officials owe inherent fiduciary duties to the public and that violations of the same are proper predicates to convictions under § 1346.").

The duty breached does not necessarily have to belong to the defendant himself. Precedent from this and other Circuits teaches that a defendant, while a non-public-official, may be exposed to criminal liability for a scheme to deprive the public of a public official's honest services. See, e.g., United States v. Hasner, 340 F.3d 1261 (11th Cir. 2003) (consultant's scheme to deprive the public of the local housing authority chairman's honest services), cert. denied, 543 U.S. 810 (2004); Lopez-Lukis, (a lobbyist's scheme to deprive citizens of the honest services of a county commissioner by inducing the commissioner to vote favorably for his clients' projects and to gain control of a majority of the board). See also United States v. Sawyer, 239 F.3d 31 (1st Cir. 2001) (where a lobbyist, with continuing and long-term interests before a State legislature, engaged in a generalized, broad pattern of giving things of value to induce ongoing favorable official action from various legislators, the court stated that, in a prosecution of the non-public-official for scheming to defraud the public of an official's honest services, the Government must prove that the target of the scheme is the deprivation of the official's honest services).

Moreover, by virtue of aiding and abetting a public official in a scheme to defraud the public

of that official's honest services, a private citizen actively participates in the breach of the public official's fiduciary duty. United States v. Paradies, 98 F.3d 1266, 1281-82 (11th Cir. 1996), cert. denied, 521 U.S. 1106, and cert. denied, 522 U.S. 1014 (1997). Such is the case here. Defendants Hamrick and Siegelman were properly charged with aiding and abetting each other under 18 U.S.C. § 2. "Aiding and abetting 'is an alternative charge in every count, whether explicit or implicit, and the rule is well-established . . . that one who has been indicted as a principal may be convicted on evidence showing that he merely aided and abetted the commission of the offense.'" United States v. Howard, 13 F.3d 1500, 1502 (11th Cir. 1994) (quoting United States v. Bullock, 451 F.2d 884, 888 (5th Cir. 1971)). "To support a conviction for aiding and abetting an offense, the evidence must simply show that 'the defendant was associated with the criminal venture, participated in it as something he wished to bring about, and sought by his action to make it succeed.'" Id. at 1502 (quoting United States v. Hewitt, 663 F.2d 1381, 1385 (11th Cir. 1981)). See Eleventh Circuit Pattern Jury Instruction 7, Aiding and Abetting (Agency), 18 U.S.C. § 2 ("[I]f the Defendant aids and abets another person by willfully joining together with that person in the commission of a crime, then the law holds the Defendant responsible for the conduct of that other person just as though the Defendant had personally engaged in such conduct.") Defendant Hamrick is properly charged as an aider and abetter based on his participation in the honest services fraud scheme with Defendant Siegelman even when no longer officially being paid by the State.

In further advancing his premature sufficiency-of-the-evidence claim, Defendant Hamrick also insists that Eleventh Circuit jurisprudence requires that any bribery act in a scheme to fraudulently deprive the public of honest services be based on a quid pro quo. Defendant Hamrick, in rationalizing his crafting of this requirement to the offense of honest services fraud, relies on the

Supreme Court's announcement in United States v. Sun-Diamond Growers, 526 U.S. 398 (1999), that the federal law bribery statute, 18 U.S.C. § 201,[3] requires proof of a link between a specific corrupt benefit to a public official and a specific, identifiable act by the public official for or because of which it was given. He argues that, in reiterating its Lopez-Lukis framework in deVegter, after the Supreme Court's holding in Sun-Diamond, the Eleventh Circuit incorporated a "quid pro quo" requirement into the honest services fraud offense. Defendant Hamrick cites no authority to justify or support his unfounded leap in logic.

The Government has treated this contention in depth in its Response to Defendant Hamrick's Motion in Limine to Bar Evidence and Argument Regarding Alleged Payments Made by Mr. Young to Mr. Hamrick, filed April 10, 2006. For purpose of this Motion, the Government simply adopts, as its argument, the following discussion rejecting the argument that the quid pro quo requirement for a Section 201 offense should be applied to the offense of honest services fraud.

> We distinguish between a gift given with the intent to influence official action generally, required under § 1341, and a gift given for or because of an official act that has been performed or will be performed by a government officer, now required under § 201. . . . While Sun-Diamond does not specifically mention § 1341, to read that opinion as affecting the well-settled interpretation of § 1341 would be inconsistent with its rationale. The Supreme Court partly based its decision in Sun-Diamond on a desire to read § 201, the gratuity statute, in a way that made sense given the "intricate web of regulations, both administrative and criminal, governing the acceptance of gifts" by public officials. Sun-Diamond, 526 U.S. at 409, 119 S.Ct. 1402. The Court noted specifically, "we ought not expand this one piece of the regulatory puzzle so dramatically as to make many other pieces misfits." 526 U.S. at 412, 119 S.Ct. 1402.

---

[3] 18 U.S.C. § 201© provides, in pertinent part, that anyone who

> otherwise than as provided by law for the proper discharge of official duty . . . directly or indirectly gives, offers, or promises anything of value to any public official . . . for or because of any official act performed or to be performed by such public official . . . shall be fined under this title or imprisoned for not more than two years, or both.

United States v. Sawyer, 239 F.3d at 40 n.8 (emphasis in original).

In conclusion, the honest services fraud charges against Defendant Hamrick do not call, as a matter of law, for proof of a honest services fraud scheme outside that approved by Eleventh Circuit jurisprudence.

### III. The Scheme To Fraudulently Deprive the State of Alabama of the Honest Services of Defendants Hamrick and Siegelman Should not be Dissected According to Defendant Hamrick's Employment Status

Defendant Hamrick insists that the honest service fraud charges against him will have to be divided into four segments, depending on his employer at any given time, thus, resulting in confusion, mistakes, multiple motions, and significant errors. Mot., at 6. He also surmises that the Court will have to designate what standard is to be applied to which evidence, i.e., the public official standard or the private official standard.

These concerns fall short on several fronts. First, Defendant Hamrick assumes two different standards. The only significant difference between proof of participation in a scheme by a private citizen and that of participation by a public official is found in one of the two kinds of intent required for honest services fraud.[4] The government official must have intended to deprive the public of his honest services. United States v. Woodward, 149 F.3d 46, 55 (1st Cir. 1998); United States v. Sawyer, 85 F.3d 713, 729 (1st Cir. 1996). In the prosecution of a private citizen, however, the Government must prove that the target of the scheme was the deprivation of the official's honest services. Sawyer, 85 F.3d at 725. This element is established by proof that the private citizen either intended to improperly influence the public official or intended for the public official to fail to

---

[4]The other kind of intent required is the defendant's intent to deceive the public. United States v. Woodward, 149 F.3d 46, 55 (1st Cir. 1998); United States v. Sawyer, 85 F.3d 713, 729 (1st Cir. 1996).

10

disclose a material conflict of interest. Sawyer, 85 F.3d at 729. Any concern arising from this difference may properly be addressed with jury instructions at trial. Cf. United States v. Warner, No. 02-CR-506, 2004 WL 1794476, at *22 (N.D. Ill. Aug. 11, 2004) (jury instructions will alleviate any confusion generated by the execution, in different ways, of the one scheme presented in the indictment).

Moreover, "[f]raudulent schemes cannot often be easily dissected into discrete parts." United States v. Bonansinga, 773 F.2d 166, 170 (7th Cir. 1985), cert. denied, 476 U.S. 1160 (1986). Here, Defendants Hamrick and Siegelman were charged with one broad scheme that continued over several years, a scheme that they carried out in a variety of ways. It cannot be segmented by artificial and arbitrary criteria. See, e.g., Warner, 2004 WL 1794476, at *21-22 (the allegations constituting a broad scheme should not be characterized as separate schemes to defraud the people of the State of the public official's honest services as the Secretary of State on the one hand and as Governor on the other). See also Woodward, 149 F.3d at 65 (in rejecting the defendant's contention that the mailing of the lobbyist's credit card bill was not for the purpose of executing the ongoing scheme, the court admonished the defendant for focusing too narrowly on each gratuity individually by assuming a new fraudulent scheme began and ended every time the lobbyist used his credit card to pay for illegal gratuities and reiterated that "'a person with continuing and long-term interests before an official might engage in a pattern of repeated, intentional gratuity offenses in order to coax ongoing favorable official action in derogation of the public's right to impartial official services'") (quoting Sawyer, 85 F.3d at 730). A jury is not required to examine the evidence in isolation, for "individual pieces of evidence, insufficient in themselves to prove a point, may in cumulation prove it[; t]he sum of an evidentiary presentation may well be greater than is constituent parts." Woodward, 149 F.3d

at 57 (quotations and citations omitted).

For example, by isolating the anticipated evidence by distinct time frames, Defendant Hamrick erroneously assumes that a duty to render honest governmental services must be coterminous with the mailings and wires used to further the scheme to defraud. The Tenth Circuit in <u>United States v. Worley</u>, 751 F.2d 348 (10th Cir. 1984), rejected the argument that county warrants sent to vendors after the defendant left public service were not part of the scheme to defraud and therefore could not be used as proof of honest services mail fraud. The court noted that "to commit mail fraud a defendant must set forces in motion which . . . would involve mail uses . . .[and t]he only causation required by the mail fraud statute is whether the defendant could reasonably foresee the occurrence of mailings." <u>Id</u>. at 350 (quotations and citation omitted). According to the court, the post-public-office mailings were properly charged as honest services mail fraud counts because "all was set in motion as part of the scheme and by defendant's acts." This observation applies equally to Defendant Hamrick. The Second Superceding indictment thus properly charges that Defendant Hamrick schemed to defraud the State, not only of Defendant's Siegelman's honest services, but of <u>his</u> honest services while in State service, and his concomitant criminal liability, did not cease when he left State service. <u>See</u> <u>Hasner</u>, 340 F.3d at 1272 (the fraud "did not achieve fruition until [a defendant] received the checks from the ill-obtained contract"; thus, the mailing element was satisfied).

Here, Defendants Siegelman and Hamrick crafted an unlawful scheme. The scheme covered years and was carried out in a variety of ways. Within the corrupt relationships flowed an ongoing stream of official favors, access, and influence for Young's continuing and long-term interests in exchange for various benefits and things of value. Prosecution of the scheme cannot be thwarted by

Defendant Hamrick's unfounded attempt to mechanically dissect it into discrete parts or separate schemes isolated only per arbitrary, sterile criteria. See, e.g., Lopez-Lukis, 102 F.3d at 1168 (approving prosecution of "a broad bribery scheme: . . . pa[y] . . . for political favors"); Sawyer, (prosecution of a generalized pattern of gratuities or bribes to coax ongoing favorable official action). "Surely, section 1346 was intended to prohibit just this sort of conduct," charged in the present indictment. Lopez-Lukis, 102 F.3d at 1170.

## IV. Conclusion

The allegations of this Motion are appropriately presented only in a Rule 29 motion at the conclusion of the Government's evidence. Thus, this Motion should be denied because it is premature. Moreover, the plain language of Counts Two, and Ten through Fourteen supports prosecution of Defendant Hamrick on the theory that he deprived the State of Alabama of Defendant Siegelman's honest services; his conduct, as charged in the Second Superceding Indictment, falls within the legal definition of a scheme to fraudulently deprive the public of honest services; and the scheme to fraudulently deprive the State of Alabama of the honest services of Defendants Hamrick and Siegelman should not be dissected according to Defendant Hamrick's employment status since the jury's discretion in considering these charges can be adequately guided by the Court's instructions. Consequently, this Court should deny the Motion.

Respectfully submitted this the 10th day of April, 2006

| | |
|---|---|
| LOUIS V. FRANKLIN, SR. | ANDREW C. LOURIE |
| ACTING UNITED STATES ATTORNEY | ACTING CHIEF, PUBLIC INTEGRITY SECTION |

/s/ Louis V. Franklin, Sr.
Acting United States Attorney
One Court Square, Suite 201
Montgomery, AL 36104
Phone: (334)223-7280
Fax:     (334)223-7560
Email: louis.franklin@usdoj.gov

/s/ J.B. Perrine
Assistant United States Attorney
One Court Square, Suite 201
Montgomery, AL 36104
Phone: (334)223-7280
Fax:     (334)223-7135
Email: jb.perrine@usdoj.gov
ASB-9077-E31J

/s/ Jennifer Garrett
Special Assistant United States Attorney
Assistant Attorney General
Office the Attorney General
11 S. Union
Montgomery, AL 36130
Phone: (334)353-8494
Fax:     (334)242-4890
Email: jgarrett@ago.state.al.us
ASB-4600-T77J

/s/ Stephen P. Feaga
Assistant United States Attorney
One Court Square, Suite 201
Montgomery, AL 36104
Phone: (334)223-7280
Fax:     (334)223-7560
Email: steve.feaga@usdoj.gov
ASB-7374A60S

/s/Richard C. Pilger
Department of Justice, Criminal Division
Public Integrity Section
10th & Constitution Ave, NW
Bond Building - 12th Floor
Washington, DC 20530
Phone: (202)514-1412
Fax:     (202)514-3003
Email: richard.pilger@usdoj.gov

/s/ Joseph L. Fitzpatrick, Jr.
Special Assistant United States Attorney
Assistant Attorney General
Office of the Attorney General
11 S. Union
Montgomery, AL 36130
Phone: (334)353-4839
Fax:    (334)242-4890
Email: j.fitzpatrick@ago.al.state.us

IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,   ) | |
|                             ) | |
|                             ) | |
| vs.                         ) | CR. NO. 2:05-cr-119-MEF |
|                             ) | |
| DON EUGENE SIEGELMAN,       ) | |
| PAUL MICHAEL HAMRICK,       ) | |
| GARY MACK ROBERTS, and      ) | |
| RICHARD M. SCRUSHY.         ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on April 10, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

Respectfully submitted,

LOUIS V. FRANKLIN, SR.
ACTING UNITED STATES ATTORNEY

/s/ Louis V. Franklin, Sr.
LOUIS V. FRANKLIN, SR.
Acting United States Attorney
Post Office Box 197
Montgomery, Alabama 36101-0197
(334) 223-7280
(334) 223-7135 fax
louis.franklin@usdoj.gov