**EXHIBIT A**
**April 16, 2006**
SWORN STATEMENT

James H. Gundlach, PhD, under penalty of perjury, states the following:

1. I have been asked by counsel for Defendant to calculate the confidence interval level of the tabulations that were used to count the percent of African-Americans in District-wide pools selected from the 2001 Qualified Jury Wheel by both Mr. Elmore and myself in our respective reports.

2. The confidence interval level is the standard measurement universally accepted by statisticians to measure what non-statisticians would generally refer to as a "margin of error."

3. Ninety-five percent confidence levels are traditionally used to estimate the chances of being wrong when generalizing from a sample to a population. In other words, when we construct a margin of error with a 95 percent confidence level for a statistic from a sample, we are 95 percent certain that the same statistic for the population falls within that margin of error.

4. There are three factors that impact the size of a 95 percent confidence level drawn around a percentage that measures a characteristic of a population. The first is the degree of inequality in the distribution of the characteristic measured. The second is sample size. And the third, which applies to situations where the sample is a substantial portion of a finite population, is called the Finite Population Adjustment. The Finite Population Adjustment means that the confidence level is increased when you are measuring a finite population (such as the 2001 QJW). All three of these factors result in a very small margin of error as to all the measurements in question. Below I report the 95 percent confidence levels for the four estimates of the percent African-American from Mr. Elmore's Report and from my Report.

5. The four estimates consist of two each from the Government's expert witness, Mr. Elmore, and the defense's expert witness, myself. Each expert reported one measure of the percent African-American for all District-wide pools and another measure for pools drawn after the jury administrator returned a substantial number of deferred jurors to the Qualified Jury Wheel. Both reports counted all of the jurors actually summoned for District-Wide pools and identified them by race.

5. The data for Mr. Elmore's 92 pools was calculated by adding the totals in page one and two of Exhibit X of his Report. The data for my 91 pools is found in the table on page 6 of my Report. The data for Mr. Elmore's pools 49 to 92 was obtained from page 2 of Exhibit X of his Report. The data for my last group of pools was obtained from the table on page 12 of my report previously filed in the Carmichael case.

6. All four percentages are calculated using the same method. That is, the individual members of each of the pools are counted by race and the percentage is calculated on the

**EXHIBIT A**
**April 16, 2006**

total number of individuals of each race for that jury pool. Then the total number of summoned jurors in all the pools are added up, as are the total number of African-American and White jurors summoned to all pools. The small variations between Mr. Elmore's calculations and my calculations are due to differences in the identity of which pool begins the 2001 wheel based on data provided by the Clerk's Office and my exclusion of one pool from the last set because it did not contain any "dumped" Qualified Wheel members. Nonetheless, both Mr. Elmore and I reached virtually the same percentages and the same totals.

7. Column one in the table below identifies the set of pools for which statistics are reported. Column two reports the percent African-American calculated for each set of pools. Column three reports the 95 percent confidence level adjusted for finite population. Column four reports the lower limit and column five reports the upper limit of the margin of error. While the margins for Mr. Elmore's 92 pools and my 91 pools are shown as the same, the exact amounts are different beyond 3 significant digits. The same can be said for Mr. Elmore's pools 49 to 92 and my last group of pools.

| Set of District-wide Jury Pools | Percent African-American | Adjusted 95% Confidence Level | Lower Limit of Margin of Error | Upper Limit of Margin of Error |
|---|---|---|---|---|
| Elmore's 92 Pools | 19.971 | .101 | 19.870 | 20.072 |
| Gundlach's 91 Pools | 19.966 | .101 | 19.865 | 20.067 |
| Elmore's Pools 49 to 92 | 19.874 | .138 | 19.736 | 20.012 |
| Gundlach's Last 43 | 19.930 | .138 | 19.792 | 20.068 |

8. These calculations demonstrate my conclusion that I am 95 percent certain that the percentage of African-Americans in the 2001 Qualified Jury Wheel in all four measurements are somewhere between the lower limit found in column four and the upper limit found in column five.

I hereby declare, pursuant to 28 U.S.C. § 1746, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge and belief.

James H. Gundlach, PhD.