IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | Case No. 2:05cr119-MEF |
| RICHARD M. SCRUSHY,<br>    Defendant. | |

**DEFENDANT RICHARD M. SCRUSHY'S AMENDED SECOND MOTION
TO SUPPLEMENT RECORD IN JURY CHALLENGE
AND REQUEST FOR ADDITIONAL DATA**

COMES NOW Richard M. Scrushy, by and through his undersigned counsel of record, and moves this Court for entry of an Order permitting him to supplement the record in the jury challenge now pending before this Court with the attached Second Sworn Statement of Dr. James Gundlach and related exhibits, and for entry of an Order granting him access to additional records necessary to complete supplementation of the record in his pending jury challenge. In support of this request, Defendant respectfully shows this Court the following:

1. During the evidentiary hearing on Defendant's jury challenge during the week of April 10, 2006, this Court (Chief Magistrate Judge Coody) granted in part Defendant's oral request for copies of Pool Selection Reports as to the most recent jury pools selected in the 2005 Qualified Jury Wheel ("QJW"). Thereafter, on April 16, 2006, Defendant filed "Defendant Richard M. Scrushy's Second Motion to Supplement Record in Jury

Challenge and Motion for Extension of Time." (Doc 373.) This Court granted that motion on May 3, 2006. (Doc 390.) Just before the close of business on May 4, 2006, the Clerk's Office provided the documents to undersigned counsel James K. Jenkins.

2. Dr. Gundlach has completed his analysis relating to the two additional jury pools, which are Pool 201060403 and Pool 201060405. The first of these pools, Pool 201060403 ("the Siegelman/Scrushy jury pool"), is the jury pool drawn for use in Defendant's case, which is now in trial. Dr. Gundlach's analysis is set out in his Second Sworn Statement, which is attached to this motion as Exhibit B and hereby incorporated. Also attached to this motion, and hereby incorporated, are the following supporting documents, all of which come from data furnished by the Clerk's Office:

| | |
|---|---|
| Exhibit C | Pool Selection Report 101051101 |
| Exhibit D | Participant No. 100021748 juror history file |
| Exhibit E | Participant No. 100095731 juror history file |
| Exhibit F | Pool Selection Report 201051103 |
| Exhibit G | Participant No. 100064707 juror history file |
| Exhibit H | Participant No. 100080011 juror history file |
| Exhibit I | Pool Selection Report 201051201 |
| Exhibit J | Participant No. 100016277 juror history file |
| Exhibit K | Pool Selection Report 201060201 |
| Exhibit L | Participant No. 100053169 juror history file |
| Exhibit M | Pool Selection Report 201060202 |
| Exhibit N | Participant No. 100062317 juror history file |
| Exhibit O | Participant No. 100059653 juror history file |

| | |
|---|---|
| Exhibit P | Pool Selection Report 201060303 |
| Exhibit Q | Participant No. 100047376 juror history file |
| Exhibit R | Pool Selection Report 201060403 |
| Exhibit S | Participant No. 100084263 juror history file |
| Exhibit T | Pool Selection Report 201060405 |

3. The analysis conducted by Dr. Gundlach and set out in his Second Sworn Statement, Exhibit B, could not have been conducted prior to the final Pool Selection Report and data being furnished by the Clerk's Office on May 4, 2006 pursuant to this Court's Order dated May 3, 2006.

4. Dr. Gundlach's analysis as set out in Exhibit B speaks for itself. It highlights two significant opinions and their factual bases which are relevant to this Court's ultimate decision as to Defendant's jury challenge, particularly relating to the 2005 Qualified Jury Wheel.

5. First, Dr. Gundlach has uncovered evidence that the 2001 Qualified Jury Wheel was not emptied prior to the creation and use of the 2005 QJW. As detailed in Exhibit B, and supported by Exhibit C through Exhibit S, Dr. Gundlach has identified at least ten (10) jurors who were from the 2001 QJW, yet who were drawn from the Deferral Maintenance Pool of the 2005 QJW and placed on seven (7) different jury pools that have been drawn from the 2005 QJW. One of these jurors, Participant No. 100084263, was selected for the Siegelman/Scrushy jury pool.

6. Based on the jurors' participant number ranges and history records from the 2001 QJW, it is apparent that these jurors came from the 2001 QJW, and were not selected based on the mandated process for creation of the 2005 QWJ, which requires the

3

creation of a 2005 Master Jury Wheel based on a random sample of the voter registration list, the random selection of jurors to be sent qualification questionnaires, and the review of these qualification questionnaires for inclusion in the 2005 QJW. This also demonstrates that the 2001 QJW was not emptied prior to the creation of the 2005 QJW.

7. The Jury Selection and Service Act, 28 U.S.C. § 1863(b)(4), requires that the jury wheel be emptied and refilled at least every four (4) years. The Middle District of Alabama Jury Plan contains the same requirement in ¶ 9(a):

> The Master Wheel currently in full force and effect shall be emptied and refilled every four years not later than the first of September of the year following a general presidential election year. Once the Master Wheel has been refilled, the Qualified Jury Wheel shall also be emptied and refilled with those qualified jurors from the newly filled Master Wheel.

8. Defendant respectfully submits that this additional irregularity, which is a clear violation of the JSSA and the Middle District Plan, constitutes a substantial failure to comply with the requirements of the JSSA. *See United States v. Gregory*, 730 F.2d 692, 698-700 (11th Cir. 1984). The failure to empty the 2001 QJW prior to the creation of the 2005 QJW, as well as the selection of at least ten jurors from the 2001 QJW for pools that were drawn from the 2005 QJW, is far more than a technical deviation from the JSSA. First, the failure to empty a retired QJW and the subsequent inclusion of jurors from that retired wheel in pools selected from the new QJW is a significant blunder in and of itself. Second, as set forth in Dr. Gundlach's statement, since these jurors came from the Deferral Maintenance Pool, they were overwhelmingly white in proportion to the racial composition of the 2005 QJW (only one of the ten carry-over jurors was African-American). As a consequence, even though small in number, their improper inclusion in pools selected from the 2005 QJW had the inevitable effect of decreasing the

representation of African-Americans on these jury pools. Third, the inclusion of these jurors from the 2001 QJW compromised the random selection of every pool in which they were selected, including the Siegelman/Scrushy jury pool.

9. Further, as set forth in ¶ 15 of Dr. Gundlach's statement, the manner in which the data was provided by the Clerk's Office, on May 4, 2006 and previously, effectively masked the existence of these carry-over jurors from the 2001 QJW. The only way that Dr. Gundlach was able to identify these ten carry-over jurors was by the appearance of one of these jurors in the Siegelman/Scrushy jury pool, leading to the subsequent identification of nine additional carry-over jurors on other pools drawn from the 2005 QJW. As a consequence, it is Dr. Gundlach's opinion that there may be additional 2001 QJW members who are currently still in the Deferral Maintenance Pool of the 2005 QJW. These 2001 jurors will also be available for service on subsequent pools drawn from the 2005 QJW, further compromising the randomness of the selection process into the future and, since they are previously deferred jurors, their inclusion will further increase the under-representation of African-Americans on future pools. Therefore, Defendant is respectfully requesting that this Court enter an Order directing the Clerk's Office to provide data meeting the following description: "The participant history file selected for all transactions occurring after August 24, 2005, NOT restricting inclusion based on Participant Number." Defendant respectfully submits that this data can be produced by the Clerk's Office using the JMS with minimal effort and in a prompt fashion, and Dr. Gundlach can promptly analyze the data. On information and belief, this should allow Defendant to identify any additional 2001 QJW members in the 2005 Deferral Maintenance Pool, thereby providing additional support for his contention that the failure

to empty the 2001 QJW before creating and using the 2005 QJW is a substantial violation of the JSSA. Defendant respectfully requests that this Court Order the Clerk to produce the previously described data and that he be given at least four (4) business days after the data is produced to analyze the data and present it to this Court.

10. In addition to constituting a substantial violation of the JSSA, it is Dr. Gundlach's opinion that the failure to empty the 2001 QJW and the selection of 2001 QJW jurors who were previously deferred onto pools selected from the 2005 QJW provides support for his opinion that the root causes of the problems found in the 2001 QJW will continue to affect the 2005 QJW, including:

a. the substantial flaws in the JMS computer software designed by ACS, especially when this software interfaces with the Middle District of Alabama Jury Plan's provisions relating to previously deferred jurors;

b. the deficiencies in the training of Jury Administrator Melissa Myers;

c. the complete absence of quality controls or verification procedures to confirm that the jury pools selected by the JMS are in compliance with the Jury Plan; and

d. a continued pattern of systematic over-inclusion of previously deferred jurors which has the effect of reducing the number of African-Americans that are chosen to serve on District-wide jury pools.

Exhibit B at ¶ 14.

11. Dr. Gundlach's Second Sworn Statement also addresses the continued pattern of underrepresentation of African-Americans on the two most recent pools, including the pool drawn for Defendant's trial. Pool 201060403, the Siegelman/Scrushy jury pool, is 19.000 % African-American. Pool 201060405 is 19.500 % African-American. Both of these pools demonstrate an absolute disparity of more than 10 % as to the underrepresentation of African-Americans. Exhibit B at ¶ 3.

12. Dr. Gundlach also found that while Pool 201060405 had only four previously deferred jurors (2.000 %), the Siegelman/Scrushy jury pool had 29 previously deferred jurors (9.667 %). As set out in Dr. Gundlach's statement, since previously deferred jurors continue their pattern of being substantially more likely to be white than African-American, the Jury Administrator's discretionary decision to include more previously deferred jurors in the Siegelman/Scrushy jury pool would increase the underrepresentation of African-Americans. In light of the testimony and evidence at the evidentiary hearing, especially the testimony of Jury Administrator Melissa Myers (who selected the Siegelman/Scrushy jury pool), her discretionary decision to include more previously deferred jurors in the Siegelman/Scrushy jury pool is particularly troubling. The decision to include only 2.000 % previously deferred jurors in Pool 201060405 also impeaches Melissa Myers's testimony before this Court on April 11, 2006, when she testified that she only used two settings for the percentage of previously deferred jurors: either 10 % or 15 %. Transcript of Proceedings, April 11, 2006, at 267, line 17-25; 268 lines 8-19. It directly contradicts her testimony that, as to the 2005 QJW, "Right now we are using still ten percent." *Id.* at 269, lines 14-25. *See also*, *id.* at 270, lines 11-14.

13. Defendant acknowledges that this information is being submitted by sworn statement after the conclusion of testimony at the evidentiary hearing before this Court on April 10-13, 2006. However, the data necessary to complete this analysis was not available to Defendant until May 4, 2006, when it was produced pursuant to this Court's Order dated May 3, 2006. (Doc 390.) In light of the fact that the Government cannot cross-examine Dr. Gundlach's sworn statement, Defendant has no objection if the Government submits a counter-affidavit from its expert witness. Further, should this

7

Court conclude that Dr. Gundlach's information is entitled to less weight due to the absence of cross-examination, Defendant respectfully requests that this Court hold an additional evidentiary hearing, limited to the submission of evidence concerning Jury Pool 201060403 and Jury Pool 201060405 and the information contained in Defendant Scrushy's first motion to supplement. (Doc 349.)

WHEREFORE, Defendant respectfully prays that this Court issue an Order permitting the supplementation of the record in this matter with the previously-described information and exhibits, Ordering the Clerk to produce the additional data described in ¶ 9, *supra*, granting Defendant four (4) business days to analyze and submit further information, and for such other and further relief as this Court may deem just and proper.

This 8th day of May, 2006.

Respectfully submitted,

 s/ James K. Jenkins
James K. Jenkins
Maloy & Jenkins
25th Floor
75 Fourteenth Street NW
Atlanta, Georgia  30309
Phone:  404-875-2700
Fax:  404-875-7857


Arthur W. Leach
Leslie V. Moore
2310 Marin Drive
Birmingham, Alabama 35203
Phone:  205-822-4224
Fax:  205-824-0321

Attorneys for Richard M. Scrushy

**CERTIFICATE OF SERVICE**

I hereby certify that on the 8th day of May, 2006, I electronically filed the foregoing "Defendant Richard M. Scrushy's Amended Second Motion to Supplement Record in Jury Challenge and Request for Additional Data" with the Clerk of the Court using the CM/ECF system which will send notification of such to counsel of record.

                                                      /s/ LESLIE V. MOORE
Leslie V. Moore
2310 Marin Drive
Birmingham, Alabama 35243
Phone: (205) 822-4224
Fax:    (205) 824-0321
E-Mail: les.moore@lvmlaw.com