**EXHIBIT B**
**May 7, 2006**
**Second Sworn Statement**

James H. Gundlach, PhD, under penalty of perjury, states the following:

1. I have been asked by counsel for Defendant Richard Scrushy to analyze the composition of two jury pools that were selected after my analysis for the evidentiary hearing was completed.

2. During the evidentiary hearing on this case, at the direction of the Court, the Clerk's Office furnished the Pool Selection Report for Pool 201060405. On the afternoon of May 4, 2006, the Clerk's Office furnished the Pool Selection Report for Pool 201060403, which is the Scrushy/Siegelman jury pool. The Clerk's Office also furnished updated juror history files for all participants in the 2005 Qualified Jury Wheel ("QJW").

3. I have identified each of the jurors in each of these pools by race. Pool 201060403 (the Scrushy/Seigelman jury pool), which was comprised of 300 jurors, was 19.0 % African-American. As set out in the tables below, Pool 201060405, which was comprised of 200 jurors, was 19.5 % African-American. Both jury pools under-represent African-Americans by an absolute disparity of greater than 10 % when compared to the composition of the community of 30.466 % as determined by Census data. This means that the trend I observed at pages 9-10 of my March 29, 2006 Report and in my testimony at the evidentiary hearing has continued: as of this date, six of thirteen juries selected from the 2005 QJW have had an absolute disparity in excess of 10 % as to under-representation of African-Americans. In the last five District-wide pools, 196 of 1,000 jurors who received summons, or 19.600 % were African-Americans. This is an absolute disparity of 10.866 %.

**Pool 201060403**

| | | |
|---|---|---|
| African-American | 57 | 19.000 % |
| White | 229 | 76.333 % |
| Missing | 10 | 3.333 % |
| Other | 4 | 1.333 % |
| Total | 300 | |

**Pool 201060405**

| | | |
|---|---|---|
| African-American | 39 | 19.500 % |
| White | 156 | 78.000 % |
| Missing | 3 | 1.500 % |
| Other | 2 | 1.000 % |
| Total | 200 | |

4. In regard to previously deferred jurors, I found a significant contrast between the two pools. Pool 201060405 had four (4) previously deferred jurors, or 2.000 %. The Siegelman/Scrushy jury pool, Pool 201060403, had 29 previously deferred jurors, or 9.667 %. All of these previously deferred jurors came from the Deferral Maintenance Pool.

5. In my opinion, this demonstrates that the Jury Administrator's discretionary decision as to what percentage of previously deferred jurors will be included in a particular jury pool continues to have an impact on the under-representation of African-Americans in the jury pools. In the Siegelman/Scrushy jury pool (Pool 201060403), of the 29 jurors selected from the Deferral Maintenance Pool, only three (3) jurors (10.345 %) were African-American. Out of the 271 jurors drawn from the random selection portion of the QJW, 54 jurors (19.926 %) were African-American. This demonstrates that the pattern of white jurors requesting and obtaining deferrals at a significantly higher rate than African-American jurors continues. More importantly, this demonstrates that the inclusion of almost 10 % previously deferred jurors on the Siegelman/Scrushy jury pool, among whom African-Americans are represented at about half the rate they are represented in the 2005 QJW, resulted in an increase in the underrepresentation of African-Americans, increasing the absolute disparity of under-representation of African-Americans by slightly more than 0.9 % (0.926 %).

6. This demonstrates that the continued non-random and preferential treatment of the previously deferred jurors by the Jury Administrator's actions in both choosing to include nearly 10 % previously deferred jurors on the Siegelman/Scrushy pool, while selecting only 2 % previously deferred jurors for Pool 201060405, and in administering the previously deferred jurors in a manner that insures that they are summoned more frequently than other members of the QJW has consistently reduced the presence of African-Americans on District-wide jury panels in the Middle District of Alabama. That systematic under-representation is occurring in the Siegelman/Scrushy jury pool.

7. In addition, this analysis of the Siegelman/Scrushy jury pool led me to discover yet another substantial problem with the administration of the Deferral Maintenance Pool. Based on this analysis, I have concluded that at least ten (10) jurors from the 2001 QJW have been carried over from the 2001 QJW and placed on District-wide jury pools selected from the 2005 QJW, despite the fact that they are not members of the 2005 QJW.

8. According to Pool Selection Report 201060403, the Siegelman/Scrushy jury pool had 300 members. However, the Clerk's Office had provided juror history files that identified only 299 of the jurors on the jury pool. When I tried to identify the "missing" juror, I was unable to find the juror in the data provided by the Clerk's Office as to the 2005 QJW. The missing juror was Participant Number 100084263, who is on line 03-0267 on Pool Selection Report 201060403.

9. I finally located a juror history file for Participant Number 100084263 in the juror history files for the **2001** QJW. The juror is a white male, and his juror history file shows

that on August 15, 2005, he was summoned to Jury Pool 101050901, for service on September 7, 2005. On August 26, 2005, this juror received a deferral. This same juror was subsequently summoned as juror # 267 on the Siegelman/Scrushy jury pool, to appear on April 19, 2006.

10. In other words, this juror was a member of the 2001 QJW who was in the Deferral Maintenance Pool when the 2001 QJW was retired. Nonetheless, he was selected for service on a jury pool drawn from the 2005 QJW. This occurred despite the fact that the range in which his Participant Number falls demonstrates that he was never randomly selected to be part of the 2005 Master Jury Wheel, never randomly selected to be sent a qualification questionnaire, and was never properly qualified to be a member of the 2005 QJW.

11. Thereafter, I analyzed the other jury pools selected from the 2005 QJW. This analysis identified at least nine (9) additional previously deferred jurors who were selected for jury pools out of the 2005 QJW, despite the fact that they were members of only the 2001 QJW:

**Carry-Over Jurors From 2001 QJW to 2005 QJW**

| Pool | Participant No. |
|---|---|
| Pool 101051101 | Participant No. 100021478 |
|  | Participant No. 100095731 |
| Pool 201051103 | Participant No. 100064707 |
|  | Participant No. 100080011 |
| Pool 201051201 | Participant No. 100016277 |
| Pool 201060201 | Participant No. 100053169 |
| Pool 201060202 | Participant No. 100062317 |
|  | Participant No. 100059653 |
| Pool 201060303 | Participant No. 100047376 |
| Pool 201060403 | Participant No. 100084263 |

12. Further, this group of ten (10) previously deferred jurors contains only one African-American (10.00 %), so the inclusion of these previously deferred jurors had the effect of increasing the under-representation of African-Americans.

13. This process of drawing jurors for service on a new QJW out of the previous, and retired, QJW is the same activity that I observed as to a group of jurors who were summoned to serve on jury pools created from the 2001 QJW despite the fact that they were members of the 1997 QJW.

14. In my opinion, this irregularity demonstrates the continuation of problems that I observed in my March 29, 2006 Report and that were set out in the testimony and exhibits in the evidentiary hearing. In my opinion, this activity demonstrates:

a. the substantial flaws in the JMS computer software designed by ACS, especially when this software interfaces with the Middle District of Alabama Jury Plan's provisions relating to previously deferred jurors;

b. the deficiencies in the training of Jury Administrator Melissa Myers;

c. the complete absence of quality controls or verification procedures to confirm that the jury pools selected by the JMS are in compliance with the Jury Plan; and

d. a continued pattern of systematic over-inclusion of previously deferred jurors which has the effect of reducing the number of African-Americans that are chosen to serve on District-wide jury pools.

15. The 2005 QJW data provided by the Clerk's Office was structured in a manner which limited juror histories to the 2005 QJW, based on Participant Numbers. This made it extremely difficult to uncover the fact that these jurors had been carried over from the 2001 QJW and used in the 2005 QJW. Based on the analysis that I have been able to conduct on the available data, it is my opinion that there may be additional 2001 QJW members who are currently in the Deferral Maintenance Pool of the 2005 QJW. In order to fully investigate this irregularity, I would need the following data, which should be easily provided by the Clerk's Office through the JMS:

"The participant history file selected for all transactions occurring after August 24, 2005, NOT restricting inclusion based on Participant Number."

I herby declare, pursuant to 28 U.S.C. § 1746, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge and belief.

This 7th day of May, 2006.

James H. Gundlach, PhD