IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>  )<br> v.  )<br>  )    CRIMINAL NO. 2:05-CR-119-MEF<br>DON EUGENE SIEGELMAN )<br>PAUL MICHAEL HAMRICK )<br>GARY MACK ROBERTS, and )<br>RICHARD M. SCRUSHY. ) | |

**GOVERNMENT'S MEMORANDUM OF LAW IN SUPPORT OF THE ADMISSIBILITY OF THE DIRECT EXAMINATION TESTIMONY OF JOHN MORROW, OR IN THE ALTERNATIVE GOVERNMENT'S ANTICIPATORY RESPONSE TO DEFENDANTS' MOTION TO STRIKE THE DIRECT EXAMINATION TESTIMONY OF JOHN MORROW**

COMES NOW the United States of America, by and through Louis V. Franklin, Sr., Acting United States Attorney for the Middle District of Alabama, and Andrew C. Lourie, Acting Chief of the Public Integrity Section of the Criminal Division of the United States Department of Justice, and hereby files its Memorandum of Law in Support of the Admissibility of the Direct Examination Testimony of John Morrow, or in the alternative, Government's Anticipatory Response to Defendants' Motion to Strike the Direct Examination Testimony of John Morrow. Any challenge to the admissibility of Mr. Morrow's testimony on direct examination should be denied because this evidence is admissible under Fed. R. Evid. 401 and 403. This testimony is highly relevant to the honest services fraud and conspiracy offenses charged in the indictment pertaining to Defendants Siegelman and Scrushy regarding the CON Board. Moreover, Mr. Morrow's testimony is also relevant because it refutes a number of false assertions Defendants have tried to present to the jury through their opening statements and cross-examination of government witnesses, including that (I) the CON Board has little or no effect on the provision of healthcare in Alabama, (ii) a healthcare

provider's application for a piece of medical equipment such as a MRI or PET scanner is an insignificant matter for HealthSouth and the CON Board, and (iii) the CON Board's denial of an application is not a significant issue to a healthcare provider because the applicant has the right to appeal the CON Board's decision.

Defendants are simply amiss to claim that the relevancy of Mr. Morrow's testimony is substantially outweighed by any unfair prejudice. To support its position, the United States avers as follows:

**I.      The Relevancy of Mr. Morrow's Testimony is Not Substantially Outweighed by any Danger of Unfair Prejudice, Confusion of the Issues, or Misleading the Jury**

Under Rule 401, "relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable that it would be without the evidence." Fed. R. Evid. 401. Relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. Exclusion of evidence under Rule 403, however, "is an extraordinary remedy which should be used only sparingly since it permits the trial court to exclude concededly probative evidence." United States v. Finestone, 816 F.2d 583, 585 (11th Cir. 1987). See United States v. Ross, 33 F.3d 1507, 1524 (11th Cir. 1994) ("We have repeatedly stated that Rule 403 is an extraordinary remedy that should be used sparingly because it allows the court to exclude admittedly probative evidence."). "The balance under Rule 403 should be struck in favor of admission." Finestone, 816 F.2d at 585 (quotations and citations omitted). A district court's decision not to exclude evidence under Rule 403 is reviewed for an abuse of

discretion.  See Ross, 33 F.3d at 1524.

>  A. **Mr. Morrow's Testimony is Highly Relevant to the Honest Services Fraud and Conspiracy Offenses Charged Against Defendants Siegelman and Scrushy**

Defendants argue that Mr. Morrow's testimony is irrelevant to the charges against them. Defendants are simply wrong. This testimony is directly relevant to the honest services fraud offenses charged in Racketeering Act 1(c)-(e) and Counts Six through Nine and the conspiracy offense charged in Count Five. In each of these offenses, the indictment alleges that, as part of the manner and means of the charged schemes to defraud and of the conspiracy, "Richard M. Scrushy would and did use his seat on the CON Board to attempt to affect the interests of HealthSouth and its competitors." Indictment at ¶¶ 19d, 55d, & 59d. To prove this allegation in the indictment, the government is required to prove, inter alia, that HealthSouth had competitors, that the interests of HealthSouth and its competitors came before the CON Board, that the CON Board could be used to affect the interests of HealthSouth and its competitors, and that Defendant Scrushy would and did attempt to use his seat on the CON Board to affect those interests. Mr. Morrow's testimony is probative of each of these facts, especially when considered in conjunction with the testimony of prior witnesses such as Margie Sellers and Loree Skelton. See Charles Alan Wright, et. al., Federal Practice & Procedure § 6165 ("[T]he inferences that emerge from each bit of testimony form a web that establishes multiple logical interconnections with the other evidence in a case. Thus, the significance of testimony on one subject often is apparent only when considered in connection with evidence on related subjects."); Finestone, 816 F.2d at 586 (upholding under Rule 403 the district court's admission of a murder and kidnaping not committed by the defendant because the indictment listed the murder and kidnaping as overt acts as part of the RICO conspiracy and part of the

enterprise's racketeering activity).

On information and belief based on its recollection of the testimony during trial, the government provides that Mr. Morrow testified that Brookwood and HealthSouth are competing healthcare providers in Birmingham, and that their interests come before, and are affected by, the CON Board. In addition, Mr. Morrow stated that HealthSouth and Brookwood have opposed each other with respect to applications they have filed before the CON Board to obtain approval for healthcare-related projects. Mr. Morrow averred that the purpose of the CON Board is to regulate the provision of healthcare services in the State of Alabama by competing healthcare providers in lieu of a market-based system. Morrow's testimony regarding the contested proceedings between Brookwood and HealthSouth shows that a healthcare provider, including HealthSouth, by opposing a competitor's project before the CON Board, could delay for several months or years a competitor's proposed healthcare project.

Mr. Morrow's testimony regarding HealthSouth's opposition to Brookwood's MRI application, in conjunction with the testimony of Margie Sellers, Loree Skelton, and others, proves that Defendant Scrushy did use his seat on the CON Board to affect the interests of HealthSouth and Brookwood, its competitor. Mr. Morrow testified that HealthSouth opposed Brookwood's MRI application, which it filed in August 1998. Because of HealthSouth's opposition, Brookwood was forced to engage in extensive litigation before an administrative law judge, the CON Board, and the Circuit Court of Jefferson County before it finally received authorization to install an open-bore MRI. HealthSouth's opposition to Brookwood's MRI application delayed Brookwood's installation of an open-bore MRI for almost four years, though Brookwood's competitors, whose MRI applications HealthSouth ultimately did not oppose before the CON Board, were not likewise

delayed.

    Mr. Morrow testified that Brookwood's MRI application came before the CON Board for a decision in January 2001. At this time, Defendant Siegelman was Governor and Defendant Scrushy was a member of the CON Board – pursuant to the illegal agreement and bribe between Defendants Siegelman and Scrushy as established by the testimony of other witnesses that have already testified before this Court. Prior to Mr. Morrow's testimony, Ms. Sellers testified that she was the then-chairperson of the CON Board and that Defendant Scrushy called her at home the night before the CON Board was to consider Brookwood's MRI application. Defendant Scrushy called Ms. Sellers to express his concern about Brookwood's MRI application. Based on Loree Skelton's testimony that she advised Defendant Scrushy to recuse from CON Board proceedings involving applications that HealthSouth opposed and that Defendant Scrushy always followed her recusal advice, Defendant Scrushy had this telephone conversation with Sellers, knowing that he would be recused from participating in the consideration of Brookwood's MRI application at the January 2001 CON Board meeting.[1] Defendant Scrushy thus knew about Brookwood's MRI application, that it would be raised at the January 2001 meeting (his last meeting as a CON Board member), and that he could not voice his opposition to Brookwood's MRI application at the January 2001 meeting. Consequently, Defendant Scrushy used his position as vice-chair of the CON Board and the extraordinary access to and influence with Ms. Sellers that this position gave him, relative to a healthcare provider who was not a CON Board member, to affect HealthSouth's and Brookwood's

---

[1] The testimony of several other witnesses that Defendant Scrushy had previously served on the CON Board, was the most tenured member of the CON Board, and was well-qualified to be on the CON Board all corroborates Ms. Skelton's testimony that Defendant Scrushy would have recused himself from participating in consideration of Brookwood's MRI application at the January 2001 CON Board meeting.

interests, by contacting Ms. Sellers and informing her that he had a concern with Brookwood's MRI application. By making this call to Ms. Sellers, Defendant Scrushy was using his seat on the CON Board to benefit HealthSouth's interests and harm Brookwood's interests.

Mr. Morrow's testimony completes the story for the jury about how the CON Board affects the interests of competitors in the healthcare industry and the effect of Defendant Scrushy's actions in calling Ms. Sellers. The CON Board's denial of Brookwood's MRI application further delayed its installation of an open-bore MRI. Ultimately, as Mr. Morrow testified, almost four years after Brookwood's initial filing of its MRI application, the Circuit Court reversed the CON Board's denial of Brookwood's application, which enabled Brookwood to install its MRI machine. Mr. Morrow's testimony is thus very relevant in showing how Defendant Scrushy used his position on the CON Board to affect the interests of HealthSouth and its competitors.

Mr. Morrow's testimony cannot be considered in a vacuum, but rather in light of all the testimony presented to this jury. His testimony is highly relevant to the charges against Defendants. As such, it is by nature prejudicial to Defendants because it establishes their guilt; however, they suffer no unfair prejudice from this evidence and certainly any unfair prejudice from Mr. Morrow's testimony does not substantially outweigh its probative value. See United States v. Pitrone, 115 F.3d 1, 8 (1st Cir. 1997) ("Virtually all evidence is prejudicial – if the truth be told, that is almost always why the proponent seeks to introduce it – but it is only unfair prejudice against which the law protects."). See also Ross, 33 F.3d at 1524-25 (upholding under Rule 403 the district court's admission of evidence of a murder not charged against or committed by the defendant because it was probative of his role in the drug conspiracy).

> **B.      Mr. Morrow's Testimony Refutes False Assertions Defendants Have Made to the Jury on a Number of Issues Related to the CON Board**

On information and belief based on its recollection of the events during trial, the government asserts that Defendants, in their opening statements and cross-examination of government witnesses, have sought to foist a number of incorrect assertions on the jury, including that (I) the CON Board has little or no effect on the provision of healthcare in Alabama, (ii) a healthcare provider's application for a piece of medical equipment such as a MRI or PET scanner is an insignificant matter for HealthSouth and the CON Board, and (iii) the CON Board's denial of an application is not a significant issue to a healthcare provider because the applicant has the right to appeal the CON Board's decision.  Mr. Morrow's testimony refutes each of these misimpressions that Defendants are trying to present to the jury.  Specifically, Mr. Morrow's testimony establishes that (I) the CON Board has a significant effect on the provision of healthcare in Alabama as it regulates the provision of medical products and services among competitors in the industry; (ii) healthcare providers, including HealthSouth, take very seriously their and their competitors' applications to the CON Board for medical imaging equipment; and (iii) the CON Board's denial of a provider's application has a significant effect on the applicant's ability to provide the intended product or service, even though it may appeal the Board's decision.

Mr. Morrow's testimony is thus relevant to and probative of a number of facts and issues before this jury in addition to proving elements of the counts charged in the indictment.  See Finestone, 816 F.2d at 586 (upholding admission of evidence challenged under Rule 403 because it demonstrated the participation of others in the conspiracy in addition to proving certain elements of the RICO offense).  Given that this Court must construe Rule 403 in favor of the admission of

evidence, not its exclusion, id. at 585, Defendants simply cannot show that any unfair prejudice substantially outweighs the probative value of Mr. Morrow's testimony sufficient to justify exclusion of this evidence under Rule 403.

**II.     By Limiting the Scope of Defendants' Cross-Examination of Mr. Morrow to the Subject Matter of his Direct Examination Pursuant to Fed. R. Evid. 611(b), the Court Can Ensure the Most Efficient Use of the Jury's Time**

Federal Rule of Evidence 611(b) provides that "[c]ross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness. The court may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination." The policy behind Rule 611(b) is to promote "an orderly and predictable development of the evidence." Fed. R. Evid. 611(b), Advisory Committee Notes (1974). The trial court should preclude cross-examination that is attenuated from the matters covered in direct examination because such questioning will only confuse the jury and unnecessarily delay the trial. See Wright, et. al., supra, § 6165 (discussing the proper scope of cross-examination in terms of the policy goal of promoting comprehension).

In relation to the proposed cross-examination of Mr. Morrow, Defendants have represented to this Court that they intend to question him regarding numerous applications Brookwood and other healthcare providers have made to the CON Board. The government contends that any such cross-examination would be well outside the scope of Mr. Morrow's direct examination and would only confuse the jury and waste the Court's time. The government was careful on direct examination not to delve into the merits of any of the applications discussed by Mr. Morrow – whether the applications of HealthSouth or Brookwood. Mr. Morrow was asked procedural questions about the functioning of the CON Board, the purpose of the CON Board and its regulation of competing

healthcare providers, and the effect HealthSouth's opposition to Brookwood's application for an open-bore MRI had on Brookwood's ability to install that medical equipment in its facility. The government narrowly tailored its questioning of Mr. Morrow to focus his testimony to the jury and was very solicitous not to engage in undue delay, waste of time, or needless presentation of cumulative evidence. See Fed. R. Evid. 403. By applying Fed. R. Evid. 611(b) to Defendants' cross-examination of Mr. Morrow, this Court can ensure the most efficient use of the jury's time and prevent Defendants from unnecessarily dragging out this trial.

### III. Conclusion

Mr. Morrow's testimony is highly relevant to the offenses charged against Defendants Siegelman and Scrushy in the indictment and to refuting misimpressions Defendants have presented to this jury. Defendants suffer no unfair prejudice from this testimony, and certainly any unfair prejudice from this evidence does not substantially outweigh its probative value so as to warrant the extraordinary remedy of exclusion under Rule 403. Properly restricting cross-examination to the subject matter of Mr. Morrow's direct examination will conserve this Court's time and resources and preclude Defendants from unnecessarily confusing the jury.

Respectfully submitted this the 14th day of May 2006.

LOUIS V. FRANKLIN, SR.
ACTING UNITED STATES ATTORNEY

ANDREW C. LOURIE
ACTING CHIEF, PUBLIC INTEGRITY
SECTION

/s/ Louis V. Franklin, Sr.
Acting United States Attorney
One Court Square, Suite 201
Montgomery, AL 36104
Phone: (334) 223-7280
Fax: (334) 223-7560
Email: louis.franklin@usdoj.gov

/s/Richard C. Pilger
Department of Justice, Criminal Division
Public Integrity Section
1400 New York Ave. NW
Bond Building, 12th Floor
Washington, DC 20530
Phone: (202) 514-1412

Fax: (202) 514-3003
Email: richard.pilger@usdoj.gov

/s/ J.B. Perrine
Assistant United States Attorney
One Court Square, Suite 201
Montgomery, AL 36104
Phone: (334) 223-7280
Fax: (334) 223-7135
Email: jb.perrine@usdoj.gov
ASB-9077-E31J

/s/ Jennifer Garrett
Special Assistant United States Attorney
Assistant Attorney General
Office the Attorney General
11 S. Union
Montgomery, AL 36130
Phone: (334) 353-8494
Fax: (334) 242-4890
Email: jgarrett@ago.state.al.us
ASB-4600-T77J

/s/ Stephen P. Feaga
Assistant United States Attorney
One Court Square, Suite 201
Montgomery, AL 36104
Phone: (334) 223-7280
Fax: (334) 223-7560
Email: steve.feaga@usdoj.gov
ASB-7374A60S

/s/ Joseph L. Fitzpatrick, Jr.
Special Assistant United States Attorney
Assistant Attorney General
Office of the Attorney General
11 S. Union
Montgomery, AL 36130
Phone: (334) 353-4839
Fax: (334) 242-4890
Email: j.fitzpatrick@ago.al.state.us

IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | CRIMINAL NO. 2:05-CR-119-MEF |
| DON EUGENE SIEGELMAN, | ) | |
| PAUL MICHAEL HAMRICK, | ) | |
| GARY MACK ROBERTS, and | ) | |
| RICHARD M. SCRUSHY | ) | |

**CERTIFICATE OF SERVICE**

  I hereby certify that on May 14, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

                Respectfully submitted,

                LOUIS V. FRANKLIN, SR.
                ACTING UNITED STATES ATTORNEY


                /s/ J.B. Perrine
                Assistant United States Attorney
                One Court Square, Suite 201
                Montgomery, AL 36104
                Phone: (334) 223-7280
                Fax: (334) 223-7135
                E-mail: jb.perrine@usdoj.gov
                ASB-9077-E31J