United States v. Richard M. Scrushy
2:05-CR-119-MEF
# TAB 57

161

1  Q. He couldn't appoint him until the 19th; is
2     that right?
3  A. That's correct.
4  Q. Now, I want to ask you if you've ever heard
5     the name Richard Scrushy.
6  A. Yes, sir.
7  Q. And I think you already pointed him out in
8     here today, didn't you?
9  A. Yes, sir.  I recognize Mr. Scrushy.
10 Q. Do you know a fellow named Eric Hanson?
11 A. Yes, sir, I know Eric.
12 Q. Tell the ladies and gentlemen of the jury who
13    Eric Hanson is.
14 A. Eric Hanson is a long-time friend of Governor
15    Siegelman, I think for probably 30 years
16    maybe, and an employee -- I don't know if he
17    still works for Mr. Scrushy, but he did at
18    the time.
19 Q. Okay.  Do you know in what capacity he worked
20    for Mr. Scrushy?
21 A. Governmental affairs is about the only way I
22    know to explain it.
23 Q. And when you say to a jury of peers that

162

1     somebody is in governmental affairs, what are
2     you telling them?  What do you mean by that?
3  A. I think he maintains relationships between

4   Mr. Scrushy and his interests and

5   governmental officials.

6 Q. Was he lobbying?

7 A. I don't know that he was a lobbyist, because

8   he --

9 Q. Consultant?

10 A. A consultant, certainly.

11 Q. Now, did you ever happen to be present when

12   Governor Don Siegelman -- and I'm talking

13   about after January the 19th, 1999.  Were you

14   ever present when he had a conversation with

15   Eric Hanson?

16 A. Yes, sir.

17 Q. Did you ever -- were you present when he had

18   a conversation with Eric Hanson concerning

19   money?

20 A. Yes.

21 Q. Would you relay that conversation that you

22   had with Don Siegelman -- well, let me ask

23   you.  Was it after he became governor?

163

1 A. Yes.

2 Q. And I'm talking about when he was sworn in.

3 A. That's correct.

4 Q. And was this conversation before he made his

5   Certificate of Need Review Board

6   appointments?

Bailey
May 2, 2006

7  A. Yes.

8  Q. Tell the ladies and gentlemen of the jury

9     about the conversation that you heard between

10    Eric Hanson and Governor Don Siegelman.

11       MR. LEACH:  Well, to the extent he's

12            eliciting Eric Hanson's side of

13            the conversation, that's clearly

14            hearsay.

15       MR. FEAGA:  Your Honor, it isn't.  We

16            are --

17       THE COURT:  He's not -- I'll hear your

18            response.

19       MR. FEAGA:  Yes, sir.  It is not

20            hearsay.  It would be our argument

21            that the facts of this are going

22            to establish that he was a

23            co-conspirator.


                        164

1        MR. LEACH:  I've never been notified of

2            that fact until this moment, Your

3            Honor.

4        MR. FEAGA:  I think the fact could be

5            fairly to Mr. Leach if he read the

6            indictment and the discovery

7            that's been provided to him.

8        THE COURT:  Under 801(e), I will allow

9            the testimony.  Objection

10           overruled.

```
11         MR. McDONALD:  I have the same
12              objection, if you don't mind my
13              restating it, Your Honor.
14         THE COURT:  Sure.
15         MR. McDONALD:  There was a specific
16              request for a bill of particulars
17              that demanded that type of
18              information.  And I don't even
19              believe that there was a --
20         MR. FEAGA:  Your Honor, you've already
21              ruled on this objection.  This is
22              another one of these speaking
23              objections, and we just --
```

                                  165

```
1          THE COURT:  All right.  We do have a
2               rule that objections are good as
3               to all parties made by one.  The
4               record is preserved.  The
5               objection is overruled.  Let's
6               move on.
7          MR. McDONALD:  Okay.
8   Q.  (Mr. Feaga continuing:)  Tell the ladies and
9       gentlemen of the jury about the conversation
10      that you heard between Eric Hanson and the
11      Governor about money after Don Siegelman was
12      elected governor.
13  A.  The conversation between Eric Hanson and the
```

14    Governor referred to Mr. Scrushy's

15    commitment -- or Mr. Scrushy's contributions

16    to Fob James' campaign of at least $350,000.

17    And the Governor and --

18         MR. LEACH:  Objection, Your Honor.

19              Who's saying what?

20         MR. FEAGA:  We'll get there, Judge.

21         MR. LEACH:  It shouldn't just come in

22              as a dialogue, Your Honor.

23         THE COURT:  Let's try to tie down dates

                            166

1              and who are the parties to the

2              conversation and what those

3              parties said.

4         MR. FEAGA:  We've narrowed it down

5              judge to between January 19th of

6              '99 and the date of the CON Board

7              appointments, July 26, 1999.

8         MR. LEACH:  I don't think this witness

9              has testified to that fact.

10        MR. FEAGA:  Well, he wasn't listening,

11             Judge, because the witness did

12             testify to that.

13        THE COURT:  I believe I did hear him

14             say that as well.  So move on.

15  A.  The comments made by the Governor were that

16      Mr. Scrushy had contributed at least 300 --

17      to our knowledge, contributed at least

```
18      $350,000 to the Fob James campaign.  And in
19      order to make it right to the Siegelman
20      campaign, he needed to do at least 500,000.
21      That was the conversation that the Governor
22      had with Eric Hanson for Eric Hanson to relay
23      to Mr. Scrushy.
```

                                167

```
 1  Q.  Now, the Governor had been elected, correct?
 2  A.  Correct.
 3  Q.  So what campaign was going on at that time
 4      that Mr. Scrushy would have an opportunity to
 5      make a contribution to?
 6  A.  The lottery campaign.
 7  Q.  Did Eric Hanson know, based on the
 8      conversation you heard, that this governor
 9      was talking about the lottery campaign?
10  A.  He knew what the contributions would be for.
11          MR. LEACH:  Objection.  Without
12                foundation, he knew?
13  A.  Eric Hanson knew because I --
14          THE COURT:  Hold on.  Objection
15                sustained.
16          MR. LEACH:  I ask that the jury be told
17                to disregard at this point at
18                least.
19          THE COURT:  Ask the jury to disregard
20                any portion of a response that's
```

```
21                made on an objection I've
22                sustained.
23                        You may move on.


                             168
 1  Q.  Do you know if Eric Hanson knew or not --
 2      just ask if you know if he knew or not what
 3      Governor Siegelman was saying he had to get
 4      350,000 plus interest together to contribute
 5      to.
 6              MR. LEACH:  Judge, it is impossible for
 7                  this witness to say what somebody
 8                  else knows.  Counsel is doing it
 9                  repeatedly.
10              MR. FEAGA:  Judge, he's just wrong.  If
11                  you'll let him say yes, I'm going
12                  to ask him how he knows.  He's
13                  going to find out because Hanson
14                  told him.
15              MR. LEACH:  You should just ask what
16                  Hanson told him.
17              THE COURT:  Objection sustained.
18  Q.  Do you know whether or not Eric Hanson knew
19      what the Governor wanted the money for?
20              MR. LEACH:  Same objection.  It's
21                  impossible.
22              MR. FEAGA:  Your Honor, you sustained
23                  this objection now.  This would be
```

169

```
 1              the third time.  I mean, you've
 2              overruled this objection.  This
 3              would be the third time.
 4         THE COURT:  I sustained the objection.
 5              Ask him how he knows it and then
 6              ask him --
 7  Q.   How do you know whether or not -- I was just
 8       going to -- how do you know whether or not
 9       Eric Hanson knew?
10  A.   I know because I talked to him, the Governor
11       talked to him, at least the two of us talked
12       to him about what the campaign contributions
13       were for.  They were for the lottery
14       campaign.
15  Q.   So you told him that?
16  A.   That is correct.
17  Q.   Okay.  And you say the Governor told him?
18  A.   That's correct.
19  Q.   Now, did there come a point in time -- well,
20       let me ask you.  What was -- was there
21       anything going on in the Legislature at this
22       time that was unusual or unique?  Do you
23       recall when this was going on?  The first
```

Bailey
May 2, 2006