United States v. Richard M. Scrushy
2:05-CR-119-MEF
# TAB 61

172

1  Q. Yes.
2  A. I think I said earlier it was our
3     understanding he had supported Governor Fob
4     James.
5  Q. And is that why they were having these
6     conversations about what it was going to take
7     to get right?
8  A. That's correct.
9  Q. Okay. Now -- now, did there come a time when
10    you saw Richard Scrushy at the offices of the
11    governor?
12 A. Yes.
13 Q. Do you remember exactly when that was?
14 A. Not exactly, no.
15 Q. Now, did there come a point in time --
16         MR. FEAGA: Your Honor, I'd like to
17              approach the witness with
18              Government Exhibit #21. It's the
19              IHS check.
20         THE COURT: You may approach.
21         MR. FEAGA: Thank you, Your Honor.
22 Q. Mr. Bailey, I'm going to show you what's been
23    marked as Government's Exhibit #21 for

173

1    identification purposes and ask you to take a
2    look at it.
3  A. Yes, sir.  I've seen this exhibit.
4  Q. You've seen that before?
5  A. Yes, sir.
6  Q. Would you tell the ladies and gentlemen of
7     the jury where you first ever saw, if you
8     remember, Government's Exhibit #21.
9  A. I saw it when the Governor showed it to me.
10 Q. Okay.  And where were you when he showed it
11    to you?
12 A. At the Capitol.
13 Q. And where in the Capitol were you?
14 A. Inside the Governor's Office area.
15    MR. FEAGA:  Your Honor, at this time --
16 Q. Well, I'll ask you a couple more questions
17    about it.  Would you tell the ladies and
18    gentlemen of the jury what, if anything, the
19    Governor said to you when he showed you that
20    exhibit?
21 A. He told me that Mr. Scrushy was halfway
22    there, referring to his --
23    MR. LEACH:  Objection to this.  And I'd

174

| | |
|---|---|
| 1 | like to have the date stated very |
| 2 | specifically. |
| 3 | MR. FEAGA: Your Honor, he can do that |
| 4 | on cross.  I've established it. |
| 5 | MR. LEACH:  He's established nothing. |
| 6 | MR. FEAGA:  Can I offer the check, Your |
| 7 | Honor? |
| 8 | THE COURT:  Get the date off the check. |
| 9 | MR. FEAGA:  Yes, sir.  I was trying to |
| 10 | get it in, and I can't seem to |
| 11 | make Mr. Leach happy. |
| 12 | MR. LEACH:  I didn't object. |
| 13 | THE COURT:  Ask the witness to look at |
| 14 | the exhibit.  If he doesn't have |
| 15 | it, I'll get him a copy. |
| 16 | MR. FEAGA:  I've got it here, Your |
| 17 | Honor. |
| 18 | THE WITNESS:  I can see it from here. |
| 19 | THE COURT:  Point to the witness from |
| 20 | the exhibit that he's looking at, |
| 21 | establish a date; and then we'll |
| 22 | move forward. |
| 23 | MR. FEAGA:  Yes, sir.  Your Honor, if I |

175

```
 1              can, I just want -- I can't
 2              authenticate it without asking him
 3              how it connects to the case, which
 4              he's objecting to.  And so I've
 5              got to go one way or the other.
 6              He's objecting to both ways of
 7              getting it in, but I'll try again.
 8       MR. LEACH:  I have no objection to the
 9              check.  Let the check in.  I just
10              want him to tell me when he first
11              saw it.  That's what I want.
12       THE COURT:  I'll let you run your
13              case.  You ask the questions.
14              I'll rule on the objections.
15       MR. FEAGA:  Thank you.
16  Q.  Mr. Bailey, can you tell from the copy of the
17      check that you have in your hand what the
18      date on it is?
19  A.  July 19th, 1999.
20  Q.  Okay.  Now, when you saw the Governor, did he
21      have this check in his hand?  Did he have it?
22  A.  Yes, sir.
23  Q.  Okay.  Now, when the Governor showed you the
```

Bailey
May 2, 2006

176

| | | |
|---|---|---|
| 1 | | check, what, if anything, did he say to you? |
| 2 | A. | He made a comment referring to Mr. Scrushy's |
| 3 | | commitment to give 500,000 and he's halfway |
| 4 | | there. |
| 5 | Q. | Okay.  And what, if anything, did you say to |
| 6 | | him? |
| 7 | A. | I said -- I responded by saying, what in the |
| 8 | | world is going to want for that; and his |
| 9 | | response was the CON Board or the C-O-N |
| 10 | | Board. |
| 11 | Q. | Okay.  And what did you -- |
| 12 | A. | I wouldn't think there would be a problem |
| 13 | | with it.  And he said, I wouldn't think so. |
| 14 | Q. | Now, what did you say -- now, if you could, |
| 15 | | repeat that conversation.  You showed it to |
| 16 | | him.  He said he's halfway there.  And what |
| 17 | | did you say to him? |
| 18 | | MR. LEACH:  It's been asked and |
| 19 | | answered. |
| 20 | | THE COURT:  Overruled. |
| 21 | Q. | What did you say when he showed you the check |
| 22 | | and he said, he's halfway there? |
| 23 | A. | I responded by, what in the world is he going |

177

1    to want for that?  And the Governor said, the

2    C-O-N Board or the CON Board.  And I said, I

3    wouldn't think there would be a problem with

4    it; and he said, I wouldn't think so.

5  Q.  Okay.  And isn't it true that the week after

6    the date on this check, on July the 26th,

7    Richard Scrushy got appointed to the CON

8    Board?

9            MR. LEACH:  Objection unless there's

10               some foundation for that.

11           MR. FEAGA:  If he knows.

12 A.  Do I know if he was appointed?

13           THE COURT:  Wait.  Wait, wait.

14           MR. FEAGA:  Can I publish the check

15               now, Judge?  Well, I've got to

16               offer it first.  We'd like to

17               offer into evidence --

18           MR. LEACH:  I have an objection on the

19               table.

20           THE COURT:  Is it a letter of

21               appointment already in evidence?

22           MR. LEACH:  It is not.

23           MR. FRANKLIN:  Yes.

178

1    MR. FEAGA: Yes, sir, Your Honor, it
2        is.
3    MR. LEACH: I don't think it is. Are
4        all of them in?
5    MR. FRANKLIN: #6B, Mr. Feaga.
6    THE COURT: Government's Exhibits #6A
7        through I are the Government's
8        exhibits. The CON is dated July
9        the 26th, 1999. Objection
10       overruled.
11           Are you moving for the
12       admission of Government's Exhibit
13       #21?
14   MR. FEAGA: I am, Your Honor. And I
15       apologize to the court.
16   THE COURT: No need to apologize to the
17       Court. Objection from the
18       Governor?
19   MR. McDONALD: To which -- Judge, I'm
20       having trouble.
21   THE COURT: Any objections to the
22       admissibility of Government's
23       Exhibit #21?

179

1       MR. McDONALD:  And that is the --

2       THE COURT:  Check.

3       MR. McDONALD:  No objection.

4       THE COURT:  Mr. Hamrick?

5       MR. DEEN:  No.

6       THE COURT:  Mr. Roberts?

7       MR. BAXLEY:  Without putting that on

8           Mr. Roberts.

9       THE COURT:  Mr. Scrushy?

10      MR. LEACH:  No.

11      THE COURT:  Without objection,

12          Government's Exhibit #21 is

13          admitted subsequent to the request

14          for limiting instruction.

15      MR. FEAGA:  May I publish it on the

16          Elmo?

17      THE COURT:  You may.

18  Q.  Okay.  Mr. Bailey, is that the date you read

19      off the exhibit a little earlier?

20  A.  Yes, sir, it is.

21  Q.  And is this the check --

22  A.  That is the --

23  Q.  -- that you saw the Governor with when he

180

1 told you that Mr. Scrushy wanted the CON
2 Board?
3 A. Yes, sir.
4 Q. Now --
5     MR. LEACH: Your Honor, the question
6         posed by counsel that Mr. Scrushy
7         wanted the CON Board, that was
8         not the testimony. Object to that
9         recitation.
10    MR. FEAGA: Your Honor, he can argue
11        that to the jury all he wants.
12        That's what I heard. He may have
13        heard something else.
14    MR. LEACH: Well --
15    THE COURT: Direct your comments to the
16        bench. Objection overruled.
17    MR. FEAGA: Yes, sir.
18 Q. Now, how much is that check for?
19 A. 250,000.
20 Q. Now, let me show you something else, if I
21    can. Have you seen this check since you saw
22    the Governor with it and before coming into
23    this courtroom? Has it been shown to you by

181

1     investigators?
2  A. This copy, yes, sir.
3  Q. All right, sir.  And do you -- did you ever
4     tell them when you saw that check -- did they
5     ever ask you to look at the signature on it?
6  A. Yes.
7  Q. And what did you tell them?
8  A. I actually thought it was Richard Scrushy the
9     first time I looked at it.
10 Q. Okay.  I want you to look at it today.  Is
11    that the signature that you looked at when
12    you saw it at the Governor's Office?
13 A. Yes, sir.
14 Q. And you thought that was Richard Scrushy's
15    signature?
16 A. I did.  I hadn't seen his signature before,
17    but it just looked like -- I glanced at it
18    and it looked like Richard Scrushy, so --
19 Q. You don't in fact know whether it is or not?
20 A. I don't.
21 Q. Now, let me ask you, if you would, to tell
22    me -- if you would, look right down here
23    where it says Alabama Education Lottery

182

1    Foundation.  Can you tell the ladies and
2    gentlemen of the jury what that is?
3  A. What is the Alabama Education Lottery
4    Foundation?
5  Q. Yes, sir.
6  A. It was a campaign fund for the lottery that
7    Governor Siegelman was promoting.
8  Q. Now, I see over here -- up here, right here
9    it says IHS.  Now -- and then it says here --
10   well, can you make that out, what that says?
11 A. No, sir.
12 Q. Let me see if I can blow it up a little
13   bigger.  I don't know why it won't go any
14   bigger.
15        Now let's see.  Do you know what that
16   check says?
17 A. Integrated Health Services.
18 Q. And down here, it looks like it says MD; is
19   that right?
20 A. Maryland maybe.  I can't read the town.
21 Q. Do you know -- or had you at that time when
22   you saw that check that day ever heard of
23   Integrated Health Services?

183

1  A.  No.

2  Q.  Did you know of any Integrated Health

3      Services in Maryland?

4  A.  No.

5  Q.  But the Governor told you this check was from

6      Richard Scrushy?

7  A.  Yes, sir.

8  Q.  You said he said at the outset of that

9      conversation, he's halfway there.  Do you

10     know what he was talking about when he said

11     that this $250,000 was halfway there?

12 A.  Again -- again, he was referring to the

13     $500,000 commitment Mr. Scrushy had made to

14     our lottery campaign.

15 Q.  Okay.  Now, do you know what happened to this

16     check after that day?

17 A.  It was ultimately sent to our campaign

18     finance office, but I'm not sure how long it

19     stayed there.

20 Q.  Were there any instructions given to the

21     campaign finance office when it went out

22     there?

23 A.  To hold the check until it was determined how

184

1    to disclose it.

2  Q.  And who gave those instructions?

3  A.  The Governor.

4  Q.  To hold it until it was determined how to

5    disclose it?

6  A.  Correct.

7  Q.  And who was in charge of the AELF campaign

8    that got this check?

9        MR. LEACH:  What campaign is AELF?

10       MR. FEAGA:  Whatever is on the check.

11 A.  I don't know.  Who do you mean?

12 Q.  Have you ever heard of a fellow named Darrin

13   Cline?

14 A.  Yes, Darrin Cline.

15 Q.  Was Darrin Cline -- was he associated with

16   this Alabama Education Lottery Foundation?

17 A.  He was involved, yes, sir.

18 Q.  Was he one of the senior people in that

19   organization?

20 A.  He was a fund raiser.

21 Q.  Okay.  And is that the person that was told

22   to hold the check?

23 A.  Yes, sir.

Bailey
May 2, 2006

185

1  Q. Now, after that date -- let me go back to
2     that date, July 19th.  Do you know -- were
3     you ever present at the Governor's Office
4     when Richard Scrushy visited the Governor's
5     Office?
6  A. Yes, sir.
7  Q. Can you recall how many times you saw Richard
8     Scrushy visit the Governor's Office?
9  A. Once, maybe twice.
10 Q. Do you know when Mr. Scrushy -- or let me ask
11    you.  Were you -- did you physically see
12    Mr. Scrushy hand that check to the Governor?
13 A. No, sir.
14 Q. Do you know exactly how that check got into
15    the Governor's hands?
16 A. No, sir, I don't know for sure.
17 Q. Now, I want to ask you if early on when you
18    were talking to the investigators with the
19    United States and the State of Alabama, if
20    they had an opportunity to ask you questions
21    about this check.
22 A. They -- they did and they have.
23 Q. Did you tell them in early conversations that

186

1    Richard Scrushy had visited with the Governor
2    and left, and it was after that meeting at
3    that you walked in and saw this check?
4  A. Yes, sir, I did say that.
5         MR. LEACH:  Well, I object to leading
6              on this point, Your Honor.  Ask
7              that the witness testify in this
8              case.
9         MR. FEAGA:  Your Honor, I'm just trying
10             to get to a --
11        THE COURT:  Overruled.
12 Q. Now, did you subsequently at some point in
13    time have an opportunity to think about this,
14    and did you subsequently come tell the
15    government investigation --
16        MR. LEACH:  Your Honor, he's leading.
17 Q. Did you ever tell them anything different?
18 A. Yes, I did.
19        MR. FEAGA:  I'm sorry, Your Honor.
20        THE COURT:  Counsel, give us an
21             opportunity to state objections
22             and rule on objections.
23                I understand your objection,

187

```
1           Mr. Leach, but I don't think that
2           this is such an important part
3           that he can't lay the foundation.
4           I understand the nexus of your
5           concern.
6                Lay the foundation to prevent
7           the leading, Mr. Feaga.  The
8           objection, for the record, would
9           be sustained.  Let's move on.
10  Q.  Having told them -- well, let me just say,
11      what was the first time -- well, the first
12      time you discussed this event with federal
13      and state criminal investigators, what did
14      you tell them about the delivery of this
15      check?  Tell the ladies and gentlemen of the
16      jury.
17  A.  I did tell them initially that this check was
18      delivered that day by Mr. Scrushy.  And at a
19      later date after thinking about it and
20      looking at some documents, I'm not sure that
21      it was that day.  It could have been sometime
22      after then.
23  Q.  Now, did anyone with the United States or the
```

188

| | | |
|---|---|---|
| 1 | | State of Alabama suggest to you that you |
| 2 | | change the information that you had given us |
| 3 | | about the delivery of that check? |
| 4 | A. | No. |
| 5 | Q. | How did it come about that you came to tell |
| 6 | | us that you weren't sure about that date? |
| 7 | A. | Just reevaluating my memory and thinking |
| 8 | | about it and looking at the documents. |
| 9 | Q. | So it was something you volunteered -- |
| 10 | A. | That's correct. |
| 11 | Q. | -- to the United States? |
| 12 | A. | I did. |
| 13 | Q. | And to the State of Alabama? |
| 14 | A. | That is correct. |
| 15 | Q. | Now, this -- you said that Mr. Scrushy -- you |
| 16 | | do know that he came to visit with the |
| 17 | | Governor at some point? |
| 18 | A. | Yes. |
| 19 | Q. | And you said that it may have been one or two |
| 20 | | times? |
| 21 | A. | Once, maybe twice. |
| 22 | Q. | And were you present to see him come make |
| 23 | | those visits? |

Bailey
May 2, 2006

189

1  A.  Yes, on one occasion for sure.

2  Q.  Now, if those visits predate the date on this

3      check, then is it possible --

4          MR. LEACH:  Objection.  Counsel is

5              saying if those visits, plural;

6              and that has not been established

7              by the witness.

8          THE COURT:  Let him ask his question

9              and then raise your objection.

10 Q.  If they predate the date on this check, then

11     it couldn't have been the day that he visited

12     with the Governor that he delivered it,

13     right?

14 A.  That's possible.

15 Q.  On the other hand, if he did visit with him

16     after the date after this check, then it

17     could have been -- you could be right that he

18     did deliver it then, right?

19 A.  That is correct.  And assuming the date on

20     the check is when the check was actually

21     produced.

22 Q.  So you just don't remember clearly whether he

23     personally delivered it or whether it was

Bailey
May 2, 2006