IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | CASE NO.: 2:05-cr-119-MEF |
| | ) | |
| DON EUGENE SIEGELMAN and | ) | (WO) |
| RICHARD M. SCRUSHY | ) | |

## **MEMORANDUM OPINION AND ORDER**

This cause is before the Court on matters relating to Defendants Don Eugene Siegelman's and Richard M. Scrushy's Motion for New Trial Pursuant to Rule 33(a) of the Federal Rules of Criminal Procedure (Doc. # 467). In this joint motion, Defendants Don Eugene Siegelman ("Siegelman") and Richard M. Scrushy ("Scrushy") contend that their Sixth Amendment right to trial by an impartial jury has been denied based on a variety of arguments relating to the conduct of the jurors during the lengthy[1] and high-profile[2] trial.[3] Consequently, they seek a new trial. In the alternative, they seek further information about

---

[1] The presentation of the case to the jury began on the morning of May 1, 2006. The jury's verdict was delivered on the afternoon of June 29, 2006.

[2] The case drew significant media attention because it involved allegations of public corruption. Additionally, Siegelman, a former Governor of Alabama, was seeking his party's nomination to run for Governor again when the trial started. Scrushy is a prominent businessman, who had previously been tried and acquitted of federal criminal charges relating to certain events while he was the Chief Executive Officer of a large health care corporation.

[3] The joint motion for new trial also raised an argument which related to the Court's communications with the jury. After considering this argument, the Court denied to the motion on that ground during a hearing held on October 31, 2006.

possible juror misconduct or improper extraneous influence on juror deliberations. To that end, both Siegelman and Scrushy have filed additional motions seeking an expedited ruling on certain discovery from third parties relating to the jurors, which discovery was originally sought as part of the alternative relief requested in the joint motion for new trial.[4] Generally, speaking the Government opposes all of the relief Defendants seek on a variety of grounds.

## DISCUSSION

When confronted with a motion for new trial predicated on an argument that a defendant's right to an impartial jury has been violated, a court must start with the presumption that the jury has been impartial and unbiased. *United States v. Winkle,* 587 F.2d 705, 714 (5th Cir.), *cert. denied,* 444 U.S. 827 (1979); *United States v. Robbins,* 500 F.2d

---

[4] Roughly one week after the filing of the joint motion for new trial, Siegelman filed Don Eugene Siegelman's Emergency Motion for Order to Require Preservation of Evidence (Doc. # 469). By this motion, Siegelman reiterated a request made in the joint motion for new trial that this Court to use its subpoena powers to collect certain evidence from jurors regarding their internet and cellular phone service provides and to then preserve or obtain records relating to juror internet and cellular phone usage for a period beginning one month before the trial and lasting until roughly two weeks after the verdict. This motion, which seeks the previously requested relief on an expedited basis, appears to have been inspired, at least in part, by published reports about the investigation of a scandal involving a Florida Congressman's use of email and instant messages to contact Congressional Pages. When the Court did not immediately grant Siegelman's "Emergency" motion, Scrushy filed two motions of his own (one of which was filed under seal) seeking an expedited ruling on the third party discovery requested. *See* Defendant Richard M. Scrushy's Motions for Expedited Consideration of an Order to Require Preservation of Evidence (Doc. # 472 & Doc. #474). None of these motions contains any legal precedent or authority for the specific kind of relief requested. The Government opposes the motions. The Court is of the opinion that the relief sought in these defense motions is not necessary, appropriate, or required by law. Accordingly, these motions are due to be DENIED.

650, 653 (5th Cir. 1974). Given this presumption and the factual record currently before this Court, the Court is unwilling, at this time, to find that Defendants have shown they are entitled to a new trial on their motion and submissions in support of the motion alone. In light of this finding, the Court must turn its attention to the request for further investigation into the jury's conduct during the trial, including the conduct of jurors during deliberations and the body of law governing such requests.

A defendant seeking to attack a juror verdict against him on the ground that his right to an impartial jury has been violated does not have an unfettered ability to assail the verdict on that basis. Local rules limit a defendant's ability to contact jurors and may prevent a defendant from gathering evidence relating to the jury's deliberations.[5] Indeed, if a juror's affidavit submitted in support of a new trial motion was obtained in clear violation of a court order or a local rule against interrogation of jurors, then the court may disregard that affidavit. *See, e.g., Tanner v. United States,* 483 U.S. 107, 126 (1987); *See, e.g., United*

---

[5] For example, Local Rule 47.1 of the Local Rules for the United States District Court for the Middle District of Alabama prohibits post-verdict interrogation of jurors, by providing:

> [a]ttorneys, parties, or anyone acting for them or on their behalf shall not, without filing a formal motion therefor with the court and securing the court's permission, interrogate jurors in civil or criminal cases, either in person or in writing, in an attempt to determine the basis for any verdict rendered or to secure other information concerning the deliberations of the jury or any members thereof. The court itself may conduct such interrogation in lieu of granting permission to the movant.

3

*States v. Venske,* 296 F.3d 1284, 1291-92 (11th Cir. 2002), *cert. denied sub nom McCorkle v. United States v. McCorkle*, 540 U.S. 1011 (2003).

Moreover, for nearly a century, courts have recognized a near-universal and firmly established common-law rule flatly prohibiting the admission of juror testimony to impeach a jury verdict. *See Tanner v. United States,* 483 U.S. at 117. Courts recognize few exceptions to this common-law rule and allow juror testimony on the jury's activities *only* in situations in which an *extraneous influence*[6] been shown. *Id.* "In situations that did not fall into this exception for external influence, however, the [Supreme] Court [has] adhered to the common-law rule against admitting juror testimony to impeach a verdict." *Id.* On more than one occasion, the Supreme Court has considered and affirmed the wisdom of this approach and in so doing has discussed the numerous and substantial policy considerations supporting this approach. *See, e.g., Tanner,* 483 U.S. at 117-121 (collecting cases). Indeed, the Eleventh Circuit and the Supreme Court have repeatedly found that district courts did not abuse their discretion in denying motions for new trial or inrejecting defendants' demands for the examination of jurors predicated on arguments of a variety of types of juror misconduct *not encompassing* external influence on the jury.

The Federal Rules of Evidence buttress the common law rule against the admission

---

[6] Extraneous influence on a jury would include: (a) a bribe paid to influence a juror; (b) a threat made to influence a juror; (c) exposure of jurors to prejudicial information not admitted into evidence, such as media reports or the fruits of independent juror investigations of facts relating to the case; or (d) other prejudicial contacts between jurors and third parties.

of jury testimony to impeach a verdict and the exception for juror testimony relating to *extraneous influences*. Federal Rule of Evidence 606(b), which addresses the competency of jurors as witnesses, provides:

> **(b) Inquiry into validity of verdict or indictment.** Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.

Fed. R. Evid. 606(b). While Rule 606(b) specifically applies only to juror testimony or juror affidavits, the Eleventh Circuit has held that it applies equally to juror statements reported by the press. *See United States v. Sjeklocha,* 843 F.2d 485, 488 (11th Cir. 1988).

Not surprisingly, the Eleventh Circuit enforces the bar to using certain types of evidence to attack the impartiality of a jury's verdict set forth in the common law and Rule 606(b). As one panel put it, "[p]ost-verdict inquiries into the existence of impermissible extraneous influences on a jury's deliberations are allowed under appropriate circumstances, but inquiries that seek to probe mental processes of jurors are impermissible." *United States v. Ayarza-Garcia*, 819 F.2d 1043, 1051 (11th Cir.), *cert. denied,* 484 U.S. 969 (1987) (citations omitted). Indeed, courts faced with affidavits from jurors containing information

about the jury's deliberative processes along with information about possible impermissible extraneous influences are to disregard the portions of the affidavits dealing with forbidden testimony under Federal Rule of Evidence 606(b) and must only have a hearing on possible extraneous influences on the jury's deliberations if the remaining content warrants one. *See, e.g., United States v. Venske,* 296 F.3d at 1290.

Thus, in order to determine whether this Court must inquire further into possible extraneous influences on the jury, as Siegelman and Scrushy request, the Court must determine whether they have proffered sufficient appropriate evidence of extrinsic influence on the jury. Indeed, Siegelman and Scrushy bear

> the burden of establishing that extrinsic matters have been considered by the jury during its deliberations. *United States v. Winkle,* 587 F.2d 705, 714 (5th Cir.), *cert. denied,* 444 U.S. 827 (1979). It is only when the defendant has made a colorable showing of extrinsic influence that the court must investigate the asserted impropriety. *Id.*

*United States v. Ayarza-Garcia*, 819 F.2d at 1051. *Accord, United States v. Barshov,* 733 F.2d 842, 851 (11th Cir. 1984), *cert. denied,* 469 U.S. 1158 (1985). Furthermore, this Court

> has broad discretion as to how to proceed when confronted with an allegation of jury misconduct, including discretion with regard to the initial decision as to whether to interrogate the jurors. Cases dealing with the degree of investigation required fall along a continuum focusing on two factors: the certainty that some impropriety has occurred and the seriousness of the accusation. The more speculative or unsubstantiated the allegation of misconduct, the less burden there is to investigate; the more serious the potential jury contamination, especially where alleged extrinsic influence is involved, the heavier the burden to investigate.

*United States v. Ayarza-Garcia*, 819 F.2d at 1051 (internal citations omitted).

Under the relevant legal precedents, the Court finds that most of the evidence on which Siegelman and Scrushy rely in their joint motion fails to help them to satisfy their burden or to satisfy this Court that it must investigate various aspects of alleged juror misconduct. Much of the evidence on which Siegelman and Scrushy base their joint motion does not relate in any way to extraneous influences on the jury. Some of the evidence on which Siegelman and Scrushy rely is speculative and unsubstantiated. Clearly, some of the evidence on which Siegelman and Scrushy rely is improper under the aforementioned common-law rule and Federal Rule of Evidence 606(b).

The strongest evidence that there may have possibly been extraneous influences on the jury warranting further investigation is contained in portions of the two "affidavits" of Juror #5.[7] Because this Court had questions and concerns about the origins of these "affidavits," it held an evidentiary hearing circumstances surrounding possible post-trial contact with jurors on October 31, 2006. The Court cannot say that this hearing assuaged all of its concerns about whether the "affidavits" of Juror #5 were obtained through a violation of Local Rule 47.1 of the Local Rules for the United States District Court for the Middle District of Alabama for Civil and Criminal Cases. Indeed, the Court cannot even say that it found the relevant testimony on this issue to be at all credible. Nevertheless, there is

---

[7] These "affidavits" are Exhibits 8 and 9 to Defendants Don Eugene Siegelman's and Richard M. Scrushy's Motion for New Trial Pursuant to Rule 33(a) of the Federal Rules of Criminal Procedure (Doc. # 467).

7

insufficient evidence currently before this Court on which to base a ruling that the August 9, 2006 "Affidavit"[8] of Juror #5 was obtained in violation of Local Rule 47.1. Given the content of the August 9, 2006 Affidavit and the testimony of Juror #5 regarding that document, the Court finds that Siegelman and Scrushy have made colorable showing of extrinsic influence on the jury sufficient to warrant a further inquiry by the Court[9] into certain aspects of the jury's conduct during the trial.

The Court notes that its decision to conduct a further inquiry into this aspect of the case is not dispositive all remaining portions of joint motion for new trial still pending. Not every case in which a jury has been exposed to extrinsic evidence results in finding that a new trial must be granted. *See, e.g., United States v. Ronda,* 455 F.3d 1273, 1299 (2006);

---

[8] It is very clear from the testimony at the October 31, 2006 hearing that the August 9, 2006 Affidavit of Juror #5 (Ex. 8 to Doc. # 467) was not properly notarized. Moreover, it is amply clear from the testimony at the hearing that the specific content of the "affidavit" concerning alleged consideration by the jury during deliberations of information obtained from the internet is not actually in the words of the affiant despite the fact that it appears in quotation marks. Nevertheless, Juror #5 does maintain that it is his belief that information obtained from the internet was discussed during the jury's deliberations in this case. Given that the applicable legal precedents does not seem to require that a defendant rely on properly notarized affidavits or other sworn testimony to satisfy the burden of making a colorable showing of extrinsic influence on the jury, the Court cannot disregard the August 9, 2006 Affidavit due to the defects inherent in it.

[9] The Court will conduct this hearing. It will determine the witnesses that it will subpoena and the documents those witnesses are to bring with them. The Court will determine the appropriate scope of the inquiry made of these witnesses at the hearing, and it alone will question the witnesses. Siegelman and Scrushy must be present along with their counsel and the counsel for the United States. As with the October 31, 2006 hearing, jurors will be referred to only by their juror number. All exhibits admitted at the hearing will remain under seal until further order of the Court. The Court will not entertain *any argument* from counsel on any pending motion at the hearing.

*United States v. Bolinger,* 837 F.2d 436, 440-41 (11th Cir.), *cert. denied sub nom De La Fuente v. United States,* 486 U.S. 1009 (1988). Thus, the Court will further address the merits of the request for a new trial after considering the evidence obtained at the hearing.

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** as followed:

(1) The Court will conduct an evidentiary hearing whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror in this case on **November 17, 2006** beginning at **8:30 a.m.,** in **Courtroom 2F**, United States Courthouse, One Church Street, Montgomery, Alabama.

(2) It is further ORDERED that Defendants Don Eugene Siegelman and Richard M. Scrushy SHALL attend the November 17, 2006 hearing along with their counsel.

(3) Don Eugene Siegelman's Emergency Motion for Order to Require Preservation of Evidence (Doc. # 469) is DENIED.

(4) Defendant Richard M. Scrushy's Motions for Expedited Consideration of an Order to Require Preservation of Evidence (Doc. # 472 & Doc. #474) are DENIED.

DONE this the 6th day of November, 2006.

/s/ Mark E. Fuller
CHIEF UNITED STATES DISTRICT JUDGE