**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | Case No. 2:05cr119-MEF |
| RICHARD M. SCRUSHY,<br>    Defendant. | |

**DEFENDANT RICHARD M. SCRUSHY'S BRIEF
ON JURY EXPOSURE TO EXTRINSIC INFORMATION**

**I. THIS COURT'S NOVEMBER 17, 2006 INQUIRY WAS INSUFFICIENT TO EXPLORE THE ENTIRE PICTURE OF THE JURY'S EXPOSURE.**

When it is clear that a serious irregularity has occurred with a jury, while a district court is granted broad discretion in how to conduct the inquiry, the Supreme Court has held that "the entire picture should be explored." *Remmer v. United States*, 350 U.S. 377, 379 (1956). "Whenever something occurs at a trial that may tend to affect the impartiality of the jury, both sides have a vital interest in learning everything there is to know about the matter." *United States v. Moten*, 582 F.2d 654, 660 (2d Cir. 1978).

Defendant submits that this Court's inquiry on November 17, 2006 fell so far short of exploring the entire picture that this Court abused its discretion.[1] Due to space limitations,

---

[1] Defendant also objects to the conditions for the submission of this argument set out in the Court's November 20, 2006 Order. (Doc. 503.) Specifically, Defendant objects to the 10-page limit as an unreasonable limitation on Defendant's right to present legal argument and analyze the testimony of twelve jurors in a 175-page transcript. Defendant also objects to being required to file simultaneous briefs and the preclusion of filing a reply brief where the Court has ruled that the Government bears the burden of demonstrating harmlessness, which requires Defendant to respond to arguments that he has not yet heard.

Defendant can only note the most serious shortcomings, without waiving objections to other problems which require more extensive analysis to set out.

First, the Court foreclosed any meaningful input from the parties as to the scope and content of the twelve questions the Court put to the jurors. For instance, when Defendant objected to the Court's leading questions and requested more open-ended inquiry of the jurors, the Court stated: "Thank you for that request. Juror Number 29 will be next." (T-98.) The Court did not alter the pattern of its questioning. (T-101-106.)

Second, while the Court's questions were carefully constructed from a legal standpoint, the questions (including the use of the key legal terminology of "extraneous information" which was defined in a group, rather than individual setting) were not designed to help the jurors to recall all the information they may have discussed or heard. The questions were complex and not easily understood by a lay person giving testimony before a large audience of lawyers, media and others, especially as to any juror who may have any sort of limitations as to their literacy or educational background.[2] It was apparent that Juror 5 in particular was struggling with the Court's questions, (*see*, *e.g.*, T-134), an issue Defendant specifically raised with the Court, but the Court took no action on. (T-154, 160).

Third, on three occasions, the Court interrupted jurors in mid-sentence when the juror was describing the nature of the extraneous information. (T-52 line 15; T-59 line 15; T-74 line 8.) On each occasion, the interruption did not result in a clarification of the testimony, but a curtailment of the information being revealed.

---

[2] The Government agreed, telling the Court: "[W]e think frankly some of those questions are going to be the types of questions where a juror may be confused or may be concerned about whether to say yes or no because they are not really going to know what the answer is." (T-14.)

Fourth, the Court failed to explore issues where there was a clear contradiction in previous statements by the juror or between the testimony of a juror and other jurors, where such exploration was necessary to understand the scope of the extrinsic information. Juror 40 testified she accessed a news article on the Internet, but claimed to only read the headline. (T-77.)  In a taped interview on July 19, 2006 Juror 40 stated, "I did see one Internet article … It was -- after I saw the headline, I was oh, I wonder what that says." (EXHIBIT 5-B at 24.) Juror 66 testified that Juror 40 talked about what she read. (T-59-60.) Juror 40 testified she was unaware of any extrinsic information on penalty, (T-79), but  EXHIBIT 12 is an apparent e-mail to Juror 40 which mentioned the penalty, and EXHIBIT 13 is her almost immediate response to that e-mail.  Yet the Court not only failed to follow up with Juror 40, but failed to determine which juror sent the e-mail to her, while at the same time denying all requests to authenticate the e-mail or subpoena the records.  Juror 66 testified that Juror 7 researched information on the acquitted Defendants and the jury talked about that information for 10-15 minutes on each Defendant, (T-52, T-58), but the Court never followed up with any juror.  Juror 5 previously signed an affidavit, (Defendant's EXHIBIT 8), relied on by this Court, (Doc. 492 at 8), which indicated the jury talked about the fact that Governor Siegelman put the HealthSouth money in his personal account and the fact that the Defendants would not go to jail, yet this Court failed to ask Juror 5 about those allegations.

Fifth, the Court failed to allow any exploration or even understanding of what was in the "foreman's book" that a number of jurors testified they requested and the Court furnished to them.[3]  The Court did not fully answer Defendant's request for clarification of when, how

---

[3] The transcript of deliberations does not reveal any communication between the Court and the jury regarding the request and the Court's response, nor did the Court inform the parties as to any such communications when it described during the October 31, 2006

3

and what the jurors were provided, (T-162-163), despite the reference to this highly material information by three jurors. *See* testimony of Juror 38 (T-39); Juror 66 (T-57); and Juror 5 (T-134). This information is essential to understand the scope and timing of the Internet research conducted by Jurors 7 and 40, which this Court precluded.

Sixth, the Court failed to obtain or authorize subpoenas for evidence of the Internet searches by Jurors 7 and 40, despite the fact that other jurors' testimony indicated that the Internet research was either broader in scope than Jurors 7 and 40 admitted, or that it occurred at a different time than Jurors 7 and 40 claimed. *See* testimony of Juror 38 (T-38-39); Juror 66 (T-52, 54-55, 57-58); Juror 30 (T-71-72, 73); and Juror 5 (T-134-136).

While this Court had discretion in how to conduct the inquiry, this Court did not have discretion to conduct an inquiry in such a fashion so as to leave more questions than answers. Defendant has a right to have this Court conduct an inquiry that complied with the Supreme Court's requirement in *Remmer* to explore "the entire picture," 350 U.S. at 379, and this Court's failure to conduct a sufficiently thorough inquiry was contrary to Supreme Court authority and therefore an abuse of discretion. *See Moten*, 582 F.2d at 666-67.

## II. THIS COURT'S IMPLICIT FINDING THAT THE ONLY EXTRINSIC INFORMATION THAT THE JURY WAS EXPOSED TO IS CLEARLY ERRONEOUS IN LIGHT OF THE TESTIMONY OF ALL TWELVE JURORS.

This Court's Order finds credible evidence that some of the jurors were exposed to extrinsic evidence, and then lists only two items: a copy of the Indictment and juror information from the Court's website. (Doc. 503 at 1.) If this Order is an implicit finding that no juror was exposed to any other extraneous information, Defendant submits that if the testimony of all twelve jurors is considered, there is substantial evidence to the contrary and

---

hearing what it stated was all contact with the jury. (Transcript of Proceedings, October 31, 2006 at 12-17.)

that a full inquiry would have revealed the true parameters of that exposure. The testimony supports this Court's finding only if this Court were to fully credit and adopt the testimony of Jurors 7 and 40 and at the same time fully reject and ignore the testimony of Jurors 38, 66, 30, 63, and 5.  Such a finding, especially in light of the Court's failure to explore the clear contradictions in the testimony and other exhibits, would be clearly erroneous.

First, testimony of two jurors indicates that Jurors 7 and 40 appear to have accessed the Internet relating to daily coverage of the trial.  Juror 38 testified that Juror 7 "said that they had been on the Internet and -- well, it was like one of the TV stations had all the proceedings on the Internet, you could go read it, and that was mentioned…. that they had read what was going on in the court." (T-38.)  Juror 30 testified that Juror 40 said "the whole trial was on the Internet daily," and, significantly, this information was shared with Juror 30 "during the whole trial." (T-71-72). Juror 30 also believed that Juror 7 "looked like he had probably read it on the Internet too or saw it on the Internet." (T-73.)

Second, a number of jurors testified that it appeared that Juror 7 and/or Juror 40 had researched beyond the two items identified by the Court. Juror 66 testified unequivocally that Juror 7 had conducted research on one or both of the acquitted Defendants, (T-52), brought in documents that he read off to the jury, (T-52-53), and that the jury discussed this information about each acquitted Defendant for 10-15 minutes. (T-58.) Juror 66 testified repeatedly that Juror 7 conducted research on the Internet about the charges in the indictment and discussed it with the jury, telling this Court that "when we went through each one of them it was always okay, well, but when you look here this says this and *it's not in the book that you gave us, it's not in the indictment* so -- and he had his paperwork there, so each one of the charges there was information about it." (T-57 (emphasis added); *see also* T-52, 54-

5

55.) Juror 66 testified that Juror 40 said she had done some independent research into the indictment counts, (T-60), and that Juror 40 spent about 10 or 15 minutes discussing the information she researched over the weekend. (T-61.) Juror 5 testified that Juror 40 said she found the "foreman's book" on the Internet, the same information that was eventually supplied to the whole jury, (T-134-136), that it was *not* the indictment, (T-134-136), and that another juror had confronted Juror 40 about the amount of her knowledge concerning the trial, and Juror 40 said she went on the Internet to look up the foreman's book. (T-134, 136-137). The evidence before this Court shows that Internet information was accessed, yet this Court has refused to obtain records that would confirm precisely what that information was, when it was accessed, and especially the frequency that materials from the Internet were accessed by Jurors 7 and 40.[4] The Court's focus on what was carried into the jury room completely ignores the fact that accessing material related to the case, reading it and then carrying that knowledge into the jury room during deliberations is a Sixth Amendment violation regardless of what materials were shown to other jurors.

Third, other evidence in the record indicates that despite the jurors' negative answers to any knowledge of extrinsic information about penalties in this case, that a number of jurors were exposed to such information. Juror 5 stated so in both of his affidavits. (Defendant's EXHIBIT 8 at 1; EXHIBIT 9 at 2.) The apparent e-mails in EXHIBITS 12 and 13 indicate that one still unidentified juror e-mailed Juror 40 on June 25, 2006, during deliberations and commented on the penalty, and that Juror 40 responded shortly thereafter. (*Id.*)

---

[4] When such a critical question can be definitively answered by documentary evidence, it would seem that the Government has at least as strong an interest in obtaining the evidence as do Defendants, since the record of Internet searches theoretically could confirm that Jurors 7 and 40 are telling the truth as to the limited scope of their Internet research, and the jurors who contradict them are mistaken.

6

Fourth, Juror 5's August 9, 2006 affidavit states that Juror 5 had heard from other jurors that "the governor had put the money from Healthsouth in his personal account." (EXHIBIT 8 at 2.) No such evidence was properly before the jury.

Fifth, Juror 40's testimony that she did not bring any documents into the jury room, (T-83), was directly contradicted by Juror 63 who testified she saw Juror 40 take papers out of her coat. (T-94.) Juror 40's testimony that she read only the headline of a news article on the Internet, (T-77), was contradicted by Juror 66, (T-59-60), and by Juror 40's statement in a taped TV interview. (EXHIBIT 5-B at 24.) Even Juror 7's denial of researching only two items was hardly ringing: "Court: 'Those are the only two things you recall?' Juror 7: 'As far as I can recall today.'" (T-123.) Both Jurors 40 and 7, the only two jurors to admit to deliberately violating the Court's instructions, had substantial motivation to color or minimize their actions, while other jurors who contradict them in material matters have no apparent motive to be unforthcoming.

In the face of the substantial contrary evidence, any finding that the extraneous information was limited to the two items identified by the Court would be based on crediting the least reliable testimony of the two jurors who stand the most to lose because or their admitted violations of this Court's Orders, and discrediting and ignoring the testimony of five other jurors. Any such finding would be without support in the record and clearly erroneous.

**III. THE GOVERNMENT CANNOT MEET ITS HEAVY BURDEN TO ESTABLISH THAT THE JURY'S EXPOSURE TO EXTRINSIC EVIDENCE WAS HARMLESS.**

"When jurors consider extrinsic evidence, a new trial is required if the evidence poses a reasonable possibility of prejudice to the defendant." *United States v. Perkins*, 748 F.2d 1519, 1533 (11th Cir. 1984). "[P]rejudice is presumed the moment the defendant establishes that 'extrinsic contact with the jury in fact occurred.'" *United States v. Martinez*, 14 F.3d

7

543, 550 (11th Cir. 1994). "The presumption is not conclusive, but the burden rests heavily upon the government to establish, after notice to the defendant, that such contact with the juror was harmless to the defendant." *Remmer v. United States*, 347 U.S. 227, 229 (1954). In determining whether the Government has rebutted the presumption of prejudice, "[W]e consider many factors including the heavy burden on the government, the nature of the extrinsic information, the manner in which the information reached the jury, and the strength of the government's case." *Martinez*, 14 F.3d at 550.

The manner in which the information reached the jury weighs against a finding of harmlessness in this case. Unlike cases where the exposure occurred due to an inadvertent event,[5] all of the exposure in this case came as a direct result of the deliberate violation of this Court's Orders by Juror 7 and Juror 40 when they accessed the Internet to obtain information about this case. Thereafter, these two jurors admittedly used this information in discussions with jurors during deliberations, and, according to the testimony of Juror 66, Juror 7 used this information in order to "break it down so we could understand each one of the charges, and this is what -- in order to find them guilty this is what has to be done." (T-54.) *See also* Defendant's EXHIBITS 1 and 3. This extraneous information was not only obtained through a deliberate violation of the Court's instructions, it was misused in order to convince jurors to convict Defendants Scrushy and Siegelman.

The timing of when the extrinsic information reached the jury is also a factor. *Perkins*, 748 F.2d at 1534 (holding that where extraneous information injected before a jury that for many hours had remained hopelessly deadlocked, "[t]he likelihood of prejudice on a

---

[5] *Compare*, *e.g.*, *United State v. Pessefall*, 27 F.3d 511, 516 (11th Cir. 1994) (applying factor analysis and relying on fact that extrinsic evidence, an exhibit that had not been admitted, was "inadvertently delivered … to the jury room" by the marshal.

8

jury is obvious.")  Juror 40 testified she downloaded the Indictment the weekend after deliberations began. (T-81.) Although Juror 7 was unforthcoming with the precise timing of his use of the downloaded Indictment, (T-119, 122), a careful reading of Juror 66's testimony indicates that she believes that this "may have been after the first time we said it was a hung jury and then he, I guess maybe that night came back and said, this is what I have done, …" (T-55.)  The likelihood of prejudice from this extraneous information at such a critical juncture is "obvious." *Perkins*, 748 F.2d at 1534.

The nature of the extrinsic information in this case also weighs against any showing of harmlessness.  The unauthorized access to and use of copies of the unredacted Indictment was prejudicial to Defendant. The unredacted Indictment contained a version of Count 3 in which Defendant Scrushy was charged, while the copy of the Indictment provided to the jury did not contain this charge against Defendant. In Defendant's motion to dismiss Counts 3 and 4 as multiplicitous, (Doc. 123 at 3-4), Defendant set out the prejudice that flowed from having both counts presented to the jury, and this Court required the Government to elect which single count the jury would consider. Jurors 7 and 40 had access to information the Court concluded the jury could not see. The possibility of prejudice from these jurors' unauthorized access to the Indictment copies is illustrated by the simple fact that had any juror requested permission from this Court to take home a copy of the indictment to "research" outside of deliberations, this Court surely would have summarily denied such a request.

The nature of the other extrinsic evidence that the jury was exposed to undeniably "poses a reasonable possibility of prejudice." *Perkins*, 738 F.2d at 1533.  The article that Juror 40 most likely accessed contains highly prejudicial extraneous information. *See*

9

EXHIBIT 21-C, Defendant's motion to supplement record. (Doc. 509.) The daily coverage of the trial on the Internet, which two jurors testified that Juror 7 and/or Juror 40 accessed, contains substantial information which was not admitted in Court and which is unquestionably highly prejudicial to Defendant. *See* EXHIBIT 22, Defendant's second motion to supplement record. (Doc. 510.) The information which Juror 7 downloaded and discussed with the jury relating to the acquitted Defendants, (T-52, 58), presumptively harmed Defendant, as it resulted in the acquittal of two co-Defendants by the same jury that convicted Defendant. The information on the specific charges which Juror 7 downloaded from the Internet and which Juror 66 testified was not contained in the "book" the Court provided or in the Indictment and was used to guide the deliberations which resulted in Defendant's conviction, (T-57), was clearly prejudicial. In light of this evidence, the Government cannot possibly meet its heavy burden of rebutting the presumption of prejudice.

Finally, the Government cannot show that its case against Defendant was so strong that the jury exposure was harmless for the simple reason that this jury obviously had great difficulty reaching a unanimous verdict, as demonstrated by the length of deliberations and the jury's two announcements that they were hopelessly deadlocked. (Tr. Vol. XXXV at 24; Tr. Vol. XXXVIII at 3.) *Bulger v. McClay*, 575 F.2d 407, 411 (2d Cir. 1978) (holding that jury's difficulty in reaching a verdict supported a finding of prejudice from jury's discussion of extraneous evidence.)

The Government has not, and cannot, meet its heavy burden to rebut the presumption of prejudice from the jury's exposure to extrinsic evidence in this case, and this Court should grant Defendant's motion for new trial.

This 1st day of December, 2006.

        Respectfully submitted,

/s/ Arthur W. Leach
Arthur W. Leach
Terry Lucas Butts
Leslie V. Moore
2310 Marin Drive
Birmingham, Alabama 35203
Phone: 205-822-4224
Fax: 205-824-0321

James K. Jenkins
Maloy & Jenkins
25th Floor
75 Fourteenth Street, NW
Atlanta, Georgia 30309
Phone: 404-875-2700

Frederick G. Helmsing
Helmsing, Leach, Herlong, Newman
   & Rouse, P.C.
P.O. Box 2767
Mobile, Alabama 36652
Phone: 251-432-5521

Fred D. Gray, Sr.
Gray Langford Sapp McGown Gray
   & Nathanson
P.O. Box 830239
Tuskegee, Alabama 36083-0239
Phone: 334-727-4830

James W. Parkman, III
Richard Martin Adams
Parkman & Associates
739 West Main Street
Dothan, Alabama 36301
Phone: 334-792-1900

Attorneys for Richard M. Scrushy

**CERTIFICATE OF SERVICE**

I hereby certify that on the 1st day of December, 2006, I personally filed the foregoing "Defendant Richard M. Scrushy's Brief on Jury Exposure to Extrinsic Information" with the Clerk of the Court using the CM/ECF system which will send notification of such to counsel of record.

/s/Leslie V. Moore
Leslie V. Moore
2310 Marin Drive
Birmingham, Alabama 35243
Phone: (205) 822-4224
Fax:    (205) 824-0321
E-Mail:  les.moore@lvmlaw.com