**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | Case No. 2:05cr119-MEF |
| RICHARD M. SCRUSHY,<br>        Defendant. | |

**DEFENDANT RICHARD M. SCRUSHY'S MOTION TO RECONSIDER
ORDER DENYING NEW TRIAL AND TO SUPPLEMENT RECORD,
OR IN THE ALTERNATIVE, MOTION FOR NEW TRIAL
<u>BASED ON NEWLY DISCOVERED EVIDENCE</u>**

COMES NOW Defendant Richard M. Scrushy, by and through his undersigned counsel of record and moves this Court to reconsider its previously-entered Memorandum Opinion and Order (Doc. 518) denying Defendant's motion for new trial and to permit supplementation of the record on that motion, or in the alternative, for a new trial pursuant to Fed. R. Crim. P. 33(b)(1) based on newly discovered evidence. In support of this motion, Defendant respectfully shows this Court the following:

1. On December 12, 2006, this Court filed its Memorandum Opinion and Order (hereinafter "Order") denying Defendant Scrushy's motion for new trial pursuant to Fed. R. Crim. P. 33(a) and (b)(2).  (Doc. 518.)

2.  On December 21 and 22, 2006, Defendant and counsel[1] received anonymous letters, each containing what appear to be copies of two e-mails between jurors in this

---

[1]  Defendant's counsel Arthur W. Leach, Terry Lucas Butts, and Frederick G. Helmsing received copies of the e-mails.

case.   The manner of receipt and the copies of the e-mails are the same as previously received e-mails that have been filed with this Court as EXHIBITS 10, 11, 12, 13, and 15 in conjunction with Defendant's previously filed motion for new trial and supplements to that motion. (Doc. 467 and 472.)[2]   As before, the copies of the e-mails appear to be printed from the same G-Mail account of Juror B and sent to Juror C.[3]

3.   The most recent e-mail copies are attached as exhibits to this motion and hereby incorporated.  The first e-mail, dated June 25, 2006 at 10:09 p.m.,  is attached as EXHIBIT 23 and hereby incorporated.[4]  The second e-mail, dated June 25, 2006 at 10:41 p.m. is attached as EXHIBIT 24 and hereby incorporated.   A copy of the envelope in which the two e-mail copies were received by Defendant's counsel Terry Lucas Butts is attached as EXHIBIT 25 and hereby incorporated. The envelope shows that the letters were postmarked Montgomery, Alabama, on December 20, 2006.

4.  EXHIBIT 23 appears to be a copy of an e-mail sent on the G-Mail account of Juror B to the e-mail account of Juror C at 10:09 p.m. Sunday night, June 25, 2006. The verdict in this case was returned on Thursday, June 29, 2006, just four days after these e-mails. The e-mail addresses of each juror contain the full name of each juror, plus the

---

[2] Defendant's EXHIBIT 14-A, 14-B and 14-C, submitted with Defendants' joint motion for new trial (Doc. 467), were the envelopes which EXHIBITS 10, 11, 12, and 13 were received.

[3] In order to continue to comply with this Court's Order to protect the identity of the jurors in this case, Defendant will refer in this motion to the jurors as "Juror A," Juror B," *etc*., following the designations set in Defendants' joint motion for new trial. (Doc. 467 at 6 n.4.)

[4] As in previous filings, Defendant is filing redacted copies of the e-mails to protect the identity of the jurors.  Defendant will also file a copy of this motion with the Clerk under seal with the original copies of the e-mails and one envelope in which they were received.

Internet Service Provider and e-mail account of each juror. This e-mail states in its entirety:

> **….judge really helping w/jurors…**
>
> **still having difficulties with #30**
>
> **…any ideas???**
>
> **keep pushing on ur side**
>
> **did not understand ur thoughts on statute**
>
> **but received links.**
>
> **[first name of Juror B]**

(EXHIBIT 23.)

    5.  EXHIBIT 24 appears to be a copy of an e-mail sent on the G-Mail account of Juror B to the e-mail account of Juror C at 10:41 p.m. Sunday night, June 25, 2006.  The e-mail addresses of each juror contain the full name of the juror, plus the Internet Service Provider and e-mail account of each juror. This e-mail states in its entirety:

> **I can't see anything we miss'd. u?**
>
> **articles usent outstanding!  gov & pastor up s---t creek.**
>
> **good thing no one likes them anyway.  all public officials**
>
> **r scum; especiallly this 1.  pastor**
>
> **is reall a piece of work**
>
> **…they missed before, but we won't**
>
> **…also, keepworking on 30…**
>
> **will update u on other meeting.**
>
> **[first name of juror B]**

6.   Defendant has not taken any steps to authenticate these e-mails, as Defendant is precluded by this Court's prior Orders and Local Rule 47.1 from contacting any juror and precluded from revealing the name of any juror.  Defendant has previously requested that this Court permit him to interview the jurors, that this Court obtain and have a forensic computer expert examine the computers of the relevant jurors, that this Court Order the Internet Service Providers and network providers to preserve records of jurors' e-mails and Internet searches, that this Court subpoena and examine *in camera* these records, and that this Court enter an Order authorizing Defendant to subpoena these records.  These computers and/or records are necessary to authenticate the two most recent e-mails, along with the five previously submitted e-mails.  *This Court has refused each and every request to authenticate the copies of the apparent e-mails.*  Moreover, during the evidentiary hearing on November 17, 2006 in which all twelve jurors were questioned, this Court did not ask a single juror to admit or deny that the e-mails in question were written or received by them, despite a specific request for such questioning. (Transcript of Proceedings November 17, 2006 at 16.)   Defendant respectfully renews each and every one of those requests, and respectfully submits that the necessity and urgency of such steps is greatly enhanced by the receipt of the two most recent e-mails, especially in light of their content and likelihood of destruction of records and evidence.

7.   Defendant respectfully submits that the content of the two most recent e-mails, along with the content of the previously-submitted e-mails, require that this Court reconsider its previously-entered Order denying Defendant a new trial in this matter.  In the alternative, Defendant respectfully submits that the two most recent e-mails constitute

newly discovered evidence under the case law of this Circuit and require that this Court either grant Defendant a new trial pursuant to Rule 33(b)(1) or hold an evidentiary hearing at which the necessary computers, ISP and network evidence are available, along with the jurors implicated in the e-mails.

8.  As will be discussed below, Defendant respectfully submits that the content of these two most recent e-mails, if authenticated, establishes three significant types of misconduct.

9.  The first e-mail, EXHIBIT 23, states in part:  **"did not understand ur thoughts on statue but received links."**  This language, particularly in light of the language in the next e-mail, is evidence that Juror C had sent "links," a common reference to website addresses used to locate and view material on the Internet, to Juror B. The second e-mail, EXHIBIT 24, also from Juror B to Juror C states in part:  **"articles you sent were outstanding!"**  The same e-mail goes on to state in part:  **"they missed before, but we won't…."**  This language, viewed in conjunction with the language in the prior e-mail is evidence that Juror B had used the links sent by Juror C to access **"articles"** and had found them to be **"outstanding!"**  This statement is immediately followed by the conclusion of Juror B that **"gov and pastor up s---t creek."**  Collectively, these two e-mails constitute strong evidence that both Juror B and Juror C were conducting Internet research relating to the subject matter of his case, consciously exposed themselves to extrinsic evidence on the subject matter of the case, and, at least as to Juror B, that juror believed that the extrinsic evidence confirmed the juror's belief that both Defendants Scrushy and Siegelman should be convicted.  Further, the reference **"they missed before, but we won't"**  is strong evidence that at least Juror B was aware

of and taking into consideration extrinsic facts concerning Defendant Scrushy's prior acquittal on other criminal charges brought in the Northern District of Alabama.[5] If authenticated, these e-mails establish beyond cavil that at least two jurors obtained extrinsic evidence related to the case by searching the Internet, that the extrinsic evidence was prejudicial to Defendant, and that the jurors considered the evidence. Further, since these e-mails occurred during jury deliberations, in fact on the Sunday night before the guilty verdicts were returned the next Thursday (June 29, 2006), the effect of such exposure to extrinsic evidence was highly prejudicial.

10. The second type of misconduct evidenced by these two e-mails is the apparent activities of these two jurors outside the presence of the entire jury. This Court unambiguously instructed the jury not to deliberate unless all twelve jurors were present. (Transcript of Proceedings May 1, 2006 at 78.) If authenticated, these two e-mails are evidence that both Jurors B and C were carrying on meetings or discussions with other jurors in order to convince them to find Defendants Scrushy and Siegelman guilty, and that these discussions occurred outside the presence of the other jurors. In the first e-mail, EXHIBIT 23, Juror B tells Juror C: **"still having difficulties with #30…any ideas?"** Thereafter, in the same e-mail, Juror B tells Juror C to: **"keeping pushing on your side."** Thereafter, Juror B tells Juror C: **"did not understand ur thoughts on statue but received links."** In the second e-mail, Juror B tells Juror C: **"also, keepworking on 30"** and **"will update u on other meeting."** (EXHIBIT 24.) First, as previously noted in regard to a prior e-mail (EXHIBIT 11: **"30/38 still off trak"**) between these same two

---

[5] Prior to trial in the instant matter, this Court granted Defendant Scrushy's motion in limine to exclude all evidence and reference to the HealthSouth fraud, which was the subject matter of Defendant Scrushy's previous trial and acquittal. (Doc. 325.)

jurors, there are jurors with numbers 30 and 38 in this case. (*See* Transcript of Proceedings November 17, 2006 at 34 and 66.)  Second, when the statements in the most recent e-mails are read in conjunction with three previously submitted e-mails in light of the date and times of their transmittals, there is evidence of the identity of at least two of the jurors that Juror B was communicating with at this critical juncture. EXHIBIT 12 is an e-mail from Juror D to Juror B at 11:38 p.m. on the same night, June 25, 2006 (approximately 35 minutes after the second e-mail from Juror B to Juror C (EXHIBIT 24)), in which Juror D writes to Juror B: **penalty 2 severe….still unclear on couple of counts against pastor and gov."** (EXHIBIT 12.)  According to the e-mail in EXHIBIT 15, just three minutes later, Juror B writes to yet another juror, Juror E: **"proud of u…other 6 kounts most important….cu.n..am."**[6]  Finally, according to the e-mail in EXHIBIT 13, at 11:48 p.m. that same night, Juror B e-mailed Juror D:  **"…stay focused….remember what judge said…have plans for 4th….right?"** The e-mail addresses of Jurors D and E and their identities easily could be ascertained by this Court. If authenticated**,** the most recent e-mails, especially when viewed in conjunction with the contemporaneous e-mails to other jurors, constitute clear evidence that four jurors were disobeying the Order of this Court and conducting deliberations apart from the entire body of twelve jurors.

11. The third type of misconduct evidenced by these two new e-mails, in conjunction with the previously submitted e-mails between the same two jurors, is an orchestrated effort, beginning no later than May 29, 2006 (EXHIBITS 10 and 11), by the two jurors to coerce other jurors into convicting Defendants Scrushy and Siegelman.

---

[6] The jury subsequently found Defendant Scrushy guilty on *six* counts, and Defendant Siegelman guilty on *seven* counts. (Doc. 518 at 25.)

12. Defendant respectfully submits that these two new e-mails shed new, and significant, light on this Court's ruling denying Defendant's motion for new trial based on jury misconduct.  As a consequence, Defendant submits that this Court should either reconsider its previous Order in light of this new evidence and re-open the record on this motion so that the Court may consider this additional evidence, and further additional computer-related evidence necessary to confirm or refute the authenticity of these e-mails, or, in the alternative, this Court should hold an evidentiary hearing at which time these additional e-mails and additional computer-related evidence necessary to confirm or refute the authenticity of these e-mails is considered as newly discovered evidence under Rule 33(b)(1).  In either case, upon good cause shown, Defendant respectfully submits that he is entitled to a new trial based on the violation of his Sixth Amendment right to a fair trial before an impartial jury.

### Argument and Citation of Authority

The two new e-mails between Jurors B and C, if authenticated, shed a whole new light on the improper communications between jurors in this case.  Initially, they constitute substantial and far more specific evidence that at least these two jurors accessed the Internet to obtain far more extensive extrinsic materials than this Court considered when it entered its Order denying Defendant's new trial motion, and that the information was highly prejudicial to Defendant Scrushy.

First, the e-mails, if authenticated, directly refute the testimony of these two jurors, given under oath in the hearing before this Court on November 17, 2006, regarding their limited research on the Internet. (Transcript of Proceedings, November 17, 2006 at 78 and 123.)  The e-mails also corroborate testimony and evidence from other

jurors that this Court in its Order found unreliable. The two most recent e-mails corroborate the testimony of Juror 66 at the November 17, 2006 evidentiary hearing that Juror 7 had information about the indictment that he obtained from the Internet which he read to the other jurors and discussed with them (*id.* at 52-53, 54-55, 57), and that Juror 40 discussed information that Juror 40 researched about the indictment and discussed a news article viewed on the Internet. (*Id.* at 59, 60-61). They also corroborate the affidavit of Juror 5 that Juror 40 admitted "she had searched the Internet," and that the same juror told the other jurors "so much law and legal procedures during our deliberations, all the jurors got on her and questioned her knowledge about knowing too much." (EXHIBIT 9 at 1.) *See also* EXHIBIT 8 at 2: "I was confused between all the evidence and other Internet stuff and information that some of the jurors brought in and was talking about….They were pulling stuff out of files and some were talking about having Internet information and talking about that too." (*Id.*)

Second, the two new e-mails, if authenticated, prove that Jurors B and C accessed the Internet to obtain extrinsic information that is far in excess of that found by this Court in its Order, and that the extrinsic information was not only damning to Defendant Scrushy, but that it appears to be related to the prior high-profile trial of Defendant Scrushy on other criminal charges, where he was acquitted of all charges. (**"they missed before, but we won't,"** (EXHIBIT 24)). The two e-mails make specific reference to what can only be Internet research, with the first confirming that Juror B **"received links"** (EXHIBIT 23), and the second exclaiming: **"articles you sent were outstanding! gov pastor up s---t creek."** (EXHIBIT 24). If authenticated, these e-mails prove that at least these two jurors obtained and were exposed to extrinsic evidence that was

dramatically more extensive and significantly more prejudicial than that considered by this Court in its Order denying Defendant's initial motion for new trial.

Defendant Scrushy, as well as co-Defendant Siegelman, have extensively briefed the issue of jury misconduct, more specifically the issue of jury exposure to extrinsic evidence. Defendant will not repeat those arguments and citations of authority here, but Defendant adopts those previous pleadings, arguments, and legal authorities. Specifically in regard to the issue of jury exposure to extrinsic evidence, Defendant refers the Court to Doc. 467 at 15-22; Doc. 479 at 3-38; and Doc. 515 at 4-10.

Under the applicable case law, Defendant respectfully submits that Defendant has made a new, and additional, "colorable showing of extrinsic influence [and] that the court must investigate the asserted impropriety." *United States v. Ayarza-Garcia*, 819 F.2d 1043, 1051 (11th Cir. 1987). *Accord United States v. Barshov*, 733 F.2d 842, 851 (11th Cir. 1984). Because these two e-mails were not considered by this Court previously, Defendant respectfully submits that this Court has no discretion as to the issue of whether or not to investigate. The Eleventh Circuit has repeatedly emphasized that it is "the court's duty to ensure that the jury verdict was in no way tainted by improper outside influences," *United States v. Rowe*, 906 F.2d 654,656 (11th Cir. 1990), and, in light of this duty, "the court *must* investigate the asserted impropriety upon merely a colorable showing of extrinsic evidence." *Id.* (emphasis added).

Defendant respectfully submits that this Court cannot make this determination based on its skepticism of the authenticity of these e-mails, as it did in its previous Order. In that Order, this Court repeatedly expressed its lack of belief in the authenticity of the e-mails ("Defendants relied on a document which they contend was sent to them

anonymously and which may be a copy of June 25, 2006 e-mail communications between Juror #40 and someone who may be one of the other jurors in this case." (Doc. 518 at 18)). More importantly, this Court concluded in its Order that this e-mail (EXHIBIT 12), "does not constitute credible information which can in any way cast doubt on the sworn testimony of the jurors before this Court to the effect that they were not exposed to any extraneous or extrinsic information about the penalty…." (Order at 28.)

The two most recent e-mails are in distinct contrast to the single e-mail that this Court focused on in its recent Order. First, the two e-mails are far more specific: they clearly refer to Internet research related to this case (**"received links"**) and to the fruits of that research (**"articles usent were outstanding!"**) (EXHIBITS 23 and 24.) Further, the only testimony on this point currently available to this Court are the bald denials of the two jurors that they accessed any extrinsic materials on the Internet other than the jury manual and the indictment. (Transcript of Proceedings November 17, 2006 at 79 and 123).[7] During the entire hearing, this Court failed to ask any juror to identify or to dispute the authenticity of any e-mail. Based on the current state of the record and in light of the contents of the two new e-mails, Defendant respectfully submits that this Court has the duty to fully and fairly investigate the authenticity of these e-mails. Hard evidence, most notably documents such as e-mails, oftentimes is far more reliable than a witness's memory, especially as to events that occurred over six months ago. If the e-mails are found not to be authentic, then the matter of these e-mails is effectively put to rest, and the testimony of these two jurors is confirmed. On the other hand, if the e-mails

---

[7] Defendant notes that the latter denial was hardly ringing, when the juror responded to the Court's question ("Those are the only two things you recall?") with the following: "As far as I can recall today." *Id.* at 123.

are authentic, then the testimony of these two jurors is called into question in its entirety, Defendant's jury was fatally infected by the exposure to highly prejudicial extrinsic evidence, and a new trial must be ordered by this Court.

The issue of further inquiry into these e-mails by this Court must be viewed in light of three things. First, the fact that Defendant and his counsel are constrained from any investigation of the authenticity of these e-mails by Local Rule 47.1 and the Orders of this Court. Second, Defendant has made repeated requests that this Court assist him in preserving, obtaining, or reviewing *in camera* the computer records that could readily prove the authenticity--or lack thereof--of the e-mails in question. Third, this Court has turned down each and every request. Defendant respectfully submits that, particularly in light of the latest two e-mails, three things are apparent. First, that the Court has a clear duty to fully and fairly investigate all aspects relating to the authenticity of the e-mails. Second, that whoever is anonymously sending these e-mails shows no indication that he/she will stop sending more installments until this issue is fully resolved by this Court.[8] Third, as pointed out in Defendant's sealed motion for subpoenas filed on November 9, 2006, supported by the affidavit of Phillip Hampton (EXHIBIT 16), these computer records are subject to destruction due to the passage of time. In other words, the longer this Court delays a full inquiry into the authenticity of these e-mails, the more likely that

---

[8] While Defendant and his undersigned counsel all represent to this Court that they have no knowledge as to the source of these e-mails that have been received anonymously in the mail, it is apparent that the e-mails are being sent at repeated and somewhat consistent intervals by this anonymous source. E-mails have been postmarked on September 5, 2006, September 15, 2006, September 21, 2006, October 7, 2006 and December 20, 2006. The latest mailing occurred approximately one week after this Court denied Defendant's motion for new trial based on jury misconduct. (Doc. 518.)

such an inquiry will become meaningless. Such a result would be unfair to Defendant, to the Government, and, ultimately to the jurors involved.[9]

The Supreme Court held in *Turner v. Louisiana*, 379 U.S. 466, 85 S.Ct. 546 (1965), that "The requirement that a jury's verdict 'must be based upon the evidence developed at trial' goes to the fundamental integrity of all that is embraced in the constitutional concept of trial by jury." *Id*. at 472 (quoting *Sinclair v. United States*, 279 U.S. 749, 49 S.Ct. 471 (1929)). When such a fundamental concern is involved, and where the review of readily available documents from either the jurors' computers, their ISPs, or their network providers can resolve such an important question once and for all, it is incumbent on this Court to take those steps, and to do so in a timely fashion. The new e-mails, if authenticated, are clear and substantial evidence of jury exposure to extrinsic evidence and this Court has an unmistakable duty to ensure that "the entire picture … [is] explored." *Remmer v. United States,* 350 U.S. 377, 379, 76 S.Ct. 425 (1956). "Whenever something occurs at a trial that may tend to affect the impartiality of the jury, both sides have a vital interest in learning everything there is to know about the

---

9 This Court clearly has the authority in the context of a motion for new trial to obtain the crucial documentary evidence to decide the authenticity of the jurors' e-mails, or to authorize Defendant to seek out such evidence. *See, e.g., United States v. Bin Laden*, 2005 WL 287404 at *11 (S.D. N.Y. 2005) ("The Federal Rules of Criminal Procedure do not specifically provide for discovery procedure in aid of motions for new trial pursuant to Rule 33. Accordingly, the decision of whether to permit discovery and conduct an evidentiary hearing remains within the sound discretion of the trial court. Trial courts may fashion appropriate procedures by analogy to [Federal Rule of Criminal Procedure] 16, or otherwise." (internal citations and quotation marks omitted); *United States v. Salameh*, 54 F.Supp. 2d 236, 248 (S.D. N.Y. 1999) ("[T]he decision of whether to permit discovery and conduct an evidentiary hearing [in relation to a Rule 33 motion] remains within the sound discretion of the trial court."); *United States v. Agunbiade*, 1996 WL 351058 at *7 (E.D. N.Y. 1995) ("In deciding a motion filed under Rule 33, the decision of whether to permit discovery and conduct an evidentiary hearing remains within the sound discretion of the trial court.").

matter." *United States v. Moten*, 582 F.2d 654, 660 (2d Cir. 1978). Defendant respectfully submits that the Court and the Government should be in the forefront of the effort to obtain the closure on this issue that the computer-related evidence would provide, not opposing it. Simply put, if the two most recent e-mails are authentic, they show beyond question that the jury was exposed to extrinsic evidence and that Defendant is entitled to a new trial. If they are not authentic, this line of litigation should end and the jurors be taken out of the glare of these accusations. The only way to do that is to obtain and review the records and hear from the jurors involved. And only this Court has the power, and the duty, to do so.

The two new e-mails, if authenticated, also provide substantial new evidence of another area of misconduct previously presented to, and rejected by this Court: the issue of deliberations by jurors outside the presence of the entire jury. This Court instructed the jury in no uncertain terms that it should not deliberate unless all twelve jurors are present. (Transcript of Proceedings May 1, 2006 at 78.) This instruction is in keeping with the provisions of Rule 23(b)(1) that "[a] jury consists of 12 persons unless this rule provides otherwise," and case law that recognizes that deliberation by less than the entire jury is improper. *See United States v. Gaskin*, 364 F.3d 438, 463-464 (2d Cir. 2004) (affirming district court's denial of mistrial as a result of information from court officer that fewer than twelve jurors may have discussed case during break in deliberations, based on finding that trial judge "promptly questioned the foreperson and ascertained that the discussion in question lasted approximately five minutes and was limited to jurors' expressions of surprise upon noticing that the verdict form included lesser-included offense alternatives on two counts" on which jury subsequently acquitted defendants);

*United States v. Mackey*, 114 F.3d 470, 474 (4th Cir. 1997) (finding that district court's decision to permit two jurors to remain after deliberations to research and summarize evidence for other jurors was error, but harmless since there was no evidence that the jurors failed to comply with instructions not to deliberate, including specific instructions that jury was not to discuss case in groups of two or three on lunch break but to wait until all twelve jurors were together so that all jurors would receive the benefit of each juror's views, as well as strength of evidence against defendants); *United States v. Spurrier*, 930 F.2d 30, 1991 WL 43282, *4 (9th Cir. 1991) (unpublished) (rejecting defendant's claim for mistrial or new trial because one juror smoked a cigarette outside while other jurors deliberated, based on finding that incident occurred while jury was awaiting the results of a vote, and formal meeting had broken up); and *United States v. Devry*, 935 F.Supp. 393, 409-410 (S.D. N.Y. 1996) (denying motion for mistrial based on finding that prompt written inquiry to the jury determined that three notes sent by jury before all twelve jurors arrived were the results of jury deliberations by all twelve jurors the night before).[10] The

---

[10] In its Order denying Defendant's new trial motion, this Court noted that while Defendant cited legal precedents that "make it clear that premature deliberations or deliberations by fewer than all members of the jury are disfavored, the Court does not find that the cited cases actually hold that evidence of either type of juror misconduct warrants the grant of a new trial." (Order at 50-51.)  To the extent that the Court contends that Defendant bears the burden of showing cases granting such relief as a condition precedent to obtaining relief in the present circumstances (*id.* at 51), Defendant can only note that: (1) despite the clear recognition that such activity constitutes jury misconduct by a number of courts, it is apparent that no court has been presented with facts that are as egregious as the instant case; and (2) the Government has cited no cases to this court where relief has been denied in similarly aggravated circumstances.  In fact, since the evidence of jury misconduct of deliberations among jurors out of the presence of all twelve jurors consists of communications between individual jurors by e-mail, it may simply be that technology has gotten ahead of the law relating to jury misconduct, and no court has been presented with this type of evidence before.  That reality should not be a basis for a refusal to apply clearly recognized principles of what constitutes jury misconduct when the evidence of such misconduct is substantial and in documented

evidence of jury deliberations here, both premature and in the absence of all twelve jurors, if the e-mails are authenticated, is more substantive, pervasive and prejudicial than previously presented to any court in any published opinion.

The two new e-mails, EXHIBITS 23 and 24, clearly show that Juror B and Juror C were communicating outside the presence of the other twelve jurors about what verdicts should be returned in the case and, moreover, that an important part of these communications was in regard to what could only be discussions that had occurred or were to occur one-on-one with other jurors (**"keepworking on 30…will update u on other meeting."** (EXHIBIT 24)). Moreover, the previously-tendered exhibits include e-mails that occurred beginning about 35 minutes  after the e-mail in EXHIBIT 24 between Juror B and Jurors D and E that are irrefutably deliberative in nature (**"proud of u…other 6 counts most important…."** (EXHIBIT 15)).

Yet another form of misconduct that these latest e-mail evidence demonstrates is the conduct and communications of two jurors that appear to be an effort to orchestrate a guilty verdict against Defendants Scrushy and Seigelman by two jurors who were accessing extrinsic evidence on the Internet and then lobbying other jurors--out of the presence of all twelve jurors--for the desired guilty verdicts. (**"articles usent were outstanding! gov & pastor up s---t creek."** (EXHIBIT 24)).  Moreover, the comments of Juror B support a strong inference that:  (1) Juror B was biased, either *ab initio* or as a result of his/her exposure to extrinsic information on the Internet (**"good thing no one**

---

communications between jurors. Judicial action in these circumstances would not be based on "an extension of the law." (*id.* at 51.)  Rather, it would be the application of existing law recognizing that such activity is unmistakably juror misconduct to a new, and possibly unique, set of facts where the misconduct is both far-reaching and proven by documentary evidence.

likes them anyway.  all political officials r scum; especially this 1. pastor is reall a piece of work…." (EXHIBIT 24); and (2) Juror B was basing his/her opinion on the utterly improper consideration of Defendant Scrushy's prior acquittal ("**they missed before, but we won't…**" (EXHIBIT 24)).  As the Supreme Court held in *Lowenfield v. Phelps*, 484 U.S. 231, 241, 108 S.Ct. 546 (1988), "Any criminal defendant … being tried by a jury is entitled to the uncoerced verdict of that body."  The two most recent e-mails, coupled with e-mails between these same two jurors that show they were deliberating and attempting to influence other jurors to convict *prior to the close of the Government's case in chief* (EXHIBITS 10 and 11), demonstrate that these two jurors not only set out to coerce the other jurors' verdicts, but that they employed one-on-one meetings outside the presence of all twelve jurors and had access to prejudicial extrinsic evidence which could be used in that improper endeavor.

Procedurally, Defendant respectfully submits that this Court has two alternatives available.  First, since neither Defendant has been sentenced, other pretrial motions are still outstanding (*see* Order at 56), and no notice of appeal has been filed in this case by any party, Defendant submits that it would be proper for this Court to simply re-open for reconsideration its previously-entered Order denying Defendant's new trial motion.[11] One factor that militates in favor of this approach is that this Court should have an opportunity to reconsider its findings of fact and conclusions of law on the new trial motion in light of the additional evidence not previously available to the Court in making

---

[11] *See generally United States v. Simms*, 385 F.3d 1347, 1356 (11th Cir. 2004) (noting that Eleventh Circuit reviews denial of motion for reconsideration under abuse of discretion standard). *See also* Order at 13 (noting that Government in instant case filed motion to reconsider this Court's ruling on multiplicity issue (Doc. 422), which this Court subsequently denied).

its decision. Since this new evidence sheds significant new light on the critical issues of the need to obtain evidence authenticating the e-mails and identifying the Internet searches conducted by Jurors B and C, the reliability of juror testimony before this Court on November 17, 2006, the exposure of jurors to significant and highly prejudicial extrinsic evidence, the question of jury deliberations without all twelve jurors, and misconduct consisting of an orchestrated effort to coerce guilty verdicts, Defendant respectfully submits that this Court should have an opportunity to reconsider its prior findings in light of this new evidence.

In the alternative, Defendant respectfully submits that this new evidence properly can be considered pursuant to the newly discovered evidence provision of Rule 33(b)(1). The newly discovered evidence in this case meets the requirements of the five-part test applied in this Circuit: (1) the evidence was newly discovered after trial; (2) the movant shows due diligence in discovering the evidence; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material to issues before the court; and (5) the evidence is of such a nature that a new trial would reasonably produce a new result. *See United States v. DiBernardo*, 880 F.2d 1216, 1224 (11th Cir. 1989). In regard to the fifth part of this test, the Eleventh Circuit has made it clear that newly discovered evidence is not limited to just the question of the defendant's innocence, but can include other issues of law. *United States v. Beasley*, 582 F.2d 337, 339 (5th Cir. 1978) (noting that "[t]he evidence need not relate only to the question of innocence but may be probative of another issue of law, such as a Brady violation."). Specifically, the newly discovered evidence may relate to the issue of jury misconduct. *See United States v. Williams*, 613 F.2d 573, 574-575 (5th Cir. 1980) (reviewing, after remanding to district

court for determination of extraordinary motion for new trial based on newly discovered evidence, decision of district court rejecting claim based on *ex parte* communication between trial court and juror, and noting that "appellant's evidence goes to the fairness of the trial rather than to the question of guilt or innocence.").

Under either procedure, Defendant respectfully submits that the proper course for this Court, as required by the precedent of the Supreme Court and the Eleventh Circuit, is to fully investigate Defendant's new and additional showing of jury exposure to extrinsic evidence and other related jury misconduct. While this Court has discretion in how to conduct such an inquiry, Defendant respectfully submits that this Court does not have discretion to refuse to conduct such an inquiry, *Ayarza-Garcia*, 819 F.2d at 1051 and *Barshov*, 733 F.2d at 851, and that, under the Supreme Court's direction in *Remmer*, "the entire picture should be explored." 350 U.S. at 379. Defendant respectfully submits that the most appropriate and fairest method to do so would be to obtain the computers of the jurors, the records of their ISPs and network providers and, once those materials are fully reviewed, that this Court should conduct an evidentiary hearing at which the further testimony of Jurors B and C, along with any other jurors who may be involved in the communications in question (Jurors D and E, as well as any jurors identified by review of the foregoing records) is obtained.

WHEREFORE, Defendant respectfully prays that this Court enter an Order: (1) supplementing the record as to Defendant's new trial motion; (2) to obtain the previously-described computers and records; (3) to conduct a further evidentiary hearing pursuant to either a reconsideration of this Court's previously-entered Order denying Defendant's motion for new trial or Rule 33(b)(1); and (4) upon good cause shown,

granting Defendant a new trial and such other and further relief as this Court may deem

just and proper.

This 28th day of December, 2006.

Respectfully submitted,


/s/ Arthur W. Leach
Arthur W. Leach
Terry Lucas Butts
Leslie V. Moore
2310 Marin Drive
Birmingham, Alabama 35203
Phone:  205-822-4224
Fax:  205-824-0321

James K. Jenkins
Maloy & Jenkins
25th Floor
75 Fourteenth Street, NW
Atlanta, Georgia 30309
Phone:  404-875-2700

Frederick G. Helmsing
Helmsing, Leach, Herlong, Newman
   & Rouse, P.C.
P.O. Box 2767
Mobile, Alabama 36652
Phone:  251-432-5521

Fred D. Gray, Sr.
Gray Langford Sapp McGown Gray
   & Nathanson
P.O. Box 830239
Tuskegee, Alabama 36083-0239
Phone: 334-727-4830

James W. Parkman, III
Richard Martin Adams
Parkman & Associates
739 West Main Street
Dothan, Alabama  36301
Phone:  334-792-1900
Attorneys for Richard M. Scrushy

## CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of December, 2006, I personally filed the foregoing "Defendant Richard M. Scrushy's Motion to Reconsider Order Denying New Trial and to Supplement Record, or in the Alternative, Motion for New Trial Based on Newly Discovered Evidence" with the Clerk of the Court using the CM/ECF system which will send notification of such to counsel of record.

/s/ Leslie V. Moore
Leslie V. Moore
2310 Marin Drive
Birmingham, Alabama 35243
Phone: (205) 822-4224
Fax:    (205) 824-0321
E-Mail:  les.moore@lvmlaw.com