IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | Case No. 2:05cr119-MEF |
| RICHARD M. SCRUSHY,<br>     Defendant. | |

**DEFENDANT RICHARD M. SCRUSHY'S MOTION TO SUPPLEMENT
PREVIOUSLY FILED MOTION TO RECONSIDER
ORDER DENYING NEW TRIAL AND TO SUPPLEMENT RECORD,
OR IN THE ALTERNATIVE, MOTION FOR NEW TRIAL
<u>BASED ON NEWLY DISCOVERED EVIDENCE</u>**

COMES NOW Defendant Richard M. Scrushy, by and through his undersigned counsel of record and moves this Court to enter an Order permitting supplementation of Defendant's previously filed motion, (Doc. 519), with additional exhibits relating to evidence received by counsel for Defendant subsequent to the filing of Defendant's previous motion. In support of this request, Defendant respectfully shows this Court the following:

1. On December 28, 2006, Defendant Scrushy filed in this Court his motion titled "Defendant Richard M. Scrushy's Motion to Reconsider Order Denying New Trial and to Supplement Record, Or in the Alternative, Motion for New Trial Based on Newly Discovered Evidence," (hereinafter "Renewed New Trial Motion") (Doc. 519.)  Pursuant to this Court's January 11, 2006 Order to Show Cause, (Doc. 522), the Government filed its response ("Gov't Response") on January 19, 2007. (Doc. 523). As of the filing of this

motion to supplement, the Court has not ruled on Defendant's previously filed Renewed New Trial Motion.

2. Beginning on February 21, 2007, Defendant and counsel[1] received anonymous letters, each containing what appear to be copies of an e-mail between jurors in this case. The manner of receipt and the copies of the e-mail are the same as previously received e-mails that have been filed with this Court as EXHIBITS 10, 11, 12, 13, 15, 23, and 24 in conjunction with Defendant's previously filed motion for new trial, motion to supplement and Renewed New Trial Motion. (Docs. 467, 472 and 519.) The most recently received e-mail appears to be printed from a G-Mail account and sent from Juror C to Juror B.[2]

3. The most recent e-mail copy is attached as an exhibit to this motion. The e-mail, dated June 25, 2006 at 10:47 p.m., is attached as EXHIBIT 26 and hereby incorporated.[3] A copy of the envelope in which the e-mail copy was received by Defendant's counsel Terry Lucas Butts is attached as EXHIBIT 27 and hereby incorporated. The envelope shows that the letters were postmarked Montgomery, Alabama, on February 20, 2007.

---

[1] To date, Defendant's counsel Terry Lucas Butts and Frederick G. Helmsing have received copies of the latest e-mail.

[2] In order to continue to comply with this Court's Order to protect the identity of the jurors in this case, Defendant will refer in this motion to the jurors as "Juror A," "Juror B," *etc*., following the designations set out in Defendants' joint motion for new trial. (Doc. 467 at 6 n.4.)

[3] As with previous filings, Defendant is filing a redacted copy of the e-mail to protect the identity of the jurors. Defendant will also file a copy of this motion with the Clerk under seal with the original copy of the e-mail and one envelope in which it was received.

4. EXHIBIT 26 appears to be a copy of an e-mail sent from the e-mail account of Juror C to the e-mail account of Juror B at 10:47 p.m. Sunday night, June 25, 2006. This was four days prior to the jury's verdict in this case. The e-mail addresses of each juror contain the full name of each juror, plus the Internet Service Provider ("ISP") and e-mail account of each juror. The e-mail states in its entirety:

> **Great info 4 r friends.**
>
> **% of prosecution increases dramatically.**
>
> **Could not find that when I surfed it.**
>
> **Gov/Pastor GONE….**

(EXHIBIT 26.)

5. As set forth in Defendant's previously filed Renewed New Trial Motion, Defendant has not taken any steps to authenticate this latest e-mail, based on this Court's previous Orders. (Doc. 519 at ¶ 6.) Defendant respectfully renews each and every request made in his previously filed motions, as summarized in paragraph 6 of his Renewed New Trial Motion, relating to steps that should be taken in a timely fashion in order to investigate the authenticity of these e-mails. Defendant continues to reiterate the need for timely action because of the continued and ever-increasing risk of destruction of this evidence due to passage of time.

6. The content of the most recent e-mail, along with the content of the previously submitted e-mails require that this Court either reconsider its previous Order denying Defendant a new trial in this matter and grant Defendant a new trial, grant a new trial based on newly-discovered evidence pursuant to Fed. R. Crim. P. 33(b)(1), or hold an

evidentiary hearing at which the necessary computers, ISP and network evidence are available, along with the jurors implicated in the e-mails.

      7. The content of this most recent e-mail, if authenticated, provides additional and substantial new evidence that during deliberations Jurors B and C accessed extrinsic evidence on the Internet and that the extrinsic evidence was prejudicial to both Defendant Scrushy and co-Defendant Siegelman. In this most recent e-mail, Juror C tells Juror B: **"Great info 4 r friends….Could not find that when I surfed it."** (EXHIBIT 26.) Especially when read in the context of an e-mail, the word "surfed" commonly refers to the activity of accessing the Internet to look for information. The initial sentence, read in the context of this and the two prior e-mails, appears to refer to the content of information that Juror B has either sent or described to Juror C, which Juror C had not previously located on the Internet, but which Juror C believes will be "**[g]reat info 4 our friends.**"[4] The content of this e-mail is far more than a "colorable showing" that these two jurors were accessing extrinsic information on the Internet, considering it, and apparently providing it to other jurors. Moreover, the prejudicial nature of the extrinsic evidence is apparent in the e-mail's references to "**% of prosecution increases dramatically,**" and **Gov/Pastor GONE….**" (EXHIBIT 26.)

      8. Further, when considered along with the immediately preceding e-mails on June 25, 2006 between these two jurors, this most recent e-mail is even clearer evidence of exposure to extrinsic evidence obtained from the Internet. This most recent e-mail, EXHIBIT 26, was sent by Juror C to Juror B 38 minutes after the e-mail in EXHIBIT 23 was sent from Juror B to Juror C. In the first of the three e-mails between these jurors

---

   [4] In a previous e-mail between these same two jurors, Juror B clearly appears to have referred to some of their fellow jurors as "our friends." *See* EXHIBIT 11.

4

that are now available Juror B tells Juror C at 10:09 p.m.: **"did not understand ur thoughts on statue but received links."** (EXHIBIT 23.) In the next e-mail, sent at 10:41 p.m., Juror B tells Juror C: **"articles u sent were outstanding!"** (EXHIBIT 24.) In the most recently-received e-mail, sent at 10:47, Juror C tells Juror B **"Great info 4 r friends. % of prosecution increases dramatically. Could not find that one when I surfed it. Gov/Pastor GONE…."** (EXHIBIT 26.) Defendant respectfully submits that a fair reading of these three e-mails shows that these two jurors were accessing extrinsic information about this case or the Defendants in the case on the Internet, considering it, and apparently either passing it on to other jurors or using it in their out-of-court deliberations with other jurors to convince them to return guilty verdicts. *See* EXHIBITS 12, 13 and 15 (e-mails between Juror B, D and E shortly thereafter discussing penalty, counts against Defendants, and jury instructions). Moreover, these new e-mails corroborate the affidavits of Juror A, (EXHIBITS 8 and 9), and the November 17, 2006 testimony of Jurors 38, 66, 30, and 63, (Transcript of Proceedings at 38-39, 52-55, 57, 71-72, 94-95), which tended to indicate that Jurors 40 and 7 accessed and discussed information from the Internet in addition to a copy of the unredacted indictment and information on the role of the foreperson, which this Court previously discounted in its December 13, 2006 Order. (Doc. 518 at 28-30).

9. The latest e-mail provides additional evidence of three types of jury misconduct previously set out in Defendant's Renewed New Trial Motion. First, it is additional evidence of the jury's exposure to extrinsic evidence, and the prejudicial nature of that evidence. (Doc. 519 at ¶ 9.) Second, it is additional evidence of activities by two jurors, clearly deliberative in nature, outside the presence of other jurors, and contrary to the

instructions of this Court forbidding deliberations unless all twelve jurors were present. (Doc. 519 at ¶ 10.) Third, this newest e-mail is additional evidence of an orchestrated effort by Jurors B and C, beginning no later than May 29, 2006, (EXHIBITS 10 and 11), to convince other jurors to convict Defendants Scrushy and Siegelman, and very possibly using that extrinsic evidence obtained from the Internet to do so.

10. Defendant respectfully submits that this newest e-mail, if authenticated, provides additional, and compelling, evidence so that this Court must take further action in regard to the allegations of jury misconduct in this case. Neither this Court nor Defendant Scrushy had these additional three e-mails prior to this Court's December 13, 2006 Order denying a new trial based on jury misconduct.[5] These three new e-mails, if authenticated, demonstrate beyond any debate that this jury was tainted by exposure to extrinsic evidence and other misconduct. As set out below, upon only a "colorable showing of exposure to extrinsic evidence," the law of this Circuit requires that this Court investigate and determine the underlying facts.

11. Defendant respectfully submits that the first, and most crucial, determination is as to the authenticity of these e-mails. As previously argued to this Court, (Doc. 519 at ¶ 6), Defendant has asked this Court for permission to investigate, legal procedures to obtain documents, evidence and information that would prove or disprove authenticity, and even the most benign step of all—the simple preservation of evidence subject to

---

[5] In its response, the Government states: "Importantly, the Defendants do not even attempt to explain why the latest purported emails were not submitted with the original purported emails prior to the briefing, hearing and opinion in this matter." (Gov't Response at 6.) As was apparent from Defendant's Renewed Motion for New Trial, (Doc. 519 at 1-2), Defendant did not receive the anonymous letters containing Exhibits 23 and 24 until after this Court's December 13, 2006 Order, (Doc. 518), denying Defendant's initial motion for new trial, which Order, of course, followed briefing and the hearing related to that motion.

6

destruction. As of the date of this filing, the Court has acceded to the Government's repeated entireties, *see*, *e.g*. Gov't Response at 5, not to even *look* at such evidence. As of the date of this filing, *this Court has refused each and every request to authenticate the copies of the apparent e-mails.* At the November 17, 2006 evidentiary hearing on Defendant's original motion for new trial, despite a specific request to do so, this Court did not even ask a single juror to admit or deny that the e-mails in question were written or received by them. Because of this Court's previous Orders and Local Rule 47.1, Defendants are powerless to make any effort to determine the authenticity of these e-mails. Only this Court has the power to do so. Until the issue of authenticity is resolved definitively, no one will know whether this Court and the parties to this action are being subjected to a continued hoax by an individual or individuals who should be identified and prosecuted or whether the jury verdicts in this case are irretrievably tainted by the jury's exposure to extrinsic evidence and other jury misconduct. The only path to finality as to this issue, and in this case, must eventually travel through a full and fair process to determine the authenticity of these e-mails. Defendant respectfully urges this Court to do so immediately and aggressively, since the passage of time only makes this inevitable determination more difficult.

     12. Defendant respectfully submits that this Court should either reconsider its previous Order denying a new trial and conduct further hearings to consider evidence relating to the authenticity of these e-mails or, in the alternative, this Court should hold a hearing on Defendant's motion for new trial under Rule 33(b)(1) at which time these additional e-mails and additional computer-related evidence necessary to confirm or refute the authenticity of these e-mails, along with appropriate further inquiry of the

involved jurors, can be considered. In either case, upon good cause shown, Defendant respectfully submits that he is entitled to a new trial based on the violation of his Sixth Amendment right to a fair trial before an impartial jury.

### Argument and Citation of Authority

The newest e-mail adds further evidence to the "colorable showing" discussed in Defendant's Renewed New Trial Motion. Standing alone, it provides evidence that Jurors B and C were accessing the Internet to obtain extrinsic information relating to the case they were deliberating at that time. The reference to "**[g]reat info 4 our friends**" supports a clear and strong inference that the extrinsic information was relevant to the case at hand, as it specifically refers to **"info"** and couples that with a reference to **"our friends,"** a term that had previously been used between Jurors B and C to refer to the other jurors in the case. *See* EXHIBIT 11. The reference in the newest e-mail to the effect that Juror C **"[c]ould not find that when I surfed it,"** could hardly be more explicit in its confirmation that Juror C was doing research on the Internet. As set forth above, when viewed with the two preceding e-mails that same night (EXHIBITS 23 and 24), the evidence of these two jurors accessing the Internet for extrinsic evidence, sharing it with each other, and commenting on its content, could hardly be clearer.[6]

As set forth previously, this newest e-mail, as well as the two other e-mails that have been obtained since this Court denied Defendant's initial new trial motion, constitute new and separate evidence of the jury's exposure to extrinsic evidence. While

---

[6] In fact, while continuing to attack the authenticity of the e-mails, the Government's Response concedes as much: "…the latest purported emails, arriving by Defendants' account in late December 2006, are more specific in purporting to indicate that (1) certain jurors exposed themselves to extrinsic evidence and (2) that certain jurors deliberated improperly outside the presence of the full jury." (Gov't Response at 6.)

8

Defendant has previously acknowledged that this Court has wide discretion in *how* it chooses to investigate this exposure to extrinsic evidence, based upon this "colorable showing of extrinsic influence" this Court does not have any discretion in its decision on *whether* to investigate, as the Eleventh Circuit has unambiguously held that "the court *must* investigate the asserted impropriety." *United States v. Ayarza-Garcia*, 819 F.2d *1043*, 1051 (11th Cir. 1987) (emphasis added). *Accord United States v. Barshov*, 733 F.2d 842, 851 (11th Cir. 1984). Further, as the Eleventh Circuit has held, it is "the court's duty to ensure that the jury verdict was in no way tainted by improper outside influences…." *United States v. Rowe*, 906 F.2d 654, 656 (11th Cir. 1990).

The Government seeks to lead this Court into clear error by its suggestion that there is no need to investigate these new e-mails. *See* Gov't Response at 4-5. The Government suggests that this Court's prior ruling denying the new trial motion is somehow determinative of the outcome as to these new e-mails, and that no action by this Court is necessary save to deny Defendant's motion outright:

> Defendants thus ignore the salient point in this Court's analysis of the entire e-mail issue: There were insufficient indicia of authenticity and reliability in the original emails to colorably support any investigation, action, or remedy. The latest purported emails are just as bereft of reliability and authenticity as the original purported emails, which this Court already rejected as a basis for post-trial relief.

(*Id*. at 5.) Pretermitting the question of whether that was, in fact, this Court's prior analysis, the Government is encouraging this Court to sweep this issue concerning the additional e-mails under the rug without the investigation clearly mandated by Eleventh Circuit and Supreme Court authority, based on the Government's assertion that *Defendant* has been unable to authenticate the e-mails which have been provided to him in a series of anonymous mailings, based solely on the Government's continuing attack

9

on the "purported" and "anonymous and incredible" e-mails. (*Id.*) The Government also tells this Court that: "Defendants' motions do not justify a new trial or any other action by the Court because of their most unreliable and inherently discreditable foundation." (*Id*. at 8.)

      First, these are not "anonymous" e-mails. The copies of the newest e-mails have been provided anonymously, but each and every one of them is in an easily-recognizable e-mail format and contain what appear to be an e-mail address and name that is associated with Jurors B and C. There are obvious, and reasonable, steps that can be taken to obtain the documents and evidence necessary to determine whether or not these e-mails are authentic. Defendant has repeatedly asked that such a step be authorized or taken by this Court. The Government has repeatedly fought against this simple step of obtaining the available evidence and this Court has repeatedly refused to do so. Defendant's inability to authenticate these e-mails is a product of the Government's opposition and this Court's refusal to permit such an investigation. The inability of Defendant to demonstrate the authenticity of the e-mails in the absence of any opportunity to do so cannot be a basis for a determination that the e-mails are not reliable, and therefore do not require investigation.

      The Government's attack on the authenticity of the e-mails does not stop there. Unless the Government has, in fact, investigated the authenticity of the e-mails and not provided that information to Defendant or the Court, its most recent response goes on to make the claim, *without any evidentiary support*, that:

> The most logical conclusion to be drawn from the intermittent submission of the purported email during the protracted progress of this case post-trial is that the source of the purported email has simply reacted to the Court's

> rulings by *concocting* material designed to meet the legal standards recognized and applied by the Court.

(Gov't Response at 7) (emphasis added). In other words, the Government is telling this Court that the e-mails that have been submitted to this Court are forgeries. If the Government has evidence of this claim, it should submit it. If it does not, then the Government should join in the request to obtain the computer records and other evidence that will determine whether the e-mails are forgeries or authentic, rather than obstructing every effort to ascertain the true facts. As set out in Defendant's prior filing, "[w]henever something occurs at a trial that may tend to affect the impartiality of the jury, both sides have a vital interest in learning everything there is to know about the matter." *United States v. Moten*, 582 F.2d 654, 660 (2d Cir. 1978).[7]

One thing is patently obvious from a review of the copies of the e-mails submitted to this Court. They are either copies of real e-mails or they are clever forgeries of what look like real e-mails between jurors in this case. As set forth in the Affidavit of Phillip Hampton, (EXHIBT 16), and in Defendant's previously submitted "Motion for Issuance of Subpoenas for November 17, 2006 Evidentiary Hearing," (Doc. ___, filed under seal on November 9, 2006), and "Defendant's Motion for Expedited Consideration of an Order to Require Preservation of Evidence," (Doc. 472), there are computers, computer records and custodial witnesses that should be able to prove, once and for all, whether or

---

[7] Indeed, in *Moten* the Second Circuit goes on to note that in such circumstances, "[t]he interest of the government is based not only on its concern with having an impartial jury, but also on its responsibility to investigate possible jury tampering." 582 F.2d at 660. Defendant respectfully submits that both of these interests should be paramount to the Government's patent desire to sustain the guilty verdicts returned by the jury in this case.

11

not these e-mails are authentic. Until this Court takes that step, the central question relating to these allegations of misconduct will never be answered.

As suggested in those previously filed motions, there are a number of methods that can be employed to gather evidence that will not invade the privacy of the jurors and will not result in any embarrassment or public revelation of their private communications. Indeed, as the copies of what appear to be the jurors' e-mails continue to arrive in such a fashion, it would appear that the jurors themselves have a legitimate and compelling interest in having these allegations dispelled if they are based on forged documents. The only way to do that fully and fairly and—perhaps most importantly—with finality, is for this Court to obtain the necessary evidence and records and make a determination in an appropriate proceeding as to the authenticity of the e-mails. Contrary to the Government's suggestion that finality can be obtained by simply denying Defendant's motion and proceeding to sentencing, (Gov't Response at 7), this issue will not go away so long as Defendant has a right to appeal to higher courts and so long as the anonymous letters containing what appear to be copies of jurors' e-mails continue to arrive in the mail.

Defendant respectfully submits that the three e-mails that have been obtained subsequent to this Court's Order denying Defendant's initial new trial motion constitute the "colorable showing of extrinsic influence," *Ayarza-Garcia*, 819 F.2d at 1051, that require this Court to conduct an appropriate investigation, and that, pursuant to the Supreme Court's mandate in *Remmer v. United States*, 350 U.S. 377, 379, 76 S.Ct. 425 (1956), that investigation should ensure that "the entire picture should be explored." It would appear that the most logical way to proceed would be for this Court to authorize

the collection and examination of evidence necessary to determine the authenticity of the e-mails and hold an appropriate hearing to make that determination. Once that determination is made, the Court would be in a good position to determine if additional hearings are necessary, including a hearing at which the jurors could be examined further. How this Court proceeds is, of course, within the Court's broad discretion. Defendant respectfully submits, however, that this Court has a nondiscretionary duty to investigate, and ultimately a duty to provide access to the truth as to this issue. Then, and only then, will this Court be in a position to make a final and fair determination of whether or not Defendant was deprived of his Sixth Amendment right to a fair trial before an impartial jury that was not tainted by consideration of extrinsic evidence or other misconduct.

WHEREFORE, Defendant respectfully prays that this Court enter an Order: (1) supplementing the record as to Defendant's new trial motion; (2) to obtain the previously-described computers and records; (3) to conduct a further evidentiary hearing pursuant to either a reconsideration of this Court's previously-entered Order denying Defendant's motion for new trial or Rule 33(b)(1); and (4) upon good cause shown, granting Defendant a new trial and such other and further relief as this Court may deem just and proper.

This 26th day of February, 2006.

Respectfully submitted,


/s/ Arthur W. Leach
Arthur W. Leach
Terry Lucas Butts
Leslie V. Moore
2310 Marin Drive
Birmingham, Alabama 35203
Phone:  205-822-4224
Fax:  205-824-0321

James K. Jenkins
Maloy & Jenkins
25th Floor
75 Fourteenth Street, NW
Atlanta, Georgia 30309
Phone:  404-875-2700

Frederick G. Helmsing
Helmsing, Leach, Herlong, Newman
   & Rouse, P.C.
P.O. Box 2767
Mobile, Alabama 36652
Phone:  251-432-5521

Fred D. Gray, Sr.
Gray Langford Sapp McGown Gray
   & Nathanson
P.O. Box 830239
Tuskegee, Alabama 36083-0239
Phone: 334-727-4830

James W. Parkman, III
Richard Martin Adams
Parkman & Associates
739 West Main Street
Dothan, Alabama  36301
Phone:  334-792-1900

Attorneys for Richard M. Scrushy

14

**CERTIFICATE OF SERVICE**

I hereby certify that on the 26th day of February, 2007, I personally filed the foregoing "Defendant Richard M. Scrushy's Motion to Supplement Defendant's Previously Filed Motion to Reconsider Order Denying New Trial and to Supplement Record, or in the Alternative, Motion for New Trial Based on Newly Discovered Evidence" with the Clerk of the Court using the CM/ECF system which will send notification of such to counsel of record.

/s/ Leslie V. Moore
Leslie V. Moore
2310 Marin Drive
Birmingham, Alabama 35243
Phone: (205) 822-4224
Fax:    (205) 824-0321
E-Mail: les.moore@lvmlaw.com