IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA RECEIVED
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | 2007 APR 18  P 3: 37 |
| | | |
| V. | ) | DEBRA P. HACKETT, CLK |
| | | U.S. DISTRICT COURT |
| DON EUGENE SIEGELMAN, | ) | MIDDLE DISTRICT ALA |
| AND RICHARD SCRUSHY, | | Case No: 2:05cr119-MEF |
| | ) | |
| DEFENDANTS. | | |
| | ) | |

### MOTION TO DISMISS DEFENDANT'S RICHARD SCRUSHY'S CASE FOR LACK OF JURISDICTION AND BRIEF IN SUPPORT THEREOF

COMES NOW Defendant, Richard Scrushy, by and through the undersigned counsel, and moves this Court to dismiss Defendant's above referenced case for lack of jurisdiction and as grounds therefore would show as follows:

**I.** Defendant Scrushy was indicted in 2005 on charges arising from Title 18 United States Code. Subsequently, Defendant Scrushy was found guilty on June 29, 2006, pursuant to the grant of original jurisdiction by 18 U.S.C. §3231.

The district court got its jurisdiction over Defendant Scrushy from 18 U.S.C. §3231, which purportedly gives the "district courts of the United States...original jurisdiction...of all offenses against the laws of the United States." §3231, as well as most of chapter 211 (entitled "Jurisdiction and Venue") of Title 18, was codified on June 25, 1948, when Title 18 was originally codified upon the enactment of Public Law 80-772, in the Second Session

1

of the 80th Congress.

"The challenge in this case goes to the subject-matter jurisdiction of the [district] court and hence its power to issue the order." United States Catholic Conference v. Abortion Mobilization, Inc., 487 U.S. 72,77 (1988). Thus, the "question is, whether...[the district court's] action is judicial or extra-judicial, with or without the authority of law to render [the] judgment." Rhode Island v. Massachusetts, 37 U.S. (12 Pet.) 657,718 (1838), and to issue the commitment order.

"Federal courts are courts of limited jurisdiction...Jurisdiction of the lower federal courts is further limited to those subjects encompassed within a statutory grant of jurisdiction." Insurance Co. Of Ireland, Ltd. V. Compagnie des Bauxite de Guinea, 456 U.S. 694, 701 (1982); Kline v. Burke Const. Co., 260 U.S. 226, 234 (1922) (all lower federal courts "derive[] [their] jurisdiction wholly from the authority of Congress"); United States v. Hudson & Goodwin, 11 U.S. (7 Cranch) 32, 33 (1812) (federal courts "possess no jurisdiction but what is given to them by the power that creates them."). If anything, this is even truer in criminal cases. United States v. Hall, 98 U.S. 343, 345 (1879) (federal "courts possess no jurisdiction over crimes and offenses...except what is given to them by the power that created them."); Hudson & Goodwin, 11 U.S. at 33-34. *See also*, e.g. United States v. Wiliberger, 18 U.S. (5 Wheat) 76, 95-105 (1820) ("the power of punishment is vested in the legislative, not the judicial department," criminal statutes are to be construed strictly, "probability" cannot serve to "enlarge a statute" and an offense not clearly within the terms

of a statute precludes federal court jurisdiction).

Subject-matter jurisdiction means "the courts' statutory or constitutional power to adjudicate the case," United States v. Cotton, 535 U.S. 625, 630 (2002) (quoting Steel Co. V. Citizens for a Better Environment, 523 U.S. 83, 89 (1998)); Rhode Island, 37 U.S. at 718 ("Jurisdiction is the power to hear and determine the subject-matter in controversy between parties to a suit, to adjudicate or exercise any judicial power over them"); Reynolds v. Stockton, 140 U.S. 254, 268 (1891) ("Jurisdiction may be defined to be the right to adjudicate concerning the subject matter in a given case"). "Subject matter limitations on federal jurisdiction serve institutional interests by keeping the federal courts within the bounds of the Constitution and Congress have prescribed," Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 583 (1999).

"Without jurisdiction the court cannot proceed at all in any cause...and when it ceases to exist, the only function of the court is that of announcing the fact and dismissing the cause." Steel Co., 523 U.S. at 94 (quoting Ex Parte McCardle, 74 U.S. (7 Wall) 506, 514 (1868)); Willy v. Coastal Corp., 503 U.S. 131, 137 (1992) ("lack of subject-matter jurisdiction .....precludes further adjudication"). The Supreme Court has asserted over and over that "[t]he requirement that jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception." Steel Co., 523 U.S. at 94-95 (quoting Mansfield C.&L.M.R. Co. V. Swan, 111 U.S. 379, 382 (1884)); see also, Insurance Co. Of Ireland, 456 U.S. at 702.

Because subject matter jurisdiction "involves a court's power to hear a case, [and thus] can never be forfeited or waived ...correction [is mandatory] whether the error was raised in district court" or not. <u>Cotton</u>, 535 U.S. at 630; <u>Steel Co.</u>, 523 U.S. at 94-95. When a district court did "not have subject-matter jurisdiction over the underlying action...[its] process[es] [are] *void* and an order of [punishment] based [thereupon]... must be reversed," <u>United States Catholic Conf.</u>, 487 U.S. at 77; <u>Willy</u>, 503 U.S. at 139 ("[T]he [punishment] order itself should fall with a showing that the court was without authority to enter the decree."); <u>Ex Parte Fisk</u>, 113 U.S. 713, 718 (1885) ("When...a court of the United States undertakes, by its process...to punish a man...[respecting] an order which that court had no authority to make, the order itself, being without jurisdiction, is *void* and the order punishing....is equally *void*).

A court "has jurisdiction to render a particular judgment only when the offense charged is within the class of offenses placed by the law under its jurisdiction." <u>Bowen</u>, 306 U.S. at 24. If it is found that the court lacked jurisdiction to try Defendant Scrushy, the judgment is *void* because the court lacked jurisdiction, the defendant must be discharged. <u>Ex Parte Yarbrough</u>, 110 U.S. 651, 654 (1884).

Defendant Scrushy avers that H.R. 3190[1]: (1) failed to pass one or both House of Congress and/or (2) that the legislative process continued after Congress adjourned *sine die* by legislative officers acting pursuant to H.Res. 219, all of which violated Article I, Section

---

[1] Which became Public Law 80-772

4

5, Clause 1, Article I, Section 7, Clause 2, and/or Article I, Section 7, Clause 3 of the Constitution-and any of which rendered Public Law 80-772 unconstitutional and *void ab initio*. Therefore, because "the offense[s] charged... [were] placed by the law under [the] jurisdiction," of the district court pursuant to 18 U.S.C. §3231 of Public Law 80-772, which is unconstitutional and "*void*, the court was without jurisdiction and Defendant Scrushy must be discharged." Yarbrough, 110 U.S. at 654. Since Public Law 80-772 has never been enacted as required by Article I, Section 5, Clause1, Article I, Section 7, Clause 2, and Article I, Section 7, Clause 3 of the Constitution, thereof, rendering *void ab initio* the jurisdiction by which the court acted to convict and enter judgment, the district court's actions were *ultra vires*," [Ruhrgas AG, 526 U.S. at 583 (*quoting* Steel Co., 523 U.S. at 101-102) and *coram non judice*". Rhode Island, 37 U.S. at 720.

The proceedings including the conviction and judgment thereupon "being without jurisdiction, is *void*, and the order punishing....[is] equally *void*." Fisk, 113 U.S. at 718, United States Cath. Conf., 487 U.S. at 77; Willy, 503 U.S. at 139. This is precisely what the defendant wants to "examin[e]...the jurisdiction of the court whose judgment of conviction is challenged," [Bowen, 306 U.S. at 23] and where, as here, the court was clearly "without jurisdiction...the defendant...must be discharged." Yarbrough, 110 U.S. at 654.

## II.    TITLE 18 (PUB. L. 80-772) IS UNCONSTITUTIONAL

### A.    Background Facts Introducing H.R. 3190

After numerous failed attempts, a bill–H.R. 3190–was introduced with a Report by

5

the Committee on the Judiciary, House of Representatives, and committed to the Committee of the entire House of Representatives on the State of the Union of the First Session of the 80th Congress (1947), entitled "Crimes and Criminal Procedure."[2] *See* HOUSE REPORT No. 304 (April 24, 1947), cover & pg. 1 (**App.A**); *see also* 94 CONG. REC. D556-57 (DAILY DIGEST) (charting H.R. 3190) (**App.B**). H.R. 3190 differed from "five...bills which...preceded it... [because] it constitute[d] a revision, as well as a codification, of the Federal Laws relating to crimes and criminal procedure." 93 CONG. REC. 5048-49 (May 12, 1947) ( **App.C.**).The Bill was intended (1) to revise and compile **all** of the criminal law, (2) to "restate[]" and "consolidate[]" "existing statutes," (3) to "repeal" obsolete, superseded, redundant and repetitious statutes," (4) to coordinate the Criminal Code with the "Federal Rules of Criminal Procedure" formerly enacted, and (4) to "clarify and harmonize" penalties of the "many acts" passed by Congress which were found to be "almost identical." (Id.) "The bill was ordered to be engrossed, was read a third time, and passed" the House on May 12, 1947, id: 94 CONG. REC. D556-57 (DAILY DIGEST), supra (**App.B),** sent to the Senate and there "referred to the Committee on the Judiciary." 93 CONG. REC. 5121 (**App. D)**.

## B.    Congress Adjourned *Sine Die* Without the Senate's Passage of H.R. 3190

On July 27, 1947, Congress conditionally adjourned pursuant to Sen. Con. Res. 33, without the Senate ever taking up H.R. 3190. *See* 93 CONG. REC. 10439, 10522 (July 26,

---

[2] May 12, 1947

1947) (**App.E**). "In effect the [July 27, 1947] adjournment was a *sine die* adjournment, not an inter-session adjournment." Kennedy v. Sampson, 511 F.2d 430,444, Appendix n.4 (D.C. Cir.1974).[3]

### C. Congress Adjourned *Sine Die* A Second Time Without the Senate's Passage of H.R. 3190.

On November 17, 1947, Congress reconvened pursuant to a Presidential proclamation. Yet, Congress again "adjourned *sine die* on December 19, 1947," without the Senate passing H.R. 3190. Kennedy, 511 F.2d at 444, Appendix n.4. Thus, the First Session of the 80th Congress adjourned *sine die* twice and closed without H.R. 3190 passing both houses as required. *See also* House Concurrent Resolution No.127, 80th Congress, 1st Session, Dec. 19, 1947, 61 Stat 1029 (declaring the Dec. 19, 1947 adjournment to be an adjournment *"sine die"* "notwithstanding the provisions of Sen. Con. Res. 33") (**App. F**); UNITED STATES CODE SERVICE, LAWS OF THE 80TH CONGRESS, FIRST SESSION, West Publishing Co. & Ed. Thompson Co. 1947, Adjournment Resolutions, H.Con. Res. 127, pg. LXXXIX (Dec. 19, 1947 adjournment was *sine die*) (**App.G**).

---

[3] Noting that [t]he President *pocket vetoed* 19 bills presented to him after the adjournment, "id., establishing that the adjournment was unequivocally *sine die*. Kennedy, 511 F.2d at 444, Appendix n. 4 ("The Senate and the House of Representatives [of the 80th Congress] adjourned on July 27, 1947, under a 'conditional final adjournment' resolution, H.Con.Res. 33"); 93 CONG.REC.10400. Pursuant to the resolution, the two Houses were to stand in adjournment until January 2, 1948 unless recalled into session earlier by specified Senate and House leaders. In effect, the adjournment was a *sine die* adjournment, not an intra session adjournment. On November 17, 1947, Congress convened pursuant to a proclamation of President Truman and adjournment *sine die* on December 19, 1947. The President *pocket vetoed 19 bills* presented to him after the adjournment of July 27, 1947").

**D. H.R. 3190; The Immortal Bill**

H. R. 3190 was never reintroduced by the House of Representatives during the Second Session of the 80th Congress, which began on January 2, 1948. Nevertheless, the Senate Committee on the Judiciary purported to resurrect H.R. 3190 with amendments on June 14, 1948, under Sen. Rep. No. 1620, without regard that it had *died*, not once, but *twice*, upon the *sine die* adjournments of the 80th Congress First Session. The Bill was purportedly reintroduced (under the same number no less) as if it had passed the House in the Second Session, which it did not. 94 CONG. REC. 8075 (June 14, 1948) (**App.H**). Compare 94 CONG. REC. D556-67 (DAILY DIGEST), supra (**App. B**) (showing only introduction of H.R. 3190 by the House of Representatives on April 24, 1947).

Significantly, H.R. 3190 was purportedly introduced into the Senate under Sen. Rep. No. 1620 with a "large volume of amendments" explaining that "the new Federal Rules of Criminal Procedure [were] keyed to the bill and [were] reflected in part II of [the new proposed] title 18." The  supporters of the Bill proffered that, by passing the bill, "[u]ncertainty will be ended." Its supporters wanted "the amendments adopted en bloc," including a new jurisdictional section for Title 18.

In fact, H.R. 3190 was **not** included in Sen. Rep. No. 1620 and **only the text of the proposed amendments were included, therein.** *See*, Sen. Rep. No. 1620 (**App.I and J**).

"[T]he amendments were considered and agreed to en bloc" after which they were read and then "ordered to be engrossed." 94 CONG. REC. 8721-22 (June 18, 1948) (**App.**

8

**J and App. R).** The bill itself–wholly separate from the "amendments –was "ordered...to be read a third time" which it was and it "passed" the Senate.  It was moved that "the Senate insist upon its amendments" to H.R. 3190 in the House. (Id. At 8722). **(App. R.).**

The House subsequently received Sen. Rep. No. 1620 purporting to contain H.R. 3190 with proposed amendments.  The House clerk "read the Senate amendments" into the record, with which the House concurred.  94 CONG. REC. 8864-65 (June 18, 1948) **(App. K and App. R)**. The House **never** voted on the text of H.R. 3190, amended or otherwise, **at the time or at any other time** during the Second Session of the 80th Congress.**(App.R)**. Other than concurring with the Senate amendments, the House took no action on H.R. 3190, which was reintroduced into the Second Session of the 80th Congress by the Senate through Sen. Rep. No. 1620 for the first time on June 18, 1948. **(App. R).** Specifically, H. Con. Res. 219 resolved that notwithstanding the adjournment of the two Houses until December 31, 1948, the Speaker of the House of Representatives and the President pro tempore of the Senate be, and they are hereby, authorized to sign enrolled bills and joint resolutions.  *See* CONCURRENT RESOLUTIONS, SECOND SESSION, 80TH Cong., H. Con. Res. 219, June 20, 1948, 62 Stat. 1436 **(App. L.).**

> **E.     By House Resolutions 218 and 219, Congress Agreed to Adjourn *Sine Die* and to Continue Legislative Business Thereafter**

On June 19, 1948, the Senate informed the House that "the Senate had passed without amendment concurrent resolutions of the House," namely H. Con.Res. 218 and 219, 94

CONG. REC. 9349 **(App. M.)**. H. Cong. Res. 218 "provid[ed] adjournment of the two Houses of Congress until December 31, 1948" and H. Con. Res. 219 "authoriz[ed] the signing of enrolled bills following adjournment." (Id.).

**F.    The Second Session of the 80th Congress Adjourned *Sine Die***

Congress adjourned on June 20, 1948, pursuant to H. Cong. Res. 218, which required re-assembly on "Friday, December 31, 1948, at 12 o'clock meridian." 94 CONG. REC. 9349, 9169 **(App. N)**. The adjournment was "in effect...a *sine die* adjournment, not an inter-session adjournment." Kennedy, 511 F. 2d at 444, Appendix, n. 5. [4] Neither House of Congress was in session thereafter until July 26, 1948, when both Houses reconvened "pursuant to a proclamation of President Truman." Kennedy, 511 F. 2d at 444, Appendix, n. 5. **(App. R)**.

**G.    The Improper Signing of H.R. 3190 by the Speaker of the House and President Pro Tempore of the Senate, and the Illegal Presentment to and Approval Thereof by the President Pursuant to H.Con. Res. 219.**

With both Houses adjourned *sine die*, with no quorum, with Congress

---

[4] Noting that "[t]he President pocket vetoed 14 bills presented to him after the adjournment," establishing that the adjournment was unequivocally *sine die*. Kennedy, 511 F. 2d at 444, Appendix, n. 5 ("The Senate and House of Representatives [of the 80th Congress] adjourned on June 20, 1948, under a "conditional final adjournment" resolution, H. Con. Res. 218; 94 Cong. Rec. 9158. Pursuant to the resolution, the two Houses were to stand in adjournment until December 31, 1948, unless recalled into session earlier by specified Senate and House leaders. In effect, the adjournment was a *sine die* adjournment, not an intra session adjournment. On July 26, 1948, Congress convened pursuant to a proclamation of President Truman. The President **pocket vetoed 14 bills** presented to him after the adjournment of June 20, 1948").

disassembled.and dispersed, the Speaker of the House and President pro tempore signed H.R. 3190 [5] on June 23, 1948. 94 CONG. REC. 9354 (**App.Q**); National Archives & Records Adm. Cert., H.R. 3190 signed by the Speaker, President Pro Tempore, and President Truman. (**App. P and App. R**). Again the Congress adjourned *sine die*, disassembled, dispersed, with no quorum to do business, the bill was purportedly presented by the Committee on House Administration to President Truman, on June 23, 1948, who then signed H.R. 3190 on June 25, 1948 at 12:23 P.M. E.D.T., 94 CONG. REC. 9364-67 (**App. Q**); National Archives & Records Adm. Cert., H.R. 3190, supra (**App. P**); 94 CONG. REC. d557 (Daily Digest), supra (**App. B and App. R**).

## H. The Signatories of H.R. 3190 Knew the Enacting Clause Was False When Signed

The enacting clause of Public Law 80-772 (H.R. 3190), **as signed** by the Speaker of the House, the President pro tempore of the Senate, and President Truman, stated that the enactment proceeded "by the Senate and House of Representatives of the United States of America **in Congress assembled**." *See* National Archives & Records Adm. Cert., H.R. 3190 as signed into P.L. 80-772, supra (**App. P**). Each signatory knew when he signed the Bill that Congress had already been adjourned and disassembled, that neither "House" was

---

[5] As previously noted, the Senate voted on the amendments proposed under Sen. Rep. No. 1620 separately from H.R. 3190 itself. Moreover, the Senate ordered the amendments in question to be "engrossed" before and separately from the "read[ing]" and "pass[age]" of H.R. 3190. *See 94* CONG. REC. 8722, supra (**App.J**). The House voted on the amendments in question, but never voted on H.R. 3190 at any time during the Second Session of the 80th Congress. 94 CONG. REC. 8864-65, supra (**App.K**).

legislatively in existence at that time, and that the legislative process had **ceased** within the terms of Article I, Sections 5, and Article I, Section 7 on June 20, 1948.

### III.     FAULTY ENACTMENT OF PUBLIC LAW 80-772

### A.     Public Law 80-772 Is Unconstitutional Because H.R. 3190 Never Passed Both Houses As Required by Article I, Section 7, Clause 2, of the United States Constitution, and Is, Therefore, Void *Ab Initio*

### 1.     The Legal Principle

This case presents the "profoundly important issue"[6] of the constitutionality of an act of Congress.[7] Indeed, it presents a matter "of such public importance as to justify the filing of this motion and to require immediate determination of this Court." Clinton v. New York, 524 U.S. 417, 455 (Scalia, J., and O'Connor, J., joining in part and dissenting in part)(adopting language directly from Sup. Ct. R. 11).[8]

Although "[a]ll legislative Powers herein granted shall be vested in a Congress of the United States, which shall consist of a Senate and a House of Representatives," (Art. I, §1, U.S. Const.) "When [Congress] exercised its legislative power, it must follow the 'single,

---

[6] Clinton, 524 U.S. at 439 (1998)

[7] INS v. Chadha, 462 U.S. 919, 929 (1983)

[8] Clinton, 524 U.S. at 447, "twice had full argument and briefing," as did Chadha, 462 U.S. at 943-44 ("The important issues have been full briefed and twice argues."); "[T]he importance of the question," Metropolitan Washington Airports Authority v. Citizens for the Abatement of Aircraft Noise, Inc., 501 U.S. 252, 263 (1991), has always been noted; Wright v. United States, 302 U.S. 583, 586 (1983) ("the importance of the question"); The Pocket Veto Case, 279 U.S. 655, 673 (1929) ("the public importance of the questions presented"); Missouri Pacific Railway Co. V. Kansas, 248 U.S. 276, 279 (1919) ("the importance of the subject").

finely wrought and exhaustively considered procedures' specified in Article I." Metropolitan Wash. Airports, 501 U.S. at 274 (*quoting* Chadha, 462 U.S. at 951). Article 1 establishes "just how those powers are to be exercised." Chadha, 462 U.S. at 945.

An act of Congress "does not become a law unless it follows each and every procedural step chartered in Article I, §7, cl. 2, of the Constitution." Landgraf v. USI Film Products, 511 U.S. 244, 263 (1994) (citing Chadha, 462 U.S. at 946-51 (emphasis added)); Clinton, 524 U.S. at 448 (noting requisite "steps" taken before bill in question may "become a law" and establishing that a procedurally defective enactment cannot "become a law" pursuant to the procedures designed by the Framers of Article I, §7, of the Constitution).

The United States Constitution requires "three procedural steps": (1) a bill containing its exact text be approved by a majority of the Members of the House of Representatives; (2) the Senate approve **precisely the same text**; and (3) **that text** be signed into law by the President. The United States Supreme Court has stated: "If one paragraph of **that text** had been omitted **at any one of those three stages**, [the] law [in question] would not have been validly enacted.[9]" Clinton, 524 U.S. at 448 (emphasis added).

The "draftsmen" of the Constitution "took special pains to assure these [legislative]

---

[9] All legislative Powers herein granted shall be vested in a Congress of the United States, which shall consist of a Senate and House of Representatives. Art. I, §1, of the Constitution.

[A] Majority of each [House] shall constitute a Quorum to do Business... Art. I, §5, C1.1

Every Bill which shall have passed [both Houses], shall before it becomes a Law be presented to the President of the United States; If he approve he shall sign it... Art. I, §7, C1.2.

Every...Resolution...to which the Concurrence of [both Houses} may be necessary (except on a question of Adjournment) shall be presented to the President of the United States and before the same shall take effect, shall be approved by him.... Art. I, §7, C1.3.

requirements could not be circumvented.  During the final debates on Art. I, §7, C1.2, James Madison expressed concern that it might easily be evaded by the simple expedient of calling a proposal a 'resolution' or 'vote' rather than a 'bill'.  As a consequence, Art. I, §7, C1.3,...was added." Chadha, 462 U.S. at 947 (citing 2 Farrand, 301-302,304-305).

Whether actions authorized under a resolution are "an exercise of legislative powers depend not on their form but upon 'whether they contain matter which is properly to be regarded as legislative in its character and effect, "Chadha, 462 U.S. at 952 (quoting Sen. Rep. No. 1335, 54th Cong. 2d Sess., 8 (1897).  "If the power is legislative, Congress must exercise it in conformity with the bicameralism and presentment requirements of Art. I, §7." Metropolitan Wash. Airports, 501 U.S. at 276. *See also* Bowsher v. Synar, 478 U.S. 714, 756 (1986) (Stevens, J., concurring) ("It is settled, however, that if a resolution is intended to make policy that will bind the Nation, and thus is 'legislative in its character and effect,' Sen. Rep. No. 1335, 54th Cong., 2d Sess., 8 (1897)-then the full Article I requirements must be observed.  For 'the nature or substance of the resolution, and not its form, controls the questions of its disposition.' Ibid.").

Title 1, U.S. C. §106 (enacted July 30, 1947), ch. 388, §1, 61 Stat. 634, requires: "When a bill or joint resolution shall have passed both Houses, it shall be printed and shall then be called the enrolled bill, or joint resolution as the case may be, and shall be signed by the presiding officers of both Houses and sent to the President of the United States." The Statute provides: "During the last six days of a session such engrossing and enrolling of bills

and joint resolutions may be done otherwise than as above prescribed, upon the order of Congress by concurrent resolution." (Emphasis added).  Thus, although engrossment and enrollment of bills and resolutions may be completed in exceptional manner "[d]uring the last six days of a session," the test and context clearly reveal the procedures involved are required to be performed while Congress is **in session**.

### 2.     The First Death of H.R. 3190

Congress indisputably adjourned *sine die* on July 27, 1947, thereby breaking the continuity of that legislative session.  Constitution, JEFFERSON'S MANUAL & RULES OF THE HOUSE OF REPRESENTATIVE , 79TH Cong. 2d Session, (H.Doc. No. 769); Rules of the House of Representatives, §941, Sec. 132, pg. 459 (Leg. Reorganization Act of 1946 mandating that both "Houses shall adjourn *sine die* no later than the last day of ...July of each year").  *See also*, Kennedy, 511 F.2d at 444 Appendix n. 4; Anderson v. Dunn, 19 U.S. (6 Wheat)204, 231 (1821) ("[T]he legislative body ceases to exist on the moment of its adjournment or periodic dissolution...Continuity of a session of Congress is broken...by an adjournment *sine die*"), limited and partially overruled on other grounds, Kilbourne v. Thompson, 103 U.S. 168, 196-99 (1881); The Pocket Veto Case, 279 U.S. 655, 681 (1929) (final adjournment "terminates the legislative existence of the Congress"); House Doc. No. 769, supra, JEFFERSON'S MANUAL, pg. 265 (emphasis added) (applying Art. I, §3, U.S. Const. (**App.S**). *See also* 106th CONGRESS HOUSE RULES MANUAL, House Coc. No. 106-320, pg. 301 (**App.T**) (same).

The July 27, 1947, adjournment *sine die* caused the death of H.R. 3190, because all pending legislation dies upon such adjournment. See F. Riddick, THE UNITED STATES CONGRESS: ORGANIZATION AND PROCEDURE 56 (1949). See also Memorandum for Janet Reno, Attorney General, from Acting Asst. AG Chris Schroeder, Office of Legal Counsel, U.S. Dept of Justice (Nov. 19, 1996) (Adjournment *sine die* "produce[s]...the death of all pending legislation") (quoting Continuing Effect of a Congressional Subpoena Following the Adjournment of Congress, 6 Op. O.L.C. 744 (1982) and citing F. Riddick, THE UNITED STATES CONGRESS: ORGANIZATION AND PROCEDURE, supra at 56.

### 3.    H.R. 3190 Dies a Second Time

Congress re-convened on November 17, 1947, by Presidential proclamation. Even assuming the adjournment on July 27, 1947, did not close the former session, the reconvention undoubtedly did because it began a new session as a matter of law. As established by a Congressional Manual, "If convened by the President's proclamation, [Congress] **must** begin a new session, and **of course** determine the preceding one to have been a session...[Such] act of adjournment is merged in the higher authority of the Constitution." House Doc. No. 769m supra, JEFFERSON'S MANUAL, PG. 265 (emphasis added) (applying Art. 1, §3, U.S. Const., supra. (**App.T**) (same).

The Presidential proclamation "beg[a]n a new session and of course determine[d] the preceding [session] to have been a [concluded] session," effectively rendering it adjourned *sine die* and thereby "terminat[ing] the legislative existence of Congress." The Pocket Veto

Case, 279 U.S. at 681.

"Congress [can] separate in two ways only, to wit, by adjournment or dissolution by the efflux of their time." 106th CONG. H. RULES MANUAL, House Doc. No. 106-320, supra at 301 (**App. T**) (emphasis added). The convention of a session by Presidential proclamation has no relation to "dissolution by the efflux of" a congressman's "time". Such a Presidential convention can *only* effectuate an adjournment *sine die* because it acts to cut off or close the prior session. Id., pg. 301-302.

Thus, the "new session", exclusively "terminate[d]" the prior session and its "legislative existence." The Pocket Veto Case, 279 U.S. at 681. At that time, "all pending matters....discontinued and all parliamentary functions cease[d]." MEMO FOR AG JANET RENO, supra (citing McGrain v. Daugherty, 273 U.S. 135, 181 (1927) (relying on SENATE RULES AND MANUAL, 1925, pg. 303)). Therefore, even if the adjournment *sine die* on July 27, 1947, did not "produce" or "result in" the death of H.R. 3190, which had not yet been enacted, the reconvening of Congress by Presidential proclamation certainly and unavoidably did.

**4.    The Third and Penultimate Death of H.R. 3190**

The Congressional session which was convened by Presidential proclamation on November 17, 1947, "adjourned *sine die* on December 19, 1947." Kennedy, 511 F.2d at 444, Appendix n. 4. The adjournment caused "the death of all pending legislation not enacted." which included H. R. 3190. MEMO FOR AG JANET RENO, supra (citation omitted). H.R.

17

3190 certainly died with the adjournment *sine die* on July 27, 1947. But, even if it did not, it certainly did when Congress met in "a new session" pursuant to Presidential proclamation and under "the higher authority of the Constitution [Art. I, §3]." 106th CONG. H. RULES MANUAL at 301-302, supar (**App.S and App. T**). But, then again, the "adjournment *sine die* on December 19, 1947," undoubtedly "produced....the death" of H.R. 3190, if it had somehow survived the earlier effectual adjournment *sine die*.

Congress in any case expressly declared the December 19, 1947, adjournment to be an adjournment *sine die*. H.Con. Res. No. 127, 80th Congress, 1st Session, Dec. 19, 1947, 61 Stat 1029, supra (**App.F**); UNITED STATES CODE SERVICE, LAWS OF THE 80TH CONGRESS, FIRST SESSION, H. Con. Res. 127, supra, pg. LXXXIS (**App.G**).

H.R. 3190 was not re-introduced in the new session of Congress, which began under Presidential proclamation on November 17, 1947, or at any time by the House of Representatives during the Second regular Session (1048) of the 80th Congress. H.R. 3190 reappeared, albeit by number only, and without text, under Sen. Rep. 1620 on June 14, 1948, as if it had never died during the previous adjournments *sine die* or as if it had been reintroduced under the same House of Representatives' number with which it had originally entered the House, on May 12, 1947. 94 Cong. Rec. 8075, supra (**App. H**); Sen. Rep. 1620), supra (**App.I**); 93 Cong. Rec. 5048-49 (original introduction of H.R. 3190) supra (**App.C**).

Sen. Rep. 1620 "contained a large volume of amendments" purportedly intended for H.R. 3190, which had never been previously presented to the House of Representatives, and

which were hastily "agreed to en bloc", "read", and "ordered to be engrossed". Then, and quite separate from the action upon the amendments, the Bill (H.R. 3190) was "ordered... to be read a third time," and it "passed" the Senate. [10] The amendments and H.R. 3190 were then received by the House of Representatives, where the Clerk read only the amendments contained in Sen. Rep. No. 1620. The House of Representatives did not address in any way the text of H.R. 3190, but merely concurred in "[t]he Senate amendments." 94 CONG.REC. 8864-65, supra (**App.K**).

The House of Representatives never considered or voted on the text of H.R. 3190-the bill itself-during this session of Congress, and on June 20, 1948, entered an adjournment that was "in effect...a *sine die* adjournment," <u>Kennedy</u>, 511 F.2d at 444, Appendix n. 5. That part of H.R. 3190 that "passed" the Senate on June 18, 1948, 94 CONG.REC. 8721-8722, supra (**App.J**), was that text which was read for the "third time". The **amendments** under Sen. Rep. No. 1620 were **read a single time** in the House, but H.R. 3190 **as purportedly amended** was never read in either House **at any time**, was not voted upon **at any time**, and never passed **at any time**. The Senate's order to "engross" the "amendments"-clearly not engrossed on June 18, 1948, when H.R. 3190 was read for the third time-established that the

_____

[10] The first and second readings of H.R. 3190 were the readings in the session of Congress which ended by adjournment *sine die* on July 27, 1947, because it had not been subject to discussion, debate, or consideration since that session ended. National Archives & Records Adm. Cert., H.R. 3190, supra (**App. P**). Thus the first and second readings of the bill in the Senate were on the bill that was passed by the House in the First Session, not the amended bill that was presented to the President for signature.

bill read for the "third time" by the Senate (and never voted on by the House in that session) was **an entirely different bill** *textually* than the one signed by the Speaker of the House, the President pro tempore of the Senate, and President Truman.

**App. V(1)** is the version of H.R. 3190 read in the House of Representatives in 1947. **App. V (2)** is the version of H.R. 3190 read in the Senate in 1947. The last page of **App. V(4)** shows that Title 18 (H.R. 3190) was not enacted into positive law in 1947. **App. V(3)** is the Senate's hand-written and typed amendments to **Apprendices V(1) and V(2)**. **App. V(3)** also reveals on its first page what was read in the Senate in June, 1948. **App. V(4)** is the bill that was signed into law in June, 1948. It clearly is the amended **App. V(3)** with the handwritten and typed amendments transformed into printer's ink. It also clearly is not the same bill that was read twice in 1947.

**Appendices V(1), V(2), V(3), and V(4)** conclusively show that in 1948 the Senate read the amended bill-not the one read in 1947. Thus, there were no three readings of the same bill. There were two readings of the 1947 bill that died *sine die* twice and was never transformed into positive law. There was a single reading in the Senate of the amended 1948 bill. The law we have now is the 1948 amended bill read in 1948 in the Senate only, not the 1947 one that was read twice but twice died *sine die*. The amended 1948 bill, which was read only once in the Senate only, is void ab initio because it was enacted contrary to the Constitutional prescription for valid Congressional enactment of laws, *See* U.S. Constitution, Article I, Section 7, Clause 2.

20

5.      **Congress' Attempt to Resurrect H.R. 3190 by Means of Post-Adjournment Legislation Pursuant to H.Con. Res. 219 Violated the Quorum, Bicameral, and Presentment Requirements of Article I of the Constitution.**

After Congress adjourned *sine die* on June 20, 1948, pursuant to H. Con. Res. 218 and 219, a single officer of each House of Congress signed a bill purporting to be H.R. 3190 on June 23, 1948, 94 CONG. REC. 9354, supra **(App.O and Q)**, and presented **that bill** to the President, who signed it on June 25, 1948. 94 CONG. REC. 9365-67 **(App. P and Q)**. Thus, the post-adjournment signature "provision [of H. Con. Res. 219] was an important part of the legislative scheme," leading to the enactment of Public Law 80-772, without which it would never "become a Law." Bowsher, 478 U.S. at 728. Public Law 80-772 expressly **and falsely** stated that it was "enacted" while both Houses were "in Congress assembled", when in fact, **Congress was not in session.**   See National Archives & Records Adm. Cert. H.R. 3190 as signed into P.L. 80-772 **(App. P)**.

1 U.S.C. §101 requires every "enacting clause of all Acts of Congress" to state: "Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled." The Supreme Court, in Marshall Field & Co. V. Clark, 143 U.S. 649 (1892), defined the essence of this procedure:

> **The signing** by the Speaker of the House of Representatives, and, by the President of the Senate, **in open session, of an enrolled bill is an official attestation by the two houses** of such bill as one that has passed Congress. It is a **declaration by**

> **the two houses,** through their presiding officers, **to the President**, that a bill, thus attested, has received in due form, **the sanction of the legislative branch** of the government, and that it is delivered to him in obedience to the constitutional requirement that all bills which pass Congress shall be presented to him.
>
> 143 U.S. at 672 (emphasis added).

1 U.S.C. §106 codified this well-recognized substantive and implicit constitutional requirement. Reading 1 U.S.C. §§ 101 and 106 together compels the conclusion that all acts respecting a bill toward enactment must occur **at least through presentment to the President** while Congress is in session.

It is well established that a *sine die* "adjournment terminates the legislative existence of Congress." The Pocket Veto Case, 279 U.S. at 681. "The expression, a 'house', or 'each house', when employed...with reference to the faculties and powers of the two chambers...always means ...the constitutional quorum, assembled for the transaction of business, and capable of transacting business." 279 U.S. at 683 (quoting I CURTIS' CONSTITUTIONAL HISTORY OF THE UNITED STATES 486, n. 1). Moreover, the term "House" means "the House in session", 279 U.S. at 682, and "as organized and entitled to exert legislative power, that is, the legislative bodies 'organized conformably to law for the purpose of enacting legislation." Id. (quoting Missouri Pacific Railway, 248 U.S. at 281). Thus, the "attestation" by the presiding officers and the "**declaration by the two houses...**to the President." Marshall Field, 143 U.S. at 672, could not have been an "attestation" or "declaration" by any such "house" or "houses" during adjournment *sine die* because no such

"houses" exist constitutionally at such time. *See also,* <u>United States National Bank of Oregon</u> <u>v. Independent Insurance Agents of America</u>, 508 U.S. 439, 455, n. 7 (1993) (noting that the rule established in <u>Marshall Field</u>, 143 U.S. at 672, made statutory by 1 U.S.C. §106, turned upon "the enrolled bill signed in **open session** by the Speaker of the House of Representatives and the President of the Senate" (emphasis added).

When a bill has passed the House of Representatives, it must be printed as an "engrossed bill", which "shall be signed by the Clerk of the House...sent to the other House, and *in that form* shall be dealt with by that House and its officers, and, if passed, returned signed by said Clerk." 1 U.S.C. §106 (emphasis added).

In the immediate case, H.R. 3190 was passed by the House of Representatives on May 12, 1947, engrossed, and sent to the Senate, and there referred to the Senate Committee on the Judiciary. *See* 93 CONG. REC. 5048-49, 5121, supra (**App.C**). However, it was not dealt with "in that form" and did not pass "in that form".

Instead, amendments were proposed under cover of Sen. Rep. No. 1620, were "agreed to en block," **read** into the record a single time, and "ordered to be engrossed", 94 CONG. REC. 8721-22, supra (**App. J**). Then, "the bill [H.R. 3190] was **read** the third time and passed." 94 CONG. REC. 8722, supra (**App.J**).

This contravenes the procedures of the House of Representatives for the 80th Congress. "When a bill with Senate amendments comes before the House, the House takes up each amendment by itself..." H.Doc. No. 769, <u>STAGES OF A BILL IN THE HOUSE, §</u>

983, No. 13, pg. 483.

Moreover, to be expected, "[t]he House in which a bill originates enrolls it." Id. No. 15. However, in the case of House bills, such H.R. 3190, the "chairman of the Committee on House Administration...affixes to the bills examined a certificate that the bill has been found truly enrolled." Id. No. 16. **No such certificate is "affixed" to H.R. 3190 as certified by the officials of the National Archives**. National Archives & Records Adm. Cert. H.R. 3190, supra **(App.P)**.

Thus, it appears on the face of the purportedly amended H.R. 3190, that it was not "enrolled," there is no record in the House of Representatives prior to June 20, 1948–the day Congress adjourned *sine die*–that it had been or was to be "enrolled" and, therefore, in addition to the fact that the bill did not follow the course of law as prescribed, it lacks both of the elements underlying the Marshall Field evidentiary rule–i.e., the "signing" must be "in open session" and must be upon "an enrolled bill". Marshall Field, 143 U.S. at 672. [11]

The reference to the H.R. 3190 purportedly "found truly enrolled" is identified thus:

---

[11] On July 26, 1948, "Mr. LaComte, from the committee on house Administration, reported that that committee had examined and found" that 3190 had been "truly enrolled." 94 CONG. REC. 9363, supra, **(App.U). This alleged finding appears over a month after the June 20, 1948 adjournment *sine die* and over a month since the Speaker of the House, President pro tempore of the Senate, and a President Truman allegedly signed H.R. 3190 and it was deposited in the State Department as an enactment.** The statutory mandate after final passage and printing to "call" the bill in such final form "the enrolled bill," 1 U.S.C. §106, July 30, 1947, ch. 388, §1, 61 Stat. 634, is determined by the certificate "affixed to the bill," H. Doc. No. 769, STAGES OF A BILL, supra, No. 16, all of which is required before the "signing by the presiding officers of both Houses and sent to the President of the United States." 1 U.S.C. §106.

"H.R. 3190. An act to revise, codify, and enact into positive law title 18 of the United States Code, entitled 'Crimes and Criminal Procedure." 94 CONG. REC. 9363**(App.U.). It does not indicate whether  it is referring to H.R. 3190 as passed by the House on May 12, 1947–the only time the House ever voted on it,** 94 CONG. REC. 5048-49, supra **(App.C);** See also 94 CONG. REC. D556-57 (DAILY DIGEST) (showing passage in the House of H.R. 3190 the only time on may 12, 1947), supra, **(App.B), or the dubiously amended H.R. 3190 passed by the Senate on June 18, 1948**, 94 CONG. REC. 8721-22, supra, **(App.J).**[12]

Art. I, §7, mandates that a bill that has passed both houses "shall before it becomes a Law, be presented to the President of the United States." Art. I, §7, C1.2; Chadha, 462 U.S. at 945. However, the constitutional requirement to "present" such a bill to the President "can only contemplate a presentment by the Congress in some manner, [because]...[a]t that point the bill is necessarily in the hands of the Congress." United States v. Kapsalis, 214 F.2d 677, 680 (7th Cir. 1954) cert. denied, 349 U.S. 906 (1955). Thus, presentment is clearly part of the legislative procedure required as essential to enactment of a bill as law. Chadha, 462 U.S. at 945, 947, 951. "**After a bill has been presented to the President, no further action is required by Congress in respect of that bill, unless it be disapproved by him...**" La

---

[12] As noted previously, the June 18, 1948 passage by the Senate of H.R. 3190 appears to have been the same H.R. 3190 passed by the House on May 12, 1947. However, even if the Senate's passage involved an amended version (which the record does not show) of H.R. 3190, the absence of the required certificate of enrollment affixed to the bill and the purported finding of enrollment long after the bill had been purportedly signed and sent to the Department of State as an enactment into positive law smacks of **post-factum cover-up of a mistake of constitutional proportion.**

Abra Silver Mining Co. V. United States, 175 U.S. 423, 454 (1899).  Clearly, presentment is part of the constitutionally mandated "Business," Art. I, §5 C1.1, to be "exercised in accord with the single, finely wrought and exhaustively considered procedures" "prescribed...in Art. I, §§ 1, 7" Chadha, 462 U.S. at 951.

"Congress," of course, "cannot grant to an officer under its control what it does not possess," Metropolitan Wash. Airports, 501 U.S. at 275 (*quoting* Bowsher, 478 U.S. at 726. Congress does not possess the "capability of transacting business" and is not "entitled to exert legislative power," when its "legislative existence" has been terminated" by an "adjournment" *sine die*.  The Pocket Veto Case, 279 U.S. at 681-83.

**Congress, therefore, could not "present" to the President a Bill signed after an adjournment *sine die* which terminated the existence of the legislative session.**  "The signing by the [presiding officers of the two houses], in open session, of an enrolled bill is **an attestation by the two houses."**  Marshall Field, 143 U.S. at 672.  Such a signing while Congress is under legislative termination by adjournment **cannot** constitute "an attestation by the two houses." The Pocket Veto Case, 279 U.S. at 683 ("House...with reference to the faculties and powers of the two chambers ....always means....the constitutional quorum, assembled for the transaction of business, and capable of transacting business"); Wright, 302 U.S. at 600 (Stone, J., concurring) ("The houses of Congress, being collective bodies, transacting their routine business by majority action are capable of acting **only** when in session and by formal action recorded in their respective journals, or by recognition, through

such action, of an established practice.

Whether the action taken under H.Con. Res. 219 was an "exercise of legislative power" depends upon whether it was essentially "legislative in purpose and effect." Chadha, 462 U.S. at 952. "In short, when Congress '[takes] action that has the purpose and effect of altering the legal rights, duties, and relations of persons....outside the Legislative Branch,' it must take that action by the procedures authorized in the Constitution." Metropolitan Wash. Airports, 501 U.S. at 276 (quoting Chadha, 462 U.S. at 952-955). "If Congress chooses to use a resolution...as a means of expediting action, it may do so, if it acts by both houses and presents the resolution to the President," Consumer Energy Council of America v. F.E.R.C., 673 F.2d 425, 445 (D.C. Cir. 1982), aff'd, Process Gas Consumers Group v. Consumer Energy Council of America, 463 U.S. 1216 (1983).

**The inescapable conclusion as to the "purpose and effect" of H. Con.Res. 219 was to enact a bill that at the time of adjournment on June 20, 1948, had not been enrolled and did not textually exists.** The Senate brought the long-dead H.R. 3190 into consideration for the first time in the Second Session of the 80th Congress with "a large volume of amendments" under Sen. Rep. 1620, at which time the "amendments were considered and agreed to en bloc" and ordered to be engrossed." 94 CONG. REC. 8721-22, supra **(App. J).** H.R. 3190 was thereupon read for the "third time" and "passed" by the Senate. (Id..) The House immediately thereafter "concurred in" the amendments, but **never voted on the text of H.R. 3190** then or at any time during that session. 94 CONG. REC.

27

8864-65. *See also* 94 CONG. REC. D556-57(DAILY DIGEST) (showing passage in the House of H.R. 3190 the only time on May 12, 1947), supra (**App.B**).

The bill, purportedly H.R. 3190, signed by the legislative officers on June 23, 1948, presented thereafter to the President and signed by him on June 25, 1948, **is a text that did not exist prior to the adjournment**. Instead, this version of H.R. 3190–never considered or voted on by the House and **doubtfully by the Senate–contains the texts of the amendments for the first and only time.** Here, the 80th Congress, denounced by President Truman, as a "body dominated by men with 'a dangerous lust for power and privilege," 27 ENCYCLOPEDIA AMERICANA, 175 (2005), surreptitiously provided a bill the text of which had never passed either House "masked under...the indirect measure," Metropolitan Wash. Airportsu, supra, 501 U.S. at 277 (quoting Madison, THE FEDERALIST, No. 48, pg. 334 (J. Cooke 1961 ed.) of a resolution purporting to authorize continuing legislative action during adjournment, with no quorum and no Congress, of an extra-congressional bill. Public Law 80-772 did not "become a law" as required by the constitutional procedures mandated under Art. I, §5, C1.1 and Art. I, §7, C1.2 and is unconstitutional and *void ab initio*.

Wherefore, premises considered, Defendant Richard Scrushy, respectfully moves that

28

this conviction be overturned for the District Court's lack of jurisdiction over said defendant.

Dated this the 17th day of April, 2007.

Respectfully submitted,

JAMES W. PARKMAN, III
Attorney for Defendant Richard Scrushy
Parkman, Adams & White, LLC
505 20th Street North
Suite 825
Birmingham, AL 35203
(205) 244-1920
(205) 244-1171 FAX

R. MARTIN ADAMS
Attorney for Defendant Richard Scrushy
Parkman, Adams & White, LLC
505 20th Street North
Suite 825
Birmingham, AL 35203
(205) 244-1920
(205) 244-1171 FAX

WILLIAM C. WHITE, II
Attorney for Defendant Richard Scrushy
Parkman, Adams & White, LLC
505 20th Street North
Suite 825
Birmingham, AL 35203
(205) 244-1920
(205) 244-1171 FAX

## CERTIFICATE OF SERVICE

I hereby certify that I have filed the foregoing Motion To Dismiss with the Clerk of the Court, under seal, and have forwarded a copy to all counsels of record.

Dated this the 17th day of April, 2007.

JAMES W. PARKMAN, III
Parkman, Adams & White, LLC
505 20th Street North
Suite 825
Birmingham, AL 35203
(205) 244-1920
(205) 244-1171 FAX

## TITLE 18 INDEX OF APPENDICES

<u>APPENDIX</u>              <u>DOCUMENT</u>

A                    House Report No. 304 (April 24, 1947), cover & p. 1

B                    94 Cong Rec. D556-57 (Daily Digest) (charting H.R. 3190)

C                    93 Cong. Rec. 5048-49

D                    93 Cong. Rec. 5121

E                    93 Cong. Rec. 10439, 10522 (July 26, 1947)

F                    <u>House Concurrent Resolution No. 127</u>, 80th Congress, 1st Session,
                     Dec. 19, 1947, 61 Stat 1029 (declaring the Dec. 19, 1947 adjournment
                     To be an adjournment "sine die" "notwithstanding the provisions of
                     Sen. Con. Red. 33"

G                    Unite Code Service, Laws of the 80th Congress, First Session, West
                     Publishing Co. & Ed. Thompson Co. 1947, <u>Adjournment Resolutions,
                     H.Con.Res. 127</u>, p. LXXXIX (Dec. 19, 1947 adjournment was sine die)

H                    94 Cong. Rec. 8075 (June 14, 1948)

I                    Sen. Rep. No. 1620

J                    94 Cong. Rec. 8721-8722 (June 18, 1948)

K                    94 Cong. Rec. 8864-65 (June 18, 1948)

L                    Concurrent resolutions, Second Session, 80th Congress, H.Res.
                     219, 62 Stat. 1436

M                    H. Con.Res. 218 and 219, 94 Cong. Rec. 9349

N                    94 Cong. Rec. 9349, 9169

O                    94 Cong. Rec. 9354

P                    National Archives Adm. Cert., H.R. 3190 signed by the Speaker,
                     President Pro Tempore and President Truman

Q                    94 Cong. Rec. 9364-9367

| | |
|---|---|
| R | Congressional Records-1948 |
| S | House Doc. No 769, Jefferson's Manual, pg. 265 (applying Art. I, §3, U.S. Const. |
| T | 106th Congress House Rules Manual, House Doc. No. 106-320, Page 301-302 |
| U | 94 Cong. Rec. 9363 |
| V (1) | House Bill-3190 |
| V(2) | House Bill 3190 |
| V(3) | Senate Bill 1620 |
| V(4) | The Act |