# APPENDIX H

NAYS—18

| | | |
|---|---|---|
| Barkley | Green | McCarran |
| Chavez | Hatch | McKellar |
| Connally | Hayden | O'Daniel |
| Cooper | Johnston, S. C. | Stennis |
| Downey | Kilgore | Taylor |
| Fulbright | Lucas | Thomas, Okla. |

VOTING "PRESENT"—1

Tydings

NOT VOTING—7

| | | |
|---|---|---|
| Bushfield | Moore | Wagner |
| George | Taft | |
| Maybank | Thomas, Utah | |

So the bill (H. R. 6556) was passed.

Mr. MILLIKIN. Mr. President, I move that the Senate insist upon its amendments, request a conference thereon with the House, and that the Chair appoint the conferees on the part of the Senate.

The motion was agreed to; and the President pro tempore appointed Mr. MILLIKIN, Mr. TAFT, Mr. BUTLER, Mr. BARKLEY, and Mr. CONNALLY conferees on the part of the Senate.

Mr. HATCH subsequently said: Mr. President, during the course of the debate on the reciprocal trade agreements program bill, due to the limitation of time I was not able to express my views on that matter and the reasons why I voted as I did. I shall not take the time of the Senate now to refer to that matter further, except to ask unanimous consent to have printed in the body of the RECORD, as a part of my remarks, an editorial entitled "Indispensable," published in the Washington Daily News for May 29, 1948.

There being no objection, the editorial was ordered to be printed in the RECORD, as follows:

INDISPENSABLE

"The reciprocal trade agreement principle," says Senator VANDENBERG, "is indispensable in today's world." He is absolutely right about that.

He wants this principle preserved unweakened. And so he opposes one provision of the bill just passed by the House Republicans to extend the Reciprocal Trade Agreements Act for a single year. That is the one which would give the Tariff Commission and Congress power to veto agreements negotiated by the President with other countries for the lowering of barriers to international trade.

Mr. VANDENBERG would have preferred an extension of 3 years, or at least 2. But he does not believe the indispensable principle is endangered by the 1-year renewal or by other provisions of the House bill.

We respect the judgment and sincerity of this Republican statesman. If he were speaking for his party, we would have little fear for the safety of reciprocal trade and the European recovery program, of which it is a cornerstone.

But we do not share his confidence that changing one provision of the House bill would mean "unweakened" preservation of the principle he defends.

For we have seen this bill railroaded through the House, after secret hearings and under gag rule, by Republican leaders who have been for that principle. We know that they inserted the provision to which Mr. VANDENBERG objects for the deliberate purpose of weakening. We know that their hope and intention is to kill the Reciprocal Trade Act next year, and to return to the old tradechocking system of log-rolled high tariffs. And we know they have many counterparts in the Senate.

To change Mr. VANDENBERG advocates would make the bill less immediately dangerous. But enactment of the bill, even with that change would be a first long step back toward economic isolation for America. It would be a signal that leaders of the Republican Party mean to take the other steps—to drop the indispensable principle—and the rest of the world would so understand it.

The Reciprocal Trade Agreements Act should be extended, with no weakening amendments, for three full years.

MESSAGE FROM THE HOUSE

A message from the House of Representatives, by Mr. Maurer, one of its reading clerks, announced that the House had passed, without amendment, the joint resolution (S. J. Res. 203) providing for the ratification by Congress of a contract for the purchase of certain lands and mineral deposits by the United States from the Choctaw and Chickasaw Nations of Indians.

The message also announced that the House had passed the bill (S. 2825) to increase the rates of service-connected death compensation payable to certain widows, children, and dependent parents of persons who served in the active military or naval service, and for other purposes, with an amendment, in which it requested the concurrence of the Senate.

The message further announced that the House had passed the bill (S. 2821) to provide increases of compensation for certain veterans with service-connected disabilities who have dependents, with amendments, in which it requested the concurrence of the Senate.

The message also announced that the House had agreed to the amendments of the Senate to the bill (H. R. 2744) to provide for the elimination of Regular Army and Regular Air Force officers and for the retirement of officers, warrant officers, and enlisted men of the Regular Army and the Regular Air Force, and to provide retirement benefits for members of the Reserve components of the Army of the United States, the Air Force of the United States, United States Navy and Marine Corps, and Coast Guard.

The message further announced that the House had agreed to the amendment of the Senate to the bill (H. R. 6028) to authorize appropriations for the Bureau of Reclamation for payments to school districts on certain projects during their construction status.

The message also announced that the House had passed the following bills and joint resolutions, in which it requested the concurrence of the Senate:

H. R. 6777. An act to extend the coverage of the Old-Age and Survivors Insurance system, to increase certain benefits payable under such system, and for other purposes;

H. R. 6874. An act to amend the act entitled "An act to fix and regulate the salaries of teachers, school officers, and other employees of the Board of Education of the District of Columbia, and for other purposes," approved July 7, 1947;

H. R. 6876. An act to authorize granting increases in the salary rates of teachers, school officers, and other employees of the Board of Education of the District of Columbia whose salary is fixed and regulated by the District of Columbia Teachers' Salary Act of 1947;

H. J. Res. 412. Joint resolution to amend the Merchant Marine Act, 1936, as amended, to strengthen the American merchant marine, to encourage investment in the American merchant marine to build more ships, and to remove inequities;

H. J. Res. 418. Joint resolution to amend the Merchant Marine Act, 1936, as amended, to further promote the development and maintenance of the American merchant marine, and for other purposes; and

H. J. Res. 421. Joint resolution to authorize and direct the Commissioners of the District of Columbia to investigate and study certain matters relating to parking lots in the District of Columbia.

COMMITTEE TO ATTEND EMPIRE PARLIAMENTARY ASSOCIATION IN BERMUDA

The PRESIDENT pro tempore. Pursuant to House Concurrent Resolution 201, the Chair appoints the Senator from Wisconsin [Mr. WILEY], the Senator from Iowa [Mr. HICKENLOOPER], the Senator from Kentucky [Mr. BARKLEY], the Senator from Utah [Mr. THOMAS] the committee on the part of the Senate to attend the meeting of the Empire Parliamentary Association in Bermuda.

TRANSACTION OF ROUTINE BUSINESS

By unanimous consent, the following routine business was transacted:

EXECUTIVE COMMUNICATIONS

The PRESIDENT pro tempore laid before the Senate the following communications, which were referred as indicated:

SUPPLEMENTAL ESTIMATE, OFFICE OF DEFENSE TRANSPORTATION (S. Doc. No. 171)

A communication from the President of the United States, transmitting a supplemental estimate of appropriation for the Office of Defense Transportation, amounting to $190,000 fiscal year 1949 (with an accompanying paper); to the Committee on Appropriations and ordered to be printed.

SUPPLEMENTAL ESTIMATE, DEPARTMENT OF COMMERCE (S. Doc. No. 172)

A communication from the President of the United States, transmitting supplemental estimates of appropriation for the Department of Commerce, amounting to $14,185,000, fiscal year 1949 (with an accompanying paper); to the Committee on Appropriations and ordered to be printed.

SUPPLEMENTAL ESTIMATE, DEPARTMENT OF THE INTERIOR (S. Doc. No. 173)

A communication from the President of the United States, transmitting a supplemental estimate of appropriation for the Department of the Interior, Bureau of Reclamation, amounting to $600,000, fiscal year 1949 (with an accompanying paper); to the Committee on Appropriations and ordered to be printed.

SUPPLEMENTAL ESTIMATES, DEPARTMENT OF AGRICULTURE (S. Doc. No. 174)

A communication from the President of the United States, transmitting supplemental estimates of appropriation for the Department of Agriculture, amounting to $10,792,000, fiscal year 1949 (with an accompanying paper); to the Committee on Appropriations and ordered to be printed.

SUPPLEMENTAL AND DEFICIENCY ESTIMATES OF APPROPRIATION, DISTRICT OF COLUMBIA (S. Doc. No. 175)

A communication from the President of the United States, transmitting supplemental and deficiency estimates of appropriation for the District of Columbia, amounting to $21,957.39, fiscal year 1948 and prior fiscal years (with an accompanying paper); to the Committee on Appropriations and ordered to be printed.

SUPPLEMENTAL ESTIMATE, SELECTIVE SERVICE SYSTEM (S. Doc. No. 175)

A communication from the President of the United States, transmitting a supplemental estimate of appropriation for the fiscal year 1949 in the amount of $31,800,000, to finance the selective service program to

CONGRESSIONAL RECORD—SENATE  8075

be established by legislation now pending in the Congress (with an accompanying paper); to the Committee on Appropriations and ordered to be printed.

SUPPLEMENTAL ESTIMATE, FEDERAL WORKS AGENCY (S. Doc. No. 176)

A communication from the President of the United States, transmitting a supplemental estimate of appropriation for the Federal Works Agency, amounting to $15,000,000, fiscal year 1949, and a proposed contract authorization in the amount of $10,000,000 (with an accompanying paper); to the Committee on Appropriations and ordered to be printed.

SUPPLEMENTAL ESTIMATE, SEVERAL EXECUTIVE DEPARTMENTS AND INDEPENDENT OFFICES (S. Doc. No. 177)

A communication from the President of the United States, transmitting an estimate of appropriation for the several executive departments and independent offices to pay claims for damages, audited claims, and judgments rendered, against the United States, as provided by various laws, in the amount of $2,293,456.55, together with an indefinite amount as may be necessary to pay interest and costs (with accompanying papers); to the Committee on Appropriations and ordered to be printed.

PETITIONS AND MEMORIALS

Petitions, etc., were laid before the Senate and referred as indicated:

By the PRESIDENT pro tempore:
A letter in the nature of a petition from Laura B. Prisk, of New York, N. Y., relating to Flag Day; to the Committee on the Judiciary.

A telegram in the nature of a petition from Walter I. M. Hodge, chairman, Municipal Committee, St. Croix, V. I., praying for the enactment of House bill 5904, to incorporate the Virgin Islands Corporation; ordered to lie on the table.

A resolution adopted by the forty-second annual convention of the Maryland State and District of Columbia Federation of Labor, at Washington, D. C., protesting against the enactment of the Mundt-Nixon un-American activities bill; to the Committee on the Judiciary.

A memorial of sundry citizens of the State of Washington, remonstrating against the enactment of the so-called Mundt-Nixon un-American activities bill; to the Committee on the Judiciary.

REPORTS OF COMMITTEES

The following reports of committees were submitted:

By Mr. BUTLER, from the Committee on Interior and Insular Affairs:
S. 2080. A bill to provide for the establishment of the Philadelphia National Historical Park, and for other purposes; with amendments (Rept. No. 1622); and
H. R. 6090. A bill authorizing the Secretary of the Interior to issue patents for lands held under color of title; without amendment (Rept. No. 1618).

By Mr. WILEY, from the Committee on the Judiciary:
H. R. 3190. A bill to revise, codify, and enact into positive law, title 18 of the United States Code, entitled "Crimes and Criminal Procedure;" with amendments (Rept. No. 1620); and
H. R. 6412. A bill to codify and enact into law title 3 of the United States Code, entitled "The President"; without amendment (Rept. No. 1623).

By Mr. COOPER, from the Committee on the Judiciary:
S. 2764. A bill to amend the Trading With the Enemy Act; without amendment (Rept. No. 1619).

By Mr. SALTONSTALL, from the Committee on Appropriations:

H. R. 6772. A bill making appropriations for the Department of the Navy and the naval service for the fiscal year ending June 30, 1949, and for other purposes; with amendments (Rept. No. 1621).

By Mr. BYRD, from the Committee on Armed Services:
S. 2696. A bill to authorize the transfer of horses and equipment owned by the United States Army to the New Mexico Military Institute, a State institution; with amendments (Rept. No. 1624).

PROTECTION AGAINST LYNCHING—REPORT OF A COMMITTEE

Mr. FERGUSON. Mr. President, from the Committee on the Judiciary, I ask unanimous consent to report an original bill, to provide for the better assurance of the protection of persons within the several States from lynching, and for other purposes, and I submit a report (No. 1625) thereon. The report is short, and I request that it be printed in the RECORD.

The PRESIDENT pro tempore. Without objection, the bill and the report will be received, and the bill will be placed on the calendar; and, without objection, the report will be printed in the RECORD.

The bill (S. 2860) to provide for the better assurance of the protection of persons within the several States from lynching, and for other purposes, was received, read twice by its title, and ordered to be placed on the calendar.

The report was ordered to be printed in the RECORD, as follows:

The Committee on the Judiciary, which has had under consideration various bills relating to the protection of persons within the several States from lynching, report favorably a bill to provide for the better assurance of the protection of persons within the several States from lynching, and for other purposes, with the recommendation that the bill do pass.

The purpose of the bill is self-explanatory in the title statement in that it is designed to provide for the better assurance of the protection of persons from lynching.

STATEMENT

Section 1 of the bill is self-explanatory.

Section 2 of the bill, which contains the definitions, might be considered one of the most important parts of the measure.

The bill defines lynching as an exercise or an attempt to exercise by an assembly of two or more persons, without authority of law, by action of physical force against person or property, of any power of correction or punishment over any persons in the custody of any peace officer, or suspected of, charged with, or convicted of the commission of any criminal offense with the purpose or consequence of preventing the apprehension or trial or punishment by law of such person, or of imposing a punishment. The essence of the offense is the depriving of the person accused or suspected of crime of a trial in the manner provided by law and, if such person is convicted, of punishment in the manner provided by law.

Section 3 of the bill makes it a crime punishable by imprisonment and/or a fine for Federal or State officers to conspire with members of a lynching mob in the prosecution of a lynching. The constitutionality of the imposition of Federal sanctions against Federal or State officers for their participation in a lynching will not be discussed in this section. In a later paragraph it is pointed out that such sanctions are valid. The question here involves the validity of Federal sanctions imposed against members of the lynch mob when they conspire with the Federal or State officers. It

seems to be well-settled law that any Federal sanctions against the individual lynchers (aiders, abettors, etc.) are invalid.

It appears well settled that under the fourteenth amendment to the Constitution, Congress does not have the authority to enact sanctions against private individuals or individual actions. (*The Civil Rights cases* (109 U. S. 3); *U. S.* v. *Harris* (106 U. S. 629); *Slaughterhouses cases* (83 U. S. 36); *U. S.* v. *Cruikshank* (92 U. S. 542); *Strauder* v. *West Virginia* (100 U. S. 303); *Virginia* v. *Rives* (100 U. S. 313); *Hodges* v. *U. S.* (203 U. S. 1); *Corrigan* v. *Buckley* (271 U. S. 327).)

It is the opinion of this committee that those individuals who conspire with Federal or State officers for the purposes of lynching may be held guilty of the crime or conspiracy when, in effect, they could not be held guilty of lynching. It is sufficient if one of the parties to a conspiracy is legally capable of committing the offense, while the other party may not have that capacity (*Chadwick* v. *U. S.* (141 F. 225); *Ohen* v. *U. S.* (157 F. 651, 85 C. C. A. 113, certiorari denied, 207 U. S. 596)). A person may be guilty of conspiring although incapable of committing the objective offense (*Farnsworth* v. *Zerbst* (98 F. 2d 541); *U. S.* v. *Rabinowich* (238 U. S. 78, 86); *U. S.* v. *Holte* (236 U. S. 140, 144); *Jelke* v. *U. S.* (255 F. 265); *Israel* v. *U. S.* (3 F. 2d 742); *U. S.* v. *Lyman* (190 F. 414); *U. S.* v. *Socony Vacuum Oil Company* (310 U. S. 150)).

Section 4 punishes State officers and employees for their failure to prevent a lynching. The fourteenth amendment is directed toward the action of the States, including the action of State officers. Any action by the officers of the State which violates the prohibition upon State action contained in the fourteenth amendment is subject to penalty imposed by the United States (*Ex Parte Virginia* (100 U. S. 339); *Screws v. U. S.* (325 U. S. 91)). The right not to be deprived by a State (or State officers) of a trial by the State, or of the punishment prescribed by law, is inherent in due process of law (*Screws* v. *U. S.*, supra; *Crews* v. *U. S.* (160 F. 2d 746); *U. S.* v. *Classic* (313 U. S. 299)).

Section 5 of the bill penalizes Federal officers and employees for their willful failure to prevent a lynching. Congress has, many times, created penalties upon Federal officers for a violation of their duties. The creation of the sanction in itself creates a duty on a Federal officer not to commit acts which would invoke the imposition of the penalty. (See the offenses defined and punished in U. S. Code, title 18, secs. 171 et seq.).

Section 6 defines the duty of the Attorney General of the United States under this act. It imposes a duty upon him to cause an investigation to be made to determine whether there has been a violation of the bill, whenever a lynching occurs, and information on oath is submitted to him that any officer or employee of the United States or of a State, or any governmental subdivision thereof, is guilty of a criminal offense under section 4 or section 5 of the bill. This section merely spells out a duty which normally rests with the Attorney General, the chief law enforcement officer of the United States, to enforce, and prosecute violations of, all criminal laws of the United States. It is not intended to restrict the Attorney General in the enforcement of the act but to make it mandatory upon him to cause the investigation prescribed if the information on oath is submitted to him.

Section 7 provides for civil actions for damages by an individual who is lynched (or his next of kin) against any person violating section 3, section 4, or section 5 of the act with respect to that lynching.

The validity of this section rests upon the same constitutional bases and cases cited under the foregoing sections 3, 4, or 5. Obviously, if Congress has the authority to make certain acts a crime, punishable by fines and/or imprisonment, it also has the