# APPENDIX N



UNITED STATES        OF AMERICA

# Congressional Record

PROCEEDINGS AND DEBATES OF THE 80*th* CONGRESS
SECOND SESSION

## VOLUME 94—PART 7

JUNE 15, 1948, TO JUNE 19, 1948
(PAGES 8229 TO 9352)

UNITED STATES GOVERNMENT PRINTING OFFICE, WASHINGTON, 1948

9348 CONGRESSIONAL RECORD  HOUSE JUNE 19

such ful.   .uch extent and in such manner and under such terms and conditions as the Secretary of Labor may by regulation or otherwise prescribe.

Mr. HOPE. Mr. Speaker, I ask unanimous consent to withdraw the committee amendments.

The SPEAKER. Is there objection to the request of the gentleman from Kansas?

There was no objection.

Mr. HOPE. Mr. Speaker, I offer two amendments, which I send to the Clerk's desk.

The Clerk read as follows:

Amendments offered by Mr. Hope:
On page 1, line 3, strike out "the Secretary of Labor" and insert "the Administrator of the Federal Security Agency."
On page 2, line 21, strike out "the Secretary of Labor" and insert "the Administrator of the Federal Security Agency."

Mr. FOGARTY. The first amendment was to strike out "the Secretary of Labor" and insert "the Federal Security Administrator"; is that correct?

Mr. HOPE. Yes. That is made necessary by reason of the act that was passed, the appropriation bill, which transferred the Federal Employment Service to the Federal Security Agency.

The SPEAKER. The question is on agreeing to the amendments.

The amendments were agreed to.

The bill was ordered to be read a third time, was read the third time, and passed, and a motion to reconsider was laid on the table.

ISSUING PATENTS IN ALASKA

Mr. D'EWART. Mr. Speaker, I ask unanimous consent for the immediate consideration of House Joint Resolution 162, a joint resolution to repeal section 2 of the act of May 1, 1936, and for other purposes.

The Clerk read the title of the resolution.

The SPEAKER. Is there objection to the request of the gentleman from Montana [Mr. D'EWART]?

Mr. RICH. Mr. Speaker, reserving the right to object, what does this bill do?

Mr. D'EWART. The bill repeals section 2 of the act of May 1, 1936, having to do with the issuing of certain patents in Alaska. Second, it permits the Secretary of the Interior to issue patents in Alaska to individual tribes, villages, or individuals, with the approval of the Secretary of the Interior.

Mr. RICH. Mr. Speaker, it is now 15 minutes after 6 in the morning. It is almost time to go to church. It seems to me this legislation should be deferred until some other time. I object.

ADJOURNMENT RESOLUTION

Mr. HALLECK. Mr Speaker, I offer a concurrent resolution (H. Con. Res. 218) and ask for its immediate consideration.

The Clerk read as follows:

Resolved, That when the two Houses adjourn on Sunday, June 20, 1948, they stand adjourned until 12 o'clock meridian on Friday, December 31, 1948, or until 12 o'clock meridian on the third day after the respective Members are notified to reassemble in accordance with section 2 of this resolution, whichever event first occurs.

SEC. 2. The President pro tempo    the Senate, the Speaker of the House of Representatives, the acting majority leader of the Senate, and the majority leader of the House of Representatives, all acting jointly, shall notify the Members of the Senate and the House, respectively, to reassemble whenever, in their opinion, the public interest shall warrant it.

The SPEAKER. The question is on agreeing to the resolution.

The resolution was agreed to.

AUTHORIZING THE SPEAKER AND THE PRESIDENT PRO TEMPORE TO SIGN ENROLLED BILLS AND JOINT RESOLUTIONS

Mr. HALLECK. Mr. Speaker, I offer a concurrent resolution (H. Con. Res. 219) and ask for its immediate consideration.

The Clerk read the resolution, as follows:

Resolved, That notwithstanding the adjournment of the two Houses until December 31, 1948, the Speaker of the House of Representatives and the President pro tempore of the Senate be, and they are hereby, authorized to sign enrolled bills and joint resolutions duly passed by the two Houses and found truly enrolled.

The SPEAKER. The question is on agreeing to the resolution.

The resolution was agreed to.

A motion to reconsider was laid on the table.

AUTHORIZING THE CLERK TO RECEIVE MESSAGES

Mr. HALLECK. Mr. Speaker, I ask unanimous consent that notwithstanding the adjournment of the House until December 31, 1948, the Clerk be authorized to receive messages from the Senate.

The SPEAKER. Without objection, it is so ordered.

There was no objection.

AUTHORIZING THE SPEAKER TO APPOINT COMMISSIONS, BOARDS, AND COMMITTEES

Mr. HALLECK. Mr. Speaker, I ask unanimous consent that notwithstanding the adjournment of the House until December 31, 1948, the Speaker be authorized to appoint commissions, boards, and committees authorized by law or by the House.

The SPEAKER. Without objection, it is so ordered.

There was no objection.

GENERAL LEAVE TO EXTEND REMARKS

Mr. HALLECK. Mr. Speaker, I ask unanimous consent that all Members of the House shall have the privilege until the last edition authorized by the Joint Committee on Printing is published to extend and revise their own remarks in the CONGRESSIONAL RECORD on more than one subject, if they so desire, and also to include therein such short quotations as may be necessary to explain or complete such extension of remarks, but this order shall not apply to any subject matter which may have occurred or to any speech delivered subsequent to the adjournment of Congress until Friday, December 31, 1948.

The SPEAKER. Is there objection to the request of the gentleman from Indiana?

There was no objection.

REPORTS OF INVESTIGATING COMMISSIONS TO BE DOCUMENTS OF EIGHTIETH CONGRESS

Mr. HALLECK. Mr. Speaker, I ask unanimous consent that reports filed with the Clerk following the adjournment of the House until Friday, December 31, 1948, by committees authorized by the House to conduct investigations may be printed by the Clerk as reports of the Eightieth Congress.

The SPEAKER. Is there objection to the request of the gentleman from Indiana?

There was no objection.

CERTAIN REPORTS OF COMPTROLLER GENERAL'S OFFICE TO BE PRINTED AS HOUSE DOCUMENTS

Mr. HALLECK. Mr. Speaker, I offer a resolution (H. Res. 700) and ask for its immediate consideration.

The Clerk read as follows:

Resolved, That the reports of the Comptroller General of the United States made to Congress, pursuant to section 5 of the act of February 24, 1945 (56 Stat. 6), and the Government Corporation Control Act (59 Stat. 597), after the adjournment of the House until December 31, 1948, shall be printed as House documents of the second session of the Eightieth Congress.

The resolution was agreed to.

A motion to reconsider was laid on the table.

DESIGNATION OF ASSISTANT CLERK OF THE HOUSE OF REPRESENTATIVES

Mr. HALLECK. Mr. Speaker, I offer a resolution (H. Res. 701) and ask for its immediate consideration.

The Clerk read as follows:

Resolved, That in order that the duties of his office may be discharged in case of his absence or disability or in case his office should become vacant, the Clerk of the House of Representatives on or before June 19, 1948, shall designate a subordinate in his office to perform the duties thereof in any such contingencies until the commencement of the first session of the Eighty-first Congress. Such designee when acting under this authorization, shall subscribe himself as Acting Clerk of the House of Representatives.

The Clerk of the House shall promptly communicate to the Speaker the name of the employee designated hereunder for the information of the House.

The resolution was agreed to.

A motion to reconsider was laid on the table.

The SPEAKER laid before the House the following communication, which was read by the Clerk:

OFFICE OF THE CLERK,
HOUSE OF REPRESENTATIVES,
Washington, D. C., June 20, 1948.
The Honorable the SPEAKER,
House of Representatives.

SIR: Pursuant to the provisions of House Resolution 701 adopted by the House today, I have designated Mr. Harry Newlin Megill, an official in my office, to discharge the duties contemplated by said resolution.

Respectfully yours,
JOHN ANDREWS,
Clerk of the House of Representatives.

EXTENSION OF REMARKS

Mr. WIGGLESWORTH asked and was given permission to extend his remarks in two instances and in each to include tabular material.

CONGRESSIONAL RECORD—HOUSE

Mr. KERSTEN of Wisconsin asked and was given permission to extend his remarks in the Appendix of the RECORD in two instances.

The SPEAKER. The gentleman from Vermont (Mr. PLUMLEY).

Mr. PLUMLEY. I just wish to call attention to the fact that this is Father's Day, and, therefore, I say: Good night, good morning, good luck.

The SPEAKER. The gentleman from Illinois (Mr. BUSBEY).

Mr. BUSBEY. Mr. Speaker, I do not know how many have ever attended a sunrise service before, but you have today.

### RECESS

The SPEAKER. The Chair declares a recess subject to the call of the Chair.

Thereupon (at 6 o'clock and 23 minutes a. m.) the House stood in recess subject to the call of the Chair.

### AFTER RECESS

The recess having expired, the House was called to order by the Speaker at 6 o'clock and 55 minutes a. m.

### FURTHER MESSAGE FROM THE SENATE

A further message from the Senate by Mr. Latta, its enrolling clerk, announced that the Senate had passed without amendment concurrent resolutions of the House of the following titles:

H. Con. Res. 218. Concurrent resolution providing for adjournment of the two Houses of Congress until December 31, 1948; and

H. Con. Res. 219. Concurrent resolution authorizing the signing of enrolled bills following adjournment.

The message also announced that the Senate agrees to the report of the committee of conference on the disagreeing votes of the two Houses on the amendment of the House to the bill (H. R. 6248) entitled "An act to authorize the Secretary of Agriculture to stabilize prices of agricultural commodities; to amend section 22 of the Agricultural Adjustment Act, reenacted by the Agricultural Marketing Agreement Act of 1937; and for other purposes."

The message also announced that the Senate had passed without amendment joint resolutions of the House of the following titles:

H. J. Res. 305. Joint resolution authorizing the issuance of a special series of stamps commemorative of the fiftieth anniversary of the organization of the Rough Riders (First Volunteer United States Cavalry) of the Spanish-American War; and

H. J. Res. 327. Joint resolution to authorize the issuance of a special series of stamps commemorative of Juliette Low, founder and organizer of Girl Scouting in the United States of America.

The message also announced that the Senate agrees to the amendments of the House to bills of the Senate of the following title:

S. 2767. An act to provide assistance in the recruitment and distribution of farm labor for the increased production, harvesting, and preparation for market of agricultural commodities to meet domestic needs and foreign commitments; and

S. 2790. An act to amend the Servicemen's Readjustment Act of 1944, as amended, and for other purposes.

### ENROLLED BILLS AND JOINT RESOLUTIONS SIGNED

Mr. LeCOMPTE, from the Committee on House Administration, reported that that committee had examined and found truly enrolled bills and joint resolutions of the House of the following titles, which were thereupon signed by the Speaker:

H. R. 371. An act for the relief of Jenness C. Thomas;

H. R. 564. An act for the relief of Sarah Lee Cregg;

H. R. 700. An act for the relief of Anthony Arancio;

H. R. 703. An act for the relief of Leon Nikolaivich Volkov;

H. R. 851. An act for the relief of Adney W. Gray;

H. R. 911. An act for the relief of Kam Pong Chun, Mr. and Mrs. Jose Dias, Joseph De Sousa, Mr. and Mrs. Kenneth Ayres, and Jose Oducado;

H. R. 912. An act for the relief of Hiro Higa and Kana Higa;

H. R. 915. An act to confer jurisdiction upon the District Court of the United States for the Territory of Hawaii to hear, determine, and render judgment on the claims of the executors and trustees of the estate of L. L. McCandless, deceased, as their interests may appear, against the United States of America;

H. R. 1076. An act for the relief of Chester O. Glenn;

H. R. 1220. An act for the relief of James D. Sigler and Frederick P. Vogelsand III;

H. R. 1409. An act for the relief of Frantisek Jiri Pavlik or Georg Pavlik;

H. R. 1490. An act for the relief of the United States Radiator Corp. of Detroit, Mich.;

H. R. 1642. An act for the relief of Miss Rosella M. Kostenbader;

H. R. 1733. An act for the relief of G. C. Hedrick;

H. R. 1734. An act for the relief of Gabel Construction Co.;

H. R. 1779. An act for the relief of the Winona Machine & Foundry Co., a corporation of Winona, Minn.;

H. R. 1780. An act for the relief of the Cannon Valley Milling Co.;

H. R. 1910. An act for the relief of the legal guardian of Robert Lee Threatt, a minor;

H. R. 1930. An act for the relief of the Growers Fertilizer Co., a Florida corporation;

H. R. 2096. An act to amend section 11 of the act approved June 5, 1942 (56 Stat. 317), relating to Mammoth Cave National Park in the State of Kentucky, and for other purposes;

H. R. 2192. An act for the relief of the Massman Construction Co.;

H. R. 2193. An act for the relief of Robert E. Graham;

H. R. 2352. An act to provide for sale to the Crow Tribe of interests in the estates of deceased Crow Indian allottees;

H. R. 2372. An act for the relief of George Cleve Williams;

H. R. 2395. An act for the relief of the Cypress Creek drainage district of the State of Arkansas;

H. R. 2431. An act for the relief of the estate of David Jefferson Janow, deceased;

H. R. 2489. An act for the relief of James W. Adkins and Mary Clark Adkins;

H. R. 2551. An act for the relief of William R. Ramsey;

H. R. 2552. An act for the relief of Thomas A. Hanley;

H. R. 2696. An act for the relief of Otto Kraus, receiver of the Neafie & Levy Ship & Engine Building Co.;

H. R. 2729. An act for the relief of the legal guardian of Rose Mary Ammirato, a minor;

H. R. 2732. An act for the relief of Dennis Stanton;

H. R. 2734. An act for the relief of Joseph M. Henry;

H. R. 2878. An act to amend the act approved May 18, 1928 (45 Stat. 602), as amended, to revise the roll of the Indians of California provided therein;

H. R. 2889. An act for the relief of Aubrey F. Houston;

H. R. 2918. An act for the relief of the Sumner County Colored Fair Association;

H. R. 3032. An act for the relief of the estate of Rudolph Maximilian Goepp, Jr.;

H. R. 3218. An act to authorize an emergency fund for the Bureau of Reclamation to assure the continuous operation of its irrigation and power systems;

H. R. 3261. An act for the relief of Capt. Carroll C. Garretson;

H. R. 3427. An act for the relief of Mrs. Mary H. Overall and Thomas I. Baker;

H. R. 3499. An act for the relief of Petrol Corp.;

H. R. 3566. An act to amend subsection (c) of section 19 of the Immigration Act of 1947, as amended, and for other purposes;

H. R. 3735. An act to authorize and direct the Secretary of the Army to donate and convey to Okaloosa County, State of Florida, all the right, title, and interest of the United States in and to a portion of Santa Rosa Island, Fla., and for other purposes;

H. R. 3987. An act for the relief of William C. Reese;

H. R. 3999. An act to authorize the Attorney General to adjudicate certain claims resulting from evacuation of certain persons of Japanese ancestry under military orders;

H. R. 4047. An act for the relief of Edmund Huppler;

H. R. 4103. An act for the relief of Charles M. Davis;

H. R. 4199. An act for the relief of George Haniotis;

H. R. 4273. An act to provide for the procurement and supply of Government headstones or markers for unmarked graves of members of the armed forces dying in the service or after honorable discharge therefrom, and other persons, and for other purposes;

H. R. 4330. An act to authorize the Secretary of State to perform certain consular-type functions within the United States and its Territories and possessions;

H. R. 4367. An act authorizing the Hidalgo Bridge Co., its heirs, legal representatives, and assigns, to construct, maintain, and operate a railroad toll bridge across the Rio Grande, at or near Hidalgo, Tex.;

H. R. 4435. An act to amend the Civil Aeronautics Act of 1938 by redefining certain powers of the Administrator, by authorizing delegation of certain powers by the Civil Aeronautics Board to the Administrator, and for other purposes;

H. R. 4441. An act for the relief of the William J. Burns International Detective Agency;

H. R. 4452. An act for the relief of Douglas L. Craig.

H. R. 4462. An act authorizing the conveyance of certain lands in Park County, Wyo., to the State of Wyoming;

H. R. 4516. An act for the relief of the Moore Dry Dock Co., of Oakland, Calif.;

H. R. 4518. An act for the relief of Gerald S. Furman;

H. R. 4587. An act for the relief of Mrs. Harry A. Light (formerly Mrs. Elsie Purvey);

H. R. 4590. An act for the relief of Mrs. Loraine Thomsen;

H. R. 4635. An act to amend section 11 of an act entitled "An act to regulate barbers in the District of Columbia, and for other purposes";

H. R. 4644. An act for the relief of E. Brevard Walker, trading as E. B. Walker Lumber Co.;

H. R. 4690. An act to amend the act of July 30, 1947, permitting vessels of Canadian registry to transport certain merchandise between

were reported by the conference committees.

The PRESIDING OFFICER. Is there objection? The Chair hears none, and the order is entered.

## JULIETTE LOW COMMEMORATIVE STAMP

Mr. WHERRY. Mr. President, a short time ago the Senator from South Carolina [Mr. JOHNSTON] submitted a unanimous-consent request regarding a joint resolution about which he said there was no controversy. I think the Senator objected to the consideration of the joint resolution, and desired to see that it was passed. At that time there was an indication at least that he would have an opportunity to present the joint resolution, and I say now that I shall be glad to yield for that purpose, providing there is no objection to it. If there is objection, I shall ask for the regular order.

Mr. JOHNSTON of South Carolina. Mr. President, I ask unanimous consent that the Senate take up Calendar No. 1741, House Joint Resolution 327.

The PRESIDING OFFICER. Is there objection?

There being no objection, the Senate proceeded to consider the joint resolution (H. J. Res. 327) to authorize the issuance of a special series of stamps commemorative of Juliette Low, founder and organizer of Girl Scouting in the United States of America, which was ordered to a third reading, read the third time, and passed.

## ROUGH RIDERS COMMEMORATIVE STAMP

Mr. JOHNSTON of South Carolina. Mr. President, there is on the calendar another joint resolution similar to the one just passed, which merely authorizes the issuance of a commemorative stamp, and I wish to have it passed also. I ask unanimous consent for the present consideration of Calendar No. 1753, House Joint Resolution 305.

The PRESIDING OFFICER. Is there objection?

There being no objection, the joint resolution (H. J. Res. 305) authorizing the issuance of a special series of stamps, commemorative of the fiftieth anniversary of the organization of Rough Riders of the Spanish-American War, was considered, ordered to a third reading, read the third time, and passed.

## JOINT BOARD ON DEFENSE, UNITED STATES AND CANADA

Mr. BARKLEY. Mr. President, there is a bill on the calendar, Order No. 1436, House bill 5708, relating to the exemption of civilian members of the permanent Joint Board on Defense, United States and Canada, from certain statutory restrictions on outside activities, which I think should be passed by the Senate, having already been passed by the House.

Mr. WHERRY. Mr. President, I have an objection to the bill, and I am sorry, but it would have to be raised now on a request for unanimous consent.

Mr. BARKLEY. I was about to ask unanimous consent for the consideration of the bill.

Mr. WHERRY. I should have to object.

## ALASKAN RAILROADS AND RECIPROCAL TARIFFS AND IMMIGRATION ARRANGEMENTS

Mr. MAGNUSON. Mr. President——

The PRESIDING OFFICER. Does the Senator from Nebraska yield to the Senator from Washington?

Mr. WHERRY. Is the Senator about to present a unanimous-consent request?

Mr. MAGNUSON. Yes.

Mr. WHERRY. What is the calendar number of the measure?

Mr. MAGNUSON. It is Senate Concurrent Resolution 59, requesting the President to commence negotiations with Canada relating to the existing railroad system, and studies relating to tariff and immigration arrangements.

Mr. WHERRY. To what committee was it referred?

Mr. MAGNUSON. It is Calendar No. 1830.

Mr. GURNEY. I can acquaint the Senator from Nebraska with the objective of the concurrent resolution.

The PRESIDING OFFICER. The Chair suggests that the concurrent resolution be reported by title.

Mr. WHERRY. If it is not on the calendar I shall object.

The PRESIDING OFFICER. Objection is made.

Mr. MAGNUSON. It is on the calendar.

Mr. WHERRY. I have the floor, have I not?

The PRESIDING OFFICER. The Senator from Nebraska has the floor.

Mr. WHERRY subsequently said: I should like to inquire of the Senator from Washington if there are amendments of any importance to the concurrent resolution (S. Con. Res. 59), which I see is on the latest calendar.

Mr. MAGNUSON. I do not know of any important amendments. The Foreign Relations Committee reported it unanimously.

Mr. WHERRY. I shall not object if the Senator from Washington wishes to bring it up now.

Mr. MAGNUSON. Mr. President, I ask for the present consideration of Senate Concurrent Resolution 59.

The PRESIDING OFFICER. Is there objection?

There being no objection, the Senate proceeded to consider the concurrent resolution (S. Con. Res. 59) relative to negotiations with the Canadian Government concerning the construction of railroads in Alaska and the establishment of reciprocal tariff and immigration arrangements, which had been reported from the Committee on Foreign Relations with amendments.

The PRESIDING OFFICER. The clerk will state the amendments.

The amendments of the Committee on Foreign Relations were, on page 2, line 2, after the word "toward", to insert "determining the desirability of"; in line 4, after the name "Alaska", to strike out "and"; in line 5, after the word "specifications", to insert "and"; in the same line, after the word "prepared", to strike out "for the purposes of constructing" and insert "covering the construction of"; in line 10, after the word "includ-

ing", to strike out "negotiations" and insert "studies"; in line 11, after the word "for", to strike out "the establishment of"; and in line 12, after the word "arrangements", to insert "in connection with this project", so as to make the concurrent resolution read:

*Resolved, etc.,* That the President is requested to commence negotiations with the Canadian Government with a view toward determining the desirability of extending the existing railroad system now terminating at Prince George, British Columbia, Canada, to the Territory of Alaska, to cause surveys to be made and plans, specifications, and cost estimates, and budget requests to be prepared covering the construction of a railroad connecting the existing railroad system terminating at Fairbanks, Alaska, with a railroad system extended from Prince George, British Columbia, Canada, to the Territory of Alaska; also including studies with the Canadian Government for reciprocal tariff and immigration arrangements, in connection with this project.

The question is on agreeing to the amendments of the committee.

The amendments were agreed to.

The PRESIDING OFFICER. The question is on agreeing to the concurrent resolution, as amended.

The concurrent resolution (S. Con. Res. 59), as amended, was agreed to.

The preamble was agreed to, as follows:

Whereas the defense of the Territory of Alaska is essential to the national security of the United States; and

Whereas further development of mineral, timber, and other resources of Alaska is necessary to the defense of that Territory and to the welfare and security of the United States; and

Whereas adequate transportation facilities within the Territory of Alaska and between the Territory of Alaska and the United States are essential to the development of the resources and the defense of Alaska; and

Whereas existing transportation facilities within the Territory of Alaska and between the Territory of Alaska and the United States are inadequate for the development of the resources and the defense of Alaska: Therefore be it

## NOMINATION OF FRIEDA B. HENNOCK TO THE FEDERAL COMMUNICATIONS COMMISSION

Mr. WHERRY. Mr. President, 2 days ago a nomination on the Executive Calendar came up for consideration, and at that time I said that I felt that the nomination should go over because objection had been made. I understand the objection still exists. I realize the Senate has been continuously in session for 2 days and 2 nights, and Senators are worn out, and certainly this is no time for bringing up something which will provoke argument. But so long as I have been the acting majority leader I have tried to be fair about all the duties surrounding that position, and even though some Members of the Senate on this side are insistent that this nomination not come up, I feel that because of the representations made, and because of the fact that those who are interested feel that they would have a right at least not to be short circuited in regard to the nomination, I now ask, as in executive session, that the Senate proceed to the consideration of the nomination of Frieda B. Hennock, of New York, to be a member

of the Federal Communications Commission.

The PRESIDING OFFICER. Is there objection?

Mr. YOUNG. I object.

Mr. WHERRY. Then, Mr. President, I move that the nomination of Frieda B. Hennock, of New York, be confirmed.

The PRESIDING OFFICER. The question is on agreeing to the motion of the Senator from Nebraska.

Mr. BALL. Mr. President, what kind of procedure is this? We are not in executive session.

Mr. WHERRY. I asked for unanimous consent.

Mr. BALL. I did not hear any motion.

Mr. WHERRY. I understand that. I asked for unanimous consent.

The PRESIDING OFFICER. The Senator asked unanimous consent, and unanimous consent was granted.

Mr. BALL. I am sorry.

The PRESIDING OFFICER. The Chair did not understand that that is what it was for.

Mr. WHERRY. If there is any doubt about it——

The PRESIDING OFFICER. Consent was granted.

Mr. WHERRY. Very well.

Mr. BALL. Are we in executive session, then?

The PRESIDING OFFICER. We are.

Mr. WHERRY. We are, for the consideration of the nomination of Miss Frieda B. Hennock.

Mr. BALL. May we proceed in the regular order, then, and have the nomination stated, so that we will know what we are doing? I do not like to have the Senate doing things by unanimous consent. I am not going to hold up the Senate——

Mr. WHERRY. That is the very thing that is done after the Executive Calendar is taken up, and I ask that the nomination be stated.

The PRESIDING OFFICER. The clerk will state the nomination.

The LEGISLATIVE CLERK. Nomination passed over. Frieda B. Hennock, of New York, to be a member of the Federal Communications Commission.

The PRESIDING OFFICER. The question is, Will the Senate advise and consent to the nomination?

Mr. BALL. Mr. President, I do not intend to make a lengthy speech about this nomination. I am opposed to it, and I want the RECORD to show that. So far as I can discover, the only investigation, the only hearing, regarding this nomination, was a brief executive session of the subcommittee of the Committee on Interstate and Foreign Commerce. For several weeks the reports were that the nomination would never get out of committee. Then all of a sudden it was reported, with, I may say, somewhat suspicious haste. It is for a 7-year term on the Federal Communications Commission. In my opinion that is a tremendously important Commission. I think it is up to the Senate to satisfy itself—and frankly I am not satisfied; I do not know about the wisdom of the nomination one way or the other—that appointments to this

Commission will really serve the best interests of the Nation.

I myself have observed some rather disturbing things about the Federal Communications Commission. I have heard more disturbing reports since this nomination was reported. I have heard a report, on what I consider reliable authority—and obviously in the past few days I have not had any opportunity to investigate it, I do not know whether it is true or not—which indicates that certain interests, groups, who are greatly interested in this nomination, have a direct pipe line to the Federal Communications Commission, which we certainly would not want to have occur. What the score is I do not know. So far as I can determine, Miss Hennock is a lawyer from New York, and I might point out that the late President Roosevelt never appointed a member of the Federal Communications Commission from New York City, for the simple reason that New York City is the center of the radio industry, and he wanted to avoid any possibility of the industry itself having too much influence on the Commission. So far as I can discover, she has had no experience in radio matters, and from what I can learn of her background, frankly I do not think she is qualified for the job, and I want to be on record as opposed to her confirmation.

Mr. BREWSTER. Mr. President, I think the Senator from Minnesota has been very fair in his statement. As chairman of the subcommittee which investigated this nomination for the Senate Committee on Interstate and Foreign Commerce, which reported it by a vote of 8 to 0, with another member voting "present," I think the Senate should know what we have learned as to the circumstances.

Miss Hennock has been a member of the New York bar for 20 or 25 years. I hesitate to estimate the age of a lady, but I should say she is between 40 and 50 years old, so she is reasonably mature. She has had quite a brilliant record at the bar. She is a member now, which is somewhat unusual for a woman, of the third largest law firm in New York City, one of the most highly respected and distinguished, one composed almost exclusively of Republicans. She has had no experience in radio, as the Senator from Minnesota has said, which, it seemed to many of us, was perhaps most fortunate, because one who had been active in radio work, representing radio clients, would by that very fact come in under somewhat of a cloud. The committee took into consideration her breadth of experience and training and recognized abilities.

I may say that one of her most earnest sponsors was John W. Davis, of New York, who certainly is a leader of the New York bar, and who vouched most earnestly for her capacity and character. And from many other quarters there have come most earnest testimonials as to the character and competency of this woman.

Obviously only the future can tell how well she can fulfill these responsibilities. I can say that we in our committee,

share the concern which the Senator from Minnesota has experienced concerning the functioning of the Federal Communications Commission. We think it needs new blood, and it was the consensus of those of us who became familiar with this matter through contact with many who were acquainted with her and through various representations, that she would be well qualified to fit into this position, and we believed her confirmation was warranted and wise.

The PRESIDING OFFICER. The question is, will the Senate advise and consent to this nomination?

The nomination was confirmed.

POSTMASTERS

EXECUTIVE REPORT OF A COMMITTEE

The following favorable report of a committee was submitted:

By Mr. LANGER, from the Committee on Post Office and Civil Service:

The nomination of Jack Bostwick to be postmaster at Bastrop, in the State of Louisiana.

On motion by Mr. LANGER, and by unanimous consent, it was

*Ordered,* That the said nomination be considered with those postmasters appearing on today's calendar.

Mr. BARKLEY. Does the Senator intend that the nominations of postmasters shall be considered?

Mr. WHERRY. Yes.

The PRESIDING OFFICER. The clerk will state the nominations of postmasters on the calendar.

The legislative clerk proceeded to read the nominations of postmasters on the calendar.

The PRESIDING OFFICER. Without objection, the nominations of postmasters will be confirmed en bloc.

Without objection the President will be notified of all nominations this day confirmed on the Executive Calendar.

Mr. WHERRY. Mr. President, are there any measures any Senator desires to bring up at this time, or is there any other matter that is desired to be considered?

Mr. O'MAHONEY. Mr. President, may I ask the majority leader whether there is any intention to proceed with Calendar No. 1253, Senate Joint Resolution 76?

Mr. WHERRY. That is the equal-rights amendment?

Mr. O'MAHONEY. Yes.

Mr. WHERRY. I believe the Senator who was particularly interested in the legislation stated that it would not be taken up at this time. I would not undertake to take it up.

Mr. O'MAHONEY. Very well.

CONDITIONAL ADJOURNMENT TO DECEMBER 31, 1948

Mr. WHERRY. I move that the Senate do now adjourn.

The motion was agreed to; and (at 7 o'clock and 14 minutes a. m., Sunday, June 20, 1948) the Senate adjourned, the adjournment being under the provision of House Concurrent Resolution 218, to Friday, December 31, 1948, at 12 o'clock meridian.