IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RECEIVED
2007 APR 18 P 3:37

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| V. | ) | CASE NO. 2:05-CR-119-MEF |
| | ) | |
| RICHARD M. SCRUSHY | ) | |

### DEFENDANT'S RESPONSE TO UNITED STATES' APPEAL OF MAGISTRATE COODY'S ORDER DENYING GOVERNMENT'S MOTION FOR REVOCATION OF ORDER OF POST CONVICTION RELEASE FOR DEFENDANT SCRUSHY

COMES NOW the Defendant, Richard M. Scrushy (hereinafter referred to as "Scrushy"), by and through his undersigned attorneys of record and files this response to the United States' appeal of Magistrate Coody's Order denying the government's motion for revocation of the Court's Order for the Defendant's post conviction release.

I. FACTS

It is the firm belief of the Defendant, that some of the facts provided in the United States' appeal, will not be supported by the transcript of the proceeding. For instance, the United States asserts, "at most, this Court granted Defendant Scrushy permission to travel to Orlando, Florida, from March 16 to March 24, 2007, and to take day trips from Orlando to Ocala, Florida and to West Palm Beach, Florida, provided he spend each night in Orlando at his approved hotel at Walt Disney World - the Saratoga Springs Resort and Spa."

The Magistrate Judge himself addressed the issue as to whether it was reasonable for the probation office to believe Scrushy would travel to Palm Beach, while still spending each

night in a hotel in Orlando. The Magistrate Judge in pointing out that the probation officer might be "geographically challenged" indicated Palm Beach is some 250 miles from Orlando. The probation officer admitted to not realizing this great distance when stating to Scrushy it wouldn't be a problem for him to go to Palm Beach. There was never any conversation in which Scrushy was told he had to stay at the same hotel the entire week. It would not have been reasonable to believe he would be required to drive that distance to Palm Beach and then turn around to return to Orlando. It is reasonable to believe that once he was cleared to travel to Palm Beach, he would be allowed to spend the night there. This argument is further strengthened by the Order of the Magistrate in which he points out the distance from Orlando to West Palm Beach.

The United States asserts Scrushy "has absolutely no respect for this Court, any of its magistrate judges, or its probation officers." Scrushy repeatedly stated he would abide by whatever terms and conditions placed on him by the Court. Scrushy was respectful in answering questions posed to him by his attorney, the United States attorney, as well as the Magistrate Judge. There is no evidence in the record that the Magistrate Judge found Scrushy to be disrespectful in any way.

The United States also asserts that Scrushy says that the probation officers lied or didn't ask the right questions. The Defendant does not believe a reading of the transcript will support this statement, but rather, this is the line of questioning asked by the prosecutor and repeatedly denied by Scrushy. Scrushy has never accused any of the probation officers of lying, but has repeatedly stated he believed there was a misunderstanding. When asked,

Scrushy was complimentary of Barry Burton by saying he felt he had been fair with Scrushy, never accusing him of a lie. Scrushy never said the probation officers did not ask the right questions. This was the government's characterization of Scrushy's testimony when Scrushy was accused of not telling the probation officer where he was on Friday the 23rd.

An example of this misunderstanding or poor memory of the facts and circumstances of Scrushy's meetings with the United States Probation Office on Thursday March 29, 2007, should be evidenced by the transcript itself. On cross examination, Barry Burton testified the meeting on the 29th took place with Scrushy, Toby Ford and himself in the conference room. However, on cross examination, Toby Ford testified the meeting took place in Burton's office, not the conference room. Both probation officers cannot be correct on this testimony about where a meeting took place only 10 days prior. Scrushy does not allege either is lying, only that specific facts and circumstances were not remembered clearly.

Further, the United States' appeal indicates, "Defendant Scrushy admitted that he did not abide by this Court's instructions . . ." It is believed that one would be hard pressed to review the transcript from the proceeding held April 9, 2007 and find where Scrushy admitted to not abiding by the Court's instructions. Again, this is the United States' interpretation of the evidence.

In an effort to provide the Defendant's version of the facts, many of which are contrary to those of the United States, and without the benefit of a transcript, the following is provided as the Defendant's version of the testimony presented at the hearing of April 9, 2007:

In mid-February, Scrushy approached his probation officer in Birmingham, Barry Burton, to request to take a family vacation in Orlando to Disney World. Barry Burton sent an email to Scrushy's probation officer in Montgomery, Tamara Martin, who then had this request approved by the Magistrate Judge. The only contents of the email were that Scrushy would be traveling from March 16, 2007 to March 24, 2007 to Orlando and Disney World with his family. This travel plan was approved. Nothing in the email mentioned the hotel at which he was to stay, or any other trips to Ocala or Palm Beach.

A week or so later, Scrushy then went back to visit Barry Burton and told him while he was in Florida he would like to visit some family and friends in Ocala and would like to check on some property in South Florida in Palm Beach. (Scrushy admits that Mr.Burton denies the term "South Florida" was ever used, however this is the term Defendant testified he used when on the witness stand.) Barry Burton's response was that it wouldn't be a problem. This conversation was never transmitted to Tamara Martin in Montgomery by Mr. Burton and the Court was unaware of Scrushy's additional plans, unbeknownst to Scrushy. Scrushy believed he had been approved for this travel, and believed this travel did not restrict him to stay at one hotel, as this was never specified. Scrushy also provided Mr. Burton with plane reservations flying from Birmingham to Orlando on March 16, 2007 and returning March 23, 2007. As the trip had been approved through March 24, 2007, Scrushy advised Burton that he would be looking for another flight which would not leave until Saturday the 24th. Mr. Burton advised that would be fine.

On March 8, 2007, after this conversation with Mr. Burton, Scrushy booked a four

night stay at Disney World at the Saratoga Springs Resort and Spa. Scrushy also advised the captain of his boat, Chez Soiree, that he would be in the area on March 20, 2007 and would like to stay on the boat. Scrushy advised he had been trying to sell the boat and wanted to see the condition of the boat. No previous conditions of Scrushy's release prohibited travel on his boat.

During Scrushy's trip to Disney World, on or about Tuesday, March 20, 2007, he received a call from his attorney, Donald Watkins, who lives and practices in Miami, Florida. Watkins advised that he would like to meet with him, and that if he met with him on Friday March 23, 2007, in Miami, Watkins would make arrangements to fly Scrushy and his family back to Birmingham on Saturday, March 24, 2007. As Scrushy was already planning on being in Palm Beach, which is only approximately 50 miles from Miami, Scrushy agreed.

Scrushy then took his family, consisting of approximately eight people down to Palm Beach, got on his boat, and traveled via the intercoastal waterway to Miami. At no time did the boat go into open waters. In addition, there was testimony that the captain was required to notify United States Customs regarding the boat and who was on the boat as it traveled from Palm Beach to Miami, again evidence Scrushy was not intending to flee. As it was spring break, the testimony of Scrushy was that it would have been difficult to obtain hotel rooms for eight people in Miami, and so the entire party remained and slept on the boat in the slip at the Miami harbor.

On Friday, March 23, 2007, after meeting with his attorney, Scrushy received a telephone call from Tamara Martin who asked, "Are you home yet?". Scrushy, knowing

Barry Burton was scheduled to be out of town that week, was concerned that Ms. Martin had not been advised that his travel was approved through March 24th, although his initial plane reservations did have him returning on the 23rd. Scrushy advised Ms. Martin that he had been approved until the 24th and asked her to please verify this with with Barry Burton. Ms. Martin did not notify Scrushy that the FBI had just warned her of his impending flight.

Testimony was also provided that Ms. Martin asked if Scrushy and his family enjoyed themselves at Disney World to which Scrushy advised, "yes". She further asked how the weather was, and he told her it had been rainy. From this conversation, she testified she felt he was being evasive as to his location and was trying to lead her to believe he was still at Disney World. However, her testimony was the same as Scrushy's as to what was discussed on the telephone. The concern or evasiveness could easily have come from Scrushy's worry that she was under the impression he was already supposed to be home, when in fact he was not coming home until the next day. In addition, by the time she called Scrushy, she had been contacted by the FBI who already told her they believed Scrushy might be in the process of fleeing. Therefore, her mindset has to be taken into consideration when reviewing her testimony. It should also be noted that Scrushy answered the telephone immediately when the probation office called him, and Ms. Martin never simply asked, "Where are you?". Ms. Martin was the one that was admittedly purposely evasive, not Scrushy.

Scrushy was asked to meet Ms. Martin when he returned, which he did on Tuesday, March 27, 2007. When asked about his whereabouts the week of March 16, 2007 through March 24, 2007, Scrushy relayed his trip in detail. There is no allegation that Scrushy was

anything less than truthful with Ms. Marting during this meeting. At this point, Ms. Martin was unaware of Mr. Burton's subsequent approval of travel to Ocala and Palm Beach, and advised Defendant Scrushy that he had violated the terms of his release after numerous conversations with the FBI, who were also unaware of Mr. Burton's agreement to extended travel by Scrushy. Ms. Martin then filed a motion to alter the conditions of release of Scrushy, without any input from Mr. Burton.

Scrushy, concerned that Ms. Martin was unaware of the approved travel to Ocala and Palm Beach did schedule a meeting with Barry Burton on Thursday, March 29, 2007, at which he did urge Mr. Burton to "please tell the truth" about the approved travel outside of Orlando. Scrushy was faced with a situation in which Ms. Martin was requesting a change in his restrictions without knowing fo the agreement by Barry Burton. There was no testimony that Scrushy was rude, or disrespectful in his request to Mr. Burton. It was simply Scrushy's attempt to clarify a situation that obviously needed clarity.

Despite Scrushy's admission he boarded his boat for a trip to Miami to the United States Probation Office, the FBI sent agents to the Palm Beach and Miami area. Reasonable speculation would lead one to believe that the only purpose for their visit would be to uncover evidence of potential flight, as the Probation Office already had an admission from Scrushy as to his travel during the week in question. The evidence presented by the FBI only bolstered the narrative provided by Scrushy. Further, no evidence was presented by the FBI that contradicted anything to which Scrushy testified or which gave any indication they had uncovered any plans for his flight.

Scrushy asserts that the Magistrate Judge, in hearing the testimony and argument presented, correctly determined that Scrushy is not a danger to the community, is not a flight risk, and is likely to abide by the conditions of release as Ordered by the Court. The United States' failed to prove otherwise by any interpretation of the evidence presented. There was never any evidence or argument presented by the United States that Scrushy is a danger to the community. The arguments of the United States centered on two issues: 1. Defendant Scrushy is a flight risk, and 2. Defendant Scrushy cannot abide by the terms of his conditions of release. Scrushy disputes the allegations contained in the Government's appeal and provides the following arguments in response.

## II.   DEFENDANT POSES NO RISK OF FLIGHT

The first argument the United States asserts for Defendant Scrushy's revocation is that he is a flight risk and that there is no condition or combination of conditions of release that will assure that he will not flee under 18 U.S.C. §3148(b)(2)(A). This allegation is not supported by the record. The government repeatedly asserts that Scrushy is a serious risk of flight and goes as far as to say, "The United States believes that Defendant Scrushy will flee the jurisdiction of the Court on or before his sentencing date." However, there is not one piece of evidence that supports this assertion by the government. Nowhere in the Government's brief does it provide facts or evidence that was elicited during the course of the hearing held in front of the magistrate on April 9, 2007 that Scrushy is a flight risk. The facts actually showed the opposite to be true.

18 U.S.C. §3142(g), is specifically cited in 18 U.S.C. §3148(b)(2)(A) as the specific

factors to be considered by the Judge in making a determination as to whether there is any condition or combination of conditions of release which would assure that the defendant would not flee. While this section is not addressed by the government, the Defendant notes that this section must be analyzed as stated in 18 U.S.C. §3148(b)(2)(A). The following are factors that must be considered in this determination:

1. **The nature and circumstances of the offense charged.**

   The offense charged is not a crime of violance, is not a Federal crime of terrorism, does not

involve a minor victim or a controlled substance, firearm, explosive, or destructive device.

2. **The weight of the evidence against the person.**

The Defendant asserts the weight of evidence is not strong and is limited to the testimony of less than reliable witnesses, none of whom ever heard Scrushy attempt to bribe anyone.

3. **The history and characteristics of the person, including**

   A. **The person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and**

   B. **Whether, at the time of the current offense or arrest, the person was on probation, on parole, or on another release pending trial,**

> **sentencing, appeal or completeion of sentence for an offense under Federal, State, or local law.**

The government has provided no evidence as to any issues with regards to Scrushy character, or physical or mental condition. It is well documented that he has family ties to the Birmingham community where he has lived and worked for decades. There is no evidence of drug or alcohol use, and he has no previous criminal history. Most telling, Scrushy has an exemplary appearance record for court proceedings. It is uncontroverted that at the time of his arrest, Scrushy was not on probation or parole for any other offense under Federal, State or local law.

4. **The nature and seriousness of the danger to any person or the community that would be posed by the person's release.**

The Magistrate made a specific statement at the hearing of April 9, 2007 that he had not heard any evidence and did not believe that Scrushy posed any danger to the community. The government itself, did not address this, but focused on their other claims.

The United States' allegations that Scrushy poses a flight risk centers on the fact Defendant admitted to being aboard his boat during a trip from Palm Beach to Miami, Florida. Testimony was presented that the only purpose of this approximately 50 mile boat trip was to meet with Defendant's attorney, Donald Watkins, who lives and practices in Miami, Florida. This meeting took place on Friday, March 23, 2007 to provide for the availability of attorneys Jim Parkman, Donald Watkins, and Art Leach. The meeting was not scheduled until on or about Tuesday, March 20, 2007.

Probation officers, as well as the Defendant himself, testified that Scrushy has traveled out of the State of Alabama approximately 10 to 12 times since the case in Montgomery, many of them post conviction. Testimony was provided, that including Defendant's 2005 trial in Birmingham, Scrushy has traveled outside of the State of Alabama approximately 25 times. Included in this travel was trips to Texas, South Carolina, New York, Los Angeles, the Bahamas, and notably, in October 2006, after his conviction in this case, Scrushy was authorized to travel to Miami. On each and every occasion, Scrushy complied with the restrictions of his travel and the probation office testified they had no issues with his compliance in these instances. This compliance by Scrushy came even as he faced over 600 years if convicted in the Birmingham case. In addition, Scrushy has been subjected to civil suits in which he has been ordered to pay in excess of $50 million dollars. Scrushy has not fled, but paid the judgments against him. On his numerous court dates in both Birmingham and Montgomery, Scrushy has not missed any, or even been late in attendance.

Testimony was provided in front of the magistrate that since Scrushy's return from his March trip, probation officers were given full access to both his home and office and found no evidence that Scrushy attempted to flee while on his trip, or is planning to flee at any point in the future.

The most telling fact as to Scrushy's intent on that trip is that he returned home, just as scheduled, on Saturday March 24, 2007 and immediately reported in to the probation office. Then, in light of the government's motion to revoke the conditions of his release, he appeared in Court to answer the allegations, all with the possibility he would be incarcerated.

### III. UNLIKELY TO ABIDE BY HIS CONDITIONS OF RELEASE

The second argument the United States asserts for Defendant Scrushy's revocation is that they claim he is unlikely to abide by the conditions of his release under 18 U.S.C. §3148(b)(2)(B). Again, this allegation is not supported by the record.

Testimony was presented that, including his trial in Birmingham, Scrushy has traveled outside of Alabama approximately 25 times. In the current case alone, testimony was provided Scrushy has taken 10 to 12 trips while under supervision. No evidence was provided that there has ever been a violation by Scrushy of the terms of his travel. In addition, no evidence was provided that in the over 2 years of his supervision, Scrushy has ever provided any problem in his supervision. The record of both the Birmingham and Montgomery trials would support that Scrushy never missed a day of court and was never late. These are not the actions of someone that cannot abide by conditions of release.

The United States argues that the United States probation office cannot control Scrushy. However, these statements, to the knowledge of Mr. Scrushy, have never been made by the probation office. This argument originated with the arguments of the United States Attorney. It is believed that if the United States Probation Office felt they could not control Scrushy, they would have let that be known to the Court.

The initial request from the United States Attorney's office stated, "the United States supports the petition of the United States Probation Office and asks this Court to revoke or modify the order of post-conviction release . . ." At the hearing, the Magistrate Judge, in modifying the terms of post-conviction actually granted the relief requested by the United

States. However, now, on appeal, the United States position has obviously changed in stating, "Rather, the United States submits that the time has come, not coincidentally in the shadows of a looming sentencing date, for this Court to revoke Defendant Scrushy's release - the only action certain to assure that Defendant Scrushy does not flee pending sentencing and abides by this Court's orders." This, despite the glaring lack of evidence that Mr. Scrushy is a flight risk. The United States confirms their position in stating, "this Court should grant the government's motion, revoke Defendant Scrushy's order of release and detain him pending sentencing."

This stands in stark contrast to the United States Probation Office, whose position was that the terms of release should be altered. This position was formulated by Tamara Martin prior to her realization that Barry Burton had in fact approved travel to both Ocala and Palm Beach. Never, even after the hearing of April 9, 2007, has the United States Probation Office indicated a necessity to incarcerate Mr. Scrushy pending sentencing.

The United States' current position is not supported by the United States Probation Office who has even supported altering the Court's Order pursuant to the hearing of April 9, 2007 to the benefit of Scrushy. The United States Probation Office, in conversations with Scrushy and his attorneys, agreed to support a motion to extend Defendant's unmonitored travel to his family farm in Selma, located in Dallas and Wilcox Counties of Alabama. These counties are located in the Southern District of Alabama. If the United States Probation Office felt Scrushy was difficult to monitor or was a flight risk, it hardly would support such a motion.

IV. **CONCLUSION**

The government purports to file this appeal pursuant to Title 18, United States Code, Section 3145. It is presumed that the government relies on subsection (a)(1) which provides, "the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release."

In order for the Government to seek the relief requested under 18 U.S.C. §3148, it must be shown (1) by clear and convincing evidence that the defendant has violated any condition of release, and (2) either (a) that, based on the factors found in 18 USC §3142(g), there is no condition or combination of conditions of release will assure that the defendant will not flee, or (b) that the defendant is unlikely to abide by any condition or combination of conditions of release. The United States has failed to meet this burden.

The caselaw provided by the government in its appeal of United States v. Davis, 826 F. Supp. 404, 406 (D.Utah 1993) and United States v. Strong, 775 F.2d 504, 505 (3d Cir. 1985) are distinguishable from the current case. Davis simply answers the question, "If there has not been a technical violation, but probable cause exists to believe the Defendant is making preparations to flee, does the Court have the authority to hold a revocation hearing?" Certainly, the answer is yes, and Scrushy does not dispute this Court's authority under 18 U.S.C. 3148 to hold such a hearing.

Strong simply states that the initial burden is placed on a Defendant, post conviction, to prove by clear and convincing evidence that he is not a flight risk or a danger to the community, before being released. The Defendant has already met this burden and was

released post conviction subject to the supervision of the United States Probation Office. The burden is then shifted to the government as stated in 18 U.S.C. §3148(b)(1)(B).

Further, the government cites <u>United States v. Cook</u>, 880 F.2d 1158, 1161 (10th Cir. 1989). <u>Cook</u> deals with a defendant who, while on post-conviction release, commits a new crime. This is certainly not applicable.

As the United States has failed to meet its burden under 18 U.S.C. §3148(b), by proving with clear and convincing evidence that Mr. Scrushy violated any condition of his release and that conditions will not assure that the defendant will not flee, or that the defendant is unlikely to abide by any condition or combination of conditions of release, the United States request should be denied.

In addition, as there are several factual matters in dispute and a transcript of the proceedings held April 9, 2007 is not yet available, the Defendant requests that the Court delay any ruling on this matter until the transcript can be filed with the Court and then provide the Defendant 10 days to supplement this motion with support from the transcript should this be necessary.

Respectfully submitted this 17th day of April, 2007.

Respectfully submitted,

/s/ James W. Parkman, III
JAMES W. PARKMAN, III
Attorney for Defendant Richard Scrushy
Parkman, Adams & White, LLC
505 20th Street North
Suite 825
Birmingham, AL 35203
(205) 244-1920

(205) 244-1171 FAX

_____
R. MARTIN ADAMS
Attorney for Defendant Richard Scrushy
Parkman, Adams & White, LLC
505 20th Street North
Suite 825
Birmingham, AL 35203
(205) 244-1920
(205) 244-1171 FAX

_____
WILLIAM C. WHITE, II
Attorney for Defendant Richard Scrushy
Parkman, Adams & White, LLC
505 20th Street North
Suite 825
Birmingham, AL 35203
(205) 244-1920
(205) 244-1171 FAX·

## CERTIFICATE OF SERVICE

I hereby certify that I have filed the foregoing Response with the Clerk of the Court, under seal, and have forwarded a copy to all counsels of record.

Dated this the 17th day of April, 2007.

_____
JAMES W. PARKMAN, III
Parkman, Adams & White, LLC
505 20th Street North
Suite 825
Birmingham, AL 35203
(205) 244-1920
(205) 244-1171 FAX