IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 2:05-CR-119-MEF |
| | ) | |
| RICHARD M. SCRUSHY | ) | |

**UNITED STATES' SENTENCING MEMORANDUM AS TO DEFENDANT SCRUSHY**

COMES NOW the United States of America, by and through Louis V. Franklin, Sr., Acting United States Attorney for the Middle District of Alabama, and William M. Welch, II, Chief of the Public Integrity Section of the Criminal Division of the United States Department of Justice, and hereby files its sentencing memorandum in the above-styled case. Based on the arguments and authorities cited herein and in the motions for upward departure submitted to the Court herewith, the government asserts that Defendant Scrushy is deserving of and should receive a sentence of twenty-five years for the criminal conduct for which he was convicted, and that such a sentence is reasonable under Title 18, United States Code, Section 3553(a). In this sentencing memorandum, the United States sets forth its objections to certain portions of the presentence report and provides further information and argument to support its position.

I.  The Applicable Standards for Determining a Sentence Post-<u>Booker</u>.

After the United States Supreme Court's decision in <u>United States v. Booker</u>, 543 U.S. 220 (2005), a district court is required to impose a "reasonable" sentence after considering the now-advisory United States Sentencing Guidelines and the factors delineated in Title 18, United States Code, Section 3553(a). See <u>United States v. Thomas</u>, 446 F.3d 1348, 1356-57 (11th Cir. 2006) (upholding the district court's sentence imposed after considering the advisory Guidelines and the

factors in Section 3553(a)). Importantly, Title 18, United States Code, Section 3661 "remains intact post-Booker." United States v. Faust, 456 F.3d 1342, 1348 (11th Cir. 2006). Accordingly, "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661. This information includes facts related to conduct for which the defendant was acquitted provided that the facts are proved by a preponderance of the evidence, and the sentence imposed does not exceed the statutory maximum authorized by the jury's verdict. Faust, 456 F.3d at 1348.

Thus, as long as the Guidelines are applied in an advisory manner, "nothing in Booker prohibits district courts from making, under a preponderance-of-the-evidence standard, additional factual findings" that enhance a defendant's sentence up to the statutory maximum. United States v. Smith, 480 F.3d 1277, 1281 (11th Cir. 2007). "The district court's factual findings for purposes of sentencing may be based on, among other things, evidence heard during trial, undisputed statements in the PSI, or evidence presented during the sentencing hearing." Id. (citations and quotations omitted). Consequently, this Court has the authority to make factual findings proved to it by a preponderance of the evidence, including proof by evidence introduced at trial, and, after consulting the advisory Guidelines, sentence Defendant Scrushy up to the statutory maximum for each offense of conviction. The United States asserts that twenty-five years imprisonment,[1] a fine

---

[1] Based on its calculation of the applicable advisory Guidelines in conjunction with its motion for upward departure, the United States asserts that the relevant offense level and Guideline range for Defendant Scrushy is offense level 40 and a range of 292-365 months imprisonment. The United States notes that the statutory maximum for each offense in Counts 6-9 is 20 years, for the offense in Count 4 is 10 years, and for the offense in Count 5 is 5 years. The Court may impose a sentence within the 292-365 months guideline range by sentencing Defendant Scrushy to consecutive sentences for his multiple counts of conviction as permitted

of $7,274,109.24, and an order of restitution of $628,000 is the most appropriate sentence in this case.

**II.    The Presentence Report Understates the Value of the Payments, the Benefit Received or to be Received in return for the Payments, or the Loss to the Government from Defendant Scrushy's Criminal Activity under Section 2C1.1(b)(2)(A), and Thereby Fails to Increase Defendant Scrushy's Offense Level by Eighteen Levels under Section 2B1.1(b)(1)(J).**

The United States agrees with the PSR that Defendant Scrushy's offense level should be calculated under Section 2C1.1. PSR at ¶ 33.[2] Under Section 2C1.1(b)(2)(A), Defendant Scrushy's offense level is increased based on the greater of (1) the value of the payments, (2) the benefit received or to be received in return for the payments, or (3) the loss to the government from the offense. For this figure, the PSR selects $500,000 based on the value of the payments. PSR at ¶ 34. The United States objects to this amount as the value of the payments for the offense conduct because it does not include the value of all payments received as bribes. In addition to the $500,000 bribe received by Defendant Siegelman, Defendant Scrushy paid at least $11,000[3] in bribes to Tim Adams as part of the conspiracy and honest services fraud scheme for which Defendant Scrushy and Defendant Siegelman were convicted in Counts 5, and Counts 6-9, respectively.

More importantly, the United States objects to the PSR's use of the value of payments as the

---

under 18 U.S.C. § 3584 and U.S.S.G. § 5G1.2.

[2] All references are to the PSR dated April 18, 2007, the only one available as of the date of this writing.

[3] This amount is a conservative estimate based on the two checks paid to Tim Adams and does not include the value of other benefits Defendant Scrushy lavished on him (e.g., helicopter rides to and from CON Board meetings, travel on HealthSouth aircraft to the Oshkosh Airshow in Oshkosh, Wisconsin, and a job offer at HealthSouth) pursuant to the conspiracy and honest services fraud scheme for which Defendants Siegelman and Scrushy were convicted.

category to establish the offense level adjustment under the table in Section 2B1.1 because the sum of the benefits received from the payments is greater than the value of the payments. The amount of benefits received in return for the payments is as follows: Defendant Siegelman received **$500,000** in benefits because the IHS check for $250,000 and the HealthSouth check for $250,000 were both used to pay off a loan for which he was personally liable. In addition, IHS received **$17,000** in benefit because UBS Warburg forgave $267,000 in debt owed to it by IHS in return for IHS issuing the $250,000 check that Defendant Scrushy used to bribe Defendant Siegelman ($250,000 of this $267,000 amount has already been counted as a benefit received by Defendant Siegelman). Tim Adams received at least **$11,000** in benefits from Defendant Scrushy and Defendant Siegelman as part of the offense conduct. In addition, the United States submits that HealthSouth received **$3,109,054.62** of benefit from the construction and operation of the Phenix City hospital – a project for which Defendant Scrushy paid a $3,000 bribe to Adams for Adams to attend the July 2002 CON Board meeting, establish a quorum, and vote in favor of HealthSouth's CON application for the hospital. Adding these sums together provides a total amount of benefit received of **$3,637,054.62**.

Based on the table in Section 2B1.1(b)(1)(J), Defendant Scrushy's offense level should be increased by 18 levels. See Munoz, 430 F.3d at 1374 ("[T]he law is quite clear that for sentencing purposes all losses caused by fraud or deceit may be imputed to a defendant who was a member of the conspiracy which caused those losses.") (citations and quotations omitted). The United States thus objects to the PSR because it understates the amount of benefit received and only increases Defendant Scrushy's offense level by 14 levels, rather than 18 levels, under the table in Section 2B1.1 pursuant to Section 2C1.1(b)(2)(A).

### III. The PSR Incorrectly States the Maximum Fine Available Against Defendant Scrushy Under Title 18, United States Code, Section 3571(d).

Based on the above calculation that the total benefit received from the payments is $3,637,054.62, the statutory fine range in the PSR should be adjusted upward to $7,274,109.24 in light of 18 U.S.C. § 3571(d), which provides "[i]f any person derives pecuniary gain from the offense … results in pecuniary loss to a person other than the defendant, the defendant may be fined not more than twice the gross gain or twice the gross loss … ."

In light of § 3571(d) increasing the fine range by statute, the Guidelines range should therefore also be adjusted upward to $7,274,109.24 under Guidelines § 5E1.2(c)(4), which provides, "Subsection (c)(2), limiting the maximum fine, does not apply if the defendant is convicted under a statute authorizing (A) a maximum fine greater than $250,000 … . In such cases, the court may impose a fine up to the maximum authorized by the statute."[4]

The Court should impose a fine on Defendant Scrushy in the amount of $7,274,109.24. The United States avers that a reasonable amount for Defendant Scrushy to pay as a fine is the amount of loss caused to the victims of his crime plus the amount of ill gotten gain he expected to receive from his illegal acts. As discussed supra, the total benefit received from Defendant Scrushy's criminal conduct provides the best measure of the amount of loss and expected gain from his criminal actions and is conservatively assessed at $3,637,054.24. Considering Defendant Scrushy's financial condition, an amount that is double the loss and expected gain, or $7,274,109.24, is an

---

[4] In the alternative, should the Court ultimately find that the Guidelines range is limited by Guidelines § 5E1.2(c)(2), the government submits that a Guidelines departure under § 5K2.0 is appropriate and necessary to effect the purpose of the required considerations in 18 U.S.C. §§ 3553(a) and 3572, and especially to achieve any meaningful "deterrence to criminal conduct," § 3553(a)(2)(B), in light of Defendant Scrushy's enormous "income, earning capacity, and financial resources." 18 U.S.C. § 3572(a)(1).

appropriate and reasonable fine. This amount will not only punish Defendant Scrushy for his role in corrupting the Office of Governor and the CON Board, but will also deter him and others from engaging in similar actions in the future. The United States urges the court to impose this amount, the statutory maximum, because the most effective method to ensure no recidivism by Defendant Scrushy and to deter others from corrupting State government is to signal clearly that those who engage in public corruption offenses shall not profit from such activity.

IV.   **The PSR Should Recommend that Defendant Scrushy Receive a Four-Level Enhancement for Organizer/Leader under Section 3B1.1 Because the Criminal Activity Involved Five or More Participants and Because the Criminal Activity was "Otherwise Extensive."**

The Probation Officer correctly enhances Defendant Scrushy's offense level by four-levels under Section 3B1.1 because he was an organizer/leader of the criminal activity. PSR at ¶ 36. The PSR expressly states that Defendant Scrushy "organized the activities relating to and surrounding the circumstances of the federal funds bribery and there are at least five participants." The United States asserts, however, that the Court should also find that Defendant Scrushy qualifies for the four-level enhancement because the criminal activity was "otherwise extensive." That is, both prongs of Section 3B1.1 apply to Defendant Scrushy's criminal conduct and merit a four-level increase in his offense level.

The CON Board criminal activity was "otherwise extensive" under Section 3B1.1(a). See United States v. Rodriguez, 981 F.2d 1199, 1200 (11th Cir. 1993) (finding that the organizer/leader enhancement applied "even if fewer than five people were involved, [because] the criminal activity was 'otherwise extensive'") (quoting Section 3B1.1(a)). "In assessing whether an organization is 'otherwise extensive,' all persons involved during the course of the entire offense are to be

considered." Section 3B1.1 cmt. 3. See Rodriguez, 981 F.2d at 1200 (quoting Section 3B1.1 cmt. 3). The extensive involvement of unwitting or unsuspecting accomplices in the defendant's criminal activity is a significant factor in determining whether the criminal activity was "otherwise extensive." See United States v. Fullwood, 342 F.3d 409, 415 (5th Cir. 2003) (upholding the district court's application of Section 3B1.1(a) because of the defendant's extensive use of unknowing participants).

The CON Board criminal activity was certainly otherwise extensive given that it involved numerous corporations, professionals, government offices, and individuals, including many unsuspecting accomplices, (e.g., numerous personnel from Integrated Health Services, HealthSouth, UBS Warburg, First Commercial Bank, and the Alabama Secretary of State's Office, David Kassouf, Darrin Cline, and Jabbo Wagoner). The CON Board criminal activity was replete with instances of each Defendant trying to hide his participation in the crimes (e.g., Defendant Scrushy told Mike Martin that he [Scrushy] did not want his fingerprints on the IHS check, Defendants Siegelman and Scrushy never disclosed publicly that Defendant Scrushy was the source of the $250,000 IHS check). Since Defendant Scrushy has indicated at the objections conference that he objects to the four-level enhancement under Section 3B1.1, the United States contends that the Court should find that both grounds for the enhancement are met in this case and enhance Defendant Scrushy's sentence by four levels.

**V.  Defendant Scrushy's Offense Level Should be Increased by Two Levels Under Section 2C.1.1(b)(1) Because the Counts of Conviction Involved More than One Bribe.**

The government objects to ¶ 34 of the PSR insofar as it does not include a two level increase for the specific offense characteristic of "more than one bribe" under Section 2C1.1(b)(1). In the

-7-

course of the offense conduct for which he stands convicted, Defendant Scrushy paid at least two bribes. Specifically, Defendant Scrushy paid (1) a bribe of $500,000 to Defendant Siegelman, and (2) at least one bribe to CON Board Member Timothy Adams.

The bribes identified above are offense conduct specifically identified in the indictment. Defendant Scrushy's bribe payment to Defendant Siegelman is specifically charged in Count 4, which states that "defendant Scrushy gave, offered, and agreed to give $500,000 to DON EUGENE SIEGELMAN … ." The jury found Defendant Scrushy guilty of Count 4.

The $500,000 bribe in Count 4, together with further, different bribes, are all charged as integral parts of Count 5. Count 5 charges a mail fraud conspiracy to deprive the State of Alabama of the honest services of both Defendant Siegelman "as well as other members of the CON Board." Count 5 goes on to specifically state as one manner and means of the conspiracy the same bribe identified in Count 4, i.e., that "RICHARD M. SCRUSHY would and did pay $500,000 to DON EUGENE SIEGELMAN …" Indictment, at ¶ 55a. Count 5, however, goes on to specifically state as a separate manner and means of the conspiracy that "RICHARD M. SCRUSHY would and did offer things of value to another CON Board member…" Id. at ¶ 55e. Moreover, the indictment specifically charged two payments to the "CON Board Member," separate and apart from the $500,000 paid to Defendant Siegelman. In particular, ¶ 56 charges as one overt act a "payment of $3,000" on August 2, 2002, for creating a CON Board quorum for action on a proposed hospital. Further, ¶ 56 charges a February 6, 2002, "payment of $8,000" concerning a certain PET scan application as another overt act. At trial, the testimony of Loree Skelton both identified Timothy Adams as the CON Board member receiving these two separate payments, and highlighted their

separation from the $500,000 bribe to Defendant Siegelman, of which she had no knowledge. The jury found Defendant Scrushy guilty of Count 5.

Further, all of the same bribes identified in the Count 5 conspiracy were also charged as substantive mail fraud in Counts 6 through 9. Specifically, Counts 6 through 9 charged the very same manner and means as Count 5, i.e., that "RICHARD M. SCRUSHY would and did pay $500,000 to DON EUGENE SIEGELMAN …", id. at ¶ 59a, and that "RICHARD M. SCRUSHY would and did offer things of value to another CON Board member…" Id. at ¶ 59e. Moreover, and more importantly, Counts 6 through 9 proceed to charge aspects of all the various bribes as separate mailings in furtherance of the scheme. Specifically, Counts Six and Seven charge mailings of CON Board appointment letters that furthered the $500,000 bribe of Defendant Siegelman by giving HealthSouth membership on and influence over the CON Board. Count 8, in contrast with Counts 6 and 7, charges a mailing in furtherance of the $3,000 bribe to Timothy Adams to facilitate a Certificate of Need for a HealthSouth hospital in Phenix City, Alabama. Count Nine, in further contrast with Counts 6 through 8, charges a mailing that furthered the $8,000 bribe in connection with the PET scanner application. The jury found Defendant Scrushy guilty of each of Counts 6 through 9, thereby specifically finding that each of the multiple bribes at issue did occur.

Accordingly, Defendant Scrushy's offense conduct in this case includes at least two separate acts of bribery, and he should receive a two-level increase under Guidelines § 2C1.1(b)(1).

## VI.     Defendant Scrushy's Offense Level Should be Increased by Two Levels for Obstruction of Justice under Section 3C1.1.

The government objects to the PSR at ¶ 34 insofar as it does not include a two level enhancement for obstruction of justice. Defendant Scrushy has willfully attempted to obstruct justice

in the course of his sentencing proceedings in this case. Specifically, under Section 3C1.1, Defendant Scrushy has attempted to obstruct the revocation of release proceedings concerning his travel aboard his yacht in Florida without the knowledge of his probation officer. Further, as noted by the PSR at ¶ 66, Defendant Scrushy might also have attempted to obstruct justice by providing false information on his financial condition, a matter that remains under review and subject to further investigation.

In the course of the probation revocation proceedings against Defendant Scrushy that came to a hearing on April 9, 2007, Defendant Scrushy attempted to obstruct justice in two ways. First, Defendant Scrushy willfully attempted to prevent a witness from communicating information to the Federal Bureau of Investigation in its investigation of Defendant Scrushy's movements in Florida. More specifically, Defendant Scrushy at the very least engaged in misleading conduct by instructing William Kurtz, captain of Defendant Scrushy's yacht, to inform the FBI, when approached by an agent, that Kurtz was unwilling to speak to the FBI and that he was represented by Art Leach, one of Defendant Scrushy's defense attorneys. Defendant Scrushy gave Kurtz these instructions knowing that Mr. Leach did not then, and had never, represented Kurtz. (The government notes that Mr. Leach has directly communicated that fact to government counsel by e-mail on his own initiative). Defendant Scrushy advised Kurtz to invoke this spurious representation by counsel as a means to avoid providing information to the government about Defendant Scrushy's movements in Florida. As a result, FBI Special Agent Keith Baker was prevented from interviewing Kurtz on or about April 4, 2007.

Further, Defendant Scrushy perjured himself during the Court's revocation hearing.

Specifically, Defendant Scrushy falsely stated under oath (1) that he had advised a United States Probation Officer of his intended movements in Florida, (2) that a United States Probation Officer had approved his movements in Florida, and (3) that he had not instructed Kurtz to invoke non-existent representation of counsel and to refuse to cooperate with the FBI.  As to the last false statement, at the revocation hearing, Defendant Scrushy's testimony under oath was as follows:

> Q. Okay.  And you heard Special Agent Baker testify that the boat captain told him that you had told him, the boat captain – you had told the boat captain to tell Agent Baker that he was represented by Art Leach.
>
> A. I did.  Yes, sir.  I heard that.
>
> Q.  And you also heard the testimony about the boat captain feeling loyal to you because of what had been done; and therefore, he was going to do what you told him to do.  I think Agent Baker said he said when he says jump, I jump; is that right?
>
> A. I heard him say that.
>
> Q. Okay.  And the fact of the matter is that he didn't cooperate with law enforcement when they came down there to try to find out about where you had been and where you were, right?
>
> A. If he – are you saying he didn't meet with them?
>
> **Q. Did you tell him not to cooperate with law enforcement?**
>
> **A. No, sir.  I didn't say –**
>
> Q. Am I – am I asking the question the wrong way?  Let me ask it another way.  Did you tell him not to talk to the FBI?
>
> A. I told him that we had a lawyer and to have them call the lawyer.

Transcript, Motion Hearing, April 9, 2007, at 185-86 (emphasis added).

Accordingly, Defendant Scrushy should receive a two level upward adjustment of his sentence for obstruction of justice for his actions regarding Kurtz, 18 U.S.C. § 1512(b)(3), and his false statements during the revocation hearing.  See, e.g., United States v. O'Dell, 204 F.3d 829, 837 (8th Cir. 2000) (perjury at pretrial bond determination); see also United States v. Stallings, 194 Fed.

App. 827, 837 (11th Cir. 2006) (false statement through counsel at pretrial bond determination). Moreover, Defendant Scrushy remains subject to further investigation for obstruction of justice in his representations about his financial condition for inclusion in the PSR, which could independently warrant the same two level upward adjustment.

**VII.    The PSR Fails to Recognize Identifiable Victims of Defendant Scrushy's Criminal Activity.**

The PSR states that "[t]here is no identifiable victim who incurred a . . . financial loss as a result of the counts of conviction," PSR at ¶ 27, and that "[r]estitution is not an issue in this case." PSR at ¶ 79. The United States objects to this statement because HealthSouth, UBS Warburg, and Brookwood Hospital are identifiable victims of Defendant Scrushy's criminal conduct for which he was convicted. In particular, UBS Warburg lost at least $267,000 by forgiving that amount in indebtedness to Integrated Health Services, which gave a $250,000 check to Defendant Scrushy as part of Defendant Scrushy's $500,000 bribe to Defendant Siegelman. Similarly, Defendant Scrushy illegally expended at least $261,000 of funds from HealthSouth as part of his paying bribes to Defendant Siegelman and Tim Adams. Brookwood Hospital lost at least $100,000 in expenses and income associated with the CON Board's denial of its application for a MRI at its meeting in January 2001 – the night before which Defendant Scrushy improperly contacted Margie Sellers, Chairperson of the CON Board, at home <u>ex parte</u> to criticize Brookwood's proposal.

The United States asserts that Defendant Siegelman should therefore be ordered to pay restitution as follows: $261,000 to HealthSouth, $267,000 to UBS Warburg, and at least $100,000 to Brookwood,[5] for a total amount of restitution of $628,000.

**VIII. Conclusion.**

Based on the foregoing objections, the United States contends that the PSR miscalculates Defendant Scrushy's guideline range and appropriate sentence. The correct application of the Guidelines is as follows:

| | |
|---|---|
| Base Offense Level = | 10 (§ 2C1.1(a)) |
| Specific Offense Characteristic = | 2 (§ 2C1.1(b)(1)) |
| Specific Offense Characteristic = | 18 (§ 2C1.1(b)(2)(A)) |
| Adjustment for Role in Offense = | 4 (§ 3B1.1(a)) |
| Adjustment for Obstruction of Justice = | 2 (§ 3C1.1) |
| Offense Level Prior to Upward Departure = | 36 |
| Guideline Range (CHC = 1) = | 188-235 |
| Upward Departure for Systematic and Pervasive Government Corruption = | 2 (§ 2C1.1 cmt. 5 & § 5K2.0) |
| Upward Departure for Abuse of Position of Private Trust = | 2 (§ 5K2.0) |
| Offense Level After Upward Departure = | 40 |
| Guideline Range = | 292-365 |
| Fine Range = | $0 - $7,274,109.24 |

---

[5]At the sentencing hearing, the United States intends to present evidence to establish a more accurate figure of the loss to Brookwood Hospital. The government was awaiting receipt of this information from Brookwood at the time of this writing.

Restitution = $628,000

Based on this correct calculation under the Guidelines, consideration of the factors set forth in Title 18, United States Code, Section 3553(a), and the government's motions for upward departure filed herewith,[6] the United States asserts that Defendant Scrushy should receive a sentence of 300 months, or 25 years, a fine of $7,274,109.24, and an order to pay restitution of $628,000 for the offenses for which the jury convicted him. A sentence of 25 years is a reasonable sentence given that the jury convicted Defendant Scrushy for public corruption offenses that spanned at least a four year time frame, including a period while he was CEO and Chairman of HealthSouth, involved his corruption of the office of Governor and the CON Board, caused a heightened distrust of State government, and abused his position of trust as the chief fiduciary at HealthSouth. If ever a defendant was deserving of being held accountable to the maximum extent for his criminal wrongdoing, Defendant Scrushy is that defendant, especially given the complete lack of remorse and acceptance of responsibility he has shown for his crimes. The United States, therefore, respectfully urges this Court to punish Defendant Scrushy to the fullest extent permitted under the law.

---

[6]The United States has moved for an upward departure for Defendant Scrushy's sentence because his criminal activity was part of systematic and pervasive corruption of State government that may cause a loss of public confidence in government as permitted under § 2C1.1, cmt. 5, and for abuse of a position of private trust as CEO and Chairman of HealthSouth while these crimes were committed as permitted under Section 5K2.0.

Respectfully submitted this the 25th day of May, 2007.

| | |
|---|---|
| LOUIS V. FRANKLIN, SR.<br>ACTING UNITED STATES ATTORNEY | WILLIAM M. WELCH, II<br>CHIEF, PUBLIC INTEGRITY SECTION |

/s/ Louis V. Franklin, Sr.
Acting United States Attorney
One Court Square, Suite 201
Montgomery, AL 36104
Phone: (334)223-7280
Fax:    (334)223-7560
Email: louis.franklin@usdoj.gov

/s/ J.B. Perrine
Assistant United States Attorney
One Court Square, Suite 201
Montgomery, AL 36104
Phone: (334)223-7280
Fax:    (334)223-7135
Email: jb.perrine@usdoj.gov
ASB-9077-E31J

/s/ Stephen P. Feaga
Assistant United States Attorney
One Court Square, Suite 201
Montgomery, AL 36104
Phone: (334)223-7280
Fax:    (334)223-7560
Email: steve.feaga@usdoj.gov
ASB-7374A60S

/s/ Joseph L. Fitzpatrick, Jr.
Special Assistant United States Attorney
Assistant Attorney General
Office of the Attorney General
11 S. Union
Montgomery, AL 36130
Phone: (334)353-4839
Fax:    (334)242-4890
Email: j.fitzpatrick@ago.al.state.us

/s/Richard C. Pilger
Department of Justice, Criminal Division
Public Integrity Section
10th & Constitution Ave, NW
Bond Building - 12th Floor
Washington, DC 20530
Phone: (202)514-1412
Fax:    (202)514-3003
Email: richard.pilger@usdoj.gov

IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 2:05-CR-119-MEF |
| | ) | |
| **RICHARD M. SCRUSHY** | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on May 25, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

                                                Respectfully submitted,

                                                LOUIS V. FRANKLIN, SR.
                                                ACTING UNITED STATES ATTORNEY

                                                /s/ Louis V. Franklin, Sr.
                                                LOUIS V. FRANKLIN, SR.
                                                Acting United States Attorney
                                                Post Office Box 197
                                                Montgomery, Alabama 36101-0197
                                                (334) 223-7280
                                                (334) 223-7135 fax
                                                louis.franklin@usdoj.gov