**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | Case No. 2:05cr119-MEF |
| RICHARD M. SCRUSHY,<br>          Defendant. | |

**DEFENDANT RICHARD M. SCRUSHY'S REPLY
TO THE GOVERNMENT'S SENTENCING MEMORANDUM**

COMES NOW Defendant Richard M. Scrushy, by and through his undersigned counsel of record, and files this Reply to the United States' Sentencing Memorandum as to Defendant Scrushy (Doc. 590).

## I.  INTRODUCTION

At age 54, Richard Scrushy stands before the Court, never previously having been convicted of an offense to be sentenced on charges that he bribed the former governor of Alabama for a seat on the CON Board, a post which thereafter was of benefit to HealthSouth, the company he founded in the mid-80's with four friends and made into a Fortune 500 corporation.

Richard Scrushy is married and the father of nine children, the five youngest ones aged 14, 12, 7, 4, and 2, live at home with Richard and his wife.  The sentence the government requests would imprison Richard Scrushy for the entirety of his children's childhood and past their teenage years into adulthood.  It would irreparably harm those children to have to grow up without their daddy particularly because of the special

circumstances involving the two older ones, who would be returned to live with their biological mother and for the younger ones, who would not only lose a father but the older siblings with whom they have lived all their young lives. Such a sentence in this case is unjust, unnecessary and inconsistent with the statutory mandate that requires a sentence that is "sufficient, but not greater than necessary." 18 U.S.C. § 3553.

A native of Alabama, Richard was born to a family of modest means and through his hard work and perseverance became a very successful businessman. He has given of himself to many charitable causes and donated millions of dollars and many hours of his own time to persons in need and to organizations that teach, feed, or help others. As an ordained minister since 2004, he has now found his true calling. The Court has before it a number of letters from diverse persons explaining how Richard has helped them in significant ways and describing for the Court that the man they know is not the man portrayed by the government during the trial or in its sentencing memorandum. The Richard Scrushy described in the letters is a man of God, who cares about others, and who is a good father and a good neighbor. He is one of those people, who can be trusted to come through when help is needed, as he did during Hurricane Katrina, and no one else is there. They know him as a decent, honest and upstanding citizen of the great State of Alabama. It is difficult to select one above any other to quote although all the work that Richard Scrushy has been doing with needy children in underdeveloped countries does stand out both for the scope of the help he provides but also because of the catastrophe that would befall those children were Richard Scrushy no longer able to provide the help they so need. The loss of Richard Scrushy's extraordinary charitable contributions and fund-raising abilities to those programs certainly seems an unnecessary

and unintended consequence and one that this Court can consider in fashioning a sentence. *See* U.S.S.G. § 5H1.11.[1]

The Court has a mandate in this case to impose a sentence that is "sufficient, but not greater than necessary" and to be just in its punishment, protect the public, deter others, and provide any needed rehabilitation.   18 U.S.C. § 3553(a).   To withstand appeal, the Court's sentence must be reasonable.   It must take into consideration the nature and circumstances of the offense and the history and characteristics of Richard Scrushy.   It must also consider the sentencing guidelines, without giving them any presumptive weight and it must avoid disparity with sentences imposed in other like cases.

Simply put, the government's request to this Honorable Court that it imprison Richard Scrushy for a period of 25 years does not meet a single one of the requirements set out in 18 U.S.C. § 3553(a).

To put it in context, the median sentence for bribery offenses in the Eleventh Circuit in 2006 was 20.5 months.[2]   The sentence the government seeks for Mr. Scrushy is 15 times greater.   Former Louisiana Governor, Edwin Edwards was sentenced to 10 years imprisonment after conviction on 34 counts of RICO violations, extortion, and mail fraud, and related conspiracies, including a conspiracy to commit money laundering in

---

1 *See United States v. Woods*, 159 F.3d 1132 (8th Cir. 1998) (departure based on defendant's exceptional charitable efforts helping troubled young people become productive members of society and other good works); *United States v. Rioux*, 97 F.3d 648 (2d Cir. 1996) (affirming downward departure based in part on defendant's extensive efforts in fund raising for charity); *United States v. Milikowsky*, 65 F.3d 4 (2d Cir. 1995) (effect on 150-200 employees who would be adversely affected if defendant were imprisoned was extraordinary circumstance justifying downward departure).

2 *2006 Sourcebook of Federal Sentencing Statistics*, US Sentencing Commission, Table 7 http://www.ussc.gov/JUDPACK/2006/11c06.pdf.  Attached as Exhibit 1.

connection with a scheme to provide licenses to operate river boat casinos in return for bribes.[3]  The contrast is equally stark if one considers sentences in the Middle District of Alabama.    The  median  sentence  for  the  most  analogous  offenses  –  fraud, forgery/counterfeiting, administration of justice offenses – was 5 months, 5 months and 24 months, respectively.[4]

Even more astonishing is the disparity between the 25 years prison sentence the government is asking for Mr. Scrushy and sentences for offenses that by almost all accounts are considered of a more serious nature.  In the Middle District of Alabama and in the Eleventh Circuit, for example, one can kidnap another human being,  commit an arson, be convicted of pornography and prostitution, be a sexual abuser, or commit second degree murder and be sent to prison for less time than the government seeks to have this Court sentence Richard Scrushy.[5]

Literally, such a sentence would put Mr. Scrushy in a league with Bernie Ebbers, and  Jeffrey  Skilling,  who,  respectively,  received  sentences  of  25  years  for  a  fraud involving $11 billion, and 24 years and four months on account of a fraud involving $62 billion.    *See  Ebbers  sentenced  to  25  years  in  prison,*

---

3  *See United States v. Edwards,* 303 F.3d 606 (5th Cir. 2002), *cert. denied,* 537 U.S. 1192 (2003).   His  son,  who  was  charged  along  with  him  was  sentenced  to  84  months imprisonment and his executive assistant was sentenced to 68 months imprisonment.

4  *2006 Sourcebook of Federal Sentencing Statistics*, US Sentencing Commission, Table 7 at http://www.ussc.gov/JUDPACK/2006/alm06.pdf.  Attached as Exhibit 2.

5  For example, the median sentence in the Eleventh Circuit in 2006, for kidnapping and hostage taking was 201.5 months (or 16.7 years).  For arson, the median sentence was 87 months (7.25 years).  For pornography and prostitution, the median sentence was 78 months (6.5 years).  For sexual abuse, the median sentence was 135 months (11.25 years). For drug trafficking offenses, the median sentence was 87 months (7.25 years).  For national defense offenses, the median sentence was 33.5 months (2.8 years).

http://www.msnbc.msn.com/id/8474930; *Former Enron CEO Skilling gets 24 years*,

http://www.msnbc.msn.com/id/15389150/.    On its face, the Government's suggested

sentence is unreasonable, wildly disproportionate to the offense committed, and

completely inconsistent with the underlying purposes of the enactment of the

comprehensive reforms embodied in the Sentencing Reform Act of 1984, 18 U.S.C. §

3551 et seq.    *United States v. Booker*, 543 U.S. 220, 253 (2005) ("Congress' basic goal

in passing the Sentencing Act was to move the sentencing system in the direction of

increased uniformity.").

Respectfully, the 25-year sentence requested by the government would

categorically violate 18 U.S.C. § 3553(a)(6), which directs the Court to "avoid

unwarranted sentence disparities among defendants with similar records who have been

found guilty of similar conduct" as well as the basic mandate in 18 U.S.C. § 3553(a),

which requires the Court to impose a sentence that is "sufficient, but not greater than

necessary."

## I.  APPLICATION OF THE ADVISORY SENTENCING GUIDELINES

### A. The Government's Argument in Favor of an 18-level Enhancement under U.S.S.G. § 2C1.1(b)(2)(A) on Account of Purported "Benefits" Received Is Unsupportable as a Matter of Fact and Law.

The Presentence Investigation Report ("PSR"), applying the 2002 Guidelines

Manual, advises this Court to employ U.S.S.G. § 2C1.1 as the relevant offense Guideline

when sentencing Mr. Scrushy.  PSR ¶¶ 30, 32.  As a fundamental matter, Defendant

Scrushy has objected to the use of § 2C1.1, and instead, argues that the offense conduct

at issue in this case is more appropriately punished in accordance with § 2C1.5, which

applies to violations of 18 U.S.C. § 210 ("offer to procure public office").  *See* Letter

from Arthur W. Leach to Jacquelyn Caple, Senior United States Probation Officer, dated May 3, 2007, attached to Mr. Scrushy's Sentencing Memorandum (Doc. 594) as Exhibit 1 (Doc. 594-2) ("May 3 Letter") at 21. In the alternative, the offense conduct more closely resembles a gratuity, requiring application of U.S.S.G. § 2C1.2 rather than the bribery guideline set out in § 2C1.1.

However, assuming that this Court will apply § 2C1.1 as the offense Guideline, and without conceding the appropriateness of the application of this Guideline, Mr. Scrushy contends that in a case such as this where the benefit received for the payment was, at best and as charged, a seat on the CON Board, there is no value to be added from the table in § 2B1.1. *See* Scrushy Objections to PSR, dated May 3, 2007. The term used in § 2C1.1(b)(2)(A) is not the "value of the bribe" but rather the "value of the payment." When the Commission intends to use "value of the bribe" it uses exactly those words. *See* U.S.S.G. § 2C1.1, comment (n. 2). The value of the payment in this case was the intangible value that resulted from the seat on the CON Board. Accordingly, no enhancement from the loss table in § 2B1.1 applies. In such a case, the 8-level adjustment under § 2C1.1(b)(2)(B) may apply instead.

In the alternative, Mr. Scrushy, again without conceding the appropriateness of the application of this Guideline, agrees with the Probation Officer's assessment that the value of the payments at issue here within the meaning of § 2C1.1(b)(2)(A) is $500,000. PSR at ¶ 34. This indisputably represents the amount of the two $250,000 checks that lie at the core of this case.

The Government does not accept the foregoing straightforward application of § 2C1.1(b)(2)(A). Instead, it argues that the appropriate measurement for the application

of the §2C1.1(b)(2)(A) enhancement is the "value of … the benefit received" by various actors, not the value of the $500,000 payment made.[6]   It maintains that the following persons achieved the following benefits as a consequence of the contributions to the AELF at issue here: (1) "Defendant Siegelman received $500,000 in benefits because the IHS check for $250,000 and the HealthSouth check for $250,000 were both used to pay off a loan for which he was personally liable[;]" (2) IHS received $17,000 in benefit because UBS Warburg forgave $267,000 in debt owed to it by IHS in return for IHS issuing the $250,000 check that Defendant Scrushy used to bribe Defendant Siegelman…[;]" (3) "Tim Adams received at least $11,000 in benefits from Defendant Scrushy and Defendant Siegelman as part of the offense conduct[;] and (4) "HealthSouth received $3,109,054.62 of benefit from the construction and operation of the Phenix City hospital – a project for which Defendant Scrushy paid a $3,000 bribe to Adams…."  Govt. Sentencing Memorandum at 4.  The Government thus argues in favor of an 18 level enhancement under §2C1.1(b)(2)(A) rather than the 14 level enhancement recommended by the Probation Officer.  This argument, however, cannot withstand scrutiny because none of the foregoing constitutes a "benefit" to Mr., Scrushy within the meaning of § 2C1.1, comment. (n.2).

Clearly, as charged in the Superseding Indictment, the only arguable "benefit received . . . in return for the payment" of $500,000 that Richard Scrushy received was being named to the CON Board.  The Superseding Indictment does not allege that any of

---

6   The Government quibbles with the Probation Officer's valuation of the payments at issue, claiming that $11,000 in alleged bribes to Tim Adams should also be included.  Govt. Sentencing Memorandum at 3.  Mr. Scrushy disagrees with this argument – he never paid, or caused to be paid, $11,000 in bribes to Mr. Adams, as confirmed by the evidence at trial – but, in any event, it has no effect on the § 2C1.1(b)(2)(A) enhancement based on a value of the payment measurement because the addition of $11,000 to the $500,000 payments does not impact the enhancement calculation under § 2B1.1(b)(1).

the other payments which the government now argues were bribes. Section 2C1.1(b)(2)(A) refers to "the payment" which leaves no room for aggregating additional or multiple uncharged payments. Most importantly, Richard Scrushy did not receive any benefit from the Phenix City Hospital. By the time the Hospital turned a profit in 2004, Richard Scrushy was not associated with HealthSouth whatsoever.

Mr. Scrushy objects to using the claimed profit of $3,109,054.62 that HealthSouth received as the measure of the benefit in this case for several reasons. First, Mr. Scrushy did not personally receive any such benefit. If HealthSouth indeed was the beneficiary of an ill-gotten benefit, it and not Mr. Scrushy should be held accountable. Indeed, it is puzzling that while arguing that the Phenix City Hospital was wrongly approved for operation, neither the United States government nor any other state or local entity has seen fit to attempt to rescind its CON Board approval or to seek that HealthSouth disgorge this allegedly ill-gotten benefit.

Second, even if Mr. Scrushy were to be held accountable for the claimed profit during his tenure at Health South, that tenure ended long ago. Even accepting the financial information provided by the government on this point, the Phenix City Hospital was not profitable at any time during Mr. Scrushy's tenure at HealthSouth so that no benefit resulted to Mr. Scrushy therefrom.

Third, even if it were appropriate to hold Mr. Scrushy accountable for a benefit, the benefit that accrued to him personally based on the claimed $3+ million profit to HealthSouth is either negligible or a mere fraction of the $3 million for which the government seeks to enhance his sentence. If Mr. Scrushy is to be held liable for the entire $3+ million profit, then most certainly the offense level overrepresents his

culpability and the Court ought to depart downwardly or reduce the sentence under § 3553(a).  *See United States v. Walters*, 87 F.3d 663 (5th Cir. 1996).  In *Walters*, the Fifth Circuit upheld a departure in a case involving a conspiracy between two defendants, who had "concocted an elaborate scheme to conceal the nature and source of payments made to [the member of] the governing body of St. Tammany Parish (the "Parish"), by the Parish's insurance company." *Id.*, 87 F.3d at 664.  The district court decided to depart because he believed that the defendant,  who received no proceeds from the fraud, should receive a lesser sentence. *Id.*  In affirming, the Fifth Circuit explained that the departure was proper under U.S.S.G. § 5K2.0 as a ground not adequately considered because the applicable sentencing guideline made "no mention of the failure to receive a personal benefit as a mitigating factor." *Id.* at 671-672; *see also United States v. Broderson*, 67 F.3d 452, 459 (2d Cir. 1995), where the court affirmed a downward departure from the sentencing range that was granted in part on the basis that the loss overstated the seriousness of the fraud as it pertained to the defendant.  In that case, the defendant had committed a fraud in negotiating a government contract but had not personally received the proceeds of the fraud.  As in this case, it was the corporation for whom he worked that stood to benefit from the windfall that resulted from the defendant's fraud.

Fourth, Mr. Scrushy objects to the use of these financial records without proper authentication or confrontation.  The only measure that the guidelines contemplate when considering the " benefit received" is the net profit.  Without the ability to confront the person who prepared the HealthSouth records it will not be possible to determine the net profit that has accrued to HealthSouth from the operation of the Phenix City Hospital.

9

**B.  The Government's Request for a $7,274,109.24 Fine, Pursuant to 18 U.S.C. § 3571(d), Should be Disregarded Because no "Pecuniary Gain" was Enjoyed that Would Justify the Imposition of Such a Fine.**

In the PSR, the Probation Officer indicates that, pursuant to § 5E1.2(c)(3), the Guideline fine range is between $12,500 and $125,000.  Assuming that the Probation Officer's Guidelines calculations are otherwise correct – and Mr. Scrushy contends that they are not, as reflected in his objections to the PSR – Mr. Scrushy does not disagree with this assessment.  The Government, however, does take issue with it.  Keying off of the purported $3,637,054.62 "total benefit" calculated by it with respect to the § 2C1.1(b)(2)(A), discussed above, the Government argues that under 18 U.S.C. § 3571(d), Mr. Scrushy's fine should be set at twice the amount of the alleged "benefit," which translates into $7,274,109.24.[7]  This argument fails for at least two reasons.

First, as Mr. Scrushy has already argued above, in Part I.A., the $3,637,054.62 figure forming the basis for the Government's fine recommendation is completely illusory.  Richard Scrushy did not personally derive any pecuniary gain from the offense.  Even assuming that the building of Phenix Hospital is deemed a "benefit received . . . in return for" the $500,000 payment, that benefit went to HealthSouth not to Richard Scrushy personally.  No "person derive[d ] pecuniary gain" of any kind from the offense because HealthSouth is not a person within the meaning of § 3571(d).  *Compare* 18 U.S.C. § 3571(c) (employing term "organization" when referring to someone other than a

---

7    Section 3571(d) of Title 18, which bears the heading "Alternative fine based on gain or loss[,]" allows  for a fine of double the amount of "pecuniary" loss or gain resulting from the offense: "If any person derives pecuniary gain from the offense, or if the offense results in pecuniary loss to a person other than the defendant, the defendant may be fined not more than the greater of twice the gross gain or twice the gross loss, unless imposition of a fine under this subsection would unduly complicate or prolong the sentencing process."

person).   Section 3571(d) includes references to a "person" and to a "defendant."
Richard Scrushy cannot be the "person" referred to in § 3571(d) as he is the defendant.
In sum, no person, much less Mr. Scrushy, enjoyed "pecuniary gain" from the offenses in
question in the amount of $3,637,054.62, and thus, as a matter of law and fact, § 3571(d)
does not authorize a fine totaling $7,274,109.24.  In addition, HealthSouth cannot both be
a victim for purposes of determining a fine pursuant to § 3571(d) and the recipient of the
"benefit received" for purposes of the 18-level enhancement the government seeks under
§ 2C1.1(b)(2)(A).

Moreover, even assuming that the Government's "pecuniary gain" calculation is
somehow correct, it nevertheless loses sight of the fact, as this Court should not, that 18
U.S.C. § 3571(d) serves only as an *alternative* to the provisions of § 3571(b) – in this
case § 3571(b)(3) – in determining the *statutory maximum* fine.   The Government
suggests that its § 3571(d) alternative statutory maximum fine calculation ought to drive
the sentencing decision as to Mr. Scrushy's fine, but this suggestion, of course, is
incorrect as a matter of law in the post-*Booker* era.

The Eleventh Circuit has characterized the sentencing process, post-*Booker*, as
essentially a two-step process involving, first, an evaluation of the applicable Sentencing
Guidelines, and second, a consideration of what sentence is reasonable in light of the
statutory sentencing factors articulated in 18 U.S.C. § 3553(a):

> Our review of sentences after *United States v. Booker*, 543
> U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), has two
> components.   First, we consider challenges to the district
> court's calculation of the advisory Guidelines range.
> Second, we review the sentence for reasonableness.

* * *

> If the Guidelines calculation is correct, or if the miscalculation is harmless, we consider whether the sentence is reasonable. When reviewing a sentence for reasonableness, we must evaluate whether the sentence achieves the purposes of sentencing as stated in 18 U.S.C. § 3553(a).

Notwithstanding the Eleventh Circuit's clear mandate, the Government, in proffering its argument regarding the appropriate fine in this matter, entirely ignores the applicable Sentencing Guideline fine range, under § 5E1.2, and it ignores all § 3553(a) factors, save one, deterrence. Moreover, the commentary makes clear that the reasons for upwardly departing from the fine range are to ensure "the disgorgement of any gain by the defendant" not otherwise reached or to compensate for a loss to someone. *See* U.S.S.G. § 5E1.2, comment. (nn. 4 & 5). In this case, Richard Scrushy did not personally gain any money that needs to be disgorged by imposition of an upward departure in the fine range and no money was lost to justify an upward departure.

The principal thrust of the Government's argument regarding a fine in this case is that the statutory maximum is warranted because of its ultimate deterrent effect: "The United States urges the court to impose this amount [$7,274,109.24], the statutory maximum, because the *most effective* method to ensure *no recidivism* by Defendant Scrushy and to deter others from corrupting State government is to signal clearly that those who engage in public corruption shall not profit from such activity."[8] Govt. Sentencing Memorandum at 6 (emphasis added). Thus, the Government argues, the best way to deter future criminal activity by anyone is to sentence at the statutory maximum. This is an easy, broad-brush approach, and it may or may not be true as a

---

8   This argument is not only legally insufficient, as demonstrated below, but it is also factually inaccurate. Mr. Scrushy did not realize any meaningful personal pecuniary gain by virtue of his conduct at issue here.

sociological/penological matter, but it is not the correct inquiry mandated for this Court by the provisions of § 3553.

Far from requiring that this Court determine what sentence – including any fine – would be "the *most effective* to ensure *no* recidivism," § 3553(a) provides merely that this Court impose a sentence on Mr. Scrushy that is "*sufficient, but not greater than necessary*" to effect, among other results, "*adequate* deterrence to criminal conduct." (Emphasis added). Thus, necessarily, § 3553(a) requires this Court to undertake a finely-tuned assessment of all of the sentencing factors – including the relevant Sentencing Guidelines – when imposing sentence, an assessment that the Government would like this Court to ignore as it urges a much less-considered approach. Moreover, there are really only two basic reasons for departing from the fine guideline – In the end, the Government offers no true reasons why this Court should depart from the relevant Guideline range when imposing a fine upon Mr. Scrushy, and in the absence of any such reasons, it should decline to so depart.[9]

### C. Mr. Scrushy was not an Organizer or Leader of Criminal Activity Either Involving More than Five Criminally Responsible Participants or that was Otherwise Extensive.

In paragraph 36 of the PSR, the Probation Officer recommends that this Court adjust Mr. Scrushy's offense level under § 3B1.1(a) by four points because (a) he "organized the activities relating to and surrounding the circumstances of the federal

---

9    Furthermore, to the extent that the Government addresses any applicable Sentencing Guidelines as to the appropriate fine in this case, it argues, in a similarly conclusory fashion, that this Court should depart upward from the applicable range – it never acknowledges what that range is – under § 5K2.0 to effect deterrence: "[S]hould the Court ultimately find that the Guidelines range is limited by Guidelines § 5E1.2(c)(2), the government submits that a Guidelines departure under § 5K2.0 is appropriate and necessary to effect the purpose of the required considerations in 18 U.S.C. § 3553(a) and § 3572, and especially to achieve meaningful "deterrence to criminal conduct…." Govt. Sentencing Memorandum at 5, n.4.

funds bribery" at issue here, and (b) "there are at least five participants, excluding the defendant, involved…."[10]  PSR at ¶ 36.

As noted in Mr. Scrushy's objections to the PSR, there is no basis for a finding that Mr. Scrushy "organized the activities relating to … the federal funds bribery." Indeed, he did not even propose the $500,000 in payments at issue in this case.  Instead, Mr. Scrushy was asked to make a political contribution, and he did so.  Mr. Scrushy did not organize, nor was he a leader, and there were not five or more "criminally responsible" persons.  *See* U.S.S.G. § 3B1.1, comment (n. 1) ("'participant' is a person who is criminally responsible").  His conduct did not involve most of the factors set out in application note 4: "Factors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others." U.S.S.G. § 3B1.1, comment. (n.4).

The evidence is undisputed that Richard Scrushy caused the payments to be made to the lottery fund as a result of the request by others that he did so.  He did not devise or plan the scheme. He did not claim the right to a larger share of the fruits of the crime. Under the government's theory of the case, the fruits of the crime was the permit given to HealthSouth to operate the Phenix Hospital and it was HealthSouth not Richard Scrushy who received the entire share of that prize.  Indeed, as far as the CON Board itself, if that is to be deemed a "fruit" of the crime, Richard Scrushy resigned from the CON Board

10  U.S.S.G. § 3B1.1(a) provides: "If the defendant was an *organizer or leader* of a criminal activity that involved *five or more participants* or was *otherwise extensive*, increase by 4 levels."  (Emphasis added).

14

before his term was up.  He also had previously served on that same CON Board at the behest of three other Alabama governors and had once before resigned from the Board. By all objective standards, Richard Scrushy apparently did not consider sitting on the CON Board the prize the government seeks to make it out to be.

Perhaps concerned about its ability to prevail on an assertion that there were five criminally responsible participants in the offense, the Government also urges this Court, alternatively, to apply the § 3B1.1(a) aggravating role enhancement based on its contention that this case fits under the "otherwise extensive" clause of § 3B1.1.  And, although the Eleventh Circuit has not – as it cannot – come up with a bright line definition as to what constitutes "otherwise extensive" criminal activity for purposes of application of the § 3B1.1 aggravating role enhancement, it has sufficiently articulated the contours of such activity such that this Court should conclude that Mr. Scrushy's conduct was not "otherwise extensive."

As a general matter, the Eleventh Circuit has stated that the focus of the inquiry in determining whether criminal activity is "otherwise extensive" is its length and scope: "Although this circuit does not employ a precise definition for the 'otherwise extensive' standard, there are a number of factors relevant to the extensiveness determination, including *the length and scope* of the criminal activity as well as the number of persons involved." *United States v. Holland*, 22 F.3d 1040, 1046 (11th Cir. 1994) (emphasis). Most pertinent to this case, moreover, the Eleventh Circuit has also concluded that two instances of criminal conduct occurring within a short time frame do not constitute "otherwise extensive" criminal activity sufficient to warrant an enhancement under § 3B1.1(a).  *United States v. Eidson*, 108 F.3d 1336, 1347 (11th Cir. 1997) ("The record

indicates only that one other similar discharge into a 'water of the United States' occurred a week before the April 25 discharge [underlying the Clean Water Act offense of conviction]. We conclude that *this evidence is insufficient to establish that the criminal activity involved in the CWA conviction was 'otherwise extensive.'*") (emphasis added).

Here, Mr. Scrushy's conduct involved two payments of $250,000, each made after solicitation of Mr. Scrushy within less than a year of the other.  In effect, and the Government's argument to the contrary notwithstanding, these two payments comprised a single and isolated instance of criminal activity, and, in any event, do not constitute "otherwise extensive" activity within the meaning of § 3B1.1, as interpreted in *Holland* and *Eidson*.

### D. Mr. Scrushy Should not be Held Accountable Under U.S.S.G. § 2C1.1(b)(1) for Making "More than One Bribe."

The Government has objected to paragraph 34 of the PSR "insofar as it does not include a two level increase for the specific offense characteristic of 'more than one bribe' under Section 2C1.1(b)(1)."[11]  Govt. Sentencing Memorandum at 7.  More specifically, the Government maintains that Mr. Scrushy paid two or more bribes: "(1) a bribe of $500,000 to Defendant Siegelman, and (2) at least one bribe to CON Board Member Timothy Adams." *Id*. at 8.

As an initial matter, and most important, Mr. Scrushy objects to the Government's assertion, which it contends is supported by the testimony of Loree Skelton, that he bribed Timothy Adams.  In making this claim, the Government fails to

---

11   U.S.S.G. § 2C1.1(b)(1) allows for a two-point increase in the offense level in situations involving more than one bribe: "If the offense involved more than one bribe or extortion, increase by 2 levels."

note that although Ms. Skelton did testify that Mr. Adams received two checks from HealthSouth totaling $11,000, Ms. Skelton further testified at trial that she did not speak to Richard Scrushy about either of the $8,000 or $3,000 payments to Adams. Trial Transcript, May 11, 2006 at 165-66 (cannot recall telling RMS that she planned to give a contract to Adams for the PET scanner application); *id.* at 167-68 (she talked with Carman, not Scrushy re PET scanner, and cannot recall having talked to Scrushy about it); *id.* at 173-74 (RMS not in the loop re CON issues). Furthermore, these payments were pursuant to a contract granted to Adams by HealthSouth for work assessing the PET scanner application, a fact that was disclosed to the CON Board and as a result of which Adams recused himself from voting on the PET scanner application. A payment, publicly disclosed in this manner can hardly be characterized as a bribe.

Mr. Adams, moreover, did not testify at trial, and there is simply no other evidence in the record that would support an inference that Mr. Scrushy was connected in any way with the two payments made to Mr. Adams, assuming that they were corrupt payments in the first place. There is, therefore, no factual basis for the basic premise – that Mr. Scrushy bribed Mr. Adams – underlying the Government's contention that this Court should assess against Mr. Scrushy a two-level increase under § 2C1.1(b)(1) for having paid "more than one bribe."

The Government suggests, but never directly states, that because the jury found Mr. Scrushy guilty on Count 5 (mail fraud conspiracy) and Counts 6-9 (substantive mail fraud counts) it necessarily found that Mr. Scrushy was responsible for the two payments to Mr. Adams in issue. However, an analysis of the operative Second Superseding

Indictment, when considered along with the elements of the offenses of conviction, betrays the fallacy of the Government's argument.

First, Count 5 charges that Mr. Scrushy and Governor Siegelman engaged in an honest services mail fraud conspiracy, in violation of 18 U.S.C. § 371. To prove this offense, the Government was obligated to prove and the jury was obligated to find "an agreement between two or more persons to commit a crime against the United States and an overt act by one of them in furtherance of the agreement." *United States v. Guerra*, 293 F.3d 1279, 1285 (11th Cir. 2002). Thus, the jury necessarily found that *either* Governor Siegelman *or* Mr. Scrushy engaged in *one* of the overt acts alleged in paragraph 56 of the Second Superseding Indictment. It is true that both of the payments to Mr. Adams were alleged as overt acts in connection with the mail fraud conspiracy, but these were just two out of six alleged overt acts, and we do not know on which overt act or acts the jury unanimously agreed in reaching its verdict. Thus, it is simply not the case that the jury found Mr. Scrushy responsible for either of the two payments to Mr. Adams, nor, for that matter, did the jury necessarily find that Mr. Scrushy engaged in *any* overt acts.

Furthermore, the Eleventh Circuit has recently articulated the elements of mail fraud, under 18 U.S.C. § 1341, as follows: "Mail fraud consists of the following elements: (1) an intentional participation in a scheme to defraud a person of money or property, and (2) the use of the mails in furtherance of the scheme. *United States v. Sharpe*, 438 F.3d 1257, 1263 (11th Cir. 2006) (internal quotation marks and citations omitted). Thus, in order to convict Mr. Scrushy on Counts 6-9, the Government was

obligated to prove that a scheme to defraud existed, that Mr. Scrushy intentionally participated in that scheme, and that the mails were used in execution of the scheme.

In the Second Superseding Indictment, the Government charged the existence of the following scheme to defraud in connection with Counts 6-9:

> [T]o defraud and deprive the State of Alabama of its right to the honest and faithful services of DON EUGENE SIEGELMAN and RICHARD M. SCRUSHY in their capacities as Governor of the State of Alabama and a member of the CON Board, respectively, as well as other members of the CON Board, performed free from deceit, favoritism, bias, self-enrichment, self-dealing, and conflict of interest concerning the State of Alabama Certificate of Need Board.

Second Superseding Indictment at 34, ¶ 57. The Second Superseding Indictment further alleged seven "manners and means" through which this scheme was executed, including the $500,000 payments to AELF. Second Superseding Indictment at 34-35. Of course, none of these "manners and means" was a necessary element of the mail fraud offenses charged, the jury was not required to make findings as to any of them in order to convict, and, in any event, it is notable that among them the Government did not even specifically allege the $3,000 and $5,000 payments to Mr. Adams. Instead, the Second Superseding Indictment alleges that Mr. Scrushy "and others would and did offer things of value to another CON Board member to attempt to affect the interests of HealthSouth and its competitors."[12] Second Superseding Indictment at 35, ¶ 59.

---

12    Among those other benefits, according to the Government's theory of the case – with which Mr. Scrushy vigorously disagrees – is that Mr. Adams was provided an opportunity for employment at HealthSouth. In that situation, he was referred for a job interview at HealthSouth but was not hired. The only other employment opportunity that Adams received from HealthSouth was the contract to do an analysis of the PET scanner testified to by Loree Skelton, with which Richard Scrushy had no involvement. The helicopter rides were no different in essence from what was done by all the other CON Board members who rode by car together from different locations to the CON Board meetings.

It thus follows that there is no aspect of the jury's verdict on Counts 6-9 that even required them to consider, much less find, that the $11,000 in payments to Mr. Adams constituted bribes.

In any event, even assuming that the payments to Tim Adams were bribes, the Probation Officer correctly declined to recommend to the Court that it assess a two-level enhancement under § 2C1.1(b)(1) because such payments are "related payments," as explained in application note 6:

> Subsection (b)(1) provides an adjustment for offenses involving more than one incident of either bribery or extortion. *Related payments that, in essence, constitute a single incident of bribery or extortion (e.g.,. a number of installment payments for a single action) are to be treated as a single bribe or extortion,* even if charged in separate counts.

U.S.S.G. § 2C1.1, comment. (n.6) (emphasis added). Indeed, in its Sentencing Memorandum, the Government effectively concedes that the payments to Tim Adams were related to those made to AELF: "The $500,000 bribe in Count 4, together with further, different bribes, are all *charged as integral parts of Count 5* [the mail fraud conspiracy count]."

### E. Mr. Scrushy Did not Obstruct Justice in Connection with his Bond Revocation Hearing, and Thus, This Court Should not Impose on Him a Two-Level Enhancement Under U.S.S.G. § 3C1.1.

The Government argues that this Court should impose upon Mr. Scrushy a two-level enhancement under U.S.S.G. 3C1.1 for engaging in obstruction of justice in relation to the bond revocation proceedings that took place in late March and in April 2007.[13]

---

13    Section 3C1.1 states: "If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense level by 2 levels."

The Government proffers two bases for its argument: (1) that Mr. Scrushy allegedly "willfully attempted to prevent" the captain of his yacht "from communicating information to the Federal Bureau of Investigation in its investigation of … [his] movements in Florida[;]" and (2) that Mr. Scrushy "perjured himself during the Court's revocation hearing. Govt. Sentencing Memorandum at 10. Neither of these contentions is factually supportable, and, in any event, this Court has, at least implicitly, already rejected both of them.

First, the Government states as a fact that Mr. Scrushy "engaged in misleading conduct by instructing William Kurtz, the captain of Defendant Scrushy's yacht, to inform the FBI, when approached by an agent, that Kurtz was unwilling to speak to the FBI and that he was represented by Art Leach, one of Defendant Scrushy's defense lawyers." Govt. Sentencing Memorandum at 10. Yet, at best, this is a disputed issue. The Government chose not to call Captain Kurtz at the April 9, 2007 bond revocation hearing in front of Judge Coody, and thus, his view of conversations with Mr. Scrushy was portrayed only by means of the selective hearsay testimony of Agent Baker. In contrast, Mr. Scrushy took the stand at that hearing, and, under oath, subject to cross-examination, and in the presence of Judge Coody, his recollection was not consistent with the Government's characterization of the relevant events:

> When he [Kurtz] called me and told me that -- that an FBI agent had called him and wanted to meet with him, and he -- we talked about the -- the meeting and about whether or not we had -- he had -- you know, we had a lawyer to meet with him, and he seemed to me that he really didn't want to meet with them. I mean that was my -- my personal observation, that he didn't want to meet with them. *And so I told him just to tell them to have them call Art Leach. That's all I knew to do.* I didn't know what else --

Bond Hearing Tr. at 168 (emphasis added); *see also id.* 169 ("Q. Okay. *Now, was there anything that you ever told the captain to indicate that you didn't want him saying anything* or to hide anything or to lie about anything about the trip itself? A. *No, sir.* Matter of fact, I told Captain Kurtz to tell the absolute truth.") (emphasis added).

In the end, Judge Coody, having had the ability to weigh the credibility of Mr. Scrushy's testimony, must have credited it on this point, because, of course, he denied the Government's Motion to Revoke Bond, an Order affirmed by this Court. Thus, Judge Coody, at least implicitly, found both (a) that Mr. Scrushy did not perjure himself when he categorically denied trying to influence Captain Kurtz to not talk to the FBI; and (b) that Mr. Scrushy, in fact, did not attempt to improperly influence Captain Kurtz.

As to the Government's other claims of perjury at the bond revocation hearing – that is, that Mr. Scrushy "falsely stated under oath (1) that he had advised a United States Probation Officer of his intended movements in Florida, and (2) that a United States Probation Officer had approved his movements in Florida," Govt. Sentencing Memorandum at 11 – Judge Coody found that they lacked merit: "At best, the evidence established that Scrushy took advantage of his supervising probation officer's lack of knowledge about the location of cities in Florida. The evidence showed that the supervising probation officer approved Scrushy traveling from Orlando, Florida believing it to be only a short, day trip. West Palm Beach is approximately 250 miles south east of Orlando." Order, dated April 13, 2007 (Doc. 545) at 2 (footnote omitted; contents of footnote 3 included). And this Court, upon review of Chief Judge Coody's April 13, 2007 Order, found "that with respect to the revocation issue, the Magistrate Judge's factual findings are supported…." Order, dated April 30, 2007 (Doc. 574) at 4.

Simply put, Mr. Scrushy neither attempted to improperly influence Captain Kurtz in his dealing with the FBI nor did he perjure himself at his bond revocation hearing. The imposition of a two-level enhancement under § 3C1.1, therefore, is totally unwarranted.

### F. The PSR Correctly States that there are No Identifiable Victims for Purposes of Restitution Under 18 U.S.C. § 3663.

The Government has objected to the finding of paragraph 27 of the PSR – that "[t]here is no identifiable victim who incurred a physical or financial loss as a result of the counts of conviction" – and to the recommendation of paragraph 79 that the Court not impose an order of restitution as a constituent part of Mr. Scrushy's sentence. Govt. Sentencing Memorandum at 12. Specifically, the Government contends that each of HealthSouth, UBS Warburg, and Brookwood Hospital was a victim of the offenses for which Mr. Scrushy was convicted. *Id.* This contention is factually and legally baseless.

First, by the Government's reckoning, HealthSouth has enjoyed a gross profit from the operations of the PET scanner and the Phenix City Hospital, both of which, under the Government's theory, were approved by the CON Board as a consequence of at the core of this case. Indeed, though Mr. Scrushy objects to its argument in this respect (*see* Part __, above), the Government is seeking to attribute to Mr. Scrushy, for purposes of measuring the offense level enhancement under U.S.S.G. § 2C1.1(b)(2)(A), the "benefit" (*i.e.* profits) enjoyed by HealthSouth by means of the PET scanner and the Phenix City Hospital. It is quite simply illogical, and irreconcilably inconsistent, for the Government to argue that HealthSouth both enjoyed benefits *and* suffered harm resulting from the very same conduct.

Second, UBS Warburg, with its eyes wide open based on its own independent

assessment of its business interests, made a business decision to forgive a debt owed by IHS, one of its customers.  It did so believing that the funds relating to that debt forgiveness would be contributed to the AELF, and they were.  Thus, as far as it was concerned, it got the full benefit from its bargain with HIS, and it suffered no loss.

And finally, with respect to the allegations of loss in connection with the Brookwood Hospital, the CON Board unanimously voted to reject Brookwood's petition to the CON Board.  The CON Board's decision did not result from the payment of any bribe by Richard Scrushy.  Indeed, Richard Scrushy called the CON chair to report what he believed was a violation by Brookwood that he was properly required to bring to her attention.  Trial testimony by the CON chair indicated that she believed the Scrushy call was appropriate.  Moreover, neither Scrushy's phone call to the CON chair nor the helicopter rides and purchase order to Tim Adams was offense conduct (*i.e.,* not charged as separate offenses), and thus, not compensable under the VWPA.  *Hughey v. U.S.*, 495 U.S. 411, 417 (1990) ("Congress intended restitution to be tied to the loss caused by the offense of conviction.").

## CONCLUSION

With respect to the offense, one letter of the many sent to the Court in support of Mr. Scrushy summarizes the task facing the Court and bears emphasis.  Elmer B. Harris, the Chairman, President, and CEO of Alabama Power Company, a good citizen, respected pillar of the community and loyal Alabaman, who although a Republican served as Chairman of Democratic Governor Siegelman's Transition and Inauguration Team wrote with wisdom and eloquence.  While his letter deserves careful

reading overall, several statements that he directed to the Court concerning Richard

Scrushy bear quoting.

> As you are aware, I was subpoenaed to testify in the subject case. As Chairman of the Siegelman Transition, I know what the facts are surrounding the Siegelman/Scrushy allegations relative to contributions, borrowing money, and CON board appointments. The facts do not support the jury decision . . . I personally know many Governors, Judges, and other candidates who borrowed money during a political campaign, raised the money after the election, and then paid off the loan. If Governor Siegelman violated the law by doing a similar activity related to a lottery referendum, then many other Governors, Judges, and other officials have also violated a law and should also be convicted of violating a law. I personally do not believe that Governor Siegelman, nor any other similarly situated elected official, violated a law nor deserve to be convicted and sentenced to prison. I believe this entire case should have been handled as a complaint before the Alabama Ethics Commission. I am convinced that the Alabama Ethics Commission would have thrown out the complaint based on the law.
>
> One last comment: I have over the years been personally active in about six U.S. Presidential election campaigns. Every President has the right and the statutory obligation to appoint the individuals whom the President wants in the cabinet and on boards. The President normally appoints a friend, a political supporter, or a person that someone he trusts recommends to him. Governor Don Siegelman had the same right and statutory obligation to make appointments in Alabama. I know Governor Siegelman made good, reasoned, and rational decisions in CON board

appointments.  I recommended to Governor Seigelman that
he get to know Richard Scrushy better, I told Governor Siegelman that Scrushy would be a good CON board member, and I personally asked Scrushy to accept another term on the CON board.   Governor Siegelman does not deserve prison time for fulfilling his gubernatorial and statutory obligations, just like US Presidents do not deserve conviction and prison time for making their appointments.   Richard Scrushy does not deserve prison time for accepting an appointment to the CON board nor for making a contribution to the lottery foundation, just like other individual and corporations who made numerous contributions to the lottery foundation do not deserve conviction and prison time.
. . .
Your Honor, I have confidence in our judicial system.  I trust that you will evaluate the case in its entirety and make the right decisions.  This case needs not only your judicial knowledge and fairness, but it also needs your strong courage to make the right and humane decisions during this time of intense media, partisanship, and public pressures.

   **WHEREFORE,**   for the reasons stated, Richard Scrushy respectfully

requests that this Honorable Court impose a sentence that does not include imprisonment.


Respectfully submitted,

/s/ Arthur W. Leach
Arthur W. Leach
Leslie V. Moore
2310 Marin Drive
Birmingham, Alabama 35203
Phone:  205-822-4224
Fax:  205-824-0321

Carmen D. Hernandez
717 D Street, N.W.
Suite 310
Washington, DC 20004
Phone: 202-628-0090
Fax: 202-628-2881

James K. Jenkins
Maloy & Jenkins
25th Floor
75 Fourteenth Street, NW
Atlanta, Georgia 30309
Phone:  404-875-2700

Frederick G. Helmsing
Helmsing, Leach, Herlong, Newman
    & Rouse, P.C.
P.O. Box 2767
Mobile, Alabama 36652
Phone:  251-432-5521

James W. Parkman, III
Richard Martin Adams
William White
Parkman & Associates
739 West Main Street
Dothan, Alabama  36301
Phone:  334-792-1900


Attorneys for Richard M. Scrushy