IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | CASE NO.: 2:05-cr-119-MEF-CSC |
| | ) | |
| DON EUGENE SIEGELMAN and | ) | |
| RICHARD M. SCRUSHY | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This cause is before the Court on several motions filed by Don Eugene Siegelman

("Siegelman") and Richard M. Scrushy ("Scrushy")[1] many months after a jury convicted

them of various felony charges.[2]  As will be set out in further detail below, the pending

motions all generally relate to the issue of whether Defendants are entitled to a new trial due

to alleged juror misconduct or improper extraneous influence on juror deliberations.  The

motions currently pending before the Court are:  Defendant Richard M. Scrushy's Motion

to Reconsider Order Denying New Trial and to Supplement Record, or in the Alternative,

Motion for New Trial Based on Newly Discovered Evidence (Doc. # 519 and Doc. # 521)[3];

---

[1]  When the Court refers to Siegelman and Scrushy collectively in this Opinion, it will refer to them as "Defendants."

[2]  The jury found Scrushy guilty on Counts Four, Five, Six, Seven, Eight, and Nine. The jury found Siegelman guilty on Counts Three, Five, Six, Seven, Eight, Nine, and Seventeen.

[3]  These motions are substantially identical.  One is filed under seal because it contains information that could be used to identify jurors and is not redacted, *see* Doc. #521, and the other is the redacted version, *see* Doc. # 519.

Defendant Governor Don Eugene Siegelman's Consolidated Motions to Reconsider the Court's November 20, 2006 and December 13, 2006 Orders, Supplement the Record, and for New Trial Pursuant to Rule 33(b)(1) of the Federal Rules of Criminal Procedure (Doc. # 520); and Defendant Richard M. Scrushy's Motion to Supplement Previously Filed Motion to Reconsider Order Denying New Trial and to Supplement Record, or in the Alternative, Motion for New Trial Based on Newly Discovered Evidence (Doc. # 532).[4]

The currently pending motions are not Defendants' first attempt to raise these issues.[5] On December 13, 2006, this Court denied the Defendants Don Eugene Siegelman's and Richard M. Scrushy's Motion for New Trial Pursuant to Rule 33(a) of the Federal Rules of Criminal Procedure (Doc. # 467).[6] After the Court denied the Joint Motion, an unknown person mailed three documents purporting to be email messages between jurors in this case[7]

---

[4] Siegelman joins in this motion and adopts it by reference. *See* Doc. # 533 & Doc. # 572.

[5] Defendants have filed numerous motions relating to this issue. Moreover, they have also raised a number of other issues in a variety of motions. Defendants unquestionably have the right, and their counsel have the obligation, to insure that the statutory and constitutional rights of these Defendants are respected. Nevertheless, the central inquiry in this, and every other criminal case, ought to be whether the defendant committed the crime charged. Moreover, there are costs to searching for defects in the criminal justice system during proceedings initiated to determine whether a particular individual committed a particular crime. These costs are not limited to the time and money for the search itself, but also the corrosion of public respect for a judicial system that loses its focus on the ultimate question of guilty or innocence.

[6] This motion is referred to in this Opinion as "the Joint Motion."

[7] The documents purporting to be email messages are marked Exhibits 23, 24 and 26 for identification and can be found in the record at Doc. # 521-2, Doc. # 521-3 and Doc. #

to counsel for Defendants. Defendants both ask this Court to supplement the record with copies of these documents, which are marked Exhibit 23, 24, 25, 26, and 27 for identification. Additionally, Defendants each ask the Court to reconsider its decision denying the Joint Motion, or in the alternative, they ask the Court to expand the evidentiary record on issues relating to the new trial motion by conducting a more extensive investigation into the conduct of the jurors prior to the verdict in this case and to grant a new trial on the basis of the previously submitted evidence, the newly submitted evidence (Exs. 23 to 27), and the fruits of the investigation they request. The Government opposes these motions. After careful consideration of the arguments advanced and the applicable legal precedents, it is the conclusion of this Court that all relief requested, other than the supplementation of the record with exhibits 23 through 27, is due to be DENIED.

**A. Motion to Reconsider**

Nothing in the argument submitted by either Siegelman or Scrushy has persuaded this Court that its prior rulings on issues relating to the Joint Motion should be changed. This Court is convinced that it acted appropriately with respect to the nature and scope of the investigation into alleged juror misconduct and alleged improper extraneous influence on juror deliberations. Moreover, the Court is satisfied that the applicable legal precedents

---

532-2. Exhibits 25 and 27 are photocopies of the envelopes in which the purported email messages were mailed to counsel for Defendants, which presumably were included in the record to show the date of the postmark on each envelope. *See* Doc. # 521-4 and Doc. # 532-3. The envelope which delivered Exhibits 23 and 24 was post-marked December 20, 2006. The envelope which delivered Exhibit 26 was post-marked February 20, 2007.

compel the decision the Court reached on the Joint Motion, namely the denial of the request for new trial.[8] Thus, to the extent that the pending motions ask this Court to reconsider its prior decisions, the motions are due to be DENIED.[9]

## B. Motion to Supplement with Exhibits 23, 24, 25, 26, and 27

Defendants ask this Court to make Exhibits 23, 24, 25, 26, and 27 a part of the evidentiary record to be considered by the Court in deciding their other requests for relief. The Court finds that the motions to supplement with these exhibits are due to be GRANTED. Nothing in this ruling is intended as any indication of whether the Court finds the documents to be authentic. They are being included in the record because they must be for the sake of

---

[8] A complete explanation of the factual and legal predicate for this Court's ruling can be found in its December 13, 2006 Memorandum Opinion and Order (Doc. # 518).

[9] The Court will take this opportunity to clarify one point regarding its December 13, 2006 Memorandum Opinion and Order. Defendants appear to argue that this Court based its December 13, 2006 ruling on skepticism regarding the authenticity of the emails submitted as exhibits in support of the Joint Motion or specifically ruled that the documents were not authentic. This Court did not so find. The language to which Defendants point is merely language which correctly reflects the fact that there is no certain evidence before this Court that those exhibits are authentic email communications between jurors. While this Court found that one ambiguous email which was capable of various interpretations (Doc. # 467-15) did not constitute credible information that could cast doubt on the unanimous sworn testimony of the jurors that they were not exposed to extraneous information relating to the penalty, the Court's actual holding relating to these documents assumed *arguendo* that they are authentic. *See* Doc. # 518 at p. 53. While the Court has not based any ruling on a finding that these emails are not authentic, the Court does have some concerns about these documents. Not only is there no information before the Court on how they came to be anonymously mailed to Defendants' counsel, but there are also odd irregularities in the documents such as misspelled words in headings outside of the text fields (e.g. "Report As Seem" instead of "Report As Spam"). The Government further argues that the timing of the appearance of the emails is suspect as well. Whatever concerns or doubts the Court has about these documents, it has not influenced its ruling on the matters before it.

4

the appellate court's review of this matter should Defendants take an appeal of this Court's other rulings relating to the relief Defendants have requested.

**C. Motion to Supplement Record Through Further Investigation of Jurors**

By their motions, Defendants renew their prior request that this Court to conduct an independent investigation into the authenticity of Exhibits 10, 11, 12, 13, and 15 and add that it should also investigate the authenticity of Exhibits 23, 24, and 26.[10]   As part of that investigation, Defendants would have this Court review data contained on the computer hard drives of computers used by the jurors and records of internet service providers for the jurors. Siegelman requests this Court to order Juror 7 and Juror 40 to produce all hard drives, Blackberries, cell phones, or any other device capable of sending email or text messages that they used during the course of this trial irrespective of whether Juror 7 or Juror 40 owned the device.  Siegelman requests this Court to order Juror 7 and Juror 40 to immediately disclose to the Court all internet service providers, email providers, and cell phone companies that provided email, text messaging or cell phone services to them during the trial.  Siegelman further requests that this Court subpoena records from all internet service providers, email providers, and cell phone companies that provided email, text messaging or cell phone services to Juror 7 and Juror 40 from jury selection through verdict.  Scrushy asks the Court to conduct a slightly different investigation.  In addition to communications between the

---

[10]   Exhibits 10, 11, 12, 13, and 15 can be found in the record at Doc. # 462-13, Doc. # 462-14, Doc. # 462-15, Doc. # 462-16 and Doc. # 473-1.

jurors by email or text messaging, Scrushy would have this Court also investigate the internet research that Juror 7 and Juror 40 may have conducted during the trial. To do this, Scrushy would have this Court seize the computers of Juror 7 and Juror 40[11], obtain records from their internet service and network providers, review all materials harvested from these sources (apparently after hiring an expert to ascertain the information on the seized computers), and then conduct another evidentiary hearing at which the jurors would testify.

Were the Court to be inclined to conduct the extensive search that Defendants demand, it would necessarily have to interrogate Juror 7 and Juror 40 under oath at least two more times. Additionally, it would have to conduct another evidentiary hearing at which four or more jurors would have to testify again about their service in this case. Moreover, neither Scrushy, nor Siegelman, appear to grapple with the fact that all of this investigating would not definitively establish anything other than whether the exhibits are actually unaltered copies of emails sent by machines to which jurors had access. Even if the computer records showed that email messages were exchanged between computers owned or used on occasion by jurors, that would not prove who actually authored the messages using these machines.

To say that the extensive investigations that Defendants ask this Court to conduct in this case is unprecedented is an incredible understatement. The case law on this issue establishes precedent for Court investigation of alleged juror misconduct or alleged juror

---

[11] Scrushy appears to assume months after a jury trial concludes that this Court has carte blanche to seize property belonging to former jurors or to others so long as a former juror used that property during the period of their jury service.

exposure to extraneous information by interviewing jurors. Usually this investigation amounts to the court interviewing one of more members of a jury about the issue. Often Courts conduct such interviews *in camera*. In this case, the Court opted instead to conduct a full blown public hearing at which all twelve jurors testified under oath. There is simply no legal precedent for Defendants' current requests that this Court bring the jurors back to testify a *second* time so that their prior testimony can possibly be impeached by documents which were mysteriously delivered to counsel for Defendants after the Court denied the Joint Motion. To be clear that is precisely what Defendants are asking this Court to do. They cannot and do not contend that the very broad inquiries that these jurors answered under oath were not broad enough to prompt jurors to testify about internet searches or other possible exposure to extraneous information referred to in Exhibits 10, 11, 12, 13, 15, 23, 24, and 26. Given the scope of the Court's prior inquiry, the only reason for a further inquiry would be to attempt to impeach the jurors' prior testimony. No court has ever held that a court's obligation to investigate extends that far. The Court does not believe that the absence of such legal holdings has anything at all to do with the law having failed to develop as quickly as technology has evolved. The Court believes that sound policy considerations are the reason that the law has not required such fishing expeditions. Such a holding would potentially destroy the entire jury system in this nation.[12]

---

[12] Were our country to allow every person who serves as a juror in a criminal case to be subject to scrutiny of the type Defendants propose, who among us would remain willing to serve on a jury? We already have asked a great deal of the members of this jury. This was

This Court has already conducted an extensive investigation of the jurors' conduct in this case.  While the Defendants have not been satisfied by its scope, this Court has held two evidentiary hearings.  All the jurors who sat on this case to verdict have been called to give testimony before this Court.  This Court had a first hand opportunity to view their demeanor during their testimony and to assess their credibility.  Over the Government's objection, each of the jurors was called upon to answer numerous questions.  After providing the jurors with definitions of the terms "extraneous information"[13] and "outside influence,"[14] the Court asked the jurors as series of questions, including the following:

> 1.  Did anyone, other than another juror, try to influence your thinking about this case or your vote on the substantive counts against any defendant?
>
> 2.  Do you have any reason to believe that any other juror was subjected to attempts to influence his or her thinking about the case by anyone other than another juror?

_____

a lengthy trial.  During the trial, the members of the jury were asked to sacrifice their time. They were kept away from their jobs and their families more than any of them would have wanted to be.  This was also a high-profile trial which has engendered intense media scrutiny and significant public discussion.  Certainly, these facts increased the imposition on these jurors.  At some point, we have asked enough of these citizens.

[13]  The Court told the jurors that any information *other than* the information they received from the following sources -- (1) Court's instructions on the law, (2) the factual evidence presented in the case through witness testimony from the witness stand, and (3) the factual evidence presented in the case through the exhibits admitted in evidence at trial -- was "extraneous information."

[14]  The Court told the jurors that "outside influence" referred to any attempts to influence a juror's thoughts about the case or the outcome of the jury's deliberations by anyone other than another juror.

3.  Did anyone, other than another juror, attempt to discuss the case with you during the time you were a juror in this case? If yes, then get the who, what, where, when and why details.

4.  During the time that you were serving as a juror, did you view any news reports or other information relating to this case or any defendant from sources such as newspapers, magazine, radio, or television broadcasts, or internet sites?

5.     During the time that you were serving as a juror, did you view any material from any books, newspapers, internet sites, or any other source relating to any witness, any legal issue, or any factual issue related to this case?

6.  During the time that you were serving as a juror, did you *in any way* attempt to independently investigate any facts or law relating to this case?

7.  During the time that you were serving as a juror, did you overhear any conversations between persons not on the jury or between non-jurors and any member of the jury relating to this case?

8.  During the time that you were serving as a juror, did you view or hear any extraneous information about the penalty that might be applicable to any defendant if he was convicted of the charges in this case?

9.  During the time that you were serving as a juror, did you obtain extraneous information from any source about your role as a juror, jury service generally, or the role of a foreperson?

10.  During the time that you were serving as a juror, did any other juror say or do anything that caused you to believe that he or she had been exposed to extraneous information about this case from any source?

11.  During the time that you were serving as a juror, did you view or hear any extraneous information about either the law applicable to this case or any factual material relating to this

9

case?

    12.  Did you bring any documents in response to the subpoena relating to the extraneous information?

In addition to the aforementioned questions, each juror was asked specific follow-up questions relating to any affirmative answers.  Importantly, Juror 5, Juror 7, and Juror 40 were all asked additional questions.  The Court made specific credibility determinations about the testimony it heard and addressed the legal ramifications of the information provided by the jurors at this hearing in its December 13, 2006 Memorandum Opinion and Order.

    In many respects, Exhibits 23, 24, and 26 are merely cumulative of the exhibits before the Court prior to its December 13, 2006 ruling.  Like the exhibits in evidence then, if authentic, Exhibits 23, 24, and 26 show communications between two jurors about the case during the period when the jury was only meant to be discussing the case as a whole.  Exhibits 23, 24, and 26 do contain references to "links," "articles," and "surfing."  If authentic, these references could suggest possible juror exposure to extraneous information.  If the Court had not already conducted a very thorough investigation of any possible juror exposure to extraneous information, these exhibits would warrant further investigation.  Because the issue of possible juror exposure to extraneous information has already been extensively explored during an evidentiary hearing in this case in November of 2006, Exhibits 23, 24, and 26, if authenticated, are merely impeaching and do not warrant further investigation.

It is well established that this Court has broad discretion as to how to proceed when confronted with an allegation of jury misconduct.  In this matter, the Court conducted a very broad inquiry when that allegation was first raised in this case.  That inquiry was broad enough to satisfy the requirements of the law with respect to this issue despite the fact that additional evidence of the same general type of juror misconduct has now surfaced.[15]  In the circumstances of this case, the Court finds that further investigation of alleged juror misconduct or alleged exposure of jurors to improper extraneous influences or information is not warranted.  For this reason, Defendants' requests for additional investigation of these matters are due to be DENIED.

### D.  Motion for New Trial Based on Exhibits 23, 24, 25, 26, and 27

To the extent that the currently pending motions ask this Court to grant a new trial, they constitute motions pursuant to Federal Rule of Criminal Procedure 33(b)(1), which provides that "any motion for a new trial grounded on newly discovered evidence must be filed within 3 years after the verdict or finding of guilty."  Fed. R. Crim. P. 33(b)(1).  It is true that motions pursuant to Rule 33(b)(1) can be based on questions of law, including those

---

[15]  The evidentiary record before the Court prior to the November 2006 investigatory hearing contained information that suggested it was possible that jurors were discussing the case with fewer than all of the members of the jury present and that some members of the jury may have been exposed to information about the case from sources on the internet.  That evidence is what persuaded this Court to conduct the broad hearing into those types of misconduct.  Exhibits 23, 23, and 26 do nothing more than raise a question as to whether jurors were discussing the case with fewer than all of the members of the jury present or accessing information about the case from sources on the internet.  Juror testimony at the November 2006 hearing answered the Court's questions about those matters.

relating to the fairness or impartiality of the jury.  *See, e.g., United States v. Campa,* 459 F.3d

1121, 1151 (11th Cir. 2006); *United States v. Beasley,* 582 F.2d 337, 339 (5th Cir. 1978).[16]

Motions for new trial based on newly discovered evidence are, however, "highly disfavored"

and must be regarded with "great caution."  *United States v. Campa,* 459 F.2d at 1151;

*United States v. Hall*, 854 F.2d 1269, 1271 (11th Cir. 1988).[17]  The Eleventh Circuit Court

of Appeals has established a five part test which must be satisfied before a court may grant

a motion for new trial in a criminal case based on newly discovered evidence:

> (1) the evidence must be discovered following the trial; (2) the
> movant must show due diligence to discover the evidence; (3)
> the evidence must not be merely cumulative or impeaching; (4)
> the evidence must be material to issues before the Court; and (5)
> the evidence must be of such a nature that a new trial would
> probably produce a new result.

*United States v. DiBernardo*, 880 F.2d 1216, 1224 (11th Cir. 1989); *United States v. Hall*,

854 at 1271.  "The failure to satisfy any one of these elements is fatal to a motion for new

trial."  *United States v. Thompson*, 422 F.3d 1285, 1294 (11th Cir. 2005); *United States v.*

*Lee*, 68 F.3d 1267, 1274 (11th Cir. 1995).   While Defendants contend that the five

prerequisites are met in this case, the Court cannot agree.  In light of the fact that all of the

jurors already testified under oath about any possible contacts with extraneous information

during the period of their jury service, the "newly discovered evidence" set forth in the

---

[16]  In *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. Nov. 3, 1981)
(*en banc*), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions
handed down prior to the close of business on September 30, 1981.

[17]  Indeed, the very cases Defendants cite make this plain.

12

motions is "merely cumulative or impeaching." For this reason, the Court finds that the motions for new trial on the basis of the newly discovered evidence are due to be DENIED.

## CONCLUSION

For the reasons set forth above, it is hereby ORDERED as follows:

(1) Defendant Richard M. Scrushy's Motion to Reconsider Order Denying New Trial and to Supplement Record, or in the Alternative, Motion for New Trial Based on Newly Discovered Evidence (Doc. # 519 and Doc. # 521) is GRANTED in part and DENIED in part. To the extent that these motions seek to supplement the record with the addition of Exhibits 23, 24, and 25, the motions are GRANTED. All other relief requested by these motions is DENIED.

(2) Defendant Governor Don Eugene Siegelman's Consolidated Motions to Reconsider the Court's November 20, 2006 and December 13, 2006 Orders, Supplement the Record, and for New Trial Pursuant to Rule 33(b)(1) of the Federal Rules of Criminal Procedure (Doc. # 520) is GRANTED in part and DENIED in part. To the extent that this motion seeks to supplement the record with the addition of Exhibits 23, 24, and 25, the motion is GRANTED. All other relief requested by this motion is DENIED.

(3) Defendant Richard M. Scrushy's Motion to Supplement Previously Filed Motion to Reconsider Order Denying New Trial and to Supplement Record, or in the Alternative, Motion for New Trial Based on Newly Discovered Evidence (Doc. # 532) is GRANTED in part and DENIED in part. To the extent that this motion seeks to supplement the record with

the addition of Exhibits 26 and 27, the motion is GRANTED.  All other relief requested by

this motion is DENIED.

DONE this the 22nd day of June, 2007.

/s/ Mark E. Fuller

CHIEF UNITED STATES DISTRICT JUDGE

14